

**Douglas B. Moylan**
Attorney General of Guam
**Robert M. Weinberg**
Assistant Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)

Attorneys for the Government of Guam

FILED
DISTRICT COURT OF GUAM
OCT 29 2004
MARY L. M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

JAY MERRILL, etc., et al.

  Plaintiff,

vs.

THE GUAM ELECTION COMMISSION, et al.

  Defendants.

Case No. CIV 04-0046

(removed from the Superior Court of Guam Civil Case No. CV-1103-04)

**MOTION TO STRIKE: (1) APPEARANCES OF COUNSEL FILED ON BEHALF OF THE GOVERNOR AND LEGISLATURE OF GUAM, (2) OBJECTION TO PROPOSED STIPULATION AND ORDER FOR PRELIMINARY INJUNCTION FILED BY THE LEGISLATURE; AND (3) OBJECTION TO PRELIMINARY INJUNCTION STIPULATION FILED BY THE GOVERNOR**

The Attorney General of Guam respectfully moves the Court to strike: (1) the Appearances Of Counsel filed on behalf of the Governor of Guam and *I Mina' Bente Siete Na Liheslaturan Guåhan*, the Legislature Of Guam; (2) the Objection To Proposed Stipulation And Order For Preliminary Injunction filed by *I Mina' Bente Siete Na Liheslaturan Guåhan*, the Legislature of Guam; and (3) the "Objection To Preliminary Injunction Stipulation" filed by Felix P. Camacho, in his official capacity as Governor. As grounds, the Attorney General

Page 1

Case 1:04-cv-00046   Document 13   Filed 10/29/2004   Page 1 of 14

respectfully submits that the appearances and motions were filed without lawful authority by putative counsel and that only the Attorney General represents the named defendants in this action.[1]

## DISCUSSION

By federal law, in the Organic Act of Guam, 48 U.S.C. § 1421g(d)(1), the Attorney General of Guam is designated as the "Chief Legal Officer for the Government of Guam" As such, he controls all litigation by and on behalf of the Government of Guam, its departments, boards, agencies and instrumentalities.

> The Organic Act makes the Attorney General the Chief Legal Officer of the government of Guam. The Governor is head of the executive branch but **the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch, but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.**

*Moylan v. Camacho*, Superior Court of Guam, Special Proceeding Case No. SP230-03, "Decision and Order," dated November 10, 2003, p. 38 (Manibusan, J.) (emphasis in bold added). It is the Attorney General who represents all named defendants in this matter, and no

---

[1] By filing this motion, the Attorney General does not mean to imply that either the Governor or *I Mina' Bente Siete Na Liheslaturan Guåhan*, the Legislature of Guam, are proper, necessary or indispensable parties. While not necessarily agreeing that the plaintiff is entitled to all the permanent relief it seeks, the Governor is simply not a necessary or indispensable party for either declaratory or injunctive relief, for all the relief plaintiff may be entitled to may be obtained from defendant Executive Director of the Guam Election Commission. And with respect to the Legislature, it is beyond dispute that the Legislature is absolute immune from all claims in this action and can afford the plaintiff no relief. *See, Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 732 (1980) ("In *Tenney [v. Brandhove*, 341 U.S. 361 (1951)], we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to actions seeking declaratory or injunctive relief."); *Unidos v. Government of the United States Virgin Islands*, 314 F.Supp.2d 501 (D. V.I. 2004) (Virgin Islands senators absolutely immune from § 1983 and 42 U.S.C. § 1973 Voting Rights Act suit for either prospective relief or damages) (citing *Hamlet v. Charfauros*, 1999 WL 359191 (Guam Terr. 1999); *Sablan v. Tenorio*, 1996 WL 33364333, *4 n. 29 (N. Mariana Islands 1996). More fundamentally, the Legislature of Guam is due to be dismissed simply because it is not a "person" within the meaning of 42 U.S.C. § 1983. *Sablan v. Tenorio, supra*, *4 ("Because the legislature is not a "person" within the meaning of § 1983, the trial court did not err in dismissing the action against the legislature."). The Guam Legislature is therefore due to be dismissed immediately.

