SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

RODNEY J. JACOB, ESQ.
MICHAEL A. PANGELINAN, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| JAY MERRILL, et. al., | CIVIL CASE NO. 04-00046 |
| Plaintiffs, | (Superior Court of Guam Civil Case No. CV1111-04) |
| -v- | |
| THE GUAM ELECTION COMMISSION, et. al. | **SUPPLEMENTAL OPPOSITION TO MOTION TO STRIKE** |
| Defendants. | |

ORIGINAL

The Governor of Guam, Felix P. Camacho (the "Governor"), respectfully submits this supplemental opposition to the motion to strike filed by the Attorney General of Guam.

## INTRODUCTION

The Legislature and Governor of Guam adopted legislation to permit the people to vote on a controversial ballot initiative. Without consulting the Legislature or the Governor, the Attorney General appeared on their "behalf" in this action and attempted to stipulate to an injunction preventing the people from voting on the initiative. When the Governor and the Legislature appeared through independent counsel and objected to this stipulation, the Attorney General moved to strike their appearances and objections.

In his motion to strike, the Attorney General claims that Guam's elected lawmakers have no right to appear through independent counsel either to defend a law they passed or to defend the people's right to vote. He suggests that he will have the Legislature and Governor dismissed from the case (Motion to Strike at 2 n.1) and further threatens that "lest the sole remaining defendant the Executive Director of the Guam Election Commission attempt to appear by private counsel and assert a legal position contrary to that presented by the Attorney General, it is respectfully submitted that it to has no voice in this litigation." (*Id.* at 3:4-7.) Were these claims true, the Attorney General would have the power to create law by stipulation, with no checks and balance—a power no individual in Guam or any jurisdiction within the United States enjoys (and one that has not been held since the days of monarchy described in the Attorney General's brief).

Because the ability to create law is the core of democratic government, this power is meticulously divided, checked, and balanced. Only the Legislature, which is comprised of multiple elected representatives, may pass laws. This power is checked by the Governor's ability to veto them. And it is further checked by the Judiciary's duty to review them in adversarial

proceedings. Division of this power between multiple individuals and each branch of government ensures that this fundamental power is not left unchecked in the hands of one person.

Here, the Attorney General is attempting to use his role as a lawyer to circumvent all these checks and balances. By ignoring his clients (the elected lawmakers) and proclaiming that they have "no voice," he seeks to join sides with the plaintiffs and enter into a stipulation that would repeal democratically enacted legislation without a hearing. Not only would this be a legislative act, and not only would this leave the defendants in this case with nobody representing their interests, it also would deprive this Court of its ability and duty to pass on the legality of the underlying laws. It would destroy the system of checks and balances and effectively make the Attorney General the ultimate arbiter of Guam law (in this case in the service of the private gambling interest plaintiffs) pursuant to his position that he is both the client and the lawyer for all branches of Guam's government.

The Attorney General conflates his role of bringing litigation to serve the public interest with his *separate* role of defending government officers and agencies when they are sued in their official capacities. There is no dispute that the Attorney General is an elected officer of the Government duty bound to protect the public interest (like all of the defendants in this case), or that he may bring litigation to benefit the public. But this role does not give him the ability to assume lawmaking powers, to substitute his individual notion of the "public interest" for duly enacted laws, or to prevent elected lawmakers from raising issues with the courts when he is acting in his capacity as counsel for the government. Under those circumstances, he has a duty either to faithfully represent the elected repositories of the public interest, such as the Governor and Legislature, or to step aside so that independent counsel may give voice to these elected leaders in the courts.

## STATEMENT OF FACTS

On October 18 and 25, 2004, proponents of Proposal A (a gambling initiative) filed suit to stop the November 2, 2004 election on Proposal A on the ground that the text of the initiative had not been mailed to voters as allegedly required by Guam law. They named as defendants the Governor, the Legislature, and the Election Commission. On October 26, the Attorney General purported to appear on behalf of the defendants and remove the action to federal court.

On October 27, the Legislature enacted Bill 374. The Governor signed it into law that same day. The law sought to clarify any requirement regarding the mailing of the initiative text and thereby to permit the people of Guam to vote on Proposal A.

