DOOLEY ROBERTS & FOWLER LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No. (671) 646-1222
Facsimile No. (671) 646-1223

FILED
DISTRICT COURT OF GUAM

NOV 2 3 2004

MARY L. M. MORAN
CLERK OF COURT

(45)

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JAY MERRILL, on his own behalf and on behalf of all other similarly situated voters desirous of casting a vote in favor of Proposal A at a fair and legal election, <br><br> Plaintiffs, <br><br> vs. <br><br> The Guam Election Commission; Gerald A. Taitano, and in his capacity as the Executive Director of The Guam Election Commission, I Mina' Bente Siete Na Liheslaturan Guahan (The 27th Guam Legislature); Felix P. Camacho, in his official capacity as the Governor Of Guam. <br><br> Defendants. | CIVIL CASE NO. CIV04-00046 |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CLASS ACTION

ORIGINAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.  INTRODUCTION AND BACKGROUND ...........................................................................1

II. UNDISPUTED FACTS. ........................................................................................................2

    A.  The Election Laws In Effect Prior to Public Law 374 Were Not
        Complied With............................................................................. 2

    B.  The Election Laws In Effect After Public Law 374 Were Not
        Complied With............................................................................. 3

III. ARGUMENT.................................................................................... 4

    A.  The Right To Vote In A Fair And Legal Election Is A "Fundamental Right"
        Guaranteed By The United States Constitution .......................................... 5

    B.  Defendants Violated Plaintiff's Fundamental Right To Vote In A Fair
        And Legal Election...................................................................... 7

        1.  Defendants' Failure To Comply With Applicable Election Laws
            In Effect Both Before And After Public Law 374 Voids The
            Election Results On Proposal A.................................................. 7

        2.  The "Substantial Compliance" Doctrine Cannot Be Applied To
            Uphold The Results Of The Vote On Proposal A ............................... 8

        3.  Bill 374 Was Illegally Passed By The Legislature In Any Event..............12

    C.  42 U.S.C. § 1983 Is Available To Redress Voting Rights Violations..................14

    D.  The Court Should Order A Special Election............................................16

Case 1:04-cv-00046   Document 47   Filed 11/23/2004   Page 2 of 26

# TABLE OF AUTHORITIES

## Cases

American Grain Products Processing Institute v. Department of Public Health,
  392 Mass. 309, 331 (Mass., 1984) ................................................................................................18

Anderson v. Celebrezze,
  460 U.S. 780, 788, 103 S. Ct. 1564 (1983) ...................................................................................23

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
  357 F.3d 260 (2d Cir. 2004) ..........................................................................................................24

Billig v. Voges
  (1990) 223 Cal. App. 3d 962, 273 Cal. Rptr. 91 (1990) ................................................................15

Board of Education v. Elizabeth,
  100 A.2d 74513 N.J. 589, 593 (1953) ...........................................................................................18

Bonas v. Town of N. Smithfield,
  265 F.3d 69 (1st Cir. 2001)..............................................................................................................7

Bourgeois v. Peters,
  2004 U.S. App. LEXIS 21487, 7-8 (11th Cir. 2004) .....................................................................22

Boyd v. Jordan,
  1 Cal. 2d 468, 475 (Cal. 1934) ......................................................................................................13

Briscoe v. Kusper,
  435 F.2d 1046 (7th Cir. 1970) ..........................................................................................................7

Burdick v. Takushi,
  504 U.S. 428, 430-433, 112 S. Ct. 2059 (1992)..............................................................................7

Cal-Air Conditioning, Inc. v. Auburn Union School Dist.
  21 Cal. App. 4th 655, 667 (1993).............................................................................................. 9, 11

Charfauros v. Bd. of Elections,
  2001 U.S. App. LEXIS 15083 (9th Cir. 2001)................................................................................6

Chase v. Brooks,
  187 Cal. App. 3d 657, 664, 232 Cal. Rptr. 65 (1986) ...................................................................13

Creighton v. Reviczky,
  171 Cal. App. 3d 1225, 1230-1233, 217 Cal. Rptr. 834 (1985) ........................................ 10, 15, 19

Case 1:04-cv-00046    Document 47    Filed 11/23/2004    Page 3 of 26

D'Agostino v. Superior Court,
33 Cal. App. 4th 107, 117, *39 Cal. Rptr. 2d 112* (1995)............................................................. 11, 12

Daniels v. Tergeson
211 Cal. App. 3d 1204, 1207-1209, 259 Cal. Rptr. 879 (1989) ............................................. 11, 12

Dunn v. Blumstein,
405 U.S. 330, 336, 92 S. Ct. 995 (1972) ......................................................................................... 6

Eastlake v. Forest City,
426 U.S. 668 (1976) .......................................................................................................................23

Felder v. Casey,
487 U.S. 131, 108 S. Ct. 2302 (1988) ...........................................................................................19

Ferguson v. Morris,
197 Minn. 446, 450-453 (Minn. 1936)............................................................................................ 8

Griffin v. Burns, 570 F.2d 1065, 1074-1075 (1st Cir. 1978) ........................................................ 6, 24

Guam Soc'y of Obstetricians and Gynecologists v. Ada,
1992 U.S.App. LEXIS 13490 (9th Cir. 1992)................................................................................15

Harman v. Forssenius,
380 U.S. 528, 540, 85 S. Ct. 1177 (1965) ....................................................................................... 7

Harper v. Virginia State Bd. of Elections,
383 U.S. 663, 667, 86 S. Ct. 1079 (U.S. 1966) .............................................................................. 5

Hebard v. Bybee,
65 Cal. App. 4th 1331, 1339, 77 Cal. Rptr. 2d. 352 (1998)..........................................................14

Ibarra v. City of Carson,
214 Cal. App. 3d 90, 99, 262 Cal. Rptr. 485 (1989) .....................................................................14

