

**Douglas B. Moylan**
Attorney General of Guam
Robert M. Weinberg
Assistant Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)



# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | | |
|---|---|---|
| LOURDES P. AGUON-SCHULTE, | ) | Civil Case No. 04-00046 |
| Plaintiff, | ) | |
| vs. | ) | |
| THE GUAM ELECTION COMMISSION, et al. | ) | **ATTORNEY GENERAL'S REPLY TO THE GOVERNOR'S "SUPPLEMENTAL OPPOSITION TO MOTION TO STRIKE"** |
| Defendants. | ) | |
| JAY MERRILL, etc., et al. | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| THE GUAM ELECTION COMMISSION, et al. | ) | |
| Defendants. | ) | |

The Attorney General respectfully replies to the Governor's "Supplemental Opposition to Motion to Strike" as follows:

## Introduction

This case was removed from the Superior Court of Guam to this Court on October 26, 2004. The Governor's "Supplemental Opposition To Motion To Strike," which incorporates its original "Opposition to Motion to Strike," asserts that the Attorney General, who is the "Chief Legal Officer of the Government of Guam," 48 U.S.C. § 1421g(d)(1), does not represent the Governor in this matter. The Governor is in error.

## Reply To The Governor's "Supplemental Opposition To Motion To Strike"

The Governor's Opposition to Motion to Strike evidences a profound misunderstanding of the role of the Attorney General in representing the Government of Guam, and the Executive, and Judicial and Legislative Branches which comprise it. The Attorney General will seek to avoid repeating arguments presented in his original Motion to Strike. However, the essence of the Governor's arguments is that the Attorney General must merely follow the dictates of his "client," the Governor, and if he does not, the Governor must be allowed to represent himself through counsel of his own choosing. That is not the law.

In *Wade v. Mississippi Cooperative Extension Service*, 392 F.Supp.229, 234 (N.D. Miss. 1975) the U.S. District Court for the Northern District of Mississippi granted a motion to strike any references in briefs submitted by private counsel purportedly filed on behalf of members of a government board in their official capacities. The Court held, "it is easily perceptible that even if the foregoing statute purports to give [a party] authority to retain private legal counsel as professional advisors, no statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern." As noted originally in the Attorney General's "Motion to Strike," the Territory must speak with one voice in the courtroom, and that voice belongs to the Attorney General. It is for the Attorney General to

reconcile the interests of individual government officials with the interests of the Territory and of the people. Sometimes this responsibility requires the Attorney General to take positions to which individual officials or agencies object. To permit the Governor to displace the Attorney General's determination of the Government of Guam's legal interests in litigation, and to dictate what lawsuits should be brought or whether and how they are defended, would reduce the Attorney General to a mouthpiece for other political interests, which is precisely the evil Congress intended to avoid in establishing the Office of Attorney General in the Organic Act.

The Governor's argument at pp. 5 – 9 of his "Supplemental Opposition" seems to be that if the Attorney General stipulates to or concedes the illegality or unconstitutionality of legislative enactments, then he is somehow violating the doctrine of separation of powers by "repealing" legislation through litigation, which would itself be a violation of the doctrine of separation of powers because the Attorney General would be acting in a legislative capacity. It is clever, but unavailing. Without any real citation to authority, at p. 7 of his Supplemental Opposition, the Governor argues that the Attorney General is "repealing" laws in violation of the doctrine of separation of powers "without ever ... allowing those who enacted it to defend the law." But, for the reasons stated in reply to the Legislature's motion to remand, the Legislature has no standing to defend its own enactments. Indeed, that would itself violate the separation of powers doctrine, for legislators do not execute or defend the bills they pass. That is the job for the executive branch.

