In the Superior Court of Guam
Hagatna, Guam

Lourdes P. Aguon-Schulte,                    }     District Court Case No. CV04-00046
                                             }
                    Plaintiff(s),            }
                                             }     Superior Court Case No. CV1103-04
       vs.                                   }
                                             }
The Guam Election Commission; Gerald         }
A. Taitano, in his individual capacity as    }
the Executive Director of THE GUAM           }
ELECTION COMMISSION, I MINA'                 }
BENTE SIETE NA LIHESLATURAN                  }
GUAHAN (The 27th Guam Legislature);          }
FELIX P. CAMACHO, in his capacity            }
as the GOVERNOR OF GUAM,                     }
                                             }
                    Defendant(s).            }
_____        }



FILED
DISTRICT COURT OF GUAM
DEC - 7 2004
MARY L. M. MORAN
CLERK OF COURT

72

## CLERK'S CERTIFICATE OF TRANSMITTAL

        The Acting Clerk of Court do hereby transmit to the District Court of Guam a certified
copies on the above-entitled case, to wit:

        1.      Cash Register Trans
        2.      Docketing Statement
        3.      Complaint for (1) Declaratory Relief (2) Injunctive Relief, and (3) Order Compelling
                Special Election on Proposal A filed on 10/18/04
        4.      Summons filed on 10/18/04
        5.      Summons filed on 10/18/04
        6.      Summons filed on 10/18/04
        7.      Summons filed on 10/18/04
        8.      Memorandum in Support of Complaint for Pre-Election (1) Injunctive Relief; (2)
                Declaratory Relief, and (3) Order Compelling a Special Election on Proposal A filed
                on 10/18/04
        9.      Amended Summons filed on 10/21/04
        10.     Amended Summons filed on 10/21/04
        11.     Amended Summons filed on 10/21/04
        12.     Amended Summons filed on 10/21/04

13. Cash Registrar Trans
14. Exparte Notice of Motion and Motion for Order Shortening Time for Hearing on Pre-Election; (1) Injunctive Relief; (2) Declaratory Relief and (3) Order Compelling a Special Election On Proposal A filed on 10/21/04
15. Rule 9 Certification filed on 10/21/04
16. Affidavit of Service filed on 10/21/04
17. Affidavit of Service filed on 10/21/04
18. Affidavit of Service filed on 10/21/04
19. Affidavit of Service filed on 10/21/04
20. Minute Entry for 10/21/04 by the Chamber Clerk of Judge Steven S. Unpingco
21. Minute Entry for 10/22/04 by the Chamber Clerk of Judge Katherine A. Maraman
22. Order Granting Ex Parte Motion for Order Shortening Time filed on 10/22/04
23. Cash Registrar Trans
24. Notice of Motion and Motion for Pre-Election (1) Injunctive Relief (2) Declaratory Relief, and (3) Order Compelling A Special Election of Proposal A filed on 10/25/04
25. Rule 9 Statement filed on 10/25/04
26. Declaration in Support of Ex Parte Motion on Lina'la'sin Casino to Intervene filed on 10/25/04
27. Notice of Ex Parte Motion and Request to Transmit File filed on 10/25/04
28. Ex Parte Motion of Lina'la'sin Casino to Intervene filed on 10/25/04
29. Minute Entry for 10/25/04 by the Chamber Clerk of Katherine A. Marman
30. Plaintiff's Opposition to Lina'la'sin Casino's Motion to Intervene filed on 10/25/04
31. Notice of Removal of Civil Action To District Court filed on 10/26/04
32. Defendants Guam Election Commissions' and Gerald A. Taitano's Request for Recusal filed on 10/26/04
33. Order filed on 10/26/04
34. Defendants Guam Election Commission and Gerald A. Taitano's Memorandum of Points and Authorities in Support of Motion to Dismiss or to stay proceedings filed on 10/27/04
35. Motion to Dismiss filed on 10/27/04
36. Minute Entry for 10/28/04 by the Chamber Clerk of Judge Katherine A. Maraman
37. Memorandum of Law in Support of Motion to Dismiss and Opposition to Motion for Preliminary Injunction by Lina'la'sin Casino as an Amicus or Intervening Party filed on 10/28/04
38. Defendants Guam Election Commission, and Gerald A. Taitano's Notice of Motion and Motion to Dismiss for Lack of Jurisdiction to Abstain or to stay Proceedings received on 10/27/04
39. Notice of I Mina'Bente Siete Na Liheslaturan Guahan's Motion to Dismiss received on 10/27/04

Superior Court No. CV1103-04
Lourdes P. Aguon-Schulte vs. The Guam Election Commission, et al.,
District Court No. CV04-00046
Page Three

40.     Writ of Certiorari to Superior Court of Guam filed on 12/01/04
41.     Order filed on 12/01/04

Dated:     **DEC 0 7 2004**          .

RICHARD B. MARTINEZ
Acting Clerk of Court
Superior Court of Guam

CASE NO: CV1103-04
      TYPE: CIVIL
   CAPTION: LOURDES P. AGUON-SCHULTE VS. G.E.C. AND ETAL
TOTAL AMOUNT:        186.00

| Reference Number | Reference Date | Description | Rev_acct | Amt_Owed |
|---|---|---|---|---|
| 040012165 | 10/18/2004 | JBF/CV CIVIL FILING FEES | 33052101 | 150.00 |
| 040012165 | 10/18/2004 | JBF/CV CIVIL SUMMONS | 33052103 | 26.00 |
| 040012165 | 10/18/2004 | JBF/CV CIVIL OTHERS | 33052199 | 10.00 |

| Plaintiff(s)/Petitioner(s) | Defendant(s)/Respondent(s) |
|---|---|
| Lourdes P. Aguon-Schulte | (1) The Guam Election Commission<br>(2) Gerald A. Taitano, in his personal capacity and in his capacity as the Executive Director of the Guam Election Commission<br>(3) I Mina' Bente Siete Na Liheslaturan Guahan (the 27th Guam Legislature)<br>(4) Felix P. Camacho, in his official capacity as the Governor of Guam |
| **Residential Address:**<br><br>POST OFFICE BOX 2860<br>HAGATNA, GUAM 96932 | **Residential Address:**<br><br>(1) 2nd Floor, GCIC Building, 414 West Soledad Avenue, Hagåtña, Guam 96910;<br>(2) 2nd Floor, GCIC Building, 414 West Soledad Avenue, Hagåtña, Guam 96910;<br>(3) 155 Hessler Place, Hagåtña, Guam 96910<br>(4) Office of the Governor, Adelup<br>    Anigua, Guam |
| **Attorney(s):**<br>(Firm Name, Address and Telephone Number)<br><br>Thomas L. Roberts, Esq.<br>DOOLEY ROBERTS & FOWLER LLP<br>Suite 201, Orlean Pacific Plaza<br>865 South Marine Drive<br>Tamuning, Guam 96913<br>Telephone:   (671) 646-1222<br>Facsimile:   (671) 646-1223 | **Attorney(s):**<br>(Firm Name, Address and Telephone Number)<br><br>Unknown. |

**Cause of Action:**

(1) For Injunctive Relief; (2) For Declaratory Relief; and (3) for an order compelling a Special Election on Proposal A

Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:     (671) 646-1222
Facsimile:      (671) 646-1223

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

IN THE SUPERIOR COURT

OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE GUAM ELECTION COMMISSION; )<br>GERALD A. TAITANO, in his individual )<br>capacity and in his capacity as the )<br>Executive Director of THE GUAM )<br>ELECTION COMMISSION, I MINA' )<br>BENTE SIETE NA LIHESLATURAN )<br>GUAHAN (The 27th Guam Legislature); )<br>FELIX P. CAMACHO, in his official )<br>capacity as the GOVERNOR OF GUAM. )<br><br>Defendants. )<br> ) | CIVIL CASE NO. CV 1103-04<br><br>COMPLAINT FOR<br>(1) DECLARATORY RELIEF<br>(2) INJUNCTIVE RELIEF, AND<br>(3) ORDER COMPELLING SPECIAL<br>ELECTION ON PROPOSAL A |

Plaintiff Lourdes P. Aguon-Schulte ("Plaintiff") alleges as follows:

**PARTIES**

1.     Plaintiff is a registered voter on Guam. Plaintiff desires to cast a valid and

meaningful vote on the Guam Casino Gaming Control Commission Act, otherwise known and

referred to herein as "Proposal A".