Page 2

other attorney has authority to appear in this action without his approval and authorization. Discussed in detail below, the Attorney General controls all litigation with respect to the "entire government of Guam." *Id.*

And lest the sole remaining defendant the Executive Director of the Guam Election Commission attempt to appear by private counsel and assert a legal position contrary to that presented by the Attorney General, it is respectfully submitted that it too has no voice in this litigation other than through the Attorney General. Albeit autonomous, the Guam Election Commission is without question an instrumentality of the Government of Guam. *See* 3 G.C.A. § 2101 ("There is within, as an autonomous instrumentality and an independent commission of the government of Guam, the Election Commission."); *and see* 3 G.C.A. § 2102 (Guam Election Commission "Executive Director shall administer the election law of Guam and shall perform and discharge all of the powers, duties, purposes, functions and jurisdiction hereunder, or which hereafter by law may be vested in the Commission in accordance with the rules of the Commission, and subject to the right of appeal to the Commission."); *cf. Guam Radio Services, Inc. v. Guam Economic Development Authority ("GEDA")*, 2000 Guam 1, 2000 WL 32130, ¶ 14; *Bordallo v. Reyes*, 763 F.2d 1098, 1099 (9th Cir. 1985) (certain autonomous agencies, including Guam International Airport Authority; Guam Telephone Authority; and the Port Authority of Guam, are deemed instrumentalities of the government of Guam while other autonomous agencies, such as the Guam Visitors Board, are not deemed instrumentalities of the government of Guam. *GEDA and GVB v. Island Equipment Co., Inc.*, 1998 Guam 7, ¶ 7; *Guam Radio Service*, supra, at ¶ 16. The Guam Election Commission cannot dispute that it is an agency and instrumentality of the "Government of Guam," and any suggestion that it is not is legally frivolous.

Pursuant 5 G.C.A. § 30109, the Attorney General shall "[c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party"). Were this

Page 3

action filed in local court, as it was before removal, local statutes and rules of procedure governing service of process contemplate that the Attorney General shall be served and is entitled to be heard in all matters affecting the Government of Guam, its agencies and instrumentalities. *See*, Comment, 5 G.C.A. § 6209 (explaining requirement of service of process under the Government Claims Act upon the Attorney General who has "cognizance of all legal matters concerning the government of Guam, [and] must be made aware of all suits against the government, or any of its parts, as soon as possible."). Thus, even though the Commission may have its own counsel, as a matter of law, the Attorney General, who is "Chief Legal Officer of the Government of Guam" under the Organic Act and who by local statute, has "cognizance of all legal matters" involving the Government of Guam, is solely authorized to appear behalf of the Election Commission.

By local rule of civil procedure in the Guam Superior Court the Attorney General is due to be served in all civil actions involving an agency or instrumentality of the Government of Guam. *See*, G.R.Civ.P. 4(d)(5) (Service of process of civil actions shall be "[u]pon an officer or agency of the government of Guam, by serving the Attorney General and by delivering a copy of the summons and of the complaint to such officer or agency"). And the rules governing intervention expressly contemplate the Attorney General shall be notified, obviously for the purpose of allowing him to appear and be heard. *See* G.R.Civ.P. 24(c) ("When the validity of an act of the Guam Legislature affecting the public interest is drawn in question in any action to which the Government of Guam or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General.").

But this is ultimately a federal question. The powers and duties of Guam's Attorney General are not longer defined by local statute, but derive entirely from the Organic Act, Guam's Constitution. 48 U.S.C. §1421g(d). The Attorney General would be happy to brief the history of

Page 4

the amendments to the Organic Act in detail,[2] but suffice to say that the powers and duties of the Attorney General as "Chief Legal Officer of the Government of Guam," 48 U.S.C. §1421g(d)(1), and as envisioned by Congress are those as found at common law. Finally, as a necessary corollary under local law, 5 G.C.A. § 30103 provides the "Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, *those common law powers which include, but are not limited to,* the right to bring suit to challenge laws which he believes to be unconstitutional...." (Emphasis added). It is those common law powers recognized by local statute and the Organic Act of Guam that control the question presented here as to who is authorized to appear in court on behalf of the named defendants.

In the majority of jurisdictions, Guam now included, the Attorney General controls the litigation decisions of all state officials and agencies. Without such prerogative, the Attorney General would be unable to institute and maintain a uniform and coherent legal policy that takes full account of the full public interest. The essential role of the Attorney General, relative to other constitutional offices, would be radically transformed if another official or agency were able to make its own decisions about what lawsuits to file and what legal positions to take, as the Guam International Airport Authority seeks to do in this case.