The same day, the Attorney General's office prepared and signed a proposed stipulated injunction to prevent the election and to declare that it could not lawfully go forward. None of the defendants were consulted in this agreement between the Attorney General and plaintiffs. Immediately after the stipulation was filed, both the Legislature and the Governor entered appearances through independent counsel and objected to entry of the stipulated injunction. The Guam Election Commission entered a similar objection through independent counsel the next day.

On October 29, 2004, this Court entered an Order denying the stipulation and *sua sponte* staying the matter "pending the November 2, 2004 election results." (Order at 4.) The Court held: "It seems highly inappropriate to bind the Government of Guam to a stipulation and order where it appears that the AG may not be the government's counsel." (*Id.* at 3.) Despite the stay, that same day, the Attorney General moved to strike the appearances by the Legislature and the Governor.

On November 2, 2004, the people of Guam voted against Proposal A. As a result, if Bill 374 is found to be legal and organic, the vote of the people will stand. The goal of this suit, now that the election has gone forward (and Prop A lost) is to invalidate the election and to have the Governor ordered to hold another, special election where the private gambling interests that the Attorney General has joined think they stand a better chance.

Because the case was stayed until the results were finalized, the response to the motion to strike was not due until November 23, fourteen days after election results were certified. However, as a matter of caution, on November 12, the Governor filed an initial opposition to the motion, noting that he would file this supplemental opposition on November 23. The Governor now submits this brief to defend his right to appear in this case and his right to present to the Court his position in support of Bill 374, which he signed into law to enable the people of Guam to be able to vote on Proposal A.

### ARGUMENT

Following the federal system of divided government that is echoed in the Fifty States, the Organic Act of Guam[1] provides that the Government of Guam is comprised of three branches each with a separate sphere of power. 48 U.S.C. § 1421a ("The government of Guam shall consist of three branches, Executive, Legislative, and Judicial...."). The Attorney General lacks control or dominion over the policies over any of these three branches.

The Attorney General does not possess the executive power because the Organic Act vests it in the Governor. 48 U.S.C. § 1422 ("the executive power of Guam shall be vested in an executive officer whose title shall be the 'Governor of Guam.'"). The Attorney General does not possess the legislative power because the Organic Act vests it in the Legislature. 48 U.S.C. §

---

[1] The Organic Act of Guam serves as Guam's constitution. *Taisipic v. Marion*, 1996 Guam 9, ¶ 26 (citing *Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980)).

1423(a) ("The legislative power and authority of Guam shall be vested in a legislature, consisting of a single house, to be designated the 'Legislature of Guam.'"). The Attorney General does not possess the judicial power because the Organic Act vests it in the Judiciary. 48 U.S.C. § 1424 (as amended Oct. 31, 2004). Thus, unlike the Governor, Legislature, or Judiciary, the Attorney General heads none of the branches of Guam's government and can control none of their powers.

Despite possessing neither executive, nor legislative, nor judicial power, the Attorney General suggests he can set contrary "legal policies" that undermine these powers because he is an elected "chief legal officer" under the Organic Act. (Motion to Strike at 5-6.) The "legal policy" the Attorney General attempted to "set" was to enter a stipulated order that directly repealed the actions of the Governor and Legislature in passing and executing Bill 374, and prevented the Judiciary from ruling on the issue of whether this law was legal by conceding the case in a stipulation. This stipulation also would have waived the government's sovereign immunity defenses (defenses the Attorney General acknowledges exists in his Motion to Strike at 2 n.1.) in direct contravention of Guam law, which requires an express vote by the Legislature before sovereign immunity may be waived. *Pacific Rock Corp. v. Dept. of Educ.*, 2001 Guam 21, ¶ 19 ("In order for a suit to be maintained, therefore, against the Government of Guam and any of its instrumentality such as DOE, there must be an express waiver of sovereign immunity by the Guam Legislature") (citing 48 U.S.C. § 1421a); *see Marx v. Govt. of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) (Guam has inherent sovereign immunity). Thus, if the Attorney General's right to set "legal policy" goes this far, it would be a complete abrogation of the powers of the Governor, Legislature, and Judiciary in favor of the Attorney General.