Israel v. Town of Cave Creek,
993 P.2d 1114, 196 Ariz. 150 (1999)............................................................................................17

Jones v. Bates,
127 F.3d 839, 861 (9th Cir. 1997)................................................................................................... 8

Lane v. Wilson,
307 U.S. 268, 275, 59 S. Ct. 872 (1939) ........................................................................................ 7

Marks v. Stinson,
19 F.3d 873, 888-889 (3d Cir. 1994)..............................................................................................24

iv

Mervyn's v. Reyes,
    69 Cal. App. 4th 93, 81 Cal. Rptr. 2d 148 (1998) ...................................................... 10, 12, 14, 19

Monroe v. Pape,
    365 U.S. 167, 81 S. Ct. 473 (1961) ................................................................................. 20

Nelson v. Carlson,
    17 Cal. App. 4th 732, 738-740, 21 Cal. Rptr. 2d 485 (1993) ......................................... 15

Pangelinan v. Gutierrez,
    2004 Guam 16 ................................................................................................................. 25

Patsy v. Bd. of Regents, 457 U.S. 496, 102 S. Ct. 2557 (1982) ........................................ 19

Pestrak v. Ohio Election Commission,
    670 F.Supp. 1368 (S.D. Ohio 1987), aff'd in part, rev'd in part,
    926 F.2d 573, cert. denied 502 U.S. 1022 (1987) ......................................................... 23

Reynolds v. Sims,
    377 U.S. 533, 562, 84 S. Ct. 1362 (1964) ....................................................................... 6

Roe v. Wade,
    410 U.S. 113, 124-125, 93 S. Ct. 705 (1973) ................................................................ 22

Ruiz v. Sylva,
    102 Cal. App. 4th 199, 213, 125 Cal. Rptr.2d 351 (2002) ............................................ 14

San Francisco Forty-Niners v. Nishioka,
    75 Cal. App. 4th 637, 644-645, 89 Cal. Rptr.2d 388 (1999) ......................................... 13

Smith v. Allwright,
    321 U.S. 649, 664, 64 S. Ct. 757 (1944) ......................................................................... 7

Southern Pacific Transp. Co. v. St. Charles Parish Police Jury,
    569 F. Supp. 1174, 1178 (D. La. 1983) ......................................................................... 17

Storer v. Brown,
    415 U.S. 724, 730, 94 S. Ct. 1274 (1974) ..................................................................... 22

U.S. Term Limits, Inc. v. Thornton,
    514 U.S. 779, 829 115 S. Ct. 1842 (1995) ...................................................................... 7

Ury v. Santee,
    303 F. Supp. 119 (N.D. Ill. 1969) ......................................................................... 7, 19, 25

Wade v. Taitano,
   2002 Guam 16 ................................................................................................................... 9, 21

Weber v. Shelley,
   347 F.3d 1101, 1105 (9th Cir. 2003) .................................................................................5

Wesberry v. Sanders,
   376 U.S. 1, 17, 84 S. Ct. 526 (1964) ................................................................................5

Yick Wo v. Hopkins,
   118 U.S. 356, 370, 30 L. Ed. 220, 6 S. Ct. 1064 (1886) ...................................................6

## Statutes

2 G.C.A. § 2103 ..................................................................................................... 16, 17

3 G.C.A. § 17509 ..........................................................................................................7, 9

3 G.C.A. § §17511 .........................................................................................................7, 9

3 Sutherland, Statutory Construction (5th ed. 1992) .............................................................8

6 G.A.R. § 2112 ............................................................................................................7, 9

6 G.A.R. § 2114 ............................................................................................................7, 9

42 U.S.C. §1973 .............................................................................................................18

42 U.S.C. §1983 ..................................................................................................... 2, 14, 15

## Other Authorities

Public Law 374 ...................................................................................................... passim

Section 4052 of California's election code ..........................................................................9

Voting Rights Act of 1965 ..............................................................................................18

## Rules

Rule 56(c) of the Federal Rules of Civil Procedure ..............................................................4

vi

DOOLEY ROBERTS & FOWLER LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No. (671) 646-1222
Facsimile No. (671) 646-1223

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JAY MERRILL, on his own behalf and on behalf of all other similarly situated voters desirous of casting a vote in favor of Proposal A at a fair and legal election,<br><br>        Plaintiffs,<br><br>vs.<br><br>The Guam Election Commission; Gerald A. Taitano, and in his capacity as the Executive Director of The Guam Election Commission, I Mina' Bente Siete Na Liheslaturan Guahan (The 27th Guam Legislature); Felix P. Camacho, in his official capacity as the Governor Of Guam.<br><br>        Defendants. | CIVIL CASE NO. CIV04-00046<br><br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**CLASS ACTION** |

## I. INTRODUCTION AND BACKGROUND

This class action was originally filed in the Superior Court of Guam on October 25, 2004,

one week after a complaint seeking identical relief against the identical Defendants was filed in the

Superior Court on October 18, 2004 by Lou Aguon-Schulte. The Aguon-Schulte case is now

denominated District Court Civil Case No. CIV04-00045. Each complaint sought identical relief in

connection with the November 2, 2004 election on the Guam Casino Gaming Control Commission

Act ("Proposal A"). One day after this class action was filed in Superior Court, on Tuesday,

October 26, 2004, the Guam Attorney General's Office removed it to this Court along with the

Aguon-Schulte case. On Friday, October 29, 2004, this Court issued an order denying Plaintiff's

request for pre-election injunctive relief, allowing the election to go forward, but expressly guaranteeing Plaintiff's right to seek post-election relief.