> The function of the Legislature is not to execute laws, but to make or enact them. *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). The appointment of private counsel to institute and prosecute actions for an in the name of the Government of Guam cannot be construed as a legislative or judicial function. It is clearly an executive function. Therefore, the Legislature, by enacting P.L. 16-53:10 and appointing private counsel to institute and prosecute causes of action and other legal

3

> action for and in the name of the Government of Guam, and fixing his compensation, has acted in excess of its authority and powers by engaging in a purely executive function. The Court therefore finds P.L. 16-53:10 in violation of the doctrine of separation of powers set forth in the Organic Act of Guam.
>
> It is further the opinion of this Court that two branches of the Government of Guam cannot be vested with the authority to institute and prosecute causes of action and take appeals and other legal action for and in the name of the Government. This would, in effect, destroy the Executive Branch of the Government of Guam for the Legislature could at any time enact legislation appointing private counsel to institute and prosecute in the name of the Government of Guam to challenge any Executive branch position or decision. Not only would this violation of the doctrine of separation of powers amount to a dangerous concentration of power in the Legislative Branch, *Chadha v. Immigration and Naturalization Service*, 634 F.2d 408, 422 (9th Cir. 1980), [affirmed, 103 S.Ct. 2764], but would also result in chaos.

*Government of Guam v. United States of America*, Civil No. 82-1, Guam Reports – Part 3.0 (D.C. Guam Aug. 3, 1982).. at ____ (editorial brackets in original).

The real question here is whether the Attorney General controls litigation over the objection of his purported "client," the Governor. In this context, case law is clear that he does.

As stated previously, the views of the Attorney General prevail when a conflict arises between the views of the Attorney General and those of officers whom the attorney general represents. *Battle v Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) (holding that the views of the Oklahoma Attorney General in litigation "must prevail" over the views of the legal counsel for any particular state defendant); *Prisco v State of New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) (holding that Attorney General is authorized to represent individual state officers who are sued in their official capacities, despite claimed conflicts of interest). The reason for this rule is that while the Attorney General may be obligated to represent government officials and agencies to the best of his abilities, he need not – indeed, must not – do so at the expense of the people as a whole. *Connecticut Comm'n of Spec. Revenue v Connecticut Freedom of Information Comm'n*,

4

387 A.2d 533, 538 (Conn. 1978) (Attorney General's real client is the people); *Reiter v Wallgren*, 184 P.2d 571, 575 (Wash. 1947) (while Attorney General may represent state officers, "it still remains his paramount duty to protect the interests of the people of the state"); *Commonwealth ex rel. Hancock v Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (Attorney General represents people, not "machinery" of state government). To do so "would be an abdication of official responsibility." *Feeney v Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977) (quoting *Secretary of Administration and Fin. v Attorney Gen.*, 326 N.E.2d 334, 338 (Mass. 1975). *See also Slezak v Ousdigian*, 110 N.W.2d 1, 5 (1961) (Attorney General must do more than espouse individual views of state officials represented); *Ex parte Weaver*, 570 So.2d 675, 684 (Ala. 1990) (Attorney General authorized to dismiss state insurance department proceedings over objection of state insurance commissioner); *State ex rel. Derryberry v Kerr-McGee Corp.*, 516 P.2d 813, 821 (Okla. 1973) (upholding authority of Attorney General to settle pending litigation). And that is precisely the reason why the Attorney General has taken the position he has on behalf of the Governor and the remaining Government of Guam defendants here. Whether any named defendant likes it or not, the Attorney General controls *legal* policy for the Government of Guam, and that includes making litigation decisions over the objections of his "clients" when necessary.

At pp. 8, 9 of his Supplemental Opposition, the Governor seeks to distinguish the Attorney General's earlier citation to *Moylan v. Camacho*, Superior Court of Guam, Special Proceeding Case No. SP230-03, "Decision and Order," dated November 10, 2003, p. 38 ("The Organic Act makes the Attorney General the Chief Legal Officer of the government of Guam. The Governor is head of the executive branch but the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch, but also the

5

legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch."). Acknowledging that the Attorney General sets legal policy, the Governor quotes another part of the Decision and Order for a different proposition: That the Court was not "intimat[ing] that the Attorney General has the final determination of what is in the public interest…[and that when the Attorney General's and Governor's] positions conflict as to the public interest… it is appropriate for the Courts to determine what the public interest calls for." *Id.* at 43. That, however, begs the question as to who ultimately controls litigation for the Government of Guam and its three branches of government.