2.     The Guam Election Commission ("Election Commission") is "an autonomous

instrumentality and an independent commission of the Government of Guam" pursuant to 3

ORIGINAL

G.C.A. § 2101(a). Under 3 G.C.A. § 2106, the Election Commission has the capacity to sue and be sued in its own name.

3.     Gerald A. Taitano is the Executive Director of the Election Commission (the "Director") and a resident of the territory of Guam.

4.     I Mina' Bente Siete Na Liheslaturan Guahan is the Twenty Seventh Guam Legislature (the "Legislature").

5.     Felix P. Camacho is the Governor of Guam (the "Governor").

## JURISDICTION

6.     This Court has jurisdiction over this matter pursuant to 7 G.C.A. §3105, 5 G.C.A. §9303, and 42 U.S.C. §1983. Each of the three counts contained in this complaint, for declaratory relief, for injunctive relief, and for an order compelling a special election, are brought under Guam law as well as the federal civil rights statute, 42 U.S.C. §1983. The court also has jurisdiction over this matter because lawsuits challenging election procedures known to be invalid prior to the election must legally be filed before the election.

## FACTS

7.     Proposal A is on the ballot for the scheduled November 2, 2004 Guam general election. The Director and the Election Commission placed Proposal A on the ballot upon their determination that Proposal A met all legal requirements under Guam law for the placement of initiatives on the ballot.

8.      Plaintiff is informed and believes that Election Commission's requested fiscal year 2004 budget to the 27th Guam Legislature was $350,000.  Plaintiff is informed and believes that in its request, the Election Commission informed the Legislature that $350,000 was sufficient to cover all operational costs for fiscal year 2004, and expressly stated that $350,000 was sufficient to ensure that Proposal A would be properly and legally placed on the ballot for the November 2, 2004 general election.

9.      On information and belief, the Legislature funded the Election Commission with a fiscal year 2004 budget of $450,000 rather than $350,000.

10.     On information and belief, shortly before the ballot pamphlet on Proposal A was to be mailed to the voters, the Director informed the Legislature and the Governor that the Election Commission needed an additional $25,000 in funding to print and mail Proposal A ballot pamphlets to voters before the November 2, 2004 election.

11.     On information and belief, the Governor delivered the Director's requested additional $25,000 in funding.

12.     On information or belief, the Election Commission mailed Proposal A ballot pamphlets to the voters of Guam on or before October 1, 2004.

13.     Copies of the text of Proposal A itself were not included in the ballot pamphlets mailed to the voters by the Election Commission.

14.     By the Director's own public admission, he and the Election Commission, acting in their official capacities, intentionally, knowingly and willfully decided to not include the complete

text of Proposal A in the ballot pamphlets they mailed to the voters thirty (30) days prior to the
scheduled November 2, 2004 election on Proposal A.

   15.    There are now less than thirty (30) days prior to the scheduled November 2, 2004
election.

   16.    A true and correct copy of the complete text of Proposal A is attached hereto and
made a part hereof as Exhibit 1.

   17.    Plaintiff has requested the Election Commission to pass upon the validity of the
thirty (30) day mailing requirement of 3 G.A.R. §2114 discussed below. The Election Commission
has effectively ruled that that 3 G.A.R. §2114 is valid, but has publicly stated that it did not and does
not have the funds to comply with it, and that the November 2, 2004 election on Proposal A will go
forward as scheduled unless and until a court rules otherwise.

   18.    The Guam Attorney General's Office has written an opinion letter stating that the
Proposal A ballot pamphlets are legally flawed and that the November 2, 2004 vote on Proposal A
will be invalid and unenforceable for four numbered reasons and one unnumbered reason. A true
and correct copy of the Attorney General's opinion letter and its attachments are attached hereto and
made a part hereof as Exhibit 2. True and correct copies of the information on Proposal A actually
mailed to the voters by the Election Commission are attached to the Attorney General's opinion
letter itself and made a part hereof by this reference. As alleged above, the actual text of Proposal A
was not mailed to the voters.

19.     The Attorney General's Office has widely distributed its opinion letter to the public
and to the media.  The opinion letter has caused massive public and private speculation on whether
any vote on Proposal A will be legal or otherwise binding.  The Attorney General's Office has also
publicly stated that any vote for Proposal A will be invalid and ineffective.  Moreover, the Attorney
General's Office has publicly stated that if Proposal A is passed by the voters on November 2, 2004,
the Attorney General's Office will file a lawsuit to declare the election void.  The Attorney
General's Office has publicly stated that it will not be necessary to file a lawsuit to declare the
election void if Proposal A is not passed by the voters on November 2, 2004, because the issue will
then be moot.

## COUNT I

## DECLARATORY RELIEF

20.     Plaintiff refers to and incorporates paragraphs 1 through 19 of this complaint as
though fully set forth herein.

21.     Plaintiff requests an immediate, pre-election declaratory judgment from the court on
the legality of the Proposal A ballot pamphlets mailed to the voters and the legality of the scheduled
November 2, 2004 election on Proposal A.

22.     Chapter 17 of Title 3 of the Guam Code Annotated ("G.C.A.") (the "Election
Code"), §§ 17101 through 17514, is entitled "Initiative, Referendum and Legislative Submission."
Section 17101 of the Election Code provides:

It is the intent of the Legislature through the enactment of this
measure that the people of the territory of Guam shall have the right
to exercise the power of initiative and referendum with regard to
legislative matters and that the legislature shall submit matters to the
voters for approval or rejection.

23.    3 G.C.A. § 17509 is entitled "Contents of Pamphlet." It provides as follows:

The Ballot pamphlets shall contain:
(a) A complete copy of any measure submitted to the voters by:
        (1) The Legislature.
        (2) Initiative or referendum petition.
(b) A copy of the specific statutory provision, if any, proposed to be
affected.
(c) A copy of the arguments provided for in this Chapter.
(d) The analysis and ballot title provided for in this Chapter.

24.    3 G.C.A. §17511 is entitled "Mailing of Ballot Pamphlet". It provides:

As soon as copies of the ballot pamphlet are available, the Election
Commission shall mail immediately the following number of copies
to the following persons and places:

(a) One copy to each registered voter;
(b) One copy to each village Commissioner;
(c) One copy to each judge of the Superior Court; and
(d) One copy to each Senator.

25.    Title 3 of the Guam Administrative Rules and Regulations ("G.A.R.) was adopted

by the Guam Election Commission under Guam's Administrative Adjudication Law. See generally,

Title 1, Guam Administrative Rules and Regulations, §§ 1101, 1102 (1997); 5 G.C.A §§ 9100

through 9312. 3 G.A.R. governs elections and the Election Commission.

26.    3 G.A.R. § 2112(5) is entitled "Ballot Pamphlets."  It provides:

(a) The Director shall cause to be printed one and one-tenth (1-1/10)
times as many ballot pamphlets as there are registered voters, to be
available not less than thirty (30) days prior to the election at which
an initiative measure is to be presented to the voters.

(b) The ballot pamphlets shall contain, in the following order:

(1) On the first page, the ballot title described in 6 GAR § 2109;
(2) Beginning on the next page, the analysis of the proposed
measure, described in 6 GAR § 2111;
(3) Beginning on the next page following the end of the analysis, the
selected argument for the initiative measure provided such an
argument has been submitted to the Commission;
(4) Beginning on the next page following the end of the selected
argument for the initiative measure, the selected argument against the
measure provided such an argument has been submitted to the
Commission;
(5) Beginning on the next page following the end of the argument
against the proposed measure, the complete text of the initiative
measure;
(6) If, in the opinion of legal counsel to the Commission, any existing
statutory provision or provisions would be affected by the measure,
the text of the specific statutory provision or provisions affected shall
be printed beginning on the next page following the end of the text of
the initiative measure. [Law governing 3 GCA §§ 17508-17510.]