The Territory must speak with one voice in the courtroom, and that voice belongs to the Attorney General. It is for the Attorney General to reconcile the interests of individual government officials with the interests of the Territory and of the people. Sometimes this

---

[2] Prior to 2002, with the election of the Guam's first Organic Act empowered Attorney General, the Attorney General was a cabinet position, appointed by the Governor of Guam for a term of years determined by the Governor. In 1998, the United States Congress amended the Organic Act to provide that there shall be an Attorney General of Guam who shall be the chief legal officer of the government of Guam. 48 U.S.C. § 1421g(d)(1). The 1998 amendment further authorized the Guam Legislature to determine how this constitutional officer was to be selected, whether by election or appointment. 48 U.S.C. § 1421g(d)(2). By establishing the Office of the Attorney General in the Organic Act itself, and defining the holder of that office as "chief legal officer of the government of Guam," Congress intended to prevent the Legislature from diminishing, reducing or destroying those powers inherent in the office at common law. Local statutes which conflict or are inconsistent with that broad grant of authority by Congress or inorganic.

Page 5

responsibility requires the Attorney General to take positions to which individual officials or agencies object. To permit these officials to displace the Attorney General's determination of the public interest, and to dictate what lawsuits should be brought and what legal remedies should be sought, would turn the Attorney General into a mouthpiece for other political interests. The common law heritage that Guam shares with the majority of States and Territories does not countenance such a result.

The authority of the Attorney General to bring litigation in the public interest has its roots in English common law. The King's Attorney was first appointed as Attorney General of England in 1461. *State Attorneys General: Powers and Responsibilities* 30 (Lynn Ross ed., 1990). By the sixteenth century, legal "powers were consolidated in a single attorney who could be called 'the chief representative of the crown in the courts.'" *State ex rel. Shevin v Exxon Corp.*, 526 F.2d 266, 268 n. 4 (5th Cir. 1976) (quoting VI W. Holdsworth, *A History of English Law* 457-61 (2d ed. 1971)). As the United States Court of Appeals for the Fifth Circuit has observed,

> The office of the attorney general is older than the United States . . . . As chief legal representative of the king, the common law attorney general was clearly subject of the wishes of the crown, but, even in those times, the office was also a repository of power and discretion; the volume and variety of legal matters involving the crown and the public interest made such limited independence a practical necessity. Transposition of the institution to this country, where governmental initiative was diffused among the officers of the executive branch and the many individuals comprising the legislative branch, could only broaden this area of the attorney general's discretion.
>
> As a result, the attorneys general of our states have enjoyed a significant degree of autonomy. Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. ...

*Id.* 526 F.2d 268-69 (footnotes omitted).

Page 6

At common law, the Attorney General was not just the chief legal representative of the crown. He was also the guardian, *parens patriae*, of the public interest. He was responsible not only to manage all legal affairs on behalf of the crown but also to prosecute all suits, civil and criminal, necessary to vindicate the public interest. He had the right to initiate, conduct, and maintain all litigation that he deemed fit to enforce the law, to preserve the civic order, and to protect the rights of the public. His duty was not solely or even primarily to represent and protect the rights of the king. Rather, it was to represent and protect the rights of the people.

This conception of the role of the Attorney General carried over to the American colonies and to the United States, once they asserted their independence from England. With the king deposed and executive authority reposed in governors who were also elected by the people, the conviction only became stronger that the Attorney General's primary allegiance was to the people, not to other branches or officials of government:

> Although presently the Attorney General is vested with those powers he had under the common law, the source of his authority and his consequent obligations have been materially changed. When this country promulgated its Declaration of Independence, the writers of that instrument in discussing the inalienable rights of man stated: "That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed . . . ." Thus, the source of the authority of the Attorney General is the people who establish the government, and *his primary obligation is to the people.*

*Hancock v Terry Elkhorn Mining Co.*, 503 S.W.2d 710, 715 (Ky. 1973) (emphasis added).

In modern political theory, the Attorney General must put the interests of the public ahead of all other legal interests. He must not yield to the directives of other government agencies or officials, if he does not believe those directives to be in the public interest.

The Attorney General thus has both the right and the responsibility to promote the interests of all citizens, not just of certain segments of government. *State ex rel. Olsen v Public*

Page 7

*Service Comm'n*, 283 P.2d 594, 599 (Mont. 1955) ("Attorney General represents the public and may bring all proper suits to protect its rights"); *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 418 So.2d 779, 782 (Miss. 1982) (the Attorney General's "responsibility is not limited to serving or representing the particular interests of State agencies, including opposing agencies, but embraces serving or representing the broader interests of the State") (citing *EPA v Pollution Control Bd.*, 372 N.E.2d 50, 52 (Ill. 1977)). He has "a common law duty to represent the public interest." *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977). This common law concept of the role of the Attorney General has been reinforced and strengthened by modern statutes and constitutional provisions. *Wade v Mississippi Co-op. Extension Serv.*, 392 F. Supp. 229, 232 (N.D. Miss. 1975) ("statutory designation of the Attorney General as legal counsel for the State in all civil cases stretches forward in unbroken succession since territorial time"); *Evans-Aristocrat Indus. v City of Newark*, 380 A.2d 268, 273 (N.J. 1977) (interpreting statute as giving Attorney General exclusive power to sue to abate public nuisance in light of common law); *Ex parte Weaver*, 570 So.2d 675, 677 (Ala. 1990).