I.  **THE ATTORNEY GENERAL CANNOT REPEAL LAWS**

If, as he contends, the Attorney General could stipulate to the illegality of a law, while preventing the branches of government responsible for lawmaking from defending it, he

would be usurping the Legislature's power to pass and repeal laws and the Governor's power to approve or veto them. Guam follows the federal separation of powers doctrine. *In re Request of Governor Carl T.C. Gutierrez*, 2002 Guam 1, ¶¶ 32, 34 (Feb. 7, 2002). "Even absent a finding that one branch has usurped a power exclusively reserved for another branch, a separation of powers violation may still be found if 'one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.'" *Id.* at ¶ 35 (quotation omitted).

Pursuant to Guam's Organic Act, the "legislative power and authority of Guam shall be vested in a legislature, consisting of a single house, to be designated the 'Legislature of Guam.'" 48 U.S.C. § 1423(a). "In granting 'legislative power' to the Guam Legislature, Congress granted a power analogous to its own." *People v. Fegurgur*, 800 F.2d 1470, 1474 (9th Cir. 1986).

Enacting and repealing law are legislative functions. *Nat'l R.R. Passenger Corp. v. Atchison Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 466 (1985) ("the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state"); *Clinton v. New York*, 524 U.S. 417, 444 (2001) (repeal of act of Congress is legislative act). "[T]he power to enact statutes may only 'be exercised in accord with a single, finely wrought and exhaustively considered, procedure.'" *Clinton*, 524 U.S. at 439-40 (quoting *INS v. Chadha*, 916 U.S. 919, 951 (1983)). Under the Organic Act, this procedure requires laws to be passed by a majority of the Legislature and signed by the Governor, or by a two-thirds vote of the Legislature overriding the Governor's veto. 48 U.S.C. § 1423i.

Here, the Attorney General's stipulation to the illegality of Bill 374 would effectively repeal that law without any of the procedures required for such an act. And it would circumvent the judicial review necessary to declare a duly enacted law to be unconstitutional.

Nothing in the Organic Act or any other statute permits such an exercise of power by the Attorney General. The Attorney General relies on his "right to bring suit to challenge laws which he believes are unconstitutional." (Motion to Strike at 5:6-9 (citing 5 G.C.A. § 30103).) But that is not what he has done here. He did not bring any suit that the Government could defend. Instead, he sought to unilaterally declare a law unconstitutional without ever allowing the Court to pass on this question or allowing those who enacted it to defend the law. In that posture, he would be repealing the law, not subjecting it to constitutional scrutiny through the adversarial process—which is what the Governor seeks in making an appearance through independent counsel. Indeed, if the Attorney General were allowed to stipulate away legislation, he would deprive the Court of its power of judicial review altogether.

The Attorney General's title of "chief legal officer" does not confer any such power. Section 1421g(d)(1) of the Organic Act states only that the Attorney General serves as the "Chief Legal Officer of the Government of Guam." In the U.S. Code, "chief legal officer" just means "attorney general." *E.g.* 15 U.S.C. § 15g(1) ("The term 'State attorney general' means the chief legal officer of a State...."); *accord* 15 U.S.C. §§ 5714(2), 6106(1); 42 U.S.C. § 1997c(b)(1)(A). As the Oklahoma Supreme Court has held, it is impossible to see how "legislative investiture of the mantle of 'Chief Law Officer' alone confer[s] upon the office a stature which it did not already have...." *Cartwright v. Georgia-Pacific Corp.*, 663 P.2d 718, 722-23 (Okla. 1983); *accord Williams v. McKiethen*, 1990 WL 265971, at *5 (M.D. La. July 20, 1990) ("chief legal officer" is just an explanatory phrase "without substantive meaning with regard to powers, function or duties"); *Tarantino v. Bd. of Regents*, Guam Super Ct. Civil Case No. 1455-00 (Decision and Order Dec. 5, 2000) at p. 8-9 (rejecting contention that Legislature cannot limit common law powers because of the Organic Act's amendment to designate attorney general as "chief legal officer" because "[a] review of the House Reports of the 1998 Organic Act

Amendments provides no support to Plaintiff's claim that the Attorney General harnesses powers that are immune from local legislation.") (citing H.R. Rep. No. 105-742, 105th Cong. (2nd Sess. 1998)).