The Court's October 29, 2004 Order obviously moots Plaintiff's request for pre-election injunctive relief. Therefore, on November 23, 2004, Plaintiff filed a first amended complaint to account for the mootness of the request for pre-election injunctive relief and to allege certain legislative and gubernatorial activity that took place between the filing of the original class action on the morning of October 25, 2004 and the Court's October 29, 2004 Order. This activity was the enactment of Bill 374 by Guam's Legislature in the late evening of Monday, October 25, 2004, and the Governor of Guam's decision to sign the bill into law on Wednesday, October 27, 2004, three (3) working days before the November 2, 2004 election. Declaration of Thomas L. Roberts ("Roberts Dec."), ¶5. These events were alluded to by the Court in its October 29, 2004 Order denying pre-election injunctive relief.

As matters now stand, then, this is a class action brought under 42 USC § 1983 for a declaratory judgment that the results of the November 2, 2004 election on Proposal A are constitutionally invalid, and for an order compelling a special election on Proposal A.

## II. UNDISPUTED FACTS.

### A. The Election Laws In Effect Prior to Public Law 374 Were Not Complied With.

The factual and legal allegations set forth in paragraphs 1 through 30, 33 through 40 and 44 through 53 of the amended complaint on file herein, which are incorporated herein by this reference, cannot reasonably be disputed. The election laws in effect prior to Public Law 374 were not complied with. In fact, this was the Guam Legislature's stated reason for passing Bill 374 in the first place, i.e., because of "the Guam Election Commission's failure to send out complete copies of the initiative entitled 'Proposal A' to all registered voters ...". Roberts Dec., ¶5. In any event, at his

2

Thursday, November 18, 2004 deposition, Guam Election Commission Executive Director Gerald Taitano freely admitted that neither he nor the Election Commission mailed copies of Proposal A to the voters before the November 2, 2004 election on Proposal A. Roberts Dec., ¶4. But this was not unexpected, since Mr. Taitano and the Election Commission's attorney freely admitted it before the election as well. Roberts Dec., ¶¶3, 4.

### B. The Election Laws In Effect After Public Law 374 Were Not Complied With.

The laws in effect before Bill 374 were enacted provide sufficient notice to the public to allow voters to cast intelligent votes on laws placed before them through the initiative process. Similarly, Bill 374 (Roberts Dec., ¶5) was intended to provide notice to the public on what they were supposed to be voting on with respect to Proposal A.[1] Under Section 1 of the Bill, "*I Liheslaturan Guahan* finds that due to the Guam Election Commission's failure to send out complete copies of the initiative entitled 'Proposal A' to all registered voters, *I Liheslaturan* wishes to make these documents publicly available at every village mayor's office" as well as other places. Roberts Dec., ¶5. Section 3(b) of the Bill provided that "complete copies of the Proposal shall be posted at all Village Mayor's offices ... prior to the General Election." Id. Finally, in Section 3(b) of Bill 374, the Legislature ordered the Election Commission to "immediately publish in a newspaper of general circulation the availability of copies of the measure" at various locations. Id.

At his Thursday, November 18, 2004 deposition, Election Commission Executive Director Gerald Taitano admitted that neither he nor the Election Commission published in a newspaper of general (or any other) circulation the availability of copies of Proposal A at any particular location. Roberts Dec., ¶7; see also, Declaration of Christina Martinez. Moreover, at least three village Mayor's offices did not receive copies of Proposal A from either the Election Commission or the

3

Legislature prior to the election. See, Declaration of Concepcion Duenas, Mayor of Tamuning-Tumon, Declaration of Peter S. Aguon, Mayor of Barrigada, and Declaration of Nonito Blas, Mayor of Barrigada. Nor were copies of Proposal A available to voters or otherwise posted at any of these mayors' offices before or during the election. Id. (Plaintiff is informed and believes that they were not actually posted at any mayor's office, although Plaintiff does not need to prove this to prevail on this motion, as explained below). The Mayor of Agana Heights, Paul McDonald, received a copy of Proposal A on the Friday before the Tuesday, November 2, 2004 election, but in the ordinary course of business he did not open the envelope until after the election. Copies of Proposal A were therefore neither posted nor available at the Agana Heights Mayor's Office before or during the election. See, Declaration of Paul McDonald.

## III. ARGUMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." By this motion, Plaintiff asks the Court to rule as a matter of law that the Election Commission did not comply with the applicable election statutes in the general election on Proposal A on November 2, 2004, and that the results of the election on Proposal are therefore constitutionally invalid. Moreover, as explained in some detail below, the Defendants have demonstrated they are unwilling or incapable of holding a statutorily compliant election on Proposal A on three different occasions, once in 2002 and twice this year. Since Defendants' conduct is demonstrably "capable of repetition, yet evading review",

---

[1] Section 4 of Public Law 374 does not affect the current analysis. Section 4 only addresses defects in the ballot pamphlets. The point in this section of the motion for summary judgment is that the Election Commission failed to comply with the mandatory notice requirements of Section 3(b) of Public Law 374.

4

and since the right to vote is a fundamental right under the federal constitution, the court also enter a summary judgment compelling Defendants to hold a special election on Proposal A as soon as practicable.

## A. The Right To Vote In A Fair And Legal Election Is A Fundamental Right Guaranteed by the United States Constitution.

"It is a well established principle of constitutional law that the right to vote is fundamental, as it is preservative of all other rights." Weber v. Shelley, 347 F.3d 1101, 1105 (9th Cir. 2003). Since the right to vote "in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 667, 86 S. Ct. 1079 (U.S. 1966). The U.S. Supreme Court has also observed that "no right is more precious in a free country than that of having a voice in the election of those who make the laws ... Other rights ... are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17, 84 S. Ct. 526 (1964).