The Governor's assertion at p. 10 of his Supplemental Opposition that "the ultimate control of any litigation involving him or any executive agency must remain with the Governor" is flat wrong, and belies a lack of knowledge of legislative history. That is the way it used to be before Congress amended the Organic Act providing for an Organic Act authorized Attorney General, and before the Legislature of Guam provided that the Attorney General shall be elected. The purpose of the Congressional amendments establishing the Office in the Organic Act and the subsequent Guam legislative action providing that it shall be an elected position was to remove the Attorney General from the sphere of political influence, specifically to insulate the Office from the executive and legislative branches of the Guam government. Congress' intent was to "organically" establish the position, and the Guam Legislature's intent was to provide that the office holder would be elected rather than appointed as it had previously, so that the office holder would be immune from political interference from other branches of government, notably that of the Governor.

6

The Congressional Record of the 1998 Congressional Amendment is located at H.R.Rep. 105-742, dated September 24, 1998:

> Public concerns revolve around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause. In response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (sixty-nine percent) favored an elected position.

House of Representatives Report 105-742 reflects that an elected position was one solution to the problem of political interference. On Guam, positions such as the Public Auditor and the Attorney General were created to ensure accountability directly to the people. These positions provide internal checks and balances for the government of Guam. Senator Barrett-Anderson's (R) testimony in the very first Committee hearings on the proposed amendment reveals her concern that the Attorney General was a puppet of the executive. She testified "the people of Guam expect the Attorney General to protect their interest above all else. An appointed Attorney General unfortunately must respond to a great extent to the concerns of the Governor." *U.S. Territories Issues: Hearings on Resolution #433 Before the Subcommittee on Native American & Insular Affairs* (statement of Senator Elizabeth Barrett-Anderson, 23rd Guam Legislature, 7/24/96 Cong. Testimony, 1996 WL 10830029). The Governor's arguments in the case at bar propose a return to the days when the Attorney General was the Governor's puppet, and that is not what Congress intended.

Over a year later, then-Senator and now Speaker Ben Pangelinan (D) testified, "[I]t has become inherently clear that the appointed Attorney General is not capable of isolating himself or herself from political interference." 10/29/97 Cong. Testimony, 1997 WL 16138742. Thus, contrary to the Governor's assertions that Congress intended the Governor to retain control of all

7

litigation decisions "involving him or executive agency," Congressional history proves exactly the opposite. Senator Pangelinan's testimony reminded the Committee that a Constitutional/Organic Act Attorney General would be "accountable solely to the public," and would be in a position to "isolate himself or herself from political interference." *Guam Legislation: Hearings on H.R. 100 and H.R. 2370 Before the Committee on Resources* (statement of Senator Ben Pangelinan, 23rd Guam Legislature) October 29, 1997 Cong. Testimony, 1997 WL16138742. Senator Pangelinan added the following prescient comments, which underscore the significance of the amendment in Guam's political history:

> It is fundamental to the underpinning of our democratic process of openness and fair play that the Attorney General not be used as an apparatus of the head of the executive branch, for the power of the law is too great and pervasive to be used as a political tool of a single person.

The cases cited by the Governor at pp. 10 – 12 of his Supplemental Opposition for the proposition that "the vast majority of courts, including the Guam Supreme Court, hold that an attorney general must follow his clients' instructions" is a mischaracterization of the state of the law (the math, anyway), and are easily distinguished. The Governor cites *Motor Club of Iowa v. Dept. of Transportation*, 252 N.W.2d 510, 516 (Iowa 1977), for the proposition that the Attorney General does not set legal policy and that, in essence, the Attorney General is in the identical role as a private attorney with respect to his client's litigation decisions. In Iowa, that may be true, but the Governor fails to acknowledge that unlike in Guam *and the vast majority of courts* previously cited by the Attorney General, "the attorney general has only the powers given him by statute." *Id.* 252 N.W.2d. at 513. So, too, is the Arizona decision in *Santa Rita Mining Co. v. Dept. of Property Valuation*, 530 P.2d 360, 369 (Ariz.1975), cited by the Governor at page 11, where by constitution, the powers and duties of Arizona's Attorney General "shall be as

8

prescribed by law." Iowa and Arizona, as are the other jurisdictions cited by the Governor, are in the minority of jurisdictions.