27.    6 G.A.R. §2114 is entitled "Mailing of Ballot Pamphlets."  It provides:

Not less than thirty (30) days prior to the election in which an
initiative measure is to be presented to the voters, and earlier if the
ballot pamphlets are available before that date, the Director shall
cause to be mailed the following number of copies of the ballot
pamphlet to the following persons and places:
(a) One (1) copy to each voter registered as of the deadline for
eligibility to vote in the election in which the initiative measure is to
be submitted to the voters;

(b) One (1) copy to each village Commissioner;

(c) One (1) copy to each judge of the Superior Court; and

(d) One (1) copy to each Senator. [Law governing 3 GCA § 17511.]

28.     Two years ago, in a Guam Supreme Court decision specifically addressing the

administrative rules and regulations adopted by Guam Election Commission, Wade v. Taitano, 2002

Guam 16, the court wrote:

> "[a]n agency does not have the authority to ignore its own rules." ...
> Regulations have the same legal effect as statutes ... and, "[w]hen an
> agency has the authority to adopt rules and does so, it must follow
> them." ... Therefore, an agency's procedural rules "are binding upon
> the agency which enacts them as well as upon the public." ...
> "Regulations governing procedure are just as binding upon both the
> agency which enacts them and the public, and the agency does not,
> as a general rule, have the discretion to waive, suspend, or disregard,
> in a particular case, a validly adopted rule so long as such rule
> remains in force."

> \*       \*       \*

> Although the Initiative statutes, 3 GCA §§ 17101-09, do not provide
> the GEC with a time frame to complete the verification process, the
> statutes do allow the GEC to promulgate rules and regulations to
> effectuate the election statutes. 3 GCA §§ 2103(d), 2104. In enacting
> regulation 2108(c), the GEC was merely imposing upon itself a time
> frame within which to complete a task. ... We do not find the GEC's
> mere imposition of *when* to complete a statutory duty to be, in and of
> itself, inherently inconsistent with the performance of that duty.
> [Citations and footnotes omitted].

29.     An actual, justiciable controversy now exists over (1) the legal efficacy of any votes

cast for or against Proposal A at the general election to be held on November 2, 2004, and (2) the

legal efficacy of the results of the scheduled November 2, 2004 general election on Proposal A.
The controversy affects each and every single registered voter on Guam, as well as unregistered
Guam voters who would have registered to vote within the time allowed by law but for the
controversy. Attached hereto as Exhibit 3 are true and correct copies of newspaper articles printed
in the Pacific Daily News and the Marianas Variety as well as true and correct copies in written
form of reports broadcast on television by KUAM news, all of which were printed or broadcast on
and after October 7, 2004, the date the Attorney General's Office publicly disseminated its opinion
letter.

      30.     Without a declaratory judgment by the courts on the legality of the Proposal A ballot
pamphlets mailed to the voters by the Election Commission, a fair election on Proposal A cannot be
held on November 2, 2004, as scheduled, and any result of such vote on Proposal A in the absence
of a declaratory judgment by the courts may not reflect the true will of the electorate.

      31.     For the foregoing reasons, Plaintiff requests an immediate, pre-election declaratory
judgment from the court on the legality of the Proposal A ballot pamphlets mailed to the voters and
the legality of the scheduled November 2, 2004 election on Proposal A.

## COUNT II

### INJUNCTIVE RELIEF

      32.     Plaintiff refers to and incorporates paragraphs 1 through 31 of this complaint as
though fully set forth herein.

33.    Proposal A legally qualified for placement on the ballots the at the November 2,
2004 general election.

34.    The Proposal A ballot pamphlets mailed to the voters thirty (30) days before the
scheduled November 2, 2004 election on Proposal A are legally defective under applicable Guam
law and duly adopted administrative regulations.

35.    The right to vote is a fundamental right guaranteed by the First and Fourteenth
Amendments to the United States Constitution and by the Organic Act of Guam, § 1421(b).    The
First Amendment of the United States Constitution applies to Guam pursuant to 48 U.S.C. §
1421(b)(u).

36.    The right of Plaintiff and the people of Guam to exercise the right of initiative is
guaranteed by the Organic Act of Guam, §1422(a), 48 U.S.C.A. § 1422(a), as amended ("the People
of Guam shall have the right of initiative and referendum, to be exercised under conditions and
procedures specified in the laws of Guam").

37.    As a result of the legally defective ballot pamphlets, and as a result of the Attorney
General's opinion letter and the mass public speculation it has caused, the results of the scheduled
November 2, 2004 election on Proposal A will not be valid or binding under the Organic Act and
other applicable laws of Guam or under the United States Constitution.

38.    There is a probability that Plaintiff will succeed on the merits of this action; the
possibility of immediate and irreparable injury exists; serious questions are raised; and the balance
of hardships tips sharply in Plaintiff's favor.

## COUNT III

### ORDER COMPELLING SPECIAL ELECTION

39.     Plaintiff refers to and incorporates by reference paragraphs 1 through 38 of this complaint as though fully set forth herein.

40.     The Defendants have deprived Plaintiff and the people of Guam of their fundamental, constitutional and organic right to vote.

41.     Under 3 G.C.A. §13103, the Governor has the power to call a special election on Proposal A, and thereby protect Plaintiff and the people of Guam's fundamental right to vote, but he has refused to do so.

42.     Under 3 G.C.A. §17203, the Legislature has the power to call a special election on Proposal A, and thereby protect Plaintiff and the people of Guam's fundamental right to vote, but it has refused to do so.

43.     Under 7 G.C.A. § 4104, both the Governor and the Legislature have the power to apply directly to the Guam Supreme Court for declaratory relief under certain circumstances "where it is a matter of great public interest and the normal process of law would cause undue delay", and thereby protect Plaintiff and the people of Guam's fundamental right to vote, but the Governor and the Legislature have refused to do so.

44.     The Attorney General is the Chief Legal Officer of the Territory of Guam, with standing and authority to institute legal proceedings to protect Plaintiff and the people of Guam's fundamental right to vote right to vote, but he has refused to do so.

45.     3 G.C.A. §14103 of the Guam Elections Code provides that "(e)very person charged with the performance of any duty under the provisions of any law of this Territory relating to elections, who, in his official capacity, knowingly acts in contravention or violation of any of the provisions of such laws, is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." 3 G.C.A. §14102 of the elections code provides that "(e)very person who willfully violates any of the provisions of laws of Guam relating to any election is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." Under Guam law, 9 G.C.A. §80.34, a misdemeanor is punishable by imprisonment for up to one (1) year.

46.     Acting under color of territorial law, the Defendants have deprived Plaintiff and the people of Guam of their right to vote, which is a right and privilege secured by the Constitution of the United States and the Organic Act of Guam. Pursuant to 42 U.S.C. §1983 and Guam law, the Defendants are liable to Plaintiff in this action at law and in equity for any all and appropriate redress.

47.     Under the circumstances of this case, no remedy other than a special election on Proposal A can (1) restore the right to vote to Plaintiff and the people of Guam, and (2) guarantee that Plaintiff and the people of Guam will not be deprived of their right to vote in any future general elections on Proposal A.

**WHEREFORE,** Plaintiff prays for relief as follow:

1.      An immediate, pre-election judicial declaration on (a) the legal efficacy of the
Proposal A ballot pamphlets mailed to the voters by the Directors and the Guam Election
Commission, and (b) an immediate, pre-election judicial declaration on whether the results of any
vote on Proposal A on November 2, 2004 will be invalid as a result of (i) the ballot pamphlets
mailed to the voters, and/or (ii) as a result of the mass public uncertainty caused by the Attorney
General's opinion.

2.      For a preliminary and permanent injunction (a) enjoining the scheduled November
2, 2004 vote on Proposal A, (b) compelling the Director and the Election Commission to remove
the Proposal A ballots from the polling places on November 2, 2004, and (c) enjoining the Director
and the Election Commission from tabulating any absentee votes cast on Proposal A.