> There can be no dispute as to the right of an Attorney General to represent the state in *all* litigation of a public character. The Attorney General represents the public, may bring *all* proper suits to protect its rights, and *he alone* has the right to represent the state as to *all litigation* in which the subject matter is of statewide interest.

7 Am. Jur. 2d *Attorney General* § 14 (citations omitted) (emphasis added).

Furthermore, because the "real client" of the Attorney General is the people, the Attorney General is generally "not constrained by the parameters of the traditional attorney-client relationship." *Terry v Wilder*, 29 Va. Cir. 418, 431 (1992) (quoting *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977)), *rev'd on other grounds*, 247 Va. 119, 439 S.E.2d 398 (Va. 1994). Unlike private attorneys, whose conduct in litigation may be subject to the whims of

Page 8

many clients, the Attorney General – who represents the Government of Guam and all its agencies and instrumentalities -- answers to one client only: the people. The Attorney General is not subject to the direction of the particular officials named as defendants in the litigation. If that were the case, any official who happened to be sued would thereby attain the constitutional authority to set legal policy for the entire State or Territory. And that is not the law.

Instead, the views of the Attorney General prevail when a conflict arises between the views of the Attorney General and those of the agencies and officers whom the attorney general represents. *Battle v Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) (holding that the views of the Oklahoma Attorney General in litigation "must prevail" over the views of the legal counsel for any particular state defendant); *Prisco v State of New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) (holding that Attorney General is authorized to represent individual state officers who are sued in their official capacities, despite claimed conflicts of interest). The reason for this rule is clear: While the Attorney General is obligated to represent government officials and agencies to the best of his abilities, he need not – indeed, must not – do so at the expense of the people as a whole. *Connecticut Comm'n of Spec. Revenue v Connecticut Freedom of Information Comm'n*, 387 A.2d 533, 538 (Conn. 1978) (Attorney General's real client is the people); *Reiter v Wallgren*, 184 P.2d 571, 575 (Wash. 1947) (while Attorney General may represent state officers, "it still remains his paramount duty to protect the interests of the people of the state"); *Commonwealth ex rel. Hancock v Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (Attorney General represents people, not "machinery" of state government). To do so "would be an abdication of official responsibility." *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977) (quoting *Secretary of Administration and Fin. v Attorney Gen.*, 326 N.E.2d 334, 338 (Mass. 1975). *See also Slezak v Ousdigian*, 110 N.W.2d 1, 5 (1961) (Attorney General must do more than espouse

Page 9

individual views of state officials represented); *Ex parte Weaver*, 570 So. 2d 675, 684 (Ala. 1990) (upholding Attorney General's authority to dismiss state insurance department proceedings over objection of state insurance commissioner); *State ex rel. Derryberry v Kerr-McGee Corp.*, 516 P.2d 813, 821 (Okla. 1973) (upholding authority of Attorney General to settle pending litigation). And that is precisely the reason why the Attorney General has taken the position he has on behalf of the Government of Guam defendants here. Whether any named defendant likes it or not, the Attorney General controls legal policy for the Government of Guam.

The Attorney General generally has broad discretion to determine what legal matters fall within the public interest and require his attention. *State v Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990) (Attorney General "may exercise such authority as the public interest may require" and "has very broad discretion to decide what matters are of public interest and require its attention"); *Mundy v McDonald*, 185 N.W. 877, 880 (Mich. 1921) (Attorney General has broad discretion "in determining what matters may, or may not, be of interest to the people generally"). It readily follows that the Attorney General is the proper party to determine whether and when a given lawsuit is in the public interest. The Attorney General has the exclusive and absolute discretion to determine whether and when to initiate a lawsuit in a matter of public interest. *State v Monarch Chemicals Inc.*, 443 N.Y.S.2d 967, 969 (1981) (affirming Attorney General's common law power to bring action to abate environmental nuisance despite disapproval of state oversight agency); *State ex rel. Porterie v Walmsley*, 160 So. 91, 93 (La. 1935) (affirming Attorney General's authority to prosecute litigation in which state had an interest); *Superintendent of Insurance v Attorney General*, 558 A.2d 1197, 1201 (Me. 1989) (holding that Attorney General had standing to seek judicial review under administrative

Page 10

procedures act); *State ex rel. Shevin v Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976) (Attorney General can bring lawsuits "without specific authorization of the individual governmental entities who allegedly have sustained the legal injuries asserted").