Likewise, no court has ever held that an attorney general may repeal legislation over the objections of those who enacted the law. None of the many authorities the Attorney General cites even comes close. In *Battle v. Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983), for example, the issue was whether the attorney general or counsel for a department of corrections would represent the state in pending litigation. The Legislature passed a resolution expressly requiring the attorney general to represent the state, and on that basis the court held that the attorney general was proper counsel. That case had nothing to do with an attorney general repealing legislation through judicial concession, against the wishes of the legislature and governor. To the contrary, he was defending the legislature's position on the law, as requested.

The Attorney General also cites the Guam Superior Court decision in *Moylan v. Camacho*, Super. Ct. of Guam Case No. SP230-03 (Dission Yan Otden Nov. 10, 2003), regarding his "common law powers." *Moylan* held an attorney general has a "dual role" in (1) bringing litigation to enforce the public interest, and (2) acting as counsel for state agencies. *Id.* at 40. *Moylan* dealt with the Attorney General's role in bringing litigation to enforce the public interest. It held that an attorney general may sue the governor when acting in that capacity. It did not discuss an attorney general's powers as counsel for state agencies, much less hold (or even suggest) that an attorney general may elevate his view of the public interest above all others when acting in that capacity. To the contrary, the court explained: "[T]he Court ***does not*** intimate that the Attorney General has the final determination of what is in the public interest. The Governor may very well have a different view of what is the public interest. When their positions conflict

as to the public interest, as in the controversy before the court, it is appropriate that the Courts determine what the public interest calls for." *Id.* at 43 (emphasis added).

## II. THE GOVERNOR CONTROLS EXECUTIVE FUNCTIONS, INCLUDING LITIGATION INVOLVING HIM OR EXECUTIVE AGENCIES

The execution of executive functions is subject to the ultimate control and direction of the Governor. This is expressly provided for in the Organic Act, which vests the Governor with: (1) "The executive power of Guam...."; (2) "[G]eneral supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of Guam"; and (3) "Responsib[ility] for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422.

The Organic Act's requirement that the Governor maintain ultimate control over executive functions was recently reaffirmed by the Guam Supreme Court in *In re Request of Governor Felix P. Camacho*, 2004 Guam 10. As the court held, the Legislature is free to vest an executive function in a pre-existing officer of its choosing (such as the Attorney General). *Id.* at ¶¶ 51-52. However, **any executive function must ultimately be subject to the Governor's "general supervision and control" as provide for in 48 U.S.C. § 1422**. *Id.* at ¶ 41 ("statutory provisions granting 'exclusive' purview over ... [executive agency] and 'final' submission and approval authority over all federal fund applications to ... [executive agency director], are in derogation of section 1422 of the Organic Act, which grants the Governor the power of general supervision and control over executive branch bureaus"). "[T]he Governor's power ... means that the Governor is vested with the overall power to manage, direct, or oversee such [executive] entities." (emphasis added). *Id.* at ¶ 38.[2]

---

[2] This principle also applies in the federal system. *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) ("To permit the execution of the laws to be vested in an officer answerable only to Congress would, in practical terms, reserve in Congress control over the execution of the laws").

Accordingly, under *In re Request of Governor Felix P. Camacho*, the ultimate control of any litigation involving him or any executive agency must remain with the Governor. *In re Request of Governor Felix P. Camacho*, 2004 Guam 10, ¶ 41; *see Govt. of Guam v. United States*, Dist. Ct. of Guam Civil Case No. 82-0001 (Memorandum Order Aug. 3, 1982) at 6 (representation of the government "is clearly an executive function"). It would be a very hollow executive power indeed if the Governor had the power to exercise his right to sign legislation (such as Bill 374) or to direct executive agencies to perform a task, yet the Attorney General could enter the court the next day to reverse this decision through a binding stipulation and order. *State ex rel. Amerland v. Hagan*, 175 N.W. 372, 374 (N.D. 1919) (attorney general's role representing officers and departments "does not mean that the attorney general, standing in the position of an attorney to a client, who happens to be an officer of the government, steps into the shoes of such client in wholly directing the defense and the legal steps to be taken in opposition or contrary to the wishes and demands of his client or the officer or department concerned.").[3]