In a recent Ninth Circuit case arising from Saipan, the court reaffirmed a long line of federal decisions holding that the right to vote is a "fundamental political right." Charfauros v. Bd. of Elections, 2001 U.S. App. LEXIS 15083 (9th Cir. 2001), citing Yick Wo v. Hopkins, 118 U.S. 356, 370, 30 L. Ed. 220, 6 S. Ct. 1064 (1886) and Reynolds v. Sims, 377 U.S. 533, 562, 84 S. Ct. 1362 (1964). As the Charfauros court noted, the right to vote is not merely a guarantee in the equal protection setting – it is a fundamental right in and of itself. See also, Dunn v. Blumstein, 405 U.S. 330, 336, 92 S. Ct. 995 (1972), and Griffin v. Burns, 570 F.2d 1065, 1074-1075 (1st Cir. 1978) (upholding federal district court's decision to order a new state election where the people's right to vote had been infringed upon). Under Griffin, "(t)he right to vote in local elections (including referenda elections) is constitutionally protected." 570 F.2d at 1075.

5

The Constitution "nullifies sophisticated as well as simple-minded modes" of infringing on constitutional protections. Lane v. Wilson, 307 U.S. 268, 275, 59 S. Ct. 872 (1939); U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 829 115 S. Ct. 1842 (1995). And, the United Supreme Court has often held that "constitutional rights would be of little value" if they could be "indirectly denied." Harman v. Forssenius, 380 U.S. 528, 540, 85 S. Ct. 1177 (1965), quoting Smith v. Allwright, 321 U.S. 649, 664, 64 S. Ct. 757 (1944).

Courts do not hesitate very much in throwing out election results on constitutional grounds when local officials have tinkered with election laws or tinkered with the election itself. See, e.g., Ury v. Santee, 303 F. Supp. 119 (N.D. Ill. 1969) (Throwing out "confused election" results); Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970) (Ordering a local board "establish and publish [and follow] meaningful guidelines" for the nomination of candidates); Bonas v. Town of N. Smithfield, 265 F.3d 69 (1st Cir. 2001); Burdick v. Takushi, 504 U.S. 428, 430-433, 112 S. Ct. 2059 (1992) (holding that "(c)ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections" and that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."); Jones v. Bates, 127 F.3d 839, 861 (9th Cir. 1997) (local government has "a constitutional obligation to ensure the fairness of its elections, including those involving the initiative process"); Ferguson v. Morris, 197 Minn. 446, 450-453 (Minn. 1936) (Invalidating referendum results where Election Commission failed to print the text of the referendum in the newspaper, as required by the Minnesota statutes; "Long ordinances ... cannot well be examined by the voters in the election booths, even if printed on the ballots, as they were not in this instance, nor any adequate summary of them ... It will not do to say that the voters should go to the offices of the city where the ordinances are on file to examine them ...").

6

**B. Defendants Violated Plaintiff's Fundamental Right To Vote In A Fair and Legal Election.**

### 1. Defendants' Failure To Comply With Applicable Election Laws In Effect Both Before And After Public Law 374 Voids The Election Results On Proposal A.

As has already been established in the "Undisputed Facts" section of this memorandum, Sections II.A. and II.B., *ante*, pp. 2-4, it is undisputed that Defendants violated the election laws in effect both before and after Public Law 374 was passed. Two years ago, the last time the Executive Director of the Election Commission was sued, the Guam Supreme Court in <u>Wade v. Taitano</u>, 2002 Guam 16, held as follows:

> We begin our analysis by outlining two fundamental principles in statutory and regulatory constructions. The first principle is that "[a]n agency does not have the authority to ignore its own rules." … Regulations have the same legal effect as statutes … and, "[w]hen an agency has the authority to adopt rules and does so, it must follow them." … Therefore, an agency's procedural rules "are binding upon the agency which enacts them as well as upon the public." … "Regulations governing procedure are just as binding upon both the agency which enacts them and the public, and the agency does not, as a general rule, have the discretion to waive, suspend, or disregard, in a particular case, a validly adopted rule so long as such rule remains in force." (internal quotations and citations omitted).

<u>Wade v. Taitano</u>, 2002 Guam 16 at ¶¶ 7-8

Under <u>Wade v. Taitano</u>, and under the cases cited elsewhere in this memorandum, the Proposal A elections results are void. The Election Commission failed to follow the applicable statutes and regulations before and after Public Law 374. Before Public Law 374, it failed to mail copies of the text of Proposal A to the voters, as expressly required by 3 G.C.A. §§ 17509 and 17511 and by 6 G.A.R. §§ 2112 and 2114. After Public Law 374, it failed to mail copies of the text of Proposal A to at least three village Mayors' Offices for posting, and it failed to publish a notice of the availability of copies of Proposal A at the mayors' offices in a newspaper of general (or any other) circulation prior to the election, as expressly required by Public Law 374. People cannot be expected to cast an intelligent vote on a law the government did not give

7

them the opportunity to read. This is particularly true when the law proposed to be enacted is lengthy and comprehensive and when it proposes to create an entire autonomous agency of the Government Guam. See generally, Roberts Dec., ¶1.[2]

Because the Election Commission failed to comply with applicable election notice statutes before and after Public Law 374 was passed by the Legislature on October 25, 2004 and signed by the Governor on October 27, 2004, the Proposal A election results are invalid. Local government officials' failure to comply with all provisions of election laws designed to educate voters about what they are voting on invalidates the results of an initiative election. Mervyn's v. Reyes, 69 Cal. App. 4th 93, 81 Cal. Rptr. 2d 148 (1998); Creighton v. Reviczky, 171 Cal. App. 3d 1225, 1230-1233, 217 Cal. Rptr. 834 (1985).

### 2. The "Substantial Compliance" Doctrine Cannot Be Applied To Uphold The Results Of The Vote On Proposal A.

The doctrine of "substantial compliance" can be often be applied in appropriate cases to avoid unfair statutory rigidity. 3 Sutherland, Statutory Construction (5th ed. 1992), § 57.26, p. 67). The question of whether the doctrine of substantial compliance applies to a given statute requires judicial interpretation of the statute. 3 Sutherland, Statutory Construction (5th ed. 1992) § 57.01, p. 3; Cal-Air Conditioning, Inc. v. Auburn Union School Dist. 21 Cal. App. 4th 655, 667 (1993). The courts must first determine whether the statute in question is mandatory or directory. D'Agostino v.