Similarly unavailing is the Governor's citation at page 11 to *Tice v. Dept. of Transportation*, 312 S.E.2d 241, 246 (S.C. 1984), wherein the South Carolina Supreme Court held that the attorney general "is bound by the traditional rule governing the attorney-client relationship, and cannot enter a consent judgment without the consent of the entity represented." *Id.* But again, contrary to the Governor's assertions, that is the minority view, dependent upon the statutorily defined, not common law or constitutionally based, role of the attorney general.

The Governor's citation to *Chun v. Board of Trustees*, 952 P.2d 1215 (Hawaii 1998), holding that the attorney general stands in a traditional attorney-client relationship with the government agencies and officials she represents, is readily distinguished precisely because the Hawaii Supreme Court found its attorney general had no common law authority to control litigation contrary to the desires of her client. Relying in large part on the Supreme Court of West Virginia's decision in *Manchin v. Browning*, 296 S.E.2d 909 (W.Va. 1982) also cited by the Governor, and *Motor Club of Iowa, supra*, the Supreme Court of Hawaii's decision was based on the fact that its attorney general's authority is solely defined by statute, not its constitution or common law. That is not the Congressional history of the origin of the office of attorney general in the Organic Act. A close review of the underlying authority of the attorney general in each of the *minority* jurisdictions cited by the Governor reveals that the role of the attorney general is expressly restricted, defined and limited by statute to serve the executive agency "client" as in a traditional attorney-client relationship. That is not the case in Guam.

The Governor's citation to an order of the Guam Supreme Court in *Pangelinan v. Guitierrez*, CVA 02-003 (Feb. 10, 2003), directing the Attorney General to submit the written

9

consent of all named government parties to the withdrawal of a brief, referenced at page 3 of the Governor's and Legislature's original opposition to motion to strike and at page 14 of the supplemental opposition is interesting, but not at all dispositive. Whatever preferences the Guam Supreme Court has with respect to documentation of representation in that Court are irrelevant to the substantive question presented here with respect to who actually controls the litigation decisions of the Government of Guam. This Court is again respectfully referred to the Attorney General's original motion to strike as to why, even in the face of disagreement by his "clients," it remains nonetheless the exclusive prerogative of the Attorney General to establish a coherent legal policy for the Government of Guam in court.

## Conclusion

The Governor's and Legislature's opposition to the Attorney General's motion to strike their appearance through independent counsel is due to be overruled, and the Attorney General's Motion to Strike is due to be granted.

Respectfully submitted this 6th day of December, 2004.

OFFICE OF THE ATTORNEY GENERAL
**Douglas B. Moylan, Attorney General**

_____
ROBERT M. WEINBERG
Assistant Attorney General
For All Defendants

10

Case 1:04-cv-00046   Document 73   Filed 12/06/2004   Page 10 of 12

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party(ies) with a copy of the foregoing by hand delivery, or by depositing same in the United States Mail, postage prepaid and properly addressed to:

Thomas L. Roberts, Esq.
Dooley, Roberts & Fowler, LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913

Cesar Cabot, Esq.
Cesar Cabot, P.C.
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
 For Guam Election Commission
 & Gerald Taitano in his official capacity

Shannon Taitano, Esq.
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
 For Governor of Guam

Michael A. Pangelinan, Esq.
Rodney J. Jacob, Esq.
Calvo and Clark, LLP
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
 For Governor of Guam

Therese Terlaje', Esq.
155 Helser Place
Hagåtña, Guam 969102
 For *I Mina' Bente Siete Na Liheslaturan Guåhan*, Legislature of Guam

11

Joaquin C. Arriola, Jr., Esq.
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X
Hagåtña, Guam 96932
For proposed Intervenor, *Lina'La'Sin Casino*

this 6 th day of December, 2004.

ROBERT M. WEINBERG
Assistant Attorney General