3.      For an order compelling the Governor to call for a special election on Proposal A
pursuant to 3 G.C.A. §13103, or an order compelling the Legislature to call for a special election on
Proposal A pursuant to 3 G.C.A. §17203, or an order compelling the Election Commission to
schedule and hold a special election on Proposal A, to be held not later than sixty (60) days after the
date of the court's order, under the following procedure:

a.      That within twenty (20) days after the court's order, which will be forty (40)
days before the special election, the Election Commission and the Director must appear before the
court to affirmatively demonstrate their readiness, willingness, and ability to meet all Guam laws

and all election rules and regulations applicable to the people's right to initiative and special elections, specifically with regard to the special election on Proposal A.

   b.   That within twenty five (25) days after the court's order, which will be thirty five (35) days prior to the special election, the Election Commission and the Director must appear before the court to prove to the court's satisfaction that they have in fact complied with all Guam laws and all election rules and regulations applicable to the people's right to initiative and special elections, specifically with regard to the special election on Proposal A.

   c.   That a further proceedings hearing be had in this court one (1) day after the special election on Proposal A, at which hearing the Election Commission and the Director must testify, under oath, about any irregularities or other events occurring during the election that may, in their reasonable judgment, have interfered with a free and fair election on Proposal A.

4.   For costs of suit;

5.   For attorneys' fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, or as otherwise permitted by law or pursuant to the court's inherent powers;

6.   For such other relief as the court deems just, necessary and proper.

                              DOOLEY ROBERTS & FOWLER LLP

Dated: October 18, 2004          By: _____
                              THOMAS L. ROBERTS
                              Attorneys for Plaintiff

F:\Documents\Thomas L Roberts 07-94\C325-CFED\Pleadings\C325 - Complaint 07 (FINAL) 10 18 2004.doc

An Act To Establish The

# GUAM CASINO
# GAMING CONTROL COMMISSION

EXHIBIT 1

Section I.     Title 23 is added to the Guam Code Annotated to read       7

## ARTICLE 1—SHORT TITLE, STATEMENT OF LEGISLATIVE FINDINGS AND DEFINITIONS      7

Section 1001.    Short title       7
Section 1002     Statement of public policy       7
Section 1003.    Definitions       9

## ARTICLE 2—ESTABLISHMENT AND ORGANIZATION OF      16

Section 2001.    Guam Casino Gaming Control Commission; number of Commissioners; and their appointment      16
Section 2002.    Qualifications of Commissioners      16
Section 2003.    Terms of Commissioners; officers of the Commission; compensation of Commissioners; removal of Commissioners      16
Section 2004.    Organization and employees of the Commission      18

## ARTICLE 3—CONTROL AUTHORITY RESTRICTIONS      19

Section 3001.    Previous employment and individual assurance standards.      19
Section 3002.    Code of ethics to be promulgated      20
Section 3003.    Post-employment restrictions      21

## ARTICLE 4-COMMISSION DUTIES AND POWERS      22

Section 4001.    General duties and powers      22
Section 4002.    Commission powers regarding denials and sanctions      23
Section 4003.    Subpoenas, oaths      23
Section 4004.    Testimonial immunity      24
Section 4005.    Collection of fees, interest or penalties      24
Section 4006.    Emergency Rules      24
Section 4007.    Rule requiring exclusion of certain persons      25

2

Section 4009.    Exclusion or ejection of certain persons                                        25

Section 4010.    Penalties for gaming by prohibited persons                                    26

Section 4011.    Commission reports and recommendations; annual audit              26

Section 4012.    Meetings and quorum                                                                      26

Section 4013.    Minutes and records                                                                        27

Section 4014.    Appointment of peace officers                                                       28

Section 4015.    Specific duties of peace officers                                                    29

Section 4016.    Cooperation by licensees, registrants or applicants                      29

Section 4017.    Inspection, seizure and warrants                                                    29

Section 4018.    Powers not enumerated                                                                  31


**ARTICLE 5—LICENSING**                                                                           31


Section 5001.    General provisions                                                                        31

Section 5002.    Statement of compliance                                                               32

Section 5003.    Casino license; eligibility for                                                       34

Section 5004.    Approved hotel                                                                              36

Section 5005.    Casino license; applicant requirements                                        37

Section 5006.    Additional requirements                                                               38

Section 5007.    Casino license, Disqualification criteria for                                41

Section 5008.    Investigation of applicants for casino licenses; order approving
                          or denying license                                                                         42

Section 5009.    Renewal of casino licenses                                                          43

Section 5010.    Licensing of casino key employees                                             43

Section 5011.    Licensing of casino employees                                                     45

Section 5012.    Registration of casino service employees                                    45

Section 5013.    Licensing and registration of casino service industries             46

Section 5014.    Registration of labor organizations                                            47

Section 5015.    Approval and denial of registrations and licenses other than casino licenses    47

3

## ARTICLE 6—CASINO OPERATIONS

48

| Section 6001. | Operation certificate | 48 |
|---|---|---|
| Section 6002. | Hours of operation | 48 |
| Section 6003. | Casino facility requirements | 49 |
| Section 6004. | Internal controls | 49 |
| Section 6005. | Games and gaming equipment | 49 |
| Section 6006. | Credit | 52 |
| Section 6007. | Noncitizen patrons; proof of identity to establish accounts, multiple transactions | 55 |
| Section 6008. | Non-citizen patrons, proof of identity to redeem chips or markers | 56 |
| Section 6009. | Report of cash transactions | 56 |
| Section 6010. | Junkets and complimentary services | 56 |
| Section 6011. | Alcoholic beverages in casino hotel facilities | 59 |
| Section 6012. | Casino licensee, leases and contracts | 59 |
| Section 6013. | Disposition of securities by corporate licensee | 60 |
| Section 6013. | Casino employment | 61 |
| Section 6014. | Employment of bona fide residents of Guam required | 62 |

## TITLE 7—HEARINGS OF THE COMMISSION

62

| Section 7001. | Conduct of hearings; rules of evidence; punishment of contempts; rehearing | 62 |
|---|---|---|
| Section 7002. | Proceedings against licensees | 64 |
| Section 7003. | Emergency orders | 65 |
| Section 7004. | Judicial review | 65 |

## Article 8—Sanctions for Unlawful Acts

| Section 8001. | Penalties for willful evasion of payment of license fees, other acts and omissions | 66 |
|---|---|---|
| Section 8002. | Unlicensed casino gaming unlawful; penalties | 66 |

4

Section 8003.   Swindling and cheating; penalties                                          66

Section 8004.   Use of certain devices in playing game, penalties                          67

Section 8005.   Unlawful use of bogus chips or gaming billets, marked cards, dice, cheating
                devices, unlawful coins; penalty                                           67

Section 8006.   Cheating games and devices in a licensed casino; penalty                   68

Section 8007.   Unlawful possession of device, equipment or other material
                illegally manufactured, distributed, sold or serviced                      68

Section 8008.   Employment without license or registration; penalty                        68

Section 8009.   Persons prohibited from accepting employment violation, penalty             69

Section 8010.   Unlawful entry by person whose name has been placed on list of
                excluded persons; penalty                                                  69

Section 8011.   Gaming by certain persons prohibited; penalties; defenses                   69

Section 8012.   Prohibited political contributions; penalty                                70

Section 8013.   Authority of gaming licensee and agents to detain or question persons
                suspected of cheating; immunity from liability; posted notice required      70

Section 8014.   (a) Other offenses; general penalty                                        70

Section 8015.   Continuing offenses                                                        71

Section 8016.   Exemption from certain provisions of Title 9 of the Guam Code Annotated     71

Section 8017.   Racketeer-influenced and corrupt organizations, Definitions of             71

Section 8018.   Prohibited activities                                                      72

Section 8019.   Civil remedies                                                             73

Section 8020.   Civil investigative demand                                                 74

Section 8021.   Supplemental sanctions                                                     75

# ARTICLE 9--MISCELLANEOUS                                                                 76

Section 9001.   Declaration of Guam's Limited Exemption from Operation of
                Provisions of Section 1172 of Title 15 of the U. S. Code                   76

Section 9002.   Legal shipment of gaming devices into Guam                                 76