Finally, the Attorney General has the exclusive and absolute discretion to set legal policy and to control all aspects of litigation for and against the Territory. *See Ex parte Weaver*, 570 So.2d 675, 677 (Ala. 1990) ("As the state's chief legal officer, 'the attorney general has power, both under common law and by statute to make any disposition of the state's litigation that he deems for its best interest. ... He may abandon, discontinue, dismiss, *or compromise it*'") (emphasis added); *Feeney v. Commonwealth*, 366 N.E. 2d 1262, 1267 (Mass. 1977) upholding authority of Attorney General to prosecute appeal in the U.S. Supreme Court over express objections of state officials); *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) (stating that "the courts will not control the discretionary power of the attorney general in conducting litigation for the state"); *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 347 (Mo. Ct. App. 1980) ("It is for the attorney general to decide where and how to litigate these issues involving public rights and duties and to prevent injury to the public welfare"); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975) (Attorney General possesses "power to make any disposition of the state's litigation which he thinks best"); *State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.*, 35 N.W. 118, 120 (Neb. 1887) (recognizing that Attorney General controls litigation and other state officials "cannot control his actions"); *Perillo v. Dreher*, 314 A.2d 74, 79 (N.J. Super. Ct. App. Div. 1974) (recognizing that Attorney General has "the exclusive power to control all litigation to which the State is a party"); *Opinion of the Justices*, 373 A.2d 647, 649 (N.H. 1977) (Attorney General has "broad authority to manage the state's litigation and to make any disposition of a case which he deems is in the state's best interest"); *Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. App. 1977) (Attorney General "has statutory and common law authority to act on behalf of the people of the

Page 11

State of Michigan in any cause or matter, such authority being liberally construed"). There is no doubt that there is but one attorney for the defendants in this litigation, because there is only one "Chief Legal Officer for the Government of Guam" in the Organic Act. The unauthorized appearances by other counsel in litigation and anything they have filed are due to be stricken.

## CONCLUSION

The Attorney General of Guam respectfully submits that there is only one attorney authorized to appear on behalf of the named defendants in this actions and that is the Attorney General. Accordingly, the Attorney General of Guam respectfully moves the Court to strike: (1) the Appearances Of Counsel filed on behalf of the Governor of Guam and *I Mina' Bente Siete Na Liheslaturan Guåhan*, the Legislature Of Guam; (2) the Objection To Proposed Stipulation and Order For Preliminary Injunction filed by *I Mina' Bente Siete Na Liheslaturan Guåhan*, the Legislature of Guam; and (3) the "Objection To Preliminary Injunction Stipulation" filed by Felix P. Camacho, in his official capacity as Governor, on the grounds that said appearances and motions were filed without lawful authority by putative counsel.

Dated this 26th day of October, 2004.

OFFICE OF THE ATTORNEY GENERAL
**Douglas B. Moylan, Attorney General**

_____
ROBERT M. WEINBERG
Assistant Attorney General
For All Defendants

# CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party(ies) with a copy of the foregoing by hand delivery, or by depositing same in the United States Mail, postage prepaid and properly addressed to:

Thomas L. Roberts, Esq.
Dooley, Roberts & Fowler, LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913

Cesar Cabot, Esq.
Cesar Cabot, P.C.
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
For Guam Election Commission
& Gerald Taitano in his official capacity

Shannon Taitano, Esq.
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
For Governor of Guam

Michael A. Pangelinan, Esq.
Rodney J. Jacob, Esq.
Calvo and Clark, LLP
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
For Governor of Guam

Therese Terlaje', Esq.
155 Helser Place
Hagåtña, Guam 969102
For *I Mina' Bente Siete Na Liheslaturan Guåhan*, Legislature of Guam

Page 13

Joaquin C. Arriola, Jr., Esq.
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X
Hagåtña, Guam 96932
 For proposed Intervenor, *Lina'La'Sin Casino*

_____
ROBERT M. WEINBERG
Assistant Attorney General