This is why, as stated in the Governor's previously submitted Opposition, the vast majority of courts, including the Guam Supreme Court, hold that an attorney general must follow his clients' instructions. *Pangelinan v. Guitierrez*, Sup. Ct. Case No. CVA 02-003 (Order Feb. 10, 2003) at 1 (requiring client's consent before Attorney General could withdraw brief); *Motor Club of Iowa v. Dept. of Transp.*, 251 N.W.2d 510, 516 (Iowa 1977) ("To accord the attorney general the power he claims would leave all branches and agencies of government deprived of access to the court except by his grace and with his consent. In a most fundamental sense such departments and agencies would thereby exist and ultimately function only through him."); *Manchin v. Browning*, 296 S.E.2d 909, 921-22 (W. Va. 1982) ("state officers are entitled to have

---

[3] *Overruled on other grounds in Benson v. North Dakota Workmen's Compensation Bureau*, 283 N.W.2d 96 (N.D. 1979).

their lawful public policy decisions vindicated in the courts just as individuals are entitled to vindicate their personal rights at law. The courts must be open to all. When the Attorney General refuses to fulfill his duty, as required by law, to provide effective legal assistance to a state officer involved in litigation, such refusal would operate to deny due process."); *State ex rel. Allain v. Mississippi Public Serv. Comm'n,* 418 So.2d 779, 784 (Miss. 1982) (similar); *Frazier v. State by and through Pittman,* 504 So.2d 675, 692 n.17 (Miss. 1987) (similar); *Tice v. Dept't of Transp.,* 312 S.E.2d 241, 245 (N.C. App. 1984) ("[T]he legislature intended that when the Attorney General represents a State department...the traditional attorney-client relationship should exist."); *League of United Latin American Citizens, Council No. 4434 v. Clements,* 999 F.2d 831, 842-43 (5th Cir. 1993) (en banc) (similar); *Public Utility Comm'n of Texas v. Cofer,* 754 S.W.2d 121, 125 (Tex. 1988) ("We emphasize that when a statute confers a right upon the attorney general to represent an agency, it imposes a corollary duty, and the agency has every right to expect the same diligent and faithful representation as any other 'client.'"); *Santa Rita Mining Co. v. Dept. of Property Valuation,* 530 P.2d 360, 362 (Ariz. 1975) (similar); *State ex rel. Howard v. Oklahoma Corporation Commission,* 614 P.2d 45, 50 (Okl. 1980) (similar). This also is consistent with the Guam's Superior Court's decision (cited by the Legislature in its Opposition) that the Guam Airport Authority was free to seek counsel of its own choosing. *A.B. Wonpat Guam Int'l Airport Auth'y v. Moylan,* Guam Super. Ct. Case No. SP0055-03, Decision & Order, at 11-12 (May 9, 2003).

The Attorney General insists he should not have to be a "mouthpiece" for the Governor or the executive branch. (Motion to Strike at 6.) The Governor <u>agrees</u>. Simply because the Governor has a right to control the litigation involving his office and his administration based upon the Governor's control of executive functions does not mean that the Governor has an inherent right to insist that the Attorney General carry out this executive

function. The Attorney General is an attorney. The rules of ethics of the American legal system have long recognized that attorneys are not obligated to represent policies with which they fundamentally disagree. Guam Rule of Prof. Conduct 1.16(b)(4) (lawyer may withdraw if lawyer "fundamentally disagrees" with client's direction) (following ABA Model Rule 1.16).