---

[2] In their papers filed in the local court, The Director and the Election Commission argued that the full text of the initiative did not need to be mailed to the voters, attempting to draw a distinction between the word "initiative" and the word "measure." This argument is directly contrary to their contemporaneous public statements before the election, and directly contrary to public statements made by their attorney before the election, as well. Roberts Dec., ¶¶ 3, 4. Moreover, at his deposition on Thursday, November 18, 2004, the Director admitted that on July 29, 2004, the attorney for the Election Commission had warned him that Guam law required that the complete text of Proposal A needed to be mailed to every registered voter on Guam prior to the election. Roberts Dec., ¶, 4. Most importantly, the argument is simply wrong. See, e.g., Mervyn's v. Reyes, 69 Cal. App. 4th 93, 100 (1998), supra ("Due to the overlapping definitions, use of words and context of the code sections, we do not perceive any significance in the use of the words 'measure' or 'ordinance' in the full text requirement provisions of Elections Code").

Superior Court, 33 Cal. App. 4th 107, 117, 39 Cal. Rptr. 2d 112 (1995); Daniels v. Tergeson 211 Cal. App. 3d 1204, 1207-1209, 259 Cal. Rptr. 879 (1989); 3 Sutherland, Statutory Construction, supra, § 57.01, p. 3.). In evaluating whether a statute is to be accorded mandatory or directory effect, courts look to the statute's purpose or function. Cal-Air Conditioning, Inc. v. Auburn Union School Dist., supra, 21 Cal. App. 4th at p. 673. If the statute is designed to promote the overall statutory design, it is mandatory, and less than full compliance is not acceptable. Id.

In the election context, the rule is the same. "(W)hether a provision is mandatory or directory depends on the character of the act prescribed. If [the provision] goes to the substance or necessarily affects the merits or results of an election, the provision is mandatory. Provisions relating to the time and place of holding elections, the qualifications of voters and candidates and other matters of that character are mandatory." Daniels v. Tergeson, supra, 211 Cal. App. 3d at p. 1208; D'Agostino v. Superior Court, supra, 33 Cal. App. 4th at p. 117.

Section 4052 of California's election code is similar to Guam law. It provides that referendum petitions must contain "the text of the ordinance or the portion of the ordinance which is the subject of the referendum." In California, an "unbroken line of initiative and referendum cases covering the period 1925 to 1998" has held that when Section 4052 says the "text" of a referendum must be included in the petition, it means just that. Mervyn's v. Reyes, 69 Cal. App. 4th 93, 99-105, 81 Cal. Rptr. 148 (1998). Like section 4052 of California's election code, 3 G.C.A. §17509 and §17511 and 6 G.A.R. §§ 2112 and 2114 as well as the notice provisions of Public Law 374 are obviously intended to provide notice to the public on what they are supposed to be voting for or against during an initiative election. See, e.g., Mervyn's v. Reyes, supra ("The purpose of the full text requirement is to provide sufficient information so that registered voters can intelligently evaluate whether to sign the initiative petition and to avoid confusion.").

9

The "substantial compliance" doctrine is inapplicable to the Election Commission's failure to follow the law with respect to providing notice to the voters about what they were supposed to be voting on in the November 2, 2004 election. Notice provisions of election laws are "mandatory", not "directory". "Numerous decisions have supported the invalidation of initiative measures for Elections Code violations resulting in voter confusion or misinformation." San Francisco Forty-Niners v. Nishioka, 75 Cal. App. 4th 637, 644-645, 89 Cal. Rptr.2d 388 (1999). "No court has applied the doctrine of substantial compliance to save a petition that provides confusing or misleading information." Id. These courts include Boyd v. Jordan, 1 Cal. 2d 468, 475 (Cal. 1934) ("No elector can intelligently exercise his rights under the initiative law without a knowledge of the petition which he is asked to sign ... Like all statutes of a similar nature, the section of the code here involved is mandatory in its nature."); Chase v. Brooks, 187 Cal. App. 3d 657, 664, 232 Cal. Rptr. 65 (1986) ("the referendum petitions here did not comply with the specific provisions of section 4052 ... because they fail to include the full text of Exhibit 'A' to the ordinance setting forth the legal description of the real property affected. There has not been substantial compliance with the requirements of section 4052 because the petitions fail to apprise prospective signers of the precise location of affected real property to permit them to informatively evaluate whether they should sign the referendum petition"); Ruiz v. Sylva, 102 Cal. App. 4th 199, 213, 125 Cal. Rptr.2d 351 (2002) ("The failure to provide information or the communication of misinformation threaten the proper operation and the integrity of the election process."); Ibarra v. City of Carson, 214 Cal. App. 3d 90, 99, 262 Cal. Rptr. 485 (1989) ("Where the purpose of the statutory requirement is to give information to the public to assist the voters in deciding whether to sign or oppose the petition, the substantial compliance argument is often rejected and strict compliance held essential."); Mervyn's v. Reyes, 69 Cal. App. 4th 93, 99-105, 81 Cal. Rptr. 2d 148 (1998) ("For all the reasons given in the