Section 9003.   Severability and preemption                                                77

Section 9004.   Equal employment opportunity requirements                                  77

Section 9005.   Equal employment opportunity enforcement                                   77

**ARTICLE 10-CONSERVATORSHIP**      77

Section 10001.   Institution of conservatorship and appointment of conservators      77

Section 10002.   Instructions to, supervision of conservator      78

Section 10003.   Powers, authorities and duties of conservators      78

Section 10004.   Compensation of conservators and others      80

Section 10005.   Assumption of outstanding debts      80

Section 10006.   Payment of net earnings during the period of the conservatorship      80

Section 10007.   Payments following a bulk sale      80

Section 10008.   Continuing jurisdiction of Commission      80

Section 10009.   Termination of a conservatorship      81

Section 10010.   Required reports      81

Section 10011.   Review of actions of conservator      81

**ARTICLE 11—FEES AND TAXES**      81

Section 11001.   Casino application and license fees      81

Section 11002.   Slot machine license fee      82

Section 11003.   Fees for other than casino licenses      82

Section 11004.   Guam Casino Gaming Control Commission Fund      82

Section 11005.   Tax on gross revenues      82

Section 11006.   Guam Casino Revenue Trust Fund      83

Section 11007.   Expenditure of the income of the Guam Casino Revenue Trust Fund.      84

Section 11008.   Disposition of second half of Guam Casino Revenue Tax      84

Section 11009.   (a) Expenditure of the income of the Guam Casino Revenue Benefit Fund      84

Section 11010.   Payment of taxes      85

Section 11011.   Determination of tax liability      85

Section 11012.   Penalties      86

SECTION 2.      APPROPRIATION OF FUNDS      86

SECTION 3.      EFFECTIVE DATE OF ACT ADOPTED BY THIS INITIATIVE      86

6

AN ACT TO ADD TITLE 23 TO THE GUAM CODE ANNOTATED TO ESTABLISH THE GUAM CASINO GAMING CONTROL COMMISSION TO OVERSEE AND DIRECT THE DEVELOPMENT AND OPERATION OF CASINO GAMING WITHIN GUAM AND TO RESERVE ONE-HALF OF THE TAX REVENUE DERIVED FROM CASINO GAMING IN A TRUST, THE INCOME OF WHICH SHALL BE DEDICATED TO MAKING LONG-TERM IMPROVEMENTS IN THE ISLAND'S INFRASTRUCTURE AND TO RESERVE ONE-HALF OF THE TAX REVENUE DERIVED FROM CASINO GAMING FOR EXPENDITURE ONLY TO SUPPORT WORTHY ENDEAVORS SPECIFICALLY IDENTIFIED BY THE PEOPLE THROUGH A QUADRENNIAL REFERENDUM; TO FIX THE DATE UPON WHICH THIS INITIATIVE SHALL BECOME LAW; AND TO MAKE AN INITIAL APPROPRIATION OF FUNDS FOR THE OPERATION OF THE GUAM CASINO GAMING CONTROL COMMISSION.

BE IT ENACTED BY THE PEOPLE OF THE TERRITORY OF GUAM:

Section 1. Title 23 is added to the Guam Code Annotated to read:

"TITLE 23—GUAM CASINO GAMING CONTROL COMMISSION"

**Article 1—Short Title, Statement of Legislative Findings and Definitions**

Section 1001. _Short title._ This Act shall be known and may be cited as the 'Guam Casino Gaming Control Commission Act.'

Section 1002. _Statement of public policy._ The people of Guam, the enactors of this legislation by initiative, hereby find and declare the following to be the public policy of Guam:

(a) The hospitality industry—consisting of tourist, resort and incipient convention activities—is a critical component of Guam's economic structure and, if properly developed, controlled and fostered, is capable of substantially contributing to the general welfare, health and prosperity of Guam and its inhabitants.

. (b) By reason of its location, Guam is for Asia, and the south and western Pacific, a convenient and hospitable destination rich not only in the island's indigenous Chamorro heritage but also a wide range of the cultural and economic features of America.

(c) Guam has many competitors for visitors from abroad, however, and to maintain and enhance its standing as a destination of choice, it must be innovative and dynamic in encouraging the development of the sort of recreational activities that sophisticated travelers seek.

(d) One innovation that is alluring foreign visitors in great numbers from abroad to the United States, Australia, and the Philippines is casino gaming. Continental Airlines already provides twice weekly direct service through Guam from Japan to Cairns, Queensland, and hundreds of travelers transit Guam each week to visit not only the natural beauties of this competing Australian destination, but also to be entertained at the Reef Hotel Casino in Cairns. In the mainland of the United States 425 commercial casinos are operating in 11 states. According to an independent survey performed for the

American Gaming Association ("AGA"), 14,000 new jobs were created in the commercial casino industry in the US in 2000 and the industry as a whole generated $25 billion in gross gaming revenues, figures that do not include the 87 Native American gaming enterprises operating in 23 states and that generated more than $9.2 billion in gross gaming revenue in 2000.

(e) The AGA survey also noted that 370,000 employees in stateside casinos earned $10.9 billion in wages (including tips and benefits) and that the nearly $3.5 billion paid in taxes by the commercial casinos was responsible for construction of new roads, schools and hospitals, enhancement of local emergency services, development of parks and recreation areas, and other quality-of-life improvements.

(f) While casino gaming holds promise as a source of economic stimulation and enhanced revenues for the government, it is not to be viewed as a panacea for the prolonged economic recession Guam has experienced in conjunction with Japan's depressed financial status. Casino gaming can be, however, a hospitality attraction innovation that will induce not only more visitors to Guam from Japan but also help in the island's efforts to enlarge its visitor count from Korea, China and Taiwan.

(g) Through this initiative the people have given their stamp of approval to the establishment of a limited number of closely controlled and monitored casino gaming facilities in resort hotels. They have also made clear that, to the greatest extent possible, the Guam Casino Gaming Control Commission shall encourage not only the investment of outside capital in these projects, but also require that real opportunity for investment and employment in the casino gaming enterprises shall be provided for and insisted upon for the citizens of the United States born on Guam. Toward this end, strict citizenship and residency requirements are established for the Commissioners who shall establish the policies and rules of the Guam Casino Gaming Control Commission, it being the belief of the people that those who call Guam home know it best and are most likely to protect the island's people and institutions.

(h) The restriction of gaming to a limited number of hotels affording traditional visitor recreation activities is designed to assure that the existing family-oriented nature and tone of the island's hospitality industry is preserved, and that the casinos licensed pursuant to the provisions of this act are always offered and maintained as an integral element of such hospitality facilities, rather than as an industry unto itself.

(i) To assure the public's confidence and trust in the oversight exercised by the government vis a vis the hotel casino gaming enterprises, the regulatory provisions of this act are designed to impose strict regulation on persons, locations, practices and activities related to the operation of licensed gaming casino. In addition, licensure of a limited number of casino establishments, with the comprehensive law enforcement supervision attendant thereto, is further designed to contribute to the public confidence and trust in the efficacy and integrity of the regulatory process.

(j) Legalized casino gaming in Guam can attain and retain integrity, public confidence and trust, and remain compatible with the general public interest only under such a system of control and regulation as insures, so far as practicable, the exclusion from participation therein of persons with known criminal records, habits or associations, and the exclusion or removal from any positions of authority or responsibility within casino gaming operations of any persons known to be so deficient in business probity, either generally or with specific reference to gaming, as to create or enhance the dangers

8

of unsound, unfair or illegal practices, methods and activities in the conduct of gaming or the carrying on of the business and financial arrangements incidental thereto.

(k) Because the public has a vital interest in casino gaming in Guam and has, through this act, enlarged the opportunities on island for gaming for private gain, participation in casino gaming operations as a licensee or registrant under this act shall be deemed a revocable privilege conditioned upon the proper and continued qualification of the individual licensee or registrant and upon the discharge of the affirmative responsibility of each such licensee or registrant to provide to the regulatory authorities designated by this act any assistance and information necessary to assure that the policies declared by this act are achieved.