Thus, when confronted with a situation where he disagrees with his client's instructions, the Attorney General need not be anyone's mouthpiece; he need only withdraw. *See Chun v. Bd. of Trustees*, 952 P.2d 1215, 1239 (Hawaii 1998) ("[T]he Attorney General did not afford the Board the loyal representation to which it was statutorily entitled. Indeed, the Attorney General acknowledges as much in 'the Board's' supplemental answering brief, in which she asserts 'that while the Attorney General represents state officers, her paramount duty is to protect the interests of the people of the State.' Having perceived herself to be in a conflict of interest with the Board, the Attorney General was ethically obligated to recommend retention of other counsel."); *Manchin*, 296 S.E.2d at 922 (attorney general must withdraw in favor of appointed counsel if a conflict exists). As one court explained, after an attorney general begins a representation, it is possible that a department's view might diverge from the attorney general's, but "[s]uch an eventuality should not give the attorney general the power to impose his will on the department. [Instead,] [i]t might well provide the basis for substitution of counsel with a tardy appearance by the attorney general in behalf of what he perceives to be the state interest." *Motor Club of Iowa*, 251 N.W. 2d at 516; *accord State ex rel. Allain,* 418 So.2d at 784 ("The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it.").

### III. THE ATTORNEY GENERAL'S CASES REGARDING AGENCIES AND OFFICERS ARE FAR OFF-POINT

The Attorney General purports to cite cases that suggest he can override a client's instructions. (Motion to Strike at 9-12.) None of these decisions involved an attorney general stipulating that duly enacted legislation was unconstitutional over the objections of a governor or legislature, or in any other manner that even approaches authorizing what he seeks to do in this case.

For example, in *Feeney v. Commonwealth*, 366 N.E. 2d 1262 (Mass. 1977) (cited in Motion to Strike at 8, 9, 11), the court permitted the attorney general to appeal a decision holding that legislation was unconstitutional, even though the state agency that was sued was willing to concede the issue at that stage. This decision is consistent with (1) the attorney general's role of defending the legislature, which had passed a resolution urging the attorney general to appeal in that case, *id.* at 1264, (2) the attorney general's duty to defend the constitutionality of duly enacted statutes, (3) the attorney general's right to advance the public interest through litigation, and (4) the courts' duty to decide the law with the benefit of adversarial briefing. This case in no way suggests that an attorney general is empowered to do just the opposite, *i.e.*, (1) refuse to defend the legislature's enactments, (2) stipulate to the unconstitutionality of duly enacted legislation, (3) prevent the legislative and executive branches from being heard in the courts, and (4) disable the courts from passing on the constitutionality of a law through his role as attorney for the state all of which is what the Attorney General seeks to do here.

Moreover, none of the Attorney General's cited cases involve an attorney general overriding the policy decisions of the governor or legislature where they are named parties, much less the situation here, where they are named as parties, *and* their interests in the litigation are aligned. *See, e.g., Secretary of Admin. and Fin. v. Attorney General*, 326 N.E.2d 334, 339 n.8

(Mass. 1975) ("where there is a policy disagreement between the Attorney General and the Governor or his designee, the appropriate procedure would be for the Attorney General to appoint a special assistant to represent the Governor's interests."); *Ex parte Weaver*, 570 So.2d 675, 684 (Ala. 1990) (regardless of attorney general's views, governor can always intervene to "express his views and take positions contrary to those argued by the attorney general").[4] And not a single one takes into account Guam's Organic Act and laws. The only case that does that is *Pangelinan v. Guitierrez*, Sup. Ct. Case No. CVA 02-003 (Order Feb. 10, 2003) at 1, where the Guam Supreme Court required the Attorney General to obey the instructions of his client in that case, the Governor.

## CONCLUSION

The Legislature's power to make the laws of Guam, the Governor's power to sign and execute the laws of Guam, and Courts' powers to review whether legislation is organic do not end at the doors of the Attorney General's office. The Legislature and Governor have the right to appear before the Court through legal representatives who will faithfully advocate their policies and positions. Accordingly, the Governor respectfully requests that the motion to strike the appearance and objections of independent counsel by the Governor and Legislature be denied.

Dated this 23rd day of November, 2004.

OFFICE OF THE GOVERNOR OF GUAM
CALVO AND CLARK, LLP
Attorneys at Law

By: _____
RODNEY J. JACOB

---

[4] *Terry v. Wilder*, 29 Va. Cir. 418 (1992) (cited in AG MPA at 8), was overruled by the Supreme Court of Virginia in *Wilder v. Atty. General*, 439 S.E.2d 398, 403 (Va. 1994), which held that the governor could constitutionally remove the attorney general from representing an officer or agency when he perceived a conflict.