above cited unbroken line of initiative and referendum cases covering the period 1925 to 1998, we find that the petition in the instant case did not substantially comply with Elections Code section 9201. The approximately 17 pages of general plan sections omitted from the petition were the key element of the initiative. ...it is imperative that persons evaluating whether to sign the petition be advised which laws are being challenged and which will remain the same."); Hebard v. Bybee, 65 Cal. App. 4th 1331, 1339, 77 Cal. Rptr. 2d. 352 (1998) (no substantial compliance where title of ordinance in referendum petition was inaccurate; "In considering whether a petition substantially complies with a statute, courts look to the reason for the statutory requirement. 'A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition.' ... Consequently, '[s]ubstantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute.' "); Creighton v. Reviczky, 171 Cal. App. 3d 1225, 1232, 217 Cal. Rptr. 834 (1985) ("state and county initiative or referendum petitions must contain the text of the proposed or protested measure ... by not including the text of the affected ordinance, the petition 'failed to provide the electors with the information which they needed in order to exercise intelligently their rights under the referendum law.'"); Billig v. Voges (1990) 223 Cal. App. 3d 962, 273 Cal. Rptr. 91 (1990) (zoning referendum failed to substantially comply with the statute because the petition did not contain the 22-page zoning ordinance); Nelson v. Carlson, 17 Cal. App. 4th 732, 738-740, 21 Cal. Rptr. 2d 485 (1993) ("The failure to attach to the referendum petition the exhibit containing the plan presents a fatal defect in this case. The resolution's focus was on the adoption of the plan and that document was incorporated into it. Without the plan individuals reviewing the petition had no way of informatively evaluating whether to sign it.")[3]

---

[3] The petition in Nelson was several hundred pages long and two and one half pages thick. The court found no exception for "bulky" ordinances.

11

As demonstrated, no "substantial compliance" argument will work to save the results of the vote on Proposal A. The particular parts of the election statutes violated both before and after the passage of Public Law 374 were solely concerned with informing the voters on exactly what it was they were supposed to be voting on, i.e., they were "notice" statutes. Where notice statutes are violated in an election, particularly in an election on an initiative measure placed before the people by the people themselves, actual compliance with the election statutes is required, not substantial compliance. The results of the November 2, 2004 vote on Proposal A are void, and the Court should so rule on this motion for summary judgment.

### 3. Bill 374 Was Illegally Passed By The Legislature In Any Event.

On October 25, 2004, Guam's legislature passed Bill 374. Roberts Dec., ¶5. It was signed into law by Guam's Governor on October 27, 2004. Roberts Dec., ¶5. There was no public hearing on the bill and no members of the public were given the opportunity to comment on the bill. Roberts Dec., ¶6.

Under Guam law, specifically 2 G.C.A. § 2103, "(n)o bill may be passed by the Legislature unless it has received a public hearing". The only statutory exception to this law is when the presiding officer of the Legislature "certifies that emergency conditions exist, involving danger to the public health or safety," in which case, "the requirement for a public hearing may be waived". In refusing to hold a public hearing as required by 2 G.C.A. § 2103, the Legislature did not certify that there was an emergency involving danger to the "public health or safety." Instead, it certified that there was an emergency involving danger to the "public welfare." Roberts Dec., ¶5, 6; amended complaint, Exhibit 4[4]. This certification was legally insufficient under the statute to waive

---

[4] "I, vicente (ben) pangelinan (sic), Speaker of *I Mina' Bente Siete Na Liheslaturan Guahan*, hereby certify, in conformance with Title 2 Guam Code Annotated §2103, *Public Hearings Mandatory*, as amended, that an emergency condition exists involving danger to the public welfare of the people and therefore waive the statutory requirements for a public hearing on Bill Number 374 ...". Amended complaint, Exhibit 4.

the mandatory public hearing requirement under 2 G.C.A. § 2103. Bill 374 was illegally passed by the Legislature.

Moreover, even assuming the Legislature had managed to accomplish the difficult task of using the words "public health or safety" when it certified an "emergency" in order to waive a public hearing on Bill 374, the Bill would still have been illegally passed. It is undisputed that there was not, in fact, an "emergency" involving "danger" to the "public health or safety." Instead, Bill 374 was thought necessary by the Legislature only because the Election Commission had violated existing statutory notice requirements by failing to mail out complete copies of Proposal A to the voters, or, in the Legislature's own words, because of "the Guam Election Commission's failure to send out complete copies of the initiative entitled 'Proposal A' to all registered voters". Roberts Dec., ¶5. Laws passed without a statutorily-required public hearing under a bogus "emergency" declaration are void. See, e.g., Israel v. Town of Cave Creek, 993 P.2d 1114, 196 Ariz. 150 (1999) (Town could not circumvent Arizona statute requiring public hearing by falsely declaring "emergency" conditions requiring immediate annexation); Southern Pacific Transp. Co. v. St. Charles Parish Police Jury, 569 F. Supp. 1174, 1178 (D. La. 1983) ("Repeal of an ordinance limiting the speed of trains to 25 mph can hardly be interpreted as a public emergency. No sudden or unexpected event took place which created a temporarily dangerous condition which necessitated immediate action. The Parish Council cannot defeat the provisions of its charter requiring notice and a public hearing by declaring an emergency where none exists."); Board of Education v. Elizabeth, 100 A.2d 74513 N.J. 589, 593 (1953) ("the true facts of the case do not disclose an emergency in the sense in which the word is customarily used", striking down school board's emergency appropriation passed without public hearing); American Grain Products Processing Institute v. Department of Public Health, 392 Mass. 309, 331 (Mass., 1984) (dissenting opinion) ("By using the

13

'emergency' mechanism to avoid the public hearing requirements the department has effectively suppressed the expression of any opinion by interested members of the public.")[5]

Public Law 374 is illegal. The Legislature did not legally waive the statutorily-required public hearing, not could it legally have done so in any event. Therefore, the laws in effect before Bill 374 was enacted were still the law on November 2, 2004. Those laws were not followed, as established above. And as also established above, any failure to include comply with all provisions of election laws designed to provide notice to the voting public on what they are supposed to be voting on will invalidate the results of an initiative election. Mervyn's v. Reyes, 69 Cal. App. 4th 93, 81 Cal. Rptr. 2d 148 (1998), supra; Creighton v. Reviczky, 171 Cal. App. 3d 1225, 1230-1233, 217 Cal. Rptr. 834 (1985), supra.