(l) Casino gaming operations are especially sensitive and in need of public control and supervision; therefore, it is vital to the interests of the people of this island to prevent entry, directly or indirectly, into such operations of persons who have pursued economic gains in an occupational manner or context which are in violation of the criminal or civil public policies of Guam or of another jurisdiction where they have engaged in the gaming industry. Accordingly, the regulatory and investigatory powers and duties of the Guam Casino Gaming Control Commission and other agencies of the government who shall participate in the enforcement of this act shall be exercised to the fullest extent consistent with law to avoid the entry of undesirable persons into casino gaming operations on Guam.

(m) Because the economic stability of casino gaming operations is in the public interest and competition should help foster such stability, the regulatory powers and duties conferred by this act shall include the power and duty to regulate, control and prevent economic concentration in the casino gaming operations to encourage and preserve competition.

Section 1003. Definitions. The following terms and words shall have the following definitions. In the construction of this Act, the defined words and terms shall be understood in their plain English meaning unless the context of the provision clearly requires a different construction.

(a) "Applicant" — Any person who on his or her own behalf or on behalf of another has applied for permission to engage in any act or activity which is regulated under the provisions of this act.

(b) "Application" — A written request for permission to engage in any act or activity that is regulated under the provisions of this act.

(c) "Attorney" — Any attorney licensed to practice law in Guam or any other jurisdiction, including an employee of a casino licensee. Any attorney not licensed to practice law in Guam and who is not an employee of the federal or a state government may act as an attorney before the Commission only in accordance with the laws of Guam pertaining to pro hac vice admission.

(d) "Authorized game" — Roulette, baccarat, blackjack, poker, craps, big six wheel, slot machines, mahjong, pachinko, minibaccarat, red dog, pai gow, and sic bo; any variations or composites of such games, provided that such variations or composites are found by the Commission suitable for use after an appropriate test or experimental period

9

under such terms and conditions as the Commission may deem appropriate; and any other game which is determined by the Commission to be compatible with the public interest and to be suitable for casino use after such appropriate test or experimental period as the Commission may deem appropriate. "Authorized game" includes gaming tournaments in which players compete against one another in one or more of the games authorized herein or by the Commission or in approved variations or composites thereof if the tournaments are authorized by the Commission.

(e) "Casino" or "casino room" or "licensed casino" — One or more locations or rooms in a casino hotel facility that have been approved by the Commission for the conduct of casino gaming in accordance with the provisions of this act.

(f) "Casino employee" — Any natural person employed in the operation of a licensed casino including, without limitation, boxmen, dealers or croupiers, floormen, machine mechanics, casino security employees, count room personnel, cage personnel, slot machine and slot booth personnel, collection personnel, casino surveillance personnel, and data processing personnel; or any other natural person whose employment duties predominantly involve the maintenance or operation of gaming activity or equipment and assets associated therewith or who, in the judgment of the Commission, is so regularly required to work in a restricted casino area that licensure as a casino employee is appropriate.

(g) "Casino key employee" — Any natural person employed in the operation of a licensed casino in a supervisory capacity or empowered to make discretionary decisions which regulate casino operations, including, without limitation, pit bosses, shift bosses, credit executives, casino cashier supervisors, casino facility managers and assistant managers, and managers or supervisors of casino security employees or any other employees so designated by the Casino Control Commission for reasons consistent with the policies of this act.

(h) "Casino license" — Any license issued pursuant to this act that authorizes the holder thereof to own, operate or manage a casino.

(i) "Casino security employee" — Any natural person employed by a casino licensee or its agent to provide physical security in a casino or restricted casino area. "Casino security employee" shall not include any person who provides physical security solely in any other part of the casino hotel.

(j) "Casino service employee" — Any natural person employed to perform services or duties in a casino restricted casino area but who is not included within the definition of casino employee, casino key employee, or casino security employee.

(k) "Casino Service Industry" — Any form of enterprise which provides casino licensees with goods or services regarding the establishment, development, promotion or maintenance of a casino or the casino gaming industry as a whole which the Commission determines by rule must be licensed.

(l) "Chairman," "Commissioner" or "member" — The chairman and any member of the Guam Casino Gaming Control Commission, respectively.

10

(m) "Complimentary service or item" — A service or item provided at no cost or at a reduced price. The furnishing of a complimentary service or item by a casino licensee shall be deemed to constitute the indirect payment for the service or item by the casino licensee, and shall be valued in an amount based upon the retail price normally charged by the casino licensee for the service or item. The value of a complimentary service or item not normally offered for sale by a casino licensee or provided by a third party on behalf of a casino licensee shall be the cost to the casino licensee of providing the service or item, as determined in accordance with the rules of the Commission.

(n) "Commission" — The Guam Casino Gaming Control Commission.

(o) "Conservator" — A fiduciary appointed pursuant to the Article 10 of this Act.

(p) "Conservatorship action" — An action brought pursuant to the Article 10 of this Act for the appointment of a conservator.

(q) "Contingent casino gaming license" — A casino gaming license that the Commission may reserve for a native Guamanian or a legal entity controlled by native Guamanians who the Commission finds qualified to hold a casino license but who, in order to induce outside investment or expertise to assist in the establishment of a casino hotel, request that issuance of the actual casino license be deferred for up to two (2) years or such additional time as the Commission may allow in order to obtain such outside investment or joint venture participation or expertise. The actual casino gaming license shall not be issued unless the source of the outside investment or expertise is a person or legal entity that the Commission determines is qualified to be licensed as a casino owner, operator or manager.

(r) "Creditor" — The holder of any claim, of whatever character, against a person, whether secured or unsecured, choate or inchoate, liquidated or unliquidated, absolute, fixed or contingent.

(s) "Debt" — Any legal liability or obligation, whether choate or inchoate, liquidated or unliquidated, absolute, fixed or contingent.

(t) "Encumbrance" — A mortgage, security interest, lien or charge of any nature in or upon property.

(u) "Equal employment opportunity" — Equality in opportunity for employment by any person licensed pursuant to the provisions of this act.

(v) "Equity security" — (a) Any voting stock of a corporation, or similar security; (b) any security convertible, with or without consideration, into such a security, or carrying any warrant or right to subscribe to or purchase such a security; (c) any such warrant or right; or (d) any security having a direct or indirect participation in the profits of the issuer.

11

(w) "Establishment" or "casino hotel" or "casino hotel facility" –– A single building, or two or more buildings that are physically connected in a manner deemed appropriate by the Commission, containing an approved hotel and a casino.

(x) "Family" –Spouse or living companion, parents and children of a person who is subject to the licensing or certification provisions of this act.

(y) "Game" --Any banking or percentage game located within the casino played with cards, dice, tiles, dominoes, or any electronic, electrical, or mechanical device or machine for money, property, or any other thing of value.

(z) "Gaming" --The act of participating in a game for money, property, or any other thing of value.

(aa) "Gaming device" or "gaming equipment" --Any electronic, electrical, or mechanical contrivance or machine or other physical object used in connection with gaming or any game.

(bb) "Gross Revenue"--The total of all sums, including checks received by a casino licensee pursuant to Section 6006 of this act, whether collected or not, actually received by a casino licensee from gaming operations, less only the total of all sums paid out to patrons as a result of their success in gaming and a deduction for uncollectible gaming receivables not to exceed the lesser of (i) a reasonable provision for uncollectible patron checks received from gaming operations or (ii) four percent (4%) of the total of all sums including checks, whether collected or not, less the amount paid out as winnings to patrons. For the purposes of this section, any check which is invalid and unenforceable pursuant to Section 6006(f) shall be treated as cash received by the casino licensee from gaming operations.

(cc) "Hearing examiner" --A Commissioner or other person authorized by the Commission to conduct hearings.

(dd) "Holding company" --Any corporation, association, firm, partnership, trust or other form of business organization not a natural person which, directly or indirectly, owns, has the power or right to control, or has the power to vote any significant part of the outstanding voting securities of a corporation which holds or applies for a casino license. For the purpose of this section, in addition to any other reasonable meaning of the words used, an entity is a "holding company" if it indirectly has, holds or owns any such power, right or security through any interest in a subsidiary or successive subsidiaries, however many such subsidiaries may intervene between the holding company and the corporate licensee or applicant.