### C. 42 U.S.C. § 1983 Is Available To Redress Voting Rights Violations

This class action was originally filed in the Superior Court of Guam because Guam's courts have concurrent jurisdiction with the federal courts to enjoin civil rights violations under 42 U.S.C. § 1983.[6] Patsy v. Bd. of Regents, 457 U.S. 496, 102 S. Ct. 2557 (1982); Felder v. Casey, 487 U.S. 131, 108 S. Ct. 2302 (1988).

---

[5] Nor does it appear that the Legislature was empowered to enact such a retroactive statute. Under Guam law, namely 2 G.C.A. § 2105, "(t)he repeal or amendment of any statute shall not affect ... any act done or right accruing or accrued or any action or proceeding had or commenced prior to such repeal or amendment ...". Before Bill 374 was passed, voters had a right to have the actual law mailed to their houses, where it could be reviewed and contemplated in private and at their leisure. After Bill 374 passed, only five working days before the election, they had to get in their cars, drive to their village mayor's office, and hope there was no one in front of them also there to read the Act, assuming their village Mayor even had a copy of it. Moreover, voting had already started under the old laws when the Legislature purported to pass the new laws. All of these things are why "there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the hours immediately preceding the election." Summit County Democratic Cent. & Exec. Comm. v. Blackwell, 2004 U.S. App. LEXIS 22677 (6th Cir. 2004). Finally, the Legislature's decision to create one classification of notice rules for Proposal A and separate classification of notice rules for all other initiatives on Guam is intuitively unfair and unconstitutional. Plaintiff reserves his right to address this issue in his reply brief, if what has been said so far is not enough.

[6] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

It is not necessary in a 42 U.S.C. § 1983 lawsuit to allege or prove that the defendants intended to deprive anyone of their constitutional rights or that they acted willfully, purposefully or in pursuance of a conspiracy. It is sufficient to establish that the deprivation of constitutional rights or privileges "was the natural consequence of the actions of defendants acting under color of law, irrespective of whether such consequence was intended." Ury v. Santee, 303 F. Supp. 119, 126 (D. Ill., 1969), citing Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473 (1961). In this particular instance, the Director and the Election Commission have freely and publicly admitted that they knew what they were legally required to do and that they knowingly decided not to follow the law.[7] As such, the federal civil rights statute, 42 U.S.C. §1983 has plainly and undeniably been violated. When election officials conduct an election, they are acting "under color of state law" within the meaning of 42 U.S.C. §1983. Ury v. Santee, supra, at p. 126. The right to vote is one of the "rights, privileges, or immunities secured by the Constitution", the deprivation of which gives rise to a right to sue under 42 U.S.C. §1983. Injunctive relief, which would include an order compelling a special election, is freely available against government officials under 42 U.S.C. §1983. Guam Soc'y of Obstetricians and Gynecologists v. Ada, 1992 U.S.App. LEXIS 13490 (9th Cir. 1992).[8]

---

[7] In fact, when the Director decided not to follow the law in effect before the enactment of Public Law 374, by not mailing copies of Proposal A to the voters, he may have even committed a crime punishable by up to one (1) year in prison under Guam law. 3 G.C.A. §14103 of the Guam Elections Code is entitled "Fraud." The statute provides: "Every person charged with the performance of any duty under the provisions of any law of this Territory relating to elections, who, in his official capacity, knowingly acts in contravention or violation of any of the provisions of such laws, is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." Similarly, 3 G.C.A. §14102 provides that "(e)very person who willfully violates any of the provisions of laws of Guam relating to any election is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." Under Guam law, a misdemeanor is punishable by imprisonment for up to one (1) year. See, 9 G.C.A. § 80.34. And, of course, if Public Law 374 had been legally adopted (which it wasn't), the Director may have committed yet another crime by failing to publish the availability of copies of Proposal A at the village mayors' offices in a newspaper of general circulation before the election.

[8] Guam's Government Claims Act cannot be used to bar Plaintiff's requested relief, because local government claims acts are pre-empted by 42 U.S.C. § 1983. Felder v. Casey, 487 U.S. 131, 137-138, 108 S. Ct. 2302, 2306-2307 (1988). For the same reason, "exhaustion of administrative remedy" arguments are unavailable to a §1983 defendant. Porter v.

15

### D. The Court Should Order A Special Election

Two years ago, the Director and the Elections Commissioner blocked "Territorial Gaming Act" from being placed on the ballot by refusing to certify a remarkable 2,157 signatures as valid. See, Wade v. Taitano, 2002 Guam 16. As for Proposal A, the same Proposal A that was on the November 2, 2004 general election ballot, it too was legally qualified to be placed on the ballot two years ago. Roberts Dec., ¶6. Instead, the Election Commission's Board of Directors voted to delay its placement on the ballot until the 2004 election. In 2004, the Director and the Election Commission again decided to refuse to follow what they knew the law to be, thereby frustrating the will of the people once again.

The peoples' right to vote in a fair and legal election on Proposal A was taken from them by the Director and the Guam Election Commission in 2002. It has now been taken from them in 2004. No one can guarantee Plaintiff or the voters of Guam that their fundamental right to vote will not once again be taken away from them in 2006, and again in 2008, and continuously after that. What has happened have here is demonstrably "capable of repetition, yet evading review," in the famous words of the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 124-125, 93 S. Ct. 705 (1973); see also, Bourgeois v. Peters, 2004 U.S. App. LEXIS 21487, 7-8 (11th Cir. 2004) (when constitutional rights are being trampled upon in "a situation that is 'capable of repetition, yet evading review'", the courts will step in).

---

Nussle, 534 U.S. 516, 523, 122 S. Ct. 983, 987 (2002); Patsy v. Bd. of Regents, 457 U.S. 496, 506-507, 102 S. Ct. 2557. 2562-2563 (1982). In fact, there are no potential local defenses in this case. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law." Martinez v. California, 444 U.S. 277, 284, 100 S. Ct. 553, 558 (1980). Finally, Guam's territorial status is no bar to §1983 actions seeking declaratory or prospective, non-monetary injunctive relief, as the Ninth Circuit recently made clear in the Guam abortion statute litigation, Guam Soc'y of Obstetricians & Gynecologists v. Ada, 1992 U.S. App. LEXIS 13490 (9th Cir. 1992) ("We hold that [then-Governor Ada] is a 'person' when sued in his official capacity for prospective relief ... a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ... We can see no reason why the same distinction between injunctive and damages actions against officials should not apply to a territory.").