(ee) "Hotel" or "approved hotel" -- A single building, or two or more buildings which are physically connected in a manner deemed appropriate by the Commission and which are operated as one casino-hotel facility under the provisions of Section 5004 of this act.

(ff) "Institutional investor" --Any retirement fund administered by a public agency for the exclusive benefit of federal, state, or local public employees, including employees of the

12

government of Guam, any investment company registered under the Investment Company Act of 1940 *(15 U.S.C. § 80a-1* et seq.), any collective investment trust organized by banks under Part Nine of the Rules of the Comptroller of the Currency, any closed end investment trust, any chartered or licensed life insurance company or property and casualty insurance company, and banking or other chartered or licensed lending institution, and investment advisor registered under The Investment Advisors Act of 1940 *(15 U.S.C. § 80b-1* et seq.), any combination of the aforementioned entities and such other persons or entities as the Commission may determine for reasons consistent with the policies of this act.

(gg) "Intermediary company" — Any corporation, association, firm, partnership, trust or any other form of business organization other than a natural person which:

(1) Is a holding company with respect to a corporation which holds or applies for a casino license, and

(2) Is a subsidiary with respect to any holding company.

(hh) "Junket" — An arrangement the purpose of which is to induce any person, selected or approved for participation therein on the basis of his ability to satisfy a financial qualification obligation related to his ability or willingness to game or on any other basis related to his propensity to game, to come to a licensed casino hotel for the purpose of gaming and pursuant to which, and as consideration for which, any or all of the cost of transportation, food, lodging, and entertainment for said person is directly or indirectly paid by a casino licensee or employee or agent thereof.

(ii) "Junket enterprise" — Any person, other than the holder of a casino license, who employs or otherwise engages the services of a junket representative in connection with a junket to a licensed casino, regardless of whether or not those activities occur within Guam.

(jj) "Junket representative" — Any natural person who negotiates the terms of, or engages in the referral, procurement or selection of persons who may participate in any junket to a licensed casino, regardless of whether or not those activities occur within Guam.

(kk) "License" — Any license required by this act.

(ll) "License or Registration Fee" — Any money required by law to be paid for the issuance or renewal of a casino license, or any other license or registration required by this act.

(mm) "Licensed casino operation" — Any casino licensed pursuant to the provisions of this act.

(nn) "Licensee" — Any person who is licensed under any of the provisions of this act.

13

(oo) "Living companion" — A person with whom another person shares an intimate domestic relationship, but which has not been recognized under the law of Guam as a marriage or domestic partnership.

(pp) "Native Guamanian" — Any person born on Guam who by virtue of that birth is a citizen of the United States.

(qq) "Operation" — The conduct of gaming as herein defined.

(rr) "Operation certificate" — A certificate issued by the Commission that certifies that permits the operation of a casino that conforms to the requirements of this act and its applicable rules.

(ss) "Party" — The Commission, or any licensee, registrant, or applicant, or any person appearing of record for any licensee, registrant, or applicant in any proceeding before the Commission or in any proceeding for judicial review of any action, decision or order of the Commission.

(tt) "Person" — Any natural person as well as any corporation, association, operation, firm, partnership, trust or other form of business association.

(uu) "Principal employee" — Any employee who, by reason of remuneration or of a management, supervisory or policy-making position or such other criteria as may be established by the Commission by regulation, holds or exercises such authority as shall in the judgment of the Commission be sufficiently related to the operation of a licensee so as to require approval by the Commission in the protection of the public interest.

(vv) "Property" — Real property, tangible and intangible personal property, and rights, claims and franchises of every nature.

(ww) "Publicly traded corporation" — Any corporation or other legal entity, except a natural person, which:

    (1) Has one or more classes of security registered pursuant to section 12 of the Securities Exchange Act of 1934, as amended *(15 U.S.C. § 78l)*, or

    (2) Is an issuer subject to section 15(d) of the Securities Exchange Act of 1934, as amended *(15 U.S.C. § 78(o))*, or

    (3) Has one or more classes of securities traded in any open market in any foreign jurisdiction or regulated pursuant to a statute of any foreign jurisdiction which the Commission determines to be substantially similar to either or both of the aforementioned statutes.

(xx) "Registration" --Any requirement other than one which requires a license as a prerequisite to conduct a particular business as specified by this act.

(yy) "Registrant" --Any person who is registered pursuant to the provisions of this act.

(zz) "Regulated complimentary service account" — An account maintained by a casino licensee on a regular basis which itemizes complimentary services and includes, without limitation, a listing of the cost of junket activities and any other service provided at no cost or reduced price.

(aaa) "Resident" — Any person who occupies a dwelling within Guam, has a present intent to remain within Guam for an indefinite time, and manifests the genuineness of that intent by establishing an ongoing physical presence within Guam together with indicia that his or her presence within Guam is something other than merely transitory in nature.

(bbb) "Respondent" — Any person against whom a complaint has been filed or a written request for information served.

(ccc) "Restricted Casino Areas" — The cashier's cage, the soft count room, the hard count room, the slot cage booths and runway areas, the interior of table game pits, the surveillance room and catwalk areas, the slot machine repair room and any other area specifically designated by the Commission as restricted.

(ddd) "Security" — Any instrument evidencing a direct or indirect beneficial ownership or creditor interest in a corporation, including but not limited to, stock, common and preferred; bonds; mortgages; debentures; security agreements; notes; warrants; options and rights.

(eee) "Slot machine" — Any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object therein, or upon payment of any consideration whatsoever, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash or tokens to be exchanged for cash, or to receive merchandise or any thing of value whatsoever, whether the payoff is made automatically from the machine or in any other manner whatsoever, except that the cash equivalent value of any merchandise or other thing of value shall not be included in the total of all sums paid out as winnings to patrons for purposes of determining gross revenues or be included in determining the payout percentage of any slot machine. The Commission shall promulgate rules defining "cash equivalent value" in order to assure fairness, uniformity and comparability of valuation of slot machine payoffs.

(fff) "State — Any state of the United States, the District of Columbia, Puerto Rico, the U. S. Virgin Islands, American Samoa, the Northern Mariana Islands, and any state associated with the United States in a compact of free association.

(ggg) "Statement of compliance" — A statement by the Commission which may be issued to an applicant indicating satisfactory completion of a particular stage or stages of the license application process, and which states that unless there is a change of any material circumstance pertaining to such particular stage or stages of license application involved in the statement, such applicant has complied with requirements mandated by this act and by the Commission and is therefore approved for license qualification to the stage or stages for which the statement has been issued.

15

(hhh) "Subsidiary" (1) Any corporation, any significant part of whose outstanding equity securities are owned, subject to a power or right of control, or held with power to vote, by a holding company or an intermediary company; or

(2) A significant interest in any firm, association, partnership, trust or other form of business organization, not a natural person, which is owned, subject to a power or right of control, or held with power to vote, by a holding company or an intermediary company.

(iii) "Transfer" — The sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein, or with the possession thereof, or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, payment, pledge, mortgage, lien, encumbrance, gift, security or otherwise. The retention of a security interest in property delivered to a corporation shall be deemed a transfer suffered by such corporation.

(jjj) "United States — When used in a geographical sense, Guam, every state of the United States, the District of Columbia, Puerto Rico, the U. S. Virgin Islands, American Samoa, the Northern Mariana Islands, and any state associated with the United States in a compact of free association.

## Article 2—Establishment and Organization of Guam Casino Gaming Control Commission

Section 2001. Guam Casino Gaming Control Commission: number of Commissioners; and their appointment. There is within the government of Guam an autonomous corporation known as the Guam Casino Gaming Control Commission. The Commission shall be directed by a by a board consisting of five (5) persons who are appointed by the Governor, subject to the advice and consent of the Legislature.