It is no use to say "yes, but next time the Director and the Election Commission will be under a Court Order to follow the law." By the Director's own admission, he knew what the law required this time. His own legal counsel had advised him of what he needed to do to comply with Guam law, including mailing the complete text of Proposal A to the voters. The Director decided, in his official capacity as the Executive Director of the Guam Elections Commission, not to follow that law. As mentioned, this may even have been a crime under Guam law. Arguably given a second chance to comply with the law by the Legislature when it passed Bill 374, the Election Commission and the Director came up short again.

Obviously, the compulsion of law was no incentive to local government officials in this election. There is no guarantee that the compulsion of law will be any incentive for them in 2006. The only possible constitutionally adequate remedy in this case is a court ordered and regulated special election untainted by constitutional shenanigans. See, Storer v. Brown, 415 U.S. 724, 730, 94 S. Ct. 1274 (1974) ("as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."); Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S. Ct. 1564 (1983) ("there must be a substantial regulation of elections if they are to be fair and honest").

The courts are extremely protective of initiatives and referenda, since they represent the direct will of the people. The Supreme Court of the United States, in reviewing an initiative challenged on equal protection grounds, has written that "under our constitutional assumptions, all power derives from the people who can delegate it to representative instruments which they create. In establishing legislative bodies, the people can reserve to themselves the power to deal directly with matters which might otherwise be assigned to the legislature." Eastlake v. Forest City, 426 U.S. 668 (1976). This favorable judicial predisposition toward initiatives allows the courts to

fashion appropriate equitable remedies, including a court-ordered special election. See, Pestrak v. Ohio Election Commission, 670 F.Supp. 1368 (S.D. Ohio 1987), aff'd in part, rev'd in part, 926 F.2d 573, cert. denied 502 U.S. 1022 (1987).[9]

Courts have ordered that special elections take place in a variety of situations involving a deprivation of fundamental voting rights, even in the absence of express statutory or constitutional authority for such special elections. In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 357 F.3d 260 (2d Cir. 2004), the Second Circuit reversed an order of the district court to the extent it refused to order special elections in a case involving a redistricting plan found to violate the Voting Rights Act of 1965, 42 U.S.C. §1973, and remanded the case for further proceedings with the instruction that a special election be held.

In Griffin, supra, a civil rights class action was commenced by absentee voters alleging that the failure to count their ballots constituted a violation of the due process clause of the Fourteenth Amendment. The district court found such a violation, stressing that the plaintiffs had followed the instructions of the officials charged with running the election, and ordered a special primary election. The Court of Appeals affirmed and ordered a special election, observing that the "right to vote remains, at bottom, a federally protected right. If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order." Griffin, supra, 570 F.2d at 1077, 1078; see also, Marks v. Stinson, 19 F.3d 873, 888-889 (3d Cir. 1994) (authorizing the judicial compulsion of a special election where constitutional right to vote impaired).

---

[9] In Pestrak, the decided not to order a new election only because the facts of the case were "not of the egregious nature approximating criminal behavior that would necessitate such a remedy." 670 F. Supp. at 1368. Here, because of the Director's public statements and the applicable provisions of Guam's election code and criminal laws, the situation egregiously approximates criminal behavior and warrants a special election.

18

In sum, the court has the authority to order a special election to protect the people's right to vote, remembering, as the Guam Supreme Court recently observed, that it "need not be restricted by the issues or theories advanced where the statutory mandates are clear." Pangelinan v. Gutierrez, 2004 Guam 16. Under the circumstances of this case, Plaintiff suggests that any other decision would be constitutionally insufficient.

Finally, it is true that a special election will cost money. The Defendants in this lawsuit and the opponents of Proposal A may maintain that Guam does not have the money to hold a special election. But that is not a constitutionally recognized excuse. It is the same excuse, for example, used by Southern states in the mainland in the early 1960's when they were being ordered to desegregate by federal courts. It did not work there, and it should not work here. The federal courts essentially told state opponents of desegregation that since they caused the constitutional violations in the first place, they needed to find the way to come up with the money to fix the problem. This court should be prepared to send the same message in this case. The Defendants caused this problem, and the Defendants need to find the money to fix it. Constitutional concerns almost always trump financial concerns. As in Ury v. Santee, 303 F. Supp. 119, 127 (D. Ill., 1969), "(t)he injury suffered by plaintiffs and other citizens similarly situated" in having their right to vote denied "would far outweigh the cost of conducting a fair, proper and valid election."

The special election Plaintiff requests should include, at a minimum, the following protections:

1.  That a special election be held on Proposal A on a date certain not more than sixty (60) days from the date of the court's order;

2.  That within twenty (20) days of the court's order, which will be forty (40) days before the election, the Election Commissioner and the Director appear before the court to affirmatively demonstrate their readiness, willingness, and ability to meet all Guam election laws and rules applicable to special elections and to the people's right to initiative, specifically with regard to Proposal A.

19

3. That within twenty five (25) days after the court's order, which will be thirty five (35) days prior to the special election, the Election Commission and the Director appear before this court to prove to the court's satisfaction that they have in fact complied with all Guam election laws and rules applicable to special elections and to the people's right to initiative, specifically with regard to Proposal A.

Respectfully submitted this 23rd day of November, 2004.

DOOLEY ROBERTS & FOWLER LLP

By: _____
**THOMAS L. ROBERTS**
Attorneys for Plaintiffs

F#C325  D#C325 –Summary Judgment Memo of P & A

20