Section 2002. Qualifications of Commissioners. No person shall qualify as a Commissioner unless he or she is a citizen of the United States and has been resident of Guam for at least five (5) years immediately preceding his or her appointment by the Governor. In addition, no person holding any elective or appointed office in or employed by the federal or local government shall be eligible to be a Commissioner until at least two (2) years have elapsed since the person ceased to hold the elective or appointed office or be so employed. No more than three (3) Commissioners may be of the same sex. No person who has been convicted of a felony shall be eligible to be a Commissioner. One of the Commissioners shall be a certified public accountant, a certified fraud examiner or a certified government financial manager.

Section 2003. Terms of Commissioners; officers of the Commission; compensation of Commissioners; removal of Commissioners. (a) Initial appointments. From the first five (5) Commissioners appointed, the Governor shall appoint one person to a term of five (5) years, one person to a term of four (4) years, and three (3) persons to a term of three (3) years each. The Governor shall designate one person to be the Chairman of the Commission. The term of office of each Commissioner shall commence on the first day after his or her appointment has been confirmed by the Legislature and he

16

or she has taken her oath of office. A Commissioner shall continue to hold office until his or her successor is appointed and confirmed, provided, however, if a successor has not been appointed and confirmed by one hundred twenty (120) days after the expiration of the incumbent's term, the position shall be vacant.

(b) Subsequent appointments and term limits. After the initial appointments, each Commissioner shall be appointed for a term of five (5) years, provided, however, that no person shall serve for more than two (2) terms and this shall be regardless of the length of the term of a person's initial appointment.

(c) Filling an appointment caused by a vacancy. An appointment to fill a vacancy on the Commission shall be for the length of the unexpired term of the Commissioner who is replaced.

(d) Term of chairman and replacement of chairman. The Commissioner appointed by the Governor as chairman shall serve in such capacity throughout his or her term. Upon a vacancy in the office of chairman, the Governor may appoint a sitting Commissioner or a replacement Commissioner as chairman.

(e) Chairman chief executive officer. The chairman shall be the chief executive officer of the Commission.

(f) Subordinate officers of Commission. The Commissioners shall elect annually from their number a vice chairman, a treasurer and a secretary. The vice chairman shall be empowered to carry out all of the responsibilities of the chairman during the chairman's disqualification or inability to serve.

(g) Commission appointment a full-time occupation. Each Commissioner shall devote his or her full time to his or her duties of office and no Commissioner shall pursue or engage in any other business, occupation or other gainful employment so long as he or she is a Commissioner.

(h) Compensation and expenses of Commissioners. The Chairman of the Commission shall be paid a salary of one hundred thousand ($100,000) per year. Each of the other Commissioners shall be paid a salary of ninety-five thousand ($95,000) per year. In addition to his or her salary, each Commissioner shall be reimbursed for actual and necessary expenses incurred by him or her in the performance of his or her duties as a Commissioner.

(i) Removal of a Commissioner. A Commissioner may be removed from office for misconduct in office, willful neglect of duty, or other conduct evidencing unfitness or incompetence in his or her office. A proceeding for removal may be instituted by the Attorney General in the Superior Court upon the Attorney General's own motion or upon the motion of a majority of the Commissioners or upon the motion of the Public Auditor. Notwithstanding any other provision of law, any Commissioner or any employee of the Commission shall automatically forfeit his or her office or position upon his or her conviction of any felony.

17

Section 2004. Organization and employees of the Commission. (a) Organizational structure. The Commission may establish, and from time to time alter, the Commission's plan of organization and it may incur expenses within the limits of funds available to it.

(b) Executive Secretary, appointment of; qualifications for appointment; compensation for. The Commission shall appoint an executive secretary who shall serve at its pleasure and shall administer the affairs of the Commission in accordance with the policies established by the Commission. No person shall be appointed executive secretary unless he or she is a citizen of the United States, has been a resident of Guam for not less than five (5) years, is a certified public accountant, a certified fraud examiner or a certified government financial manager or has had at least five (5) years experience in law enforcement administration or in the administration of a state or tribal gaming control commission in the United States. The executive secretary shall be paid a salary of ninety thousand dollars ($90,000) per year.

(c) Other Commission personnel. (i) The Commission may employ such other personnel as it deems necessary. Due to the sensitive nature of the work to be performed by the Commission and the absolute need to assure the integrity of its operations at all times, all employees of the Commission shall be unclassified employees who serve at the pleasure of the Commission. The salary and benefits of the employees shall be set by the Commission, but to the extent consistent with sound management practices, the salaries and benefits established for the employees shall be similar to those of persons performing similar functions in other government agencies or in an equivalent state, territorial or tribal gaming commission. Chapter 10 of Title 4 of the Guam Code Annotated shall not apply to the Commission or its employees. The Commissioners and employees shall be permitted to participate in government of Guam sponsored retirement, health and life insurance programs.

(ii) Attorney for Commission. Notwithstanding the provisions of any other law to the contrary, the Commission may employ an attorney who shall represent the Commission in any proceeding to which it is a party, and who shall render legal advice to the Commission upon its request. No person shall be appointed attorney to the Commission unless he or she is a citizen of the United States, has been a resident of Guam for at least five (5) years, has been admitted to the bar of Guam for at least five (5) years. The Commission attorney shall be paid a salary of ninety thousand dollars ($90,000) per year. The Commission attorney shall devote his or her full time to his or her duties for the Commission and shall not pursue or engage in any other business, occupation or other gainful employment so long as he or she is attorney for the Commission.

(iii) Contractual services authorized in support of Commission's activities. The Commission may contract for the services of other professional, technical and operational personnel and consultants as may be necessary in the performance of its responsibilities under this act. Commissioners and employees of the Commission shall be enrolled in the Government of Guam Retirement Plan and be eligible to participate in the government-sponsored group health, life and accident programs.

18

## Article 3—Control Authority Restrictions

Section 3001. <u>Previous employment and individual assurance standards. (a) Restrictions on pre-employment.</u> No person shall be appointed to or employed by the Commission if, during the three (3) years immediately preceding the appointment or employment, the person held any direct or indirect interest in, or any employment by, any person who is licensed as a casino licensee in Guam or has an application pending before the Commission for a casino license. The bar of the preceding sentence shall not apply to a person who is to be employed in a clerical or custodial position.

(b) <u>Affirmation of no interest to be executed by Commissioners and employees; false affirmation constitutes a felony.</u> Prior to appointment or employment, each Commissioner and each employee of the Commission, shall affirm under penalty of perjury that he or she possesses no interest in any business or organization licensed or regulated by the Commission. Any person who gives a false affirmation shall be guilty of a felony of the third degree.

(c) <u>Financial disclosure requirement for Commissioners, executive secretary and attorney; penalty for false statement.</u> On or before June 1 of each year, each Commissioner and every employee of the Commission, except clerical or custodial personnel, shall file with the Public Auditor of Guam a financial disclosure statement given under penalty of perjury. The statement shall list all of the assets and liabilities, property and business interests, and sources of income of the individual and his or her spouse or living companion. A person who gives a statement that is false in any material aspect shall be guilty of a felony of the third degree.

(d) <u>Continuing duty of Commissioners and all employees to appear and testify.</u> It shall be the duty of each Commissioner and of every employee of the Commission, without exception, and every person who is bound by a contract with the Commission, to appear and testify upon matters directly related to the conduct of his or her office, position or employment before any court, grand jury or the Public Auditor. Any public employee who fails or refuses to so appear and to so testify, after having been informed of his or her duty to appear and testify by the entity seeking such testimony shall be removed from his or her office, position or employment. A person who is bound by a contract with the Commission who fails or refuses to so appear and to testify, after having been informed of his or her duty to appear and testify by the entity seeking such testimony, shall forfeit his or her contract.

(e) <u>Immunity from use of evidence after claim of privilege against self-incrimination; perjury for false swearing.</u> If any Commissioner or employee of the Commission or a person bound to the Commission by a contract, after having been informed of his or her duty to appear and testify and after having claimed the privilege against self-incrimination, testifies before any court, grand jury or the Public Auditor, the testimony and evidence derived from such testimony shall not be used against the person in a subsequent criminal proceeding under the laws of Guam, provided that no Commissioner or employee of the Commission or a person bound to the Commission by a contract shall be exempt from prosecution or punishment for perjury or false swearing committed while so testifying:

19