(f) Removal or termination for commission of a felony. Any Commissioner or employee of the Commission or any person who is bound to the Commission by a contract who admits that he or she has committed a felony relating to his or her employment or touching the administration of his or her office or position or in the obtaining or execution of a contract with the Commission shall be removed from such office, position or employment or forfeit his or her contract with the Commission.

Section 3002. Code of ethics to be promulgated. (a) No later than October 1, 2003, the Commission shall promulgate, pursuant to the Administrative Adjudication Law, Chapter 9, Title 5, Guam Code Annotated, a code of ethics that is modeled upon the Code of Judicial Conduct of the American Bar Association.

(b) The code of ethics shall not be in derogation of the laws of Guam, except that the code may be more restrictive than any law of Guam. The code shall include, but not be limited to, provisions that:

(1) No Commissioner or employee or person bound to the Commission by a contract shall be permitted to game in any establishment licensed by the Commission, except in the course of his or her duties;

(2) No Commissioner or employee or person bound to the Commission by a contract shall act in his or her official capacity in any matter wherein he or she or his or her spouse or living companion has a direct or indirect personal financial interest that might reasonably be expected to impair the person's objectivity or independence of judgment;

(3) No Commissioner or employee or person bound to the Commission by a contract shall act in his or her official capacity in a matter concerning an applicant for licensure or a licensee who is the employer of a spouse, living companion, child, or parent of the Commissioner or employee or person bound to the Commission by a contract when the fact of the employment of such related person might reasonably be expected to impair the person's objectivity and independence of judgment;

(4) No spouse, living companion, child, or parent of a Commissioner or employee shall be employed in any capacity by an applicant for a casino license or a casino licensee, provided, however, that this prohibition shall not apply to a person who is employed in a clerical or custodial capacity;

(5) No Commissioner shall meet with any person, except for any other Commissioner or employee of the Commission or a person bound to the Commission by a contract, to discuss any issues involving any pending or proposed application or any matter whatsoever which may reasonably be expected to come before the Commission for determination unless the meeting or discussion takes place on the business premises of the Commission, provided, however, that Commissioners may meet to consider matters requiring the physical inspection of equipment or premises at the location of the equipment or premises;

20

(6)   A permanent log open to public inspection shall be maintained of the dates, times, places, attendees and subjects discussed pursuant to the meetings permitted in paragraph (5);

(7)   No Commissioner or employee or a person bound to the Commission by a contract shall have any interest, direct or indirect, in any applicant or in any person licensed or regulated by the Commission during his term of office, employment or contract or for such period thereafter as may be prescribed by this act;

(8)   Each Commissioner and employee, including the attorney for the Commission, shall devote his or her entire time and attention to his or her duties and shall not pursue any other business or occupation or other gainful employment, provided, however, clerical and custodial employees may engage in such other gainful employment so long as it shall not interfere with their duties to the Commission and, provided, further, that such employees make known to the Commission in writing the existence of such other gainful employment;

(9)   No Commissioner, employee or person bound to the Commission by a contract shall (a) use his or her position to interfere with or affect the result of an election or a nomination for any federal or local office; (b) directly or indirectly extort, coerce, attempt to extort or coerce, command or advise any person to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes; or (c) take part in any political campaign or the management thereof, provided, however, that nothing herein shall prohibit a person from voting as he or she chooses or from expressing his or her personal opinions on political subjects and candidates, nominees or elected officials.

Section 3003. Post-employment restrictions. (a) Two-year bar. No Commissioner or employee of the Commission or a person bound to the Commission by a contract shall hold any direct or indirect interest in, or be employed by, or represent in any capacity any applicant for or any person licensed or regulated by the Commission for a period of two (2) years following the date on which his or her term on or employment or contract with the Commission ends, provided, however, that this prohibition shall not apply to a person who has been employed in a clerical or custodial capacity.

(b) Exception for reduction in work. Notwithstanding the provisions of paragraph (a), if the employment of a Commission employee or the contract of a person who is bound to the Commission by a contract is terminated as a result of a reduction in the work of the Commission, the affected person may accept employment that would otherwise be prohibited provided that the Commission by its adoption of a written resolution waives the time bar. If the Commission refuses to give its approval, the Commission shall state in writing its basis for the denial.

(c) Bar not applicable in government representation. The bars in subparagraph (a) shall not apply to any person who appears before the Commission as a representative of the government of Guam or the federal government.

(d) Ban on representations by organizations. No partnership, firm or corporation in which a former Commissioner or employee has an interest, nor any partner, officer or

21

employee of any such partnership, firm or corporation, shall make any appearance or representation which is prohibited to the former Commissioner, employee or person that was bound to the Commission by a contract, provided, however, that this prohibition shall not apply to a person who has been employed in a clerical or custodial capacity.

(e) Liability for violations. (1) Violations by licensees. No applicant or person or organization licensed or regulated by the Commission shall employ or offer to employ, or provide, transfer or sell, or offer to provide, transfer or sell any interest, direct or indirect, in any business or activity licensed or registered by the Commission to any person restricted from such transactions by the provisions of this section. A violation of this section shall be a felony of the third degree. In addition, the Commission may impose such administrative penalties as may be further provided by law or regulation.

(2) Violations by former Commissioners, employees or persons bound to the Commission by contract. Any former Commissioner, employee or person bound to the Commission by contract who violates any provision of this section shall be guilty of a felony of the third degree. In addition, the Commission may impose such administrative penalties as may be further provided by law or regulation.

### Article 4 Commission Duties and Powers

Section 4001. General duties and powers. The Commission shall have general responsibility for the implementation of this act, including, without limitation, the responsibility to:

(a) Hear and decide promptly and in reasonable order all license, regulation, registration, certification and permit applications and causes affecting the granting, suspension, revocation, or renewal thereof;

(b) Conduct all hearings pertaining to civil violations of this act or rules promulgated hereunder and conduct investigative hearings concerning the conduct of gaming and gaming operations as well as the development and well-being of the activities controlled by this act;

(c) Promulgate such rules as in its judgment may be necessary to fully implement this act;

(d) Collect all license, regulation and registration fees and taxes imposed by this act and the rules issued pursuant thereto;

(e) Levy and collect penalties for the violation of provisions of this act and the rules promulgated hereunder;

(f) Be present through its inspectors and agents at all times during the operation of any casino for the purpose of certifying the revenue thereof, receiving complaints from the public relating to the conduct of gaming operations, examining records of revenues and procedures, and conducting periodic reviews of operations and facilities for the purpose of evaluating the compliance with appropriate laws and rules of all persons licensed or regulated under this act;

22

(g) Refer, as appropriate, to the Public Auditor for investigation and to the Attorney General for investigation and prosecution, any evidence of a violation of this act or the rules issued pursuant thereto;

(h) Review and rule upon any complaint by a casino licensee regarding any investigation procedures by the Commission's staff which are unnecessarily disruptive of a casino's operation, which complaint shall not be established except upon the production of clear and convincing evidence establishing that the investigative procedures had no reasonable law enforcement purpose and that the procedures were so disruptive as to inhibit unreasonably the casino's operations;

(i) Exercise, through those employees that it designates as peace officers, such investigative powers as are granted by this act;

(j) Sue and be sued; and

(k) Maintain an Internet website containing at a minimum this act, the rules issued pursuant thereto and notice of its meetings and of proposed rules and of orders issued by the Commission.

Section 4002. <u>Commission powers regarding denials and sanctions.</u> The Commission shall assure, to the extent required by this act, that no license, approval, certificate, or permit shall be issued to nor held by, nor shall there be any material involvement, directly or indirectly, with a licensed casino's operation or ownership by unqualified or disqualified persons or persons whose operations are conducted in a manner not conforming with the provisions of this act. For purposes of this section, 'unqualified person' means any person who is found by the Commission to be unqualified pursuant to criteria set forth in Section 4007. In enforcing the provisions of this act, the Commission shall have the power and authority to deny any application; limit or restrict any license, registration, certificate, permit or approval; suspend or revoke any license, registration, certificate, permit or approval; and, impose a penalty on any person licensed, regulated, registered, or previously approved for any cause deemed reasonable by the Commission pursuant to this act and the Commission's rules, except that no such denial, limitation, suspension or revocation shall be issued solely by reason of the fact that an applicant, registrant, or licensee holds an interest in or is associated with any licensed casino enterprise in any other jurisdiction.

Section 4003. <u>Subpoenas, oaths.</u> The Commission shall have the power and authority to issue subpoenas and to compel the attendance of witnesses at any place within Guam, to administer oaths and to require testimony under oath before the Commission in the course of any investigation or hearing conducted under this act. The Commission may serve or cause to be served its process or notices in a manner provided for the service of process and notice in civil actions in accordance with the Guam Rules of Civil Procedure. The Commission shall have the authority to propound written interrogatories and the Commission may appoint hearing examiners, to whom may be delegated the power and authority to administer oaths, issue subpoenas, propound written interrogatories, and require testimony under oath pertaining to any aspect of any gaming activity and casino operations and ownership conducted pursuant to this act.

23

Section 4004.  _Testimonial immunity._  The Commission may order any person to answer a question or questions or produce evidence of any kind and confer immunity as provided in this section, If, in the course of any investigation or hearing conducted under this act, a person refuses to answer a question or produce evidence on the ground that he or she will be exposed to criminal prosecution thereby, then in addition to any other remedies or sanctions provided for by this act, the Commission may, by a majority vote of the Commissioners and after the written approval of the Attorney General, issue an order to answer or to produce evidence with immunity. If, upon issuance of such an order, the person complies therewith, he or she shall be immune from having such responsive answer given by him or her or such responsive evidence produced by him or her, or evidence derived there from, used to expose him or her to criminal prosecution, except that such person may nevertheless be prosecuted for any perjury committed in such answer or in accordance with the order of the Commission. A person who refuses to respond despite a grant of immunity shall be held in contempt of the Commission and the matter shall then be referred to the Superior Court for a determination of the appropriate penalty, which in no case shall exceed twelve (12) months of incarceration at the Department of Corrections.

Section 4005.  _Collection of fees, interest or penalties._  At any time within three (3) years after any amount of fees, interest, or penalties required to be paid pursuant to the provisions of this act shall become due and payable, the Commission may bring a civil action in the Superior Court or any other court of appropriate jurisdiction, in the name of the government of Guam, to collect the delinquent amount, together with penalties and interest. If the amount owed has been concealed from the Commission by fraud, the time to commence an action shall not run until the fraud has been or should have been discovered by the Commission. An action may be brought whether or not the person owing the amount is at such time an applicant, licensee or registrant pursuant to the provisions of this act. If such action is brought in Guam, a writ of attachment may be issued and no bond or affidavit shall be required prior to the issuance thereof. In all actions in Guam, the records of the Commission shall be prima facie evidence of the determination of the fee or tax or the amount of the delinquency.

Each debt that is due and payable as a result of fees, interest or penalties required to be collected pursuant to the provisions of this act or the rules promulgated hereunder, including any amount authorized as compensation or costs incurred because of the necessity of the appointment of a conservator, and each regulatory obligation imposed as a condition upon the issuance or renewal of a casino license which requires the licensee to maintain, as a fiduciary, a fund for a specific regulatory purpose, shall constitute a lien on the real property in Guam owned by or hereafter acquired by the applicant, licensee, or registrant owing such a debt or on whom such an obligation has been imposed.

Section 4006.  _Emergency Rules._  (a) The Commission, in emergency circumstances, may summarily adopt, amend or repeal any regulation pursuant to the Administrative Adjudication Law.

(b) Notwithstanding any other provision of this act or the Administrative Adjudication Law to the contrary, the Commission, after notice provided in accordance with this subsection, may authorize the temporary or interim adoption, amendment or repeal of any rule concerning the conduct of gaming or the use or design of gaming

equipment, or the internal procedures and administrative and accounting controls of a licensee for a period not to exceed one (1) year for the purpose of determining whether such rules should be adopted on a permanent basis. Any temporary rulemaking authorized by this subsection shall be subject to such terms and conditions as the Commission may deem appropriate. Notice of any temporary rulemaking action taken by the Commission pursuant to this subsection shall be distributed to the news media of Guam and published on the Commission's Internet website at least seven days prior to the implementation of the temporary rules. Nothing herein shall be deemed to require the publication in a daily newspaper of the full text of any temporary rule adopted by the Commission or notice of any modification of any temporary rulemaking initiated in accordance with this subsection. The text of any temporary rule adopted by the Commission shall be posted in each casino affected by the temporary rulemaking.

Section 4007. Rule requiring exclusion of certain persons. (a) The Commission, by rule, shall provide for the establishment of a list of persons who are to be excluded or ejected from any licensed casino establishment. Such provisions shall define the standards for exclusion, and shall include standards relating to persons:

(1) Who are career or professional offenders as defined by rules of the Commission; or

(2) Whose presence in a licensed casino hotel would be inimical, in the opinion of the Commission, to the interest of Guam or of licensed gaming therein, or both.

(b) Race, color, creed, national origin or ancestry, citizenship, sex or religion shall not be a reason for placing the name of any person upon such list. Such list shall provide, however, that any alien unlawfully in Guam shall be excluded or ejected from any licensed casino regardless of whether the individual's name has been published on the Commission's list of excluded persons.

(c) The Commission may impose sanctions upon a licensed casino or individual licensee or registrant in accordance with the provisions of this act if such casino or individual licensee or registrant knowingly fails to exclude or eject from the premises of any licensed casino any person placed by the Commission on the list of persons to be excluded or ejected.

· (d) Any list compiled by the Commission of persons to be excluded or ejected shall not be deemed an all-inclusive list, and licensed casino establishments shall have a duty to keep from their premises persons known to them to be within the classifications declared in paragraphs (1) and (2) of subsection (a) and the rules promulgated hereunder, or known to them to be persons whose presence in a licensed casino hotel would be inimical to the interest of Guam or of licensed gaming therein, or both, as defined in standards established by the Commission.*

Section 4009. Exclusion or ejection of certain persons. A casino licensee may exclude or eject from its casino hotel any person who is known to it to fall within the categories of excluded persons under Section 4007(a). Nothing in this section or in any other law of Guam shall limit the right of a casino licensee to exercise its common law right to exclude or eject from its casino hotel any person who

*The number "Section 4008" has been omitted in error. Section 4009 follows on directly from Section 4007.

25

disrupts the operations of its premises, threatens the security of its premises or its occupants, or is disorderly or intoxicated.

Section 4010. Penalties for gaming by prohibited persons. (1) A person who is prohibited from gaming in a licensed casino by this act or any order of the Commission or a court of competent jurisdiction shall not collect, in any manner or proceeding, any winnings or recover any losses arising as a result of any prohibited gaming activity.

(b) For the purposes this act, any gaming activity in a licensed casino which results in a prohibited person obtaining any money or thing of value from, or being owed any money or thing of value by, the casino shall be considered, solely for purposes of this section, to be a fully executed gaming transaction.

(c) In addition to any other penalty provided by law, any money or thing of value which has been obtained by, or is owed to, any prohibited person by a licensed casino as a result of wagers made by a prohibited person shall be subject to forfeiture by order of the Commission, following notice to the prohibited person and an opportunity to be heard. If the Commission orders a forfeiture, one-half shall be deposited into the General Fund for appropriation by the Legislature to the Department of Health and Social Services and/or the Department of Mental Health to provide funds for compulsive gaming treatment and prevention programs and the remaining one-half shall be deposited into the Guam Casino Gaming Control Commission Fund established by Section 11004.

Section 4011. Commission reports and recommendations; annual audit. (a) The Commission shall carry on a continuous study of the operation and administration of casino gaming control laws which may be in effect in other jurisdictions, literature on this subject which may from time to time become available, federal laws which may affect the operation of casino gaming in Guam, and the reaction of Guam's residents to existing and potential features or dangers of casino gaming under this act. It shall seek to ascertain any defects in this act or in the rules and rules issued hereunder, formulating recommendations for changes in this act to prevent abuses thereof, guarding against the use of this act as a cloak for the carrying on of illegal gaming or other criminal activities, and insuring that this act and the rules and rules shall be in such form and be so administered as to serve the true purposes of this act. The Commission shall make to the Governor, the Legislature, the Public Auditor and the Attorney General an annual report of all revenues, expenses and disbursements, and shall include therein such recommendations for changes in this act as the Commission deems necessary or desirable. The Commission shall report immediately to the Governor and the Legislature any matters which in its judgment require immediate changes in the laws of Guam in order to prevent abuses and evasions of this act or of rules and rules promulgated hereunder, or to rectify undesirable conditions in connection with the operation and regulation of casino gaming.

(b) The Public Auditor shall audit the finances and operations of the Commission in accordance with the provisions of Chapter 19 of Title 1 of the Guam Code Annotated. The cost of any audit performed by or caused to be performed by the Public Auditor shall be borne by the Commission.

Section 4012. Meetings and quorum. (a) Meetings of the Commission shall be held at the call of the chairman or at the call of three Commissioners.

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 7 of 45

(b) The Commission shall be subject to the provisions of the Open Government Law set out at Chapter 8 of Title 5 of the Guam Code Annotated., provided, however, the Commission may hold executive sessions with the Public Auditor, the Attorney General, the Chief of the Guam Police Department, or federal law enforcement officials to review or discuss matters within the purview of the Commission which may pose a threat to public health, safety or welfare. Such Commission employees and consultants as the Commission deems necessary to be present may attend such meetings. All records of such meetings may be sealed for so long as the Commission deems necessary to protect the public health, safety or welfare, provided, however that the Governor, any Commissioner, or any member of the Legislature may petition the Superior Court to review in camera the records of such a meeting or meetings to determine whether the records should remain sealed or be made public. Upon appeal of the decision of the Superior Court in such a matter, the decision of the Superior Court shall be stayed pending the decision of the Supreme Court. Notice of such meetings shall be given as for any other meeting, except that the subject matter of the meeting need not be included in the notice.

(c) With the exception of a meeting called pursuant to paragraph (b), the Commission shall take all necessary steps to ensure that all interested persons are given adequate notice of Commission meetings, and the agenda of such meetings, through notice given to media regularly engaged in Guam in the dissemination of information and by publication of the information on the Commission's Internet website.

(d) A majority of the full Commission shall determine any action of the Commission.

Section 4013. Minutes and records. (a) The Commission shall keep a record of all proceedings held at all open meetings of the Commission. A verbatim transcript of those proceedings shall be prepared by the Commission upon the request of any Commissioner or upon the request of any other person and the payment by that person of the costs of preparation. A copy of a transcript shall be made available to any person upon request and payment of the costs of preparing the copy.

A true copy of the minutes of all open meetings of the Commission and a certified copy of any rule adopted by the Commission shall be forthwith delivered to the Governor, the Speaker of the Legislature, the Public Auditor and the Attorney General and published on the Commission's Internet website.

The record of any meeting held pursuant to Section 4012(b) shall be made public only upon a vote of a majority of the Commissioners or upon the order of the Superior Court.

(b) The Commission shall keep and maintain a list of all applicants for licenses and registrations together with a record of all actions taken with respect to such applicants, which file and record shall be open to public inspection; provided, however, that the foregoing information regarding any applicant whose license or registration has been denied, revoked, or not renewed shall be removed from such list after five years from the date of such action.

(c) The Commission shall maintain such other files and records as it may determine to be necessary and appropriate.

27

(d) Except as provided in subsection (h) of this section, all information and data required by the Commission to be furnished hereunder, or which may otherwise be obtained, relative to the internal controls imposed by this act or rules issued pursuant thereto, relative to the earnings or revenue of any applicant, registrant, or licensee shall be kept confidential and shall not be revealed in whole or in part except in the course of the necessary administration of this act, or upon the lawful order of a court of competent jurisdiction, or, with the approval of the Attorney General, to a duly authorized law enforcement agency or the Public Auditor.

(e) All information and data pertaining to an applicant's criminal record, family, and background furnished to or obtained by the Commission from any source shall be kept confidential and shall be withheld in whole or in part, except that any information shall be released upon the lawful order of a court of competent jurisdiction or, with the approval of the Attorney General, to a duly authorized law enforcement agency or the Public Auditor.

(f) Files, records, reports and other information in the possession of the Department of Revenue and Taxation pertaining to licensees and that is not restricted as to its distribution by federal law shall be made available to the Commission as may be necessary to the effective administration of this act.

(g) The following information to be reported periodically to the Commission by a casino licensee shall not be considered confidential and shall be available for public inspection:

(1) A licensee's gross revenue from all authorized games;

(2) (a) The dollar amount of patron checks initially accepted by a licensee, (b) the dollar amount of patron checks deposited to the licensee's bank account, (c) the dollar amount of such checks initially dishonored by the bank and returned to the licensee as "uncollected," and (d) the dollar amount ultimately uncollected after all reasonable efforts;

(3) The amount of gross revenue tax actually paid;

(4) A list of the premises and the nature of improvements, costs thereof and the payees for all such improvements, which were required to be made by the casino owner as a condition of the granting of the casino license; and

(5) All quarterly and annual financial statements required to be submitted to the Commission.

(6) Nothing in this subsection shall be construed to limit access by the public to those forms and documents required to be filed pursuant to Article 11 of this act.

Section 4014.  Appointment of peace officers.  Pursuant to the power granted to the Commission by Section 4001(i), the Commissioners may appoint employees peace officers and as peace officers those employees shall have the power to: (a) promptly and in reasonable order investigate all applications, complaints made against persons licensed or regulated by this act or persons making an application for any benefit under this act, enforce the provisions of this act and all rules promulgated hereunder, and prosecute before the Commission all proceedings for violations of this act or any rules promulgated hereunder; and

28

(b) Provide the Commission with all information necessary for all action pertaining to licensing and for all proceedings involving enforcement of the provisions of this act or any rules promulgated hereunder.

Section 4015. Specific duties of peace officers. The Commission's peace officer employees shall: (a) Investigate the qualifications of each applicant before any license, certificate, or permit is issued to any person;

(b) Investigate the circumstances surrounding any act or transaction for which Commission approval is required;

(c) Investigate violations of this act and rules promulgated hereunder and refer to the Attorney General for prosecution all criminal violations of this act.;

(d) Conduct continuing reviews of casino operations through on-site observation and other reasonable means to assure compliance with this act and rules promulgated hereunder;

(e) Receive and take appropriate action on any referral from the Commission relating to any evidence of a violation of this act or the rules promulgated hereunder;

(f) Cooperate and exchange with appropriate law enforcement agencies both within and without the United States criminal history record information for use in considering applicants for any license or registration issued pursuant to the provisions of this act;

(g) Assist the Public Auditor in audits of casino operations at such times, under such circumstances, and to such extent as the Commission or Public Auditor shall determine, including reviews of accounting, administrative and financial records, and management control systems, procedures and records utilized by a casino licensee;

(h) Be entitled to request and receive information, materials and any other data from any licensee or registrant, or applicant for a license or registration under this act.

Section 4016. Cooperation by licensees, registrants or applicants. Each licensee or registrant, or applicant for a license or registration under this act shall cooperate with the Commission's peace officer employees and the Public Auditor in the performance of their duties.

Section 4017. Inspection, seizure and warrants. (a) The peace officer employees, upon approval of the Commission's Attorney, without notice and without warrant, shall have the authority to:

(1) Inspect and examine all premises wherein casino gaming is conducted; or gaming devices or equipment are manufactured, sold, distributed, or serviced; or wherein any records of such activities are prepared or maintained;

(2) Inspect all equipment and supplies in, about, upon or around such premises;

(3) Seize summarily and remove from such premises and impound any such equipment or supplies for the purposes of examination and inspection;

(4) Inspect, examine and audit all books, records, and documents pertaining to a casino licensee's operation;

29

(5) Seize, impound or assume physical control of any book, record, ledger, game, device, cash box and its contents, counting room or its equipment, or casino operations; and

(6) Inspect the person, and personal effects present in a casino facility licensed under this act, of any holder of a license or registration issued pursuant to this act while that person is present in a licensed casino facility.

(b) The provisions of subsection (a) shall in no way be deemed to limit warrantless inspections except in accordance with constitutional requirements.

(c) To effectuate further the purposes of this act, the peace officer employees may obtain administrative warrants for the inspection and seizure of any property possessed, controlled, bailed or otherwise held by any applicant, licensee, registrant, intermediary company, or holding company.

(d) Issuance and execution of warrants for administrative inspection shall be in accordance with the following:

(1) Any judge of the Superior Court or the Supreme Court may, upon proper oath or affirmation showing probable cause, issue warrants for the purpose of conducting administrative inspections authorized by this act or rules hereunder and seizures of property appropriate to such inspections. For the purposes of this section, "probable cause" means a valid public interest in the effective enforcement of the act or rules sufficient to justify administrative inspection of the area, premises, building or conveyance in the circumstances specified in the application for the warrant.

(2) A warrant shall issue only upon an affidavit of a person duly designated and having knowledge of the facts alleged, sworn to before the judge and establishing the grounds for issuing the warrant. If the judge is satisfied that grounds for the application exist or that there is probable cause to believe they exist, he or she shall issue a warrant identifying the area, premises, building, or conveyance to be inspected; the purpose of such inspection; and, where appropriate, the type of property to be inspected, if any. The warrant shall identify the item or types of property to be seized, if any. The warrant shall be directed to a person authorized to execute it. The warrant shall state the grounds for its issuance and the name of the person or persons whose affidavit has been taken in support thereof. It shall command the person to whom it is directed to inspect the area, premises, building, or conveyance identified for the purpose specified, and where appropriate, shall direct the seizure of the property specified. The warrant shall direct, except in emergent circumstances, that it be served during normal business hours of the licensee. It shall designate the judge to whom it shall be returned.

(3) A warrant issued pursuant to this section must be executed and returned within ten (10) days of its date. If property is seized pursuant to a warrant, the person executing the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken. The return of the warrant shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the person executing the warrant and of the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the person executing the warrant. The clerk of the court, upon request, shall deliver a copy of the

30

inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

(4) The judge who has issued a warrant under this section shall attach to the warrant a copy of the return and all papers filed in connection therewith and shall cause them to be filed with the court which issued such warrant.

(e) The peace officer employees are authorized to make administrative inspections to check for compliance by any applicant, licensee, registrant, intermediary company or holding company with the provisions of this act or rules promulgated hereunder, and to investigate any violations thereof.

(f) This section shall not be construed to prevent entries and administrative inspections, including seizures of property, without a warrant:

(1) With the consent of the owner, operator or agent in charge of the controlled premises;

(2) In situations presenting imminent danger to health or safety;

(3) In situations involving inspection of conveyances where there is reasonable cause to believe that the mobility of the conveyance makes it impractical to obtain a warrant or in any other exceptional or emergent circumstance where time or opportunity to apply for a warrant is lacking;

(4) In accordance with the provisions of this act; or

(5) In all other situations where a warrant is not constitutionally required.

Section 4013. Powers not enumerated. The Commission may exercise any proper power or authority necessary to perform the duties assigned to it by law, and no specific enumeration of powers in this act shall be read to limit the authority of the Commission to administer this act.

## Article 5—Licensing

Section 5001. General provisions. (a) Limit on number of casino licenses. No more than ten (10) casino licenses shall be issued pursuant to this act and no license shall be issued except to operate a casino in an approved hotel.

(b) Affirmative responsibility of applicants and licensees. It shall be the affirmative responsibility of each applicant and licensee to establish by clear and convincing evidence the individual qualifications that are requisite for the obtaining of a license, and for a casino license the qualifications of each person who is required to be qualified under this act as well as the qualifications of the facility in which the casino is to be located.

(c) Any applicant, licensee, registrant, or any other person who must be qualified pursuant to this act shall provide all information required by this act and the rules issued pursuant thereto and satisfy all requests for information pertaining to qualification and in the form specified by the Commission. All applicants, registrants, and licensees shall waive liability as to the government of Guam, and its instrumentalities and agents, for any damages resulting from any disclosure or publication in any manner, other than a willfully unlawful disclosure or publication, of any material or information acquired during inquiries, investigations or hearings.

31

(d) All applicants, licensees, registrants, intermediary companies, and holding companies shall consent to inspections, searches and seizures and the supplying of individual photographs, handwriting and voice exemplars and eye scans as authorized by this act and rules promulgated hereunder.

(e) All applicants, licensees, registrants, and any other person who shall be qualified pursuant to this act shall have the continuing duty to provide any assistance or information required by the Commission, and to cooperate in any inquiry or investigation or hearing conducted by the Commission. If, upon issuance of a formal request to answer or produce information, evidence or testimony, an applicant, licensee, registrant, or any other person who is required to be qualified pursuant to this act refuses to comply, the application, license, registration or qualification of such person may be denied or revoked by the Commission.

(f) No applicant or licensee shall give or provide, offer to give or provide, directly or indirectly, any compensation or reward or any percentage or share of the money or property played or received through gaming, except as authorized by this act, in consideration for obtaining any license, authorization, permission or privilege to participate in any way in gaming operations.

(g) All licensees, registrants, and persons required to be qualified under this act, and all persons employed by a casino service industry licensed pursuant to this act, shall have a duty to inform the Commission of any action that they believe would constitute a violation of this act. No applicant, licensee or registrant shall discriminate against any person who supplies information to the Commission pursuant to this section.

(h) Any person who must be qualified pursuant to this act in order to hold the securities of a casino licensee or any holding or intermediary company of a casino licensee may apply for qualification status prior to the acquisition of any such securities.

(i) The Commission may establish by rule reasonable fees to pay for the cost of all investigations and proceedings necessitated in the processing of any application for any benefit under this act.

Section 5002. Statement of compliance. (a) (1) The Commission, in its discretion, may issue a statement of compliance to an applicant for any license or for qualification status under this act at any time the Commission is satisfied that the applicant has established by clear and convincing evidence that one or more particular eligibility criteria have been satisfied by an applicant. The applicant shall request the statement of compliance by filing a petition with the Commission. Before the Commission refers a petition for investigation, the Commission may require the applicant to establish to the satisfaction of the Commission that the applicant actually intends, if found qualified, to engage in the business or activity that would require the issuance of the license or the determination of qualification status.

(2) Any person who must be qualified pursuant to this act in order to hold the securities of a casino licensee or any holding or intermediary company of a casino licensee may request, prior to the acquisition of any such securities, a determination by the Commission that the person is qualified to hold such securities. Any request for the issuance of such a statement shall be initiated by the person filing a petition with the Commission in which the person shall be required to establish that there

32

is a reasonable likelihood that, if qualified, the person will obtain and hold the securities of a casino licensee or any holding or intermediary company thereof to such extent as to require the qualification of the person. If the Commission finds that this reasonable likelihood exists, and if the Commission is satisfied that the qualifications of the person have been established by clear and convincing evidence, the Commission, in its discretion, may issue a statement that the person is qualified to hold such securities. Any person who requests a statement pursuant to this paragraph shall be subject to the provisions of Section 5001 and shall pay for the costs of all investigations and proceedings in relation to the request unless the person provides to the Commission an agreement with one or more casino licensees which states that the licensee or licensees will pay those costs.

(b) Any statement of compliance shall specify:

(1) The particular eligibility criterion satisfied by the applicant or person;

(2) The date on which the Commission made its determination;

(3) The continuing obligation of the applicant or person to file any information required by the Commission as part of any application for a license or qualification status, including information related to the eligibility criterion for which the statement of compliance was issued; and

(4) The obligation of the applicant or person to reestablish its satisfaction of the eligibility criterion should there be a change in any material fact or circumstance that is relevant to the eligibility criterion for which the statement of compliance was issued.

(c) A statement of compliance certifying satisfaction of the requirements of Section 5005 with respect to a specific casino hotel proposal submitted by an eligible applicant may be accompanied by a written commitment from the Commission that a casino license shall be reserved for a period not to exceed two (2) years or within such additional time period as the Commission, upon a showing of good cause therefor, may establish and shall be issued to such eligible applicant with respect to such proposal provided that such applicant as of the date of the statement (1) complies in all respects with the provisions of this act, (2) qualifies for a casino license within a period not to exceed two (2) years of the date of such commitment or within such additional time period as the Commission may allow, and (3) complies with such other conditions as the Commission shall impose. The Commission may revoke such reservation at any time it finds that the applicant is disqualified from receiving or holding a casino license or has failed to comply with any conditions imposed by the Commission. Such reservation shall be automatically revoked if the applicant does not qualify for a casino license within the period of such commitment. No license other than a casino license shall be reserved by the Commission.

(d) In lieu of a statement of compliance, in the case of a native Guamanian or a legal entity controlled by native Guamanians, the Commission may issue a contingent casino gaming license as defined by Section 1003(q). The purpose of such contingent casino gaming license is to assure that native Guamanians shall be afforded a realistic opportunity to participate as investors, owners, operators or managers of casino hotels with the assistance of such outside investment or expertise as may be desirable to assure the success of the venture.

33

(e) Any statement of compliance or contingent casino gaming license issued pursuant to this section shall be withdrawn by the Commission if:

      (1) The applicant or person otherwise fails to satisfy the standards for licensure or qualification;

      (2) The applicant or person fails to comply with any condition imposed by the Commission; or

      (3) The Commission finds just cause to revoke the statement of compliance for any other reason.

Section 5003. <u>Casino license; eligibility for.</u> (a) No casino shall operate unless all necessary licenses and approvals therefor have been obtained in accordance with law.

(b) Only the following persons shall be eligible to hold a casino license; and, unless otherwise determined by the Commission in accordance with subsection (c) of this section, each of the following persons shall be required to hold a casino license prior to the operation of a casino in the casino hotel for which the casino license has been applied:

      (1) Any person who either owns an approved casino hotel or owns or has a contract to purchase or construct a casino hotel which in the judgment of the Commission can become an approved casino hotel within two (2) years or within such additional time as the Commission, upon a showing of good cause, may allow;

      (2) Any person who, whether as lessor or lessee, either leases an approved casino hotel or leases or has an agreement to lease a casino hotel which in the judgment of the Commission can become an approved casino hotel within two (2) years or within such additional time period as the Commission, upon a showing of good cause, may allow;

      (3) Any person who has a written agreement with a casino licensee or the holder of a contingent casino gaming license or with the holder of a statement of compliance that includes a reservation for a license for the complete management of a casino; and

      (4) Any other person who has control over either an approved casino hotel or the land hereunder or the operation of a casino.

(c) Prior to the operation of a casino every agreement to lease an approved casino hotel or the land hereunder and every agreement to manage the casino shall be in writing and filed with the Commission. No such agreement shall be effective unless expressly approved by the Commission. The Commission may require that any such agreement include within its terms any provision reasonably necessary to best accomplish the policies of this act.

(d) The Commission may require that any person or persons who apply for a casino license organize into such form or forms of business association as the Commission shall deem necessary or desirable in the circumstances to carry out the policies of this act;

(e) As to agreements to lease an approved casino hotel or the land thereunder, unless it expressly and by formal vote for good cause determines otherwise, the

Commission shall require that the agreement include within its terms a buy-out provision conferring upon the casino licensee-lessee who controls the operation of the approved casino hotel the absolute right to purchase for an expressly set forth fixed sum the entire interest of the lessor or any person associated with the lessor in the approved casino hotel or the land thereunder in the event that said lessor or said person associated with the lessor is found by the Commission to be unsuitable to be associated with a casino enterprise;

(f) The Commission shall not permit an agreement for the leasing of an approved casino hotel or the land thereunder to provide for the payment of an interest, percentage or share of money derived from casino gaming activity or of revenues or profits of the casino unless the party receiving payment of such interest, percentage or share is a party to the approved lease agreement, each party to the lease agreement holds either a casino license or casino service industry license and unless the agreement conforms in other respects to the provisions of paragraph (d) above;

(g) As to agreements for the management of a casino, the Commission shall require that each party thereto hold a casino license, that the party thereto who is to manage the casino gaming operations own at least ten percent (10%) of all outstanding equity securities of any casino licensee or of any eligible applicant for a casino license if the said licensee or applicant is a corporation and the ownership of an equivalent interest in any casino licensee or in any eligible applicant for a casino license if the same is not a corporation, and that such an agreement be for the complete management of all casino space in the casino hotel, provide for the sole and unrestricted power to direct the casino gaming operations of the casino hotel which is the subject of the agreement, and be for such a term as to assure reasonable continuity, stability and independence in the management of the casino gaming operations;

(h) The Commission may permit an agreement for the management of a casino to provide for the payment to the managing party of an interest, percentage or share of money derived from gaming at all authorized games or derived from casino gaming activity or of revenues or profits of casino gaming operations; and

(i) As to agreements to lease an approved casino hotel or the land there under, agreements to jointly own an approved casino hotel or the land there under and agreements for the management of casino gaming operations, the Commission shall require that each party thereto, except for the government of Guam or any political subdivision or any agency or instrumentality thereof, shall be jointly and severally liable for all acts, omissions and violations of this act by any party thereto regardless of actual knowledge of such act, omission or violation and notwithstanding any provision in such agreement to the contrary.

(j) No corporation shall be eligible to apply for a casino license unless:

(1) The corporation is incorporated in Guam, although such corporation may be a wholly or partially owned subsidiary of a corporation that is organized pursuant to the laws of another state of the United States or of a foreign country;

(2) The corporation maintains an office of the corporation in the casino hotel licensed or to be licensed;

(3) The corporation complies with all the requirements of the laws of the Guam pertaining to corporations;

35

(4) The corporation maintains a ledger in the principal office of the corporation in Guam which shall at all times reflect the current ownership of every class of security issued by the corporation and shall be available for inspection by the Commission at all reasonable times without notice;

(5) The corporation maintains all operating accounts required by the Commission in a bank or banks in Guam;

(6) The corporation states in its articles of incorporation that a purpose for which it is organized to conduct casino gaming and further includes in the articles all provisions required by this act, the rules issued pursuant thereto or by order of the Commission;

(7) The corporation, if it is not a publicly traded corporation, files with the Commission such adopted corporate charter provisions as may be necessary to establish the right of prior approval by the Commission with regard to transfers of securities, shares, and other interests in the applicant corporation; and, if it is a publicly traded corporation, provides in its corporate charter that any securities of such corporation are held subject to the condition that if a holder thereof is found to be disqualified by the Commission pursuant to the provisions of this act, such holder shall dispose of his interest in the corporation;

(8) The corporation, if it is not a publicly traded corporation, establishes to the satisfaction of the Commission that appropriate charter provisions create the absolute right of such non-publicly traded corporations and companies to repurchase at the market price or the purchase price, whichever is the lesser, any security, share or other interest in the corporation in the event that the Commission disapproves a transfer in accordance with the provisions of this act;

(9) Any publicly traded holding, intermediary, or subsidiary company of the corporation, whether the corporation is publicly traded or not, contains in its corporate charter the same provisions required under paragraph (7) for a publicly traded corporation to be eligible to apply for a casino license; and

(10) Any non-publicly traded holding, intermediary or subsidiary company of the corporation, whether the corporation is publicly traded or not, establishes to the satisfaction of the Commission that its charter provisions are the same as those required under paragraphs (7) and (8) for a non-publicly traded corporation to be eligible to apply for a casino license. The provisions of this subsection shall apply with the same force and effect with regard to casino license applications and casino licensees that have a legal existence that is other than corporate to the extent to which it is appropriate.

(k) No person shall be issued or be the holder of more than two casino licenses. For the purposes of this subsection a person shall be considered the holder of a casino license if such license is held by any holding, intermediary or subsidiary company thereof, or by any officer, director, casino key employee or principal employee of such person, or of any holding, intermediary or subsidiary company thereof.

Section 5004. Approved hotel. (a) For the purposes of this act an approved hotel is a single building or two or more buildings which are physically connected in a manner deemed appropriate by the Commission and which is operated as one casino-hotel facility under a license granted by the Commission. An approved hotel must have not less than the number of rooms specified hereafter used for providing guests or visitors overnight accommodations. In no event shall the only access to an approved hotel be through a

36

casino. In addition, an approved hotel must have a twenty-four (24) hour public food service facility capable of seating not fewer than sixty (60) persons, recreation facilities, including a swimming pool and a children's enclosed recreation area that is available to guests from 10 a.m. until 6 p.m. daily and that is supervised by qualified hotel personnel.

(b) The following classes of approved hotels are established and must conform to the following space standards:

| Class | Required Guest Rooms | Required Casino Area |
|-------|---------------------|---------------------|
| A | Not less than 100 | Not more than 25,000 square feet |
| AA | Not less than 300 | Not more than 50,000 square feet |
| AAA | Not less than 500 | Not more than 75,000 square feet |
| AAAA | Not less than 700 | Not more than 100,000 square feet |

(c) Once a hotel is initially approved, the Commission may permit it to change its category, providing that the hotel complies with the space standards of the class to which it wishes to move and such other conditions that the Commission may determine are reasonably necessary to protect the island's people, its economy and its ecological environment.

(d) The Commission may permit an approved hotel to deviate from its space requirements for a reasonable time if the Commission finds that such deviation is warranted in order that the approved hotel can be rehabilitated, renovated or altered.

(e) The Commission shall not impose any unreasonable criteria or requirements regarding the contents of the approved hotel in addition to the criteria and requirements expressly specified in this act, provided, however, that the Commission shall be authorized to require each casino licensee to establish and maintain an approved hotel which is in all respects a facility of good quality which will help develop and improve Guam's international reputation as a resort, tourist and convention destination.

Section 5005. Casino license; applicant requirements. Any applicant for a casino license must produce information, documentation and assurances that establish to the satisfaction of the Commission that:

(a) The financial background and resources and the financial stability, integrity and responsibility of the applicant, including but not limited to bank references, business and personal income and disbursement schedules, tax returns and other reports filed with governmental agencies, and business and personal accounting and check records and ledgers. In addition, each applicant, in writing, shall authorize the Commission to exam all bank accounts and records as the Commission deems necessary;

(b) The integrity of all financial backers, investors, mortgagees, bondholders, and holders of indentures, notes or other evidences of indebtedness, either in effect or proposed, which bears any relation to the casino proposal submitted by the applicant or applicants; provided, however, that this section shall not apply to banking or other licensed lending institutions and institutional investors. Any such banking or licensed lending institution or institutional investor, however, shall produce for the Commission

37

upon request any document or information that bears any relation to the casino proposal submitted by the applicant or applicants. The integrity of financial sources shall be judged upon the same standards as the applicant. In addition, the applicant shall produce whatever information, documentation or assurances as may be required to establish by clear and convincing evidence the adequacy of financial resources both as to the completion of the casino proposal and the operation of the casino;

(c) The applicant's good character, honesty and integrity. Such information shall include, without limitation, information pertaining to family, habits, character, reputation, criminal and arrest record, business activities, financial affairs, and business, professional and personal associates, covering at least the ten (10) years immediately preceding the filing of the application. Each applicant shall notify the Commission of any civil judgments obtained against any applicant pertaining to antitrust or security regulation laws of the federal government, of Guam or of any state or any other jurisdiction, province or country. In addition, each applicant shall produce letters of reference from law enforcement agencies having jurisdiction in the applicant's place of residence and principal place of business, which letters of reference shall indicate that such law enforcement agencies do not have any pertinent information concerning the applicant, or if such law enforcement agency does have information pertaining to the applicant, shall specify what the information is. If the applicant has conducted gaming operations in a jurisdiction which permits such activity, the applicant shall produce letters of reference from the gaming or casino enforcement or control agency which shall specify the experiences of such agency with the applicant, his or her associates, and his or her gaming operation; provided, however, that if no such letters are received within six (6) months of the request therefor, the applicant may submit a statement under oath that he is or was during the period such activities were conducted in good standing with such gaming or casino enforcement or control agency.

(d) The applicant has sufficient business ability and casino experience as to establish the likelihood of creation and maintenance of a successful, efficient casino operation. The applicant shall produce the names of all proposed casino key employees as they become known and a description of their respective or proposed responsibilities, and a full description of security systems and management controls proposed for the casino and related facilities.

(e) Subject to the Commission's powers under Section 5004(e), the suitability of the hotel casino and related facilities to its proposed location. Each applicant shall submit an impact statement which shall include, without limitation, architectural and site plans which establish that the proposed facilities comply in all respects with the requirements of this act and the requirements of zoning and planning laws and regulations of Guam; a market impact study which analyzes the adequacy of the patron market and the effect of the proposal on such market and on the existing casino facilities licensed under this act; and an analysis of the effect of the proposal on the overall economic and competitive conditions of Guam.

Section 5006. Additional requirements. (a) In addition to other information required by this act, a corporation applying for a casino license shall provide the following information:

(1) The organization, financial structure and nature of all businesses operated by the corporation; the names and personal employment and criminal histories,

38

if any, of all officers, directors and principal employees of the corporation; the names of all holding, intermediary and subsidiary companies of the corporation; and the organization, financial structure and nature of all businesses operated by such of its holding, intermediary and subsidiary companies as the Commission may require, including names and personal employment and criminal histories, if any, of such officers, directors and principal employees of such corporations and companies as the Commission may require;

(2) The rights and privileges acquired by the holders of different classes of authorized securities of such corporations and companies as the Commission may require, including the names, addresses and amounts held by all holders of such securities;

(3) The terms upon which securities have been or are to be offered;

(4) The terms and conditions of all outstanding loans, mortgages, trust deeds, pledges or any other indebtedness or security devices utilized by the corporation;

(5) The extent of the equity security holding in the corporation of all officers, directors and underwriters, and their remuneration in the form of salary, wages, fees or otherwise;

(6) Names of persons other than directors and officers who occupy positions specified by the Commission or whose compensation exceeds an amount determined by the Commission, and the amount of their compensation;

(7) A description of all bonus and profit-sharing arrangements;

(8) Copies of all management and service contracts; and

(9) A listing of stock options existing or to be created.

(b) If a corporation applying for a casino license is, or if a corporation holding a casino license is to become, a subsidiary, each holding company and each intermediary company with respect thereto must, as a condition of the said subsidiary acquiring or retaining such license, as the case may be:

(1) Qualify to do business in Guam; and

(2) If it is a corporation, register with the Commission and furnish the Commission with all the information the Commission may require; or

(3) If it is not a corporation, register with the Commission and furnish the Commission with such information as the Commission may require.

(c) No corporation shall be eligible to hold a casino license unless each officer; each director; each person who directly or indirectly holds any beneficial interest or ownership of the securities issued by the corporation; any person who in the opinion of the Commission has the ability to control the corporation or elect a majority of the board of directors of that corporation, other than a banking or other licensed lending institution which makes a loan or holds a mortgage or other lien acquired in the ordinary course of business; each principal employee; and any lender, underwriter, agent, employee of the corporation, or other person whom the Commission may consider appropriate for approval or qualification would, but for residence, individually be qualified for approval as a casino key employee pursuant to the provisions of this act.

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 20 of 45

(d) No corporation which is a subsidiary shall be eligible to receive or hold a casino license unless each holding and intermediary company with respect thereto:

(1) If it is a corporation, shall comply with the provisions of subsection (c) of this section as if said holding or intermediary company were itself applying for a casino license; provided, however, that the Commission may waive compliance with the provisions of subsection (c) hereof on the part of a publicly-traded corporation which is a holding company as to any officer, director, lender, underwriter, agent or employee thereof, or person directly or indirectly holding a beneficial interest or ownership of the securities of such corporation, where the Commission is satisfied that such officer, director, lender, underwriter, agent or employee is not significantly involved in the activities of the corporate licensee, and in the case of security holders, does not have the ability to control the publicly-traded corporation or elect one or more directors thereof; or

(2) If it is not a corporation, shall comply with the provisions of subsection (e) of this section as if said company were itself applying for a casino license.

(e) Any noncorporate applicant for a casino license shall provide the information required in subsection (a) of this section in such form as may be required by the Commission. No such applicant shall be eligible to hold a casino license unless each person who directly or indirectly holds any beneficial interest or ownership in the applicant, or who in the opinion of the Commission has the ability to control the applicant, or whom the Commission may consider appropriate for approval or qualification, would, but for residence, individually be qualified for approval as a casino key employee pursuant to the provisions of this act.

(f) Notwithstanding the provisions of subsections (c) and (d) of this section, and in the absence of a finding by the Commission that the institutional investor may be found unqualified, an institutional investor holding either (1) under 10% of the equity securities of a casino licensee's holding or intermediary companies, or (2) debt securities of a casino licensee's holding or intermediary companies, or another subsidiary company of a casino licensee's holding or intermediary companies which is related in any way to the financing of the casino licensee, where the securities represent a percentage of the outstanding debt of the company not exceeding 20%, or a percentage of any issue of the outstanding debt of the company not exceeding 50%, may be granted a waiver of qualification if such securities are those of a publicly-traded corporation and its holdings of such securities were purchased for investment purposes only and upon request by the Commission it files with the Commission a certified statement to the effect that it has no intention of influencing or affecting the affairs of the issuer, the casino licensee or its holding or intermediary companies; provided, however, that it shall be permitted to vote on matters put to the vote of the outstanding security holders. The Commission may grant a waiver of qualification to an institutional investor holding a higher percentage of such securities upon a showing of good cause and if the conditions specified above are met. Any institutional investor granted a waiver under this subsection which subsequently determines to influence or affect the affairs of the issuer shall provide not less than one (1) month's notice of such intent and shall file with the Commission an application for qualification before taking any action that may influence or affect the affairs of the issuer; provided, however, that it shall be permitted to vote on matters put to the vote of the outstanding security holders. If an institutional investor changes its investment intent, or if the Commission finds reasonable cause to believe that the institutional investor may be found unqualified, no action other than divestiture shall be taken by such investor with

40

respect to its security holdings until there has been compliance with the provisions of this act, including the execution of a trust agreement. The casino licensee and its relevant holding, intermediary or subsidiary company shall immediately notify the Commission of any information about, or actions of, an institutional investor holding its equity or debt securities where such information or action may impact upon the eligibility of such institutional investor for a waiver pursuant to this subsection.

(g) If at any time the Commission finds that an institutional investor holding any security of a holding or intermediary company of a casino licensee, or, where relevant, of another subsidiary company of a holding or intermediary company of a casino licensee which is related in any way to the financing of the casino licensee, fails to comply with the terms of subsection (f) of this section, or if at any time the Commission finds that, by reason of the extent or nature of its holdings, an institutional investor is in a position to exercise such a substantial impact upon the controlling interests of a licensee that qualification of the institutional investor is necessary to protect the public interest, the Commission may, in accordance with the applicable provisions this act, take any necessary action to protect the public interest, including requiring such an institutional investor to be qualified pursuant to the provisions of this act.

Section 5007. Casino license, Disqualification criteria for. The Commission shall deny a casino license to any applicant who is disqualified on the basis of any of the following criteria:

(a) Failure of the applicant to prove by clear and convincing evidence that the applicant is qualified in accordance with the provisions of this act;

(b) Failure of the applicant to provide information, documentation and assurances required by the act or requested by the Commission, or failure of the applicant to reveal any fact material to qualification, or the supplying of information which is untrue or misleading as to a material fact pertaining to the qualification criteria;

(c) The conviction of the applicant, or of any person required to be qualified under this act as a condition of a casino license, of any:

(1) Offense in any jurisdiction, the punishment for which would be imprisonment of more than one year; or

(2) Offense under the law of any jurisdiction which indicates that licensure of the applicant would be inimical to the policy of this act and to casino operations; provided, however, that the automatic disqualification provisions of this subsection shall not apply with regard to any conviction which occurred more than ten (10) years immediately preceding application for licensure and which the applicant demonstrates by clear and convincing evidence does not justify automatic disqualification pursuant to this subsection or any conviction which has been the subject of a judicial order of expungement or sealing or pardon by the chief executive of the jurisdiction in which the conviction was had;

(d) Current prosecution or pending charges in any jurisdiction of the applicant or of any person who is required to be qualified under this act as a condition of a casino license, for any of the offenses enumerated in subsection (c) of this section; provided, however, that at the request of the applicant or the person charged, the Commission shall defer decision upon such application during the pendency of such charges;

41

(e) The pursuit by the applicant or any person who is required to be qualified under this act as a condition of a casino license of economic gain in an occupational manner or context which is in violation of the laws of Guam, if such pursuit creates a reasonable belief that the participation of such person in casino operations would be inimical to the policies of this act or to legalized gaming in Guam. For purposes of this section, occupational manner or context shall be defined as the systematic planning, administration, management, or execution of an activity for financial gain;

(f) The identification of the applicant or any person who is required to be qualified under this act as a condition of a casino license as a career offender or a member of or participant in a career offender cartel or an associate of a career offender or career offender cartel in such a manner which creates a reasonable belief that the association is of such a nature as to be inimical to the policy of this act and to gaming operations. For purposes of this section, career offender shall be defined as any person whose behavior is pursued in an occupational manner or context for the purpose of economic gain, utilizing such methods as are deemed criminal violations of the public policy of Guam or the federal government. A career offender cartel shall be defined as any group of persons who operate together as career offenders;

(g) The engaging in or attempt to engage in by the applicant or any person who is required to be qualified under this act as a condition of a casino license of any act or acts which would constitute any offense under subsection (c) of this section, even if such conduct has not been or may not be prosecuted under the laws of Guam or any other jurisdiction or has been prosecuted under the criminal laws of Guam or any other jurisdiction and such prosecution has been terminated in a manner other than with a conviction; and

(h) Contumacious defiance by the applicant or any person who is required to be qualified under this act of any legislative investigatory body or other official investigatory body of Guam or any state, territory, commonwealth, district or freely associated state of the United States or of the United States when such body is engaged in the investigation of crimes relating to gaming, official corruption, or organized crime activity.

Section 5008.  Investigation of applicants for casino licenses; order approving or denying license.  (a) Upon the filing of an application for a casino license and such supplemental information as the Commission may require, the Commission shall cause an investigation to be made into the qualification of the applicant, and the Commission shall conduct a hearing thereon concerning the qualification of the applicant in accordance with its rules.  The Commission shall not approve any casino license for any person except after a public hearing for which appropriate public notice has been given.

(b) After such investigation and hearing, the Commission may either deny the application or grant a casino license to an applicant whom it determines to be qualified to hold such license.

(c) The Commission shall have the authority to deny any application pursuant to the provisions of this act. When an application is denied, the Commission shall prepare and file an order denying such application with the general reasons therefor, and if requested by the applicant, shall further prepare and file a statement of the reasons for the denial, including a specific findings of facts.

42

(d) After an application is submitted to the Commission, final action of the Commission shall be taken within three (3) months of the completion of all hearings and investigations and the receipt of all information required by the Commission.

(e) If satisfied that an applicant is qualified to receive a casino license, and upon tender of all license fees and taxes as required by law and rules of the Commission, and such bonds as the Commission may require for the faithful performance of all requirements imposed by law or rules, the Commission shall issue a casino license for the term of one (1) year or a casino reservation or a contingent casino gaming license for such term as is appropriate under this act.

(f) The Commission shall fix the amount of the bond or bonds to be required under this section in such amounts as it may deem appropriate by rules of uniform application. The bonds so furnished may be applied by the Commission to the payment of any unpaid liability of the licensee under this act. The bond shall be furnished in cash or negotiable securities, by a surety bond guaranteed by a satisfactory guarantor, or by an irrevocable letter of credit issued by a banking institution of Guam acceptable to the Commission. If furnished in cash or negotiable securities, the principal shall be placed without restriction at the disposal of the Commission, but any income shall inure to the benefit of the licensee.

Section 5009. Renewal of casino licenses. (a) Subject to the power of the Commission to deny, revoke, or suspend licenses, any casino license in force shall be renewed by the Commission for the next succeeding license period upon proper application for renewal and payment of license fees and taxes as required by law and the rules of the Commission. The license period for a renewed casino license shall be up to one year for each of the first two renewal periods succeeding the initial issuance of a casino license. Thereafter the renewal periods shall be up to (4) four years each, but the Commission may reopen licensing hearings at any time. In addition, the Commission shall reopen licensing hearings at any time at the request of the Public Auditor or the Attorney General.

(b) The application for renewal shall be filed with the Commission not less than three (3) months prior to the expiration of the current license, and all license fees and taxes required by law shall be paid to the Commission on or before the date of expiration of the current license.

Section 5010. Licensing of casino key employees. (a) No person may be employed as a casino key employee unless he or she is the holder of a valid casino key employee license issued by the Commission.

(b) Each applicant for a casino key employee license, must produce prior to the issuance of the license information, documentation and assurances that establish to the Commission's satisfaction:

(1) The applicant's financial stability, integrity and responsibility, including but not limited to bank references, business and personal income and disbursements schedules, tax returns and other reports filed with governmental agencies, and business and personal accounting and check records and ledgers. In addition, each applicant shall authorize the Commission in writing to exam all bank accounts and records as may be deemed necessary by the Commission.

43

(2) The applicant's good character, honesty and integrity. Such information shall include, without limitation, data pertaining to family, habits, character, reputation, criminal and arrest record, business activities, financial affairs, and business, professional and personal associates, covering at least the ten (10) years immediately preceding the filing of the application. Each applicant shall notify the Commission of any civil judgments obtained against such applicant pertaining to antitrust or security regulation laws of the federal government, of Guam or of any other jurisdiction. In addition, each applicant shall, upon request of the Commission or the division, produce letters of reference from law enforcement agencies having jurisdiction in the applicant's place of residence and principal place of business, which letters of reference shall indicate that such law enforcement agencies do not have any pertinent information concerning the applicant, or if such law enforcement agency does have information pertaining to the applicant, shall specify what that information is. If the applicant has been associated with gaming or casino operations in any capacity, position or employment in a jurisdiction which permits such activity, the applicant shall, upon request of the Commission, produce letters of reference from the gaming or casino enforcement or control agency, which shall specify the experience of such agency with the applicant, his associates and his participation in the gaming operations of that jurisdiction; provided, however, that if no such letters are received from the appropriate law enforcement agencies within six (6) months of the applicant's request therefor, the applicant may submit a statement under oath that he is or was during the period such activities were conducted in good standing with such gaming or casino enforcement or control agency.

(c) Each applicant shall be a resident of the Guam prior to the issuance of a casino key employee license; provided, however, that upon petition by the holder of a casino license, the Commission may waive this residency requirement for any applicant whose particular position will require him to be employed outside Guam.

(d) The Commission shall deny a casino key employee license to any applicant who is disqualified on the basis of the criteria contained in Section 5007(e) of this act, provided, however, that the Commission may waive the disqualification pursuant to Section 5007(c)(2).

(e) Upon petition by the holder of a casino license, the Commission may issue a temporary license to an applicant for a casino key employee license, provided that:

(1) The applicant for the casino key employee license has filed a complete application as required by the Commission;

(2) The completed form of the Commission's casino key employee license application has been in the possession of the Commission for at least fifteen (15) days; and

(3) The petition for a temporary casino key employee license certifies, and the Commission finds, that an existing casino-key employee position of the petitioner is vacant or will become vacant within two (2) months of the date of the petition and that the issuance of a temporary key employee license is necessary to fill the said vacancy on an emergency basis to continue the efficient operation of the casino, and that such circumstances are extraordinary and not designed to circumvent the normal licensing procedures of this act.

44

(f) In the event that an applicant for a casino key employee license is the holder of a valid casino employee license, and if the provisions of paragraphs (e)(1) and (2) of this subsection are satisfied, the Commission may issue a temporary casino key employee license upon petition by the holder of a casino license, if the Commission finds the issuance of a casino key employee license will be delayed by necessary investigations and the said temporary casino key employee license is necessary for the operation of the casino.

(g) Unless otherwise terminated pursuant to this act, any temporary casino key employee license issued pursuant to this section shall expire one (1) year from the date of its issuance.

Section 5011. <u>Licensing of casino employees.</u> (a) No person may commence employment as a casino employee unless he is the holder of a valid casino employee license.

(b) Any applicant for a casino employee license must, prior to the issuance of any such license, produce sufficient information, documentation and assurances to meet the qualification criteria.

(c) The Commission may require that all applicants for casino employee licenses be residents of Guam for a period not to exceed six (6) months immediately prior to the issuance of such license, but application may be made prior to the expiration of the required period of residency. The Commission may waive the required residency period for an applicant upon a showing that the residency period would cause undue hardship upon the casino licensee which intends to employ said applicant, or upon a showing of other good cause.

(d) The Commission shall deny a casino employee license to any applicant who is disqualified on the basis of the criteria contained in Section 5007(c) of this act, provided, however, that the Commission may waive the disqualification pursuant to Section 5007(c)(2).

(e) For the purposes of this section, casino security employees shall be considered casino employees and must, in addition to any requirements under other laws, be licensed in accordance with the provisions of this act.

(f) Upon petition by the holder of a casino license, a temporary license may be issued by the Commission to an applicant for a casino employee license on the same basis as it may issue a temporary license to a casino key employee.

(g) Unless sooner terminated by order of the Commission, a temporary license shall expire one (1) year from the date of its issuance.

Section 5012. <u>Registration of casino service employees.</u> (a) No person may be employed as a casino service employee unless the person has been registered with the Commission, which registration shall be in accordance with subsection (f) of this section.

(b) Any applicant for casino service employee registration shall produce such information as the Commission may require. The Commission shall deny a casino employee license to any applicant who is disqualified on the basis of the criteria contained in Section 5007(c) of this act, provided, however, that the Commission may waive the disqualification pursuant to Section 5007(c)(2).

45

(c) The Commission may require that all applicants for casino service employee registration be residents of Guam for a period not to exceed three (3) months immediately prior to such registration, but application may be made prior to the expiration of the required period of residency. The Commission shall waive the required residency period for an applicant upon a showing that the residency period would cause undue hardship upon the casino licensee which intends to employ said applicant, or upon a showing of other good cause.

(d) Upon petition by the holder of a casino license, a temporary casino service employee registration shall be granted to each applicant for such registration named therein, provided that the petition certifies that each such applicant has filed a completed application for casino service employee registration as required by the Commission.

Section 5013. Licensing and registration of casino service industries. (a) (1) All casino service industries offering goods or services which directly relate to casino or gaming activity, including gaming equipment, suppliers, repairers and independent testing laboratories, schools teaching gaming and either playing or dealing techniques, and casino security services, shall be licensed in accordance with the provisions of this act prior to conducting any business whatsoever with a casino applicant or licensee, its employees or agents, and in the case of a school, prior to enrollment of any students or offering of any courses to the public whether for compensation or not; provided, however, that upon a showing of good cause by a casino applicant or licensee for each business transaction, the Commission may permit an applicant for a casino service industry license to conduct business transactions with such casino applicant or licensee prior to the licensure of that service industry applicant under this subsection.

(2) In addition to the requirements of paragraph (1) of this subsection, any casino service industry intending to manufacture, sell, distribute, test or repair slot machines within Guam shall be licensed in accordance with the provisions of this act prior to engaging in any such activities; provided, however, that upon a showing of good cause by a casino applicant or licensee for each business transaction, the Commission may permit an applicant for a casino service industry license to conduct business transactions with the casino applicant or licensee prior to the licensure of that service industry applicant under this subsection; and provided further, however, that upon a showing of good cause by an applicant required to be licensed as a casino service industry pursuant to this paragraph, the Commission may permit the service industry applicant to initiate the manufacture of slot machines or engage in the sale, distribution, testing or repair of slot machines with any person other than a casino applicant or licensee, its employees or agents, prior to the licensure of that service industry applicant under this subsection.

(b) Each casino service industry in subsection (a) of this section, as well as its owners; management and supervisory personnel; and principal employees if such principal employees have responsibility for services to a casino licensee, must qualify under the standards, except residency, established for qualification of a casino key employee.

(c) The Commission may require by rule that casino service industries not included in subsection (a) of this section shall be licensed in accordance with rules of the Commission if the Commission determines that such licensure is necessary to protect the public and the gaming industry. The Commission may exempt any person or field of commerce from the licensing requirements of this subsection if the person or field of

46

commerce demonstrates (1) that it is regulated by a public agency or that it will provide goods or services in insubstantial or insignificant amounts or quantities, and (2) that licensing is not deemed necessary in order to protect the public interest or to accomplish the policies established by this act. Upon granting an exemption or at any time thereafter, the Commission may limit or place such restrictions thereupon as it may deem necessary in the public interest, and shall require the exempted person to cooperate with the Commission and, upon request, to provide information in the same manner as required of a licensed casino service industry; provided, however, that no exemption shall be granted unless the applicant agrees in writing to comply with the equal employment opportunity provisions of this act.

(d) No casino service industry license shall be issued pursuant to subsection (a) or subsection (c) of this section to any person unless that person shall provide proof of valid business registration with the Department of Revenue and Taxation.

Section 5014. Registration of labor organizations. (a) Each labor organization, union or affiliate seeking to represent employees who are employed in a casino hotel or casino by a casino licensee shall register with the Commission annually, and shall disclose such information to the Commission as the Commission may require, provided, however, that no labor organization, union, or affiliate shall be required to furnish such information to the extent such information is included in a report filed by any labor organization, union, or affiliate with the Secretary of Labor pursuant to 29 U.S.C. 431 et seq. or 1001 et seq. if a copy of such report, or of the portion thereof containing such information, is furnished to the Commission pursuant to the aforesaid federal provisions. The Commission may in its discretion exempt any labor organization, union, or affiliate from the registration requirements of this subsection where the Commission finds that such organization, union or affiliate is not the certified bargaining representative of any employee who is employed in a casino hotel or casino by a casino licensee, is not involved actively, directly or substantially in the control or direction of the representation of any such employee, and is not seeking to do so.

(b) Neither a labor organization, union or affiliate nor its officers and agents not otherwise individually licensed or registered under this act and employed by a casino licensee may hold any financial interest whatsoever in the casino hotel, casino, or casino licensee whose employees they represent.

(c) Any person, including any labor organization, union or affiliate, who shall violate, aid and abet the violation, or conspire or attempt to violate this section is guilty of a felony of the third degree.

(d) The Commission may maintain a civil action and proceed in a summary manner, without posting bond, against any person, including any labor organization, union or affiliate, to compel compliance with this section, or to prevent any violations, the aiding and abetting thereof, or any attempt or conspiracy to violate this section.

Section 5015. Approval and denial of registrations and licenses other than casino licenses. (a) Upon the filing of an application for any license or registration required by this act, other than a casino license, and after submission of such information as the Commission may require, the Commission may conduct such investigation and hearing into the qualification of the applicant as may be necessary to determine qualification for such license or registration.

(b) The Commission shall have the authority to grant or deny any application pursuant to the provisions of this act. When an application is denied, the Commission shall prepare and file its order denying such application with the general reasons therefor, and if requested by the applicant, shall further prepare and file a statement of the reasons for the denial, including the specific findings of fact.

(c) When the Commission grants an application, the Commission may limit or place such restrictions thereupon as it may deem necessary in the public interest. Casino service employee registration shall, upon issuance, remain in effect for the duration authorized by the Commission unless revoked, suspended, limited, or otherwise restricted by the Commission.

## Article 6—Casino Operations

Section 6001. Operation certificate. (a) Notwithstanding the issuance of a license therefor, no casino may be opened or remain open to the public, and no gaming, except for test purposes, may be conducted therein, unless and until a valid operation certificate has been issued to the casino licensee by the Commission. Such certificate shall be issued by the Commission upon a finding that a casino complies in all respects with the requirements of this act and rules promulgated hereunder, that the casino licensee has implemented necessary management controls and security precautions for the efficient operation of the casino and that casino personnel are licensed for the performance of their respective responsibilities, and that the casino is prepared in all respects to receive and entertain the public.

(b) The operation certificate shall include an itemized list by category and number of the authorized games permitted in the particular casino establishment.

(c) A casino licensee shall, in accordance with the Commission's rules, file any changes in the number of authorized games to be played in its casino and any changes in the configuration of the casino with the Commission.

(d) An operation certificate shall remain in force and effect unless altered in accordance with subsection (c) of this section, or revoked, suspended, limited, or otherwise altered by the Commission in accordance with this act.

(e) It shall be an express condition of continued operation under this act that a casino licensee shall maintain all books, records, and documents pertaining to the licensee's operations, including its approved hotel in a manner and location approved by the Commission. All such books, records and documents shall be immediately available for inspection during all hours of operation in accordance with the rules of the Commission and shall be maintained for such period of time as the Commission shall require.

Section 6002. Hours of operation. (a) The Commission shall establish by rule uniform hours during which a casino may operate.

(b) A casino licensee shall file with the Commission a schedule of its hours of operation that is no greater than that authorized by the rule. If the casino licensee proposes any change in its scheduled hours, it shall notify the Commission in writing prior to making such change.

48

Section 6003. <u>Casino facility requirements.</u> (a) Each casino licensee shall arrange the facilities of its casino in such a manner as to promote optimum security for the casino and its patrons and shall comply in all respects with rules of the Commission pertaining thereto.

(b) Each casino hotel shall include:

(1) A closed circuit television system according to specifications approved by the Commission, with access on the licensed premises to the system or its signal provided to the Commission, in accordance with rules\s pertaining thereto;

(2) Design specifications that insure that visibility in a casino is not obstructed in any way that might interfere with the ability of the Commission to supervise casino operations.

Section 6004. <u>Internal controls.</u> (a) Each casino licensee shall submit to the Commission a description of its system of internal procedures and administrative and accounting controls for gaming operations and a description of any changes made after the initial submission. Such submission shall be made at least one (1) month before such operations are to commence or at least one (1) month before any change in those procedures or controls is to take effect, unless otherwise directed by the Commission.

(b) The Commission shall review each submission of the casino licensee and shall determine whether it conforms to the requirements of this act and to the Commission's rules and whether the system submitted provides adequate and effective controls for the operations of the particular casino hotel submitting it. If the Commission finds any insufficiencies, it shall specify them in writing to the casino licensee, who shall make appropriate alterations. When the Commission determines a submission to be adequate in all respects, it shall notify the casino licensee of that fact. Except as otherwise provided in subsection (a), no casino licensee shall commence or alter gaming operations until such system of controls is approved by the Commission.

Section 6005. <u>Games and gaming equipment.</u> (a) This act shall not be construed to permit any gaming except the conduct of authorized games in a casino room in accordance with this act and the Commission's rules. The Commission shall have exclusive discretion to determine the types of games to be played in a casino.

(b) Gaming equipment shall not be possessed, maintained or exhibited by any person on the premises of a casino hotel except in a casino room or in restricted casino areas used for the inspection, repair or storage of such equipment and specifically designated for that purpose by the casino licensee with the approval of the Commission. Gaming equipment which supports the conduct of gaming in a casino but does not permit or require patron access, such as computers, may be possessed and maintained by a casino licensee in restricted casino areas specifically designated for that purpose by the casino licensee with the approval of the Commission. No gaming equipment shall be possessed, maintained, exhibited, brought into or removed from a casino room unless such equipment is necessary to the conduct of an authorized game, has permanently affixed, imprinted, impressed or engraved thereon an identification number or symbol authorized by the Commission, is under the exclusive control of a casino licensee or his employees, and is brought into or removed from the casino room or following 24-hour prior notice given to an authorized agent of the Commission. Notwithstanding the foregoing, a person may, with the prior approval of the Commission and under such terms and conditions as may be required by the Commission, possess, maintain or exhibit

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 30 of 45

gaming equipment in any other area of the casino hotel, provided such equipment is not used for gaming purposes.

(c) Each casino hotel shall contain a count room and such other secure facilities as may be required by the Commission for the counting and storage of cash, coins, tokens and checks received in the conduct of gaming and for the inspection, counting and storage of dice, cards, chips and other representatives of value. All drop boxes and other devices wherein cash, coins, or tokens are deposited at the gaming tables or in slot machines, and all areas wherein such boxes and devices are kept while in use, shall be equipped with two locking devices, one key to which shall be under the exclusive control of the Commission and the other under the exclusive control of the casino licensee, and said drop boxes and other devices shall not be brought into or removed from a casino room or locked or unlocked, except at such times, in such places, and according to such procedures as the Commission may require.

(d) All chips used in gaming shall be of such size and uniform color by denomination as the Commission shall require.

(e) All gaming shall be conducted according to rules promulgated by the Commission. All wagers and pay-offs of winning wagers shall be made according to rules promulgated by the Commission, which shall establish such limitations as may be necessary to assure the vitality of casino operations and fair odds to patrons. Each slot machine shall have a minimum payout of 83%.

(f) Each casino licensee shall make available in printed form to any patron upon request the complete text of the rules of the Commission regarding games and the conduct of gaming, pay-offs of winning wagers, an approximation of the odds of winning for each wager, and such other advice to the player as the Commission shall require. Each casino licensee shall prominently post within a casino room such information about gaming rules, pay-offs of winning wagers, the odds of winning for each wager, and such other advice to the player as the Commission shall require.

(g) Each gaming table shall be equipped with a sign indicating the permissible minimum and maximum wagers pertaining thereto. It shall be unlawful for a casino licensee to require any wager to be greater than the stated minimum or less than the stated maximum; provided, however, that any wager actually made by a patron and not rejected by a casino licensee prior to the commencement of play shall be treated as a valid wager.

(h)(1) No slot machine shall be used to conduct gaming unless it is identical in all electrical, mechanical and other aspects to a model thereof which has been specifically tested and licensed for use by the Commission. The Commission, in its discretion, and for the purpose of expediting the approval process, may refer testing to any testing laboratory licensed by the Commission to perform such service as a casino service industry. The commission shall establish such technical standards for licensure of slot machines, including mechanical and electrical reliability, security against tampering, the comprehensibility of wagering, and noise and light levels, as it may deem necessary to protect the player from fraud or deception and to insure the integrity of gaming. The denominations of such machines shall be set by the licensee; the licensee shall simultaneously notify the commission of the settings.

(2) The Commission shall, by regulation, determine the permissible number and density of slot machines in a licensed casino so as to:

(A) promote optimum security for casino operations;

50

(B) avoid deception or frequent distraction to players at gaming tables;

(C) promote the comfort of patrons;

(D) create and maintain a gracious playing environment in the casino; and

(E) encourage and preserve competition in casino operations by assuring that a variety of gaming opportunities is offered to the public.

Any rule promulgated by the Commission which determines the permissible number and density of slot machines in a licensed casino shall provide that all casino floor space shall be included in any calculation of the permissible number and density of slot machines in a licensed casino.

(i) It shall be unlawful for any person to exchange or redeem chips for anything whatsoever, except for currency, negotiable personal checks, negotiable counter checks, other chips, coupons or complimentary vouchers distributed by the casino licensee, or, if authorized by the rules of the Commission, a valid charge to a credit or debit card account. A casino licensee shall, upon the request of any person, redeem that licensee's gaming chips surrendered by that person in any amount over $100 with a check drawn upon the licensee's account at any banking institution in this Guam and made payable to that person.

(j) It shall be unlawful for any casino licensee or its agents or employees to employ, contract with, or use any shill or barker to induce any person to enter a casino or play at any game or for any purpose whatsoever.

(k) It shall be unlawful for a dealer in any authorized game in which cards are dealt to deal cards by hand or other than from a device specifically designed for that purpose, unless otherwise permitted by the rules of the Commission.

(l) It shall be unlawful for any casino key employee or any person who is required to hold a casino key employee license as a condition of employment or qualification to wager in any casino in Guam, or any casino employee, other than a junket representative, bartender, waiter, waitress, or other casino employee who, in the judgment of the commission, is not directly involved with the conduct of gaming operations, to wager in a casino in the casino hotel in which the employee is employed or in any other casino in Guam that is owned or operated by the same casino licensee.

(m) (1) It shall be unlawful for any casino key employee, boxman, floorman, or any other casino employee who shall serve in a supervisory position to solicit or accept, and for any other casino employee to solicit, any tip or gratuity from any player or patron at the casino hotel where he or she is employed.

(2) A dealer may accept tips or gratuities from a patron at the table at which such dealer is conducting play, subject to the provisions of this subsection. All such tips or gratuities shall be immediately deposited in a lockbox reserved for that purpose, accounted for, and placed in a pool for distribution pro rata among the dealers, with the distribution based upon the number of hours each dealer has worked, except that the Commission may permit a separate pool to be established for dealers in the game of poker, or may permit tips or gratuities to be retained by individual dealers in the game of poker.

51

Section 6006.  Credit. (a) Except as otherwise provided in this section, no casino licensee or any person licensed under this act, and no person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, shall:

(1) Cash any check, make any loan, or otherwise provide or allow to any person any credit or advance of anything of value or which represents value to enable any person to take part in gaming as a player; or

(2) Release or discharge any debt, either in whole or in part, or make any loan which represents any losses incurred by any player in gaming, without maintaining a written record thereof in accordance with the rules of the Commission.

(b) No casino licensee or any person licensed under this act, and no person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, may accept a check, other than a recognized traveler's check or other cash equivalent from any person to enable such person to take part in gaming or simulcast wagering activity as a player, or may give cash or cash equivalents in exchange for such check unless:

(1) The check is made payable to the casino licensee;

(2) The check is dated, but not postdated; and

(3) The check is presented to the cashier or the cashier's representative at a location in the casino approved by the Commission and is exchanged for cash or slot tokens which total an amount equal to the amount for which the check is drawn, or the check is presented to the cashier's representative at a gaming table in exchange for chips which total an amount equal to the amount for which the check is drawn.

Nothing in this subsection shall be deemed to preclude the establishment of an account by any person with a casino licensee by a deposit of cash, recognized traveler's check or other cash equivalent, or a check which meets the requirements of subsection (g), or to preclude the withdrawal, either in whole or in part, of any amount contained in such account.

(c) When a casino licensee or other person licensed under this act, or any person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, cashes a check in conformity with the requirements of subsection (b), the casino licensee shall cause the deposit of such check in a bank for collection or payment, or shall require an attorney or casino key employee with no incompatible functions to present such check to the drawer's bank for payment, within (1) seven (7) calendar days of the date of the transaction for a check in an amount of $1,000.00 or less; (2) fourteen (14) calendar days of the date of the transaction for a check in an amount greater than $1,000.00 but less than or equal to $5,000.00; or (3) (45) calendar days of the date of the transaction for a check in an amount greater than $5,000.00. Notwithstanding the foregoing, the drawer of the check may redeem the check by exchanging cash, cash equivalents, chips, or a check which meets the requirements of subsection (g) in an amount equal to the amount for which the check is drawn; or he may redeem the check in part by exchanging cash, cash equivalents, chips, or a check which meets the requirements of subsection (g) and another check which meets the requirements of subsection (b) for the difference between the original check and the cash, cash equivalents, chips, or check tendered; or he may issue one check which meets the requirements of subsection (b) of this section in an amount sufficient to redeem two or more checks drawn to the order of the casino licensee. If there has been a partial

redemption or a consolidation in conformity with the provisions of this subsection, the newly issued check shall be delivered to a bank for collection or payment or presented to the drawer's bank for payment by an attorney or casino key employee with no incompatible functions within the period herein specified. No casino licensee or any person licensed under this act, and no person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, shall accept any check or series of checks in redemption or consolidation of another check or checks in accordance with this subsection for the purpose of avoiding or delaying the deposit of a check in a bank for collection or payment or the presentment of the check to the drawer's bank within the time prescribed by this subsection.

In computing a time prescribed by this subsection, the last day of the period shall be included unless it is a Saturday, Sunday, or a Guam or federal holiday, in which event the time period shall run until the next business day.

(d) No casino licensee or any other person licensed under this act, or any other person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, shall transfer, convey, or give, with or without consideration, a check cashed in conformity with the requirements of this section to any person other than:

(1) The drawer of the check upon redemption or consolidation in accordance with subsection (c) of this section;

(2) A bank for collection or payment of the check;

(3) A purchaser of the casino license as approved by the commission; or

(4) An attorney or casino key employee with no incompatible functions for presentment to the drawer's bank.

The limitation on transferability of checks imposed herein shall apply to checks returned by any bank to the casino licensee without full and final payment.

(e) No person other than one licensed as a casino key employee or as a casino employee may engage in efforts to collect upon checks that have been returned by banks without full and final payment, except that an attorney representing a casino licensee may bring action for such collection.

(f) Notwithstanding the provisions of any law to the contrary, checks cashed in conformity with the requirements of this act shall be valid instruments, enforceable at law in the courts of Guam. Any check cashed, transferred, conveyed or given in violation of this act shall be invalid and unenforceable for the purposes of collection but shall be included in the calculation of gross revenue.

(g) Notwithstanding the provisions of subsection (b) to the contrary, a casino licensee may accept a check from a person to enable the person to take part in gaming as a player, may give cash or cash equivalents in exchange for such a check, or may accept a check in redemption or partial redemption of a check issued in accordance with subsection (b), provided that:

(1) (A) The check is drawn by a casino licensee upon an account established in accordance with the provisions of subsection (b) or is drawn by a casino licensee as payment for winnings from an authorized game or simulcast wagers;

(B) The check is issued by a banking institution which is chartered in a country other than the United States on its account at a Guam chartered, federally chartered or state-chartered bank and is made payable to "cash," "bearer," a casino licensee, or the person presenting the check;

(C) The check is issued by a banking institution which is chartered in the United States on its account at another federally chartered, Guam chartered or state-chartered bank and is made payable to "cash," "bearer," a casino licensee, or the person presenting the check;

(D) The check is issued by an annuity jackpot trust as payment for winnings from an annuity jackpot; or

(E) The check is issued by an affiliate of a casino licensee that holds a gaming license in any jurisdiction;

(2) The check is identifiable in a manner approved by the Commission as a check issued for a purpose listed in paragraph (1) of this subsection;

(3) The check is dated, but not postdated;

(4) The check is presented to the cashier or the cashier's representative by the original payee and its validity is verified by the drawer in the case of a check drawn pursuant to subparagraph (a) of paragraph (1) of this subsection, or the check is verified in accordance with rules promulgated by the commission.

No casino licensee shall issue a check for the purpose of making a loan or otherwise providing or allowing any advance or credit to a person to enable the person to take part in gaming as a player.

(h)(1) Notwithstanding the provisions of subsection (b) and subsection (c) to the contrary, a casino licensee, at a location outside the casino, may accept a personal check or checks from a person for up to $1,500 in exchange for cash or cash equivalents, and may, at such locations within the casino as may be permitted by the Commission, accept a personal check or checks for up to $1,500 in exchange for cash, cash equivalents, tokens, chips, or plaques to enable the person to take part in gaming, provided that:

(A) The check is drawn on the patron's bank or brokerage cash management account;

(B) The check is for a specific amount;

(C) The check is made payable to the casino licensee;

(D) The check is dated but not post-dated;

(E) The patron's identity is established by examination of one of the following: valid credit card, driver's license, passport, or other form of identification credential which contains, at a minimum, the patron's signature and photograph;

(F) The check is restrictively endorsed "For Deposit Only" to the casino licensee's bank account and deposited on the next banking day following the date of the transaction; and

(G) The total amount of personal checks accepted by any one licensee pursuant to this subsection that are outstanding at any time, including the current check being submitted, does not exceed $1,500.

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 35 of 45

(2) Nothing in paragraph (1) of this subsection shall be construed to limit the authority of a casino licensee to accept, and exchange for cash or cash equivalents other than tokens, chips, or plaques, a check from a patron that is not offered or exchanged in order to enable the patron or anyone else to take part in gaming, provided that:

(A) The patron so certifies;

(B) The casino licensee has no reason to believe that the cash or cash equivalents will be used to enable the patron or anyone else to take part in gaming;

(C) The check is not accepted or exchanged in the casino; and

(D) The casino licensee maintains full documentation of the transaction in accordance with regulations established by the Commission.

(i) Checks cashed pursuant to the provisions of paragraph (1) of subsection (h) of this section which are subsequently uncollectible may not be deducted from the total of all sums received in calculating gross revenue.

(j) Notwithstanding the provisions of paragraph (4) of subsection (b) to the contrary, a casino licensee may, prior to the completion of the verifications that are otherwise required by the rules of the Commission for a casino licensee to issue credit, accept a check from a person to enable such person to take part in gaming or may give cash or cash equivalents in exchange for such check, provided that:

(1) The casino licensee records in the credit file of the person:

(A) The efforts that were made to complete the required verifications and the reasons why the verifications could not be completed; and

(B) A description of the criteria that were relied upon in determining to issue credit to the person prior to the completion of the required verifications;

(2) The check otherwise complies with the requirements of subsection (b) and is processed by the casino licensee in accordance with all other provisions of this section and the regulations of the commission; and

(3) Any check accepted by a casino licensee pursuant to the provisions of this subsection:

(A) is clearly marked as such in a manner approved by the Commission; and

(B) may not be deducted from the total of all sums received in calculating gross revenue, even if such check should subsequently prove uncollectible or the casino licensee completes all of the required verifications prior to its deposit or presentment.

Section 6007. Noncitizen patrons; proof of identity to establish accounts, multiple transactions. No casino licensee or any person licensed under this act, and no person acting on behalf of or under any arrangement with a casino licensee or other person licensed under this act, shall, in a single transaction during a gaming day, accept cash from a person offered for the purposes of establishing an account, when the amount offered totals ten thousand dollars ($10,000) or more, unless the person presents proof of his identity and passport identification number if he is not a United States citizen. Multiple currency transactions shall be treated as a single transaction if the casino licensee or any person licensed under this act has knowledge that the transactions are by or on behalf of one person and result in either cash in or cash out totalling more than ten

Case 1:04-cv-00046     Document 76-2     Filed 12/07/2004     Page 36 of 45

thousand dollars ($10,000) during a gaming day.

Section 6008. Non-citizen patrons, proof of identity to redeem chips or markers. No casino licensee or any person licensed under this act, and no person acting on behalf of or under any arrangement with a casino licensee or other person licensed this act, shall, in a single transaction during a gaming day, redeem for cash or credit any chips or markers in an amount of ten thousand dollars ($10,000) or more or exchange chips for cash in an amount of ten thousand dollars ($10,000) or more, from any one person, unless the person seeking to redeem the chips or markers presents proof of his identity and passport identification number if he is not a United States citizen. Multiple currency transactions shall be treated as a single transaction if the casino licensee or any person licensed under this act has knowledge that the transactions are by or on behalf of one person and result in either cash in or cash out totalling more than ten thousand dollars ($10,000) during a gaming day.

Section 6009. Report of cash transactions. Casino licensees, persons licensed under this act and persons acting on behalf of or under any arrangement with casino licensees or other persons licensed under this act who accept cash or redeem chips or markers totalling ten thousand dollars ($10,000) or more in a gaming day for which identification is required pursuant to Sections 6007 and 6008, shall at least once every thirty (30) days report the identities and passport numbers of the persons offering the cash, chips or markers, to the Commission.

Section 6010. Junkets and complimentary services. (a) No junkets may be organized or permitted except in accordance with the provisions of this act. No person may act as a junket representative or junket enterprise except in accordance with this section.

(b) A junket representative employed by a casino licensee, an applicant for a casino license or an affiliate of a casino licensee shall be licensed as a casino employee in accordance with the provisions of this act, provided, however, that said licensee need not be a resident of Guam. Any person who holds a current and valid casino employee license may act as a junket representative while employed by a casino licensee or an affiliate. No casino licensee or applicant for a casino license may employ or otherwise engage a junket representative who is not so licensed.

(c) Junket enterprises which, and junket representatives not employed by a casino licensee or an applicant for a casino license or by a junket enterprise who, are engaged in activities governed by this section shall be subject to the licensing provisions prescribed for casino service industries and such other provisions of this act as the Commission may determine by rule. Such of the owners, management and supervisory personnel, and other principal employees of a junket enterprise as the Commission may consider appropriate for qualification shall qualify under the standards, except for residency, established for qualification of a casino key employee.

(d) Prior to the issuance of any license required by this section, an applicant for licensure shall submit to the jurisdiction of Guam and shall demonstrate to the satisfaction of the Commission that he or she is amenable to service of process within Guam. Failure to establish or maintain compliance with the requirements of this subsection shall constitute sufficient cause for the denial, suspension or revocation of any

56

license issued pursuant to this section.

(e) Upon petition by the holder of a casino license, an applicant for junket representative licensure may be issued a temporary license by the Commission upon such conditions as the Commission may prescribe by rule.

(f) Every agreement concerning junkets entered into by a casino licensee and a junket representative or junket enterprise shall be deemed to include a provision for its termination without liability on the part of the casino licensee, if the Commission orders the termination upon the suspension, limitation, conditioning, denial or revocation of the licensure of the junket representative or junket enterprise. Failure to expressly include such a condition in the agreement shall not constitute a defense in any action brought to terminate the agreement.

(g) A casino licensee shall be responsible for the conduct of any junket representative or junket enterprise associated with it and for the terms and conditions of any junket engaged in on its premises, regardless of the fact that the junket may involve persons not employed by such a casino licensee.

(h) A casino licensee shall be responsible for any violation or deviation from the terms of a junket. Notwithstanding any other provisions of this act, the Commission may, after hearings in accordance with this act, order restitution to junket participants, assess penalties for such violations or deviations, prohibit future junkets by the casino licensee, junket enterprise or junket representative, and order such further relief as it deems appropriate.

(i) The Commission shall prescribe methods, procedures and forms for the delivery and retention of information concerning the conduct of junkets by casino licensees.

(j) Each casino licensee, junket representative or junket enterprise shall, in accordance with the rules of the Commission, file a report with the Commission with respect to each list of junket patrons or potential junket patrons purchased directly or indirectly by the casino licensee, junket representative or enterprise.

(k) The Commission shall have the authority to determine, either by regulation, or upon petition by the holder of a casino license, that a type of arrangement otherwise included within the definition of "junket" shall not require compliance with any or all of the requirements of this section. In granting exemptions, the Commission shall consider such factors as the nature, volume and significance of the particular type of arrangement, and whether the exemption would be consistent with the public policies established by this act. In applying the provisions of this subsection, the Commission may condition, limit, or restrict any exemption as the Commission may deem appropriate.

(l) No junket enterprise or junket representative or person acting as a junket representative may:

(1) Engage in efforts to collect upon checks that have been returned by banks without full and final payment;

(2) Exercise approval authority with regard to the authorization or issuance of credit pursuant;

(3) Act on behalf of or under any arrangement with a casino licensee or a

57

gaming patron with regard to the redemption, consolidation, or substitution of the gaming patron's checks awaiting deposit;

(4) Individually receive or retain any fee from a patron for the privilege of participating in a junket;

(5) Pay for any services, including transportation, or other items of value provided to, or for the benefit of, any patron participating in a junket.

(m) No casino licensee shall offer or provide any complimentary services, gifts, cash or other items of value to any person unless:

(1) The complimentary item consists of room, food, beverage or entertainment expenses provided directly to the patron and his or her guests by the licensee or indirectly to the patron and his or her guests on behalf of a licensee by a third party; or

(2) The complimentary consists of documented transportation expenses provided directly to the patron and his or her guests by the licensee or indirectly to the patron and his or her guests on behalf of a licensee by a third party, provided that the licensee ensures that a patron's and his or her guests' documented transportation expenses are paid for or reimbursed only once; or

(3) The complimentary item consists of coins, tokens, cash or other complimentary items or services provided through a bus coupon or other complimentary distribution program approved by the Commission.

Notwithstanding the foregoing, a casino licensee may offer and provide complimentary cash or noncash gifts which are not otherwise included in paragraphs (1) through (3) of this subsection to any person, provided that any such gifts in excess of two thousand dollars ($2,000) per trip, or such greater amount as the Commission may establish by rule, are supported by documentation regarding the reason the gift was provided to the patron and his or her guests, including where applicable, a patron's player rating, which documentation shall be maintained by the casino licensee. For the purposes of this paragraph, all gifts presented to a patron and the patron's guests directly by the licensee or indirectly on behalf of the licensee by a third party within any five (5) day period shall be considered to have been made during a single trip. In the case of cash gifts, the Commission shall establish by rule the total amount of such gifts that a licensee may provide to a patron each year.

Each casino licensee shall maintain a regulated complimentary service account for those complimentaries which are permitted pursuant to this section, and shall submit a quarterly report to the Commission based upon such account and covering all complimentary services offered or engaged in by the licensee during the immediately preceding quarter. Such reports shall include identification of the regulated complimentary services and their respective costs, the number of persons by category of service who received the same, and such other information as the Commission may require.

(n) As used in this subsection, "person" means any officer or employee of the government of Guam who is subject to financial disclosure by law or executive order and any other officer or employee of the government of Guam who has responsibility for matters affecting casino activity; the Governor; any member of the Legislature or full-time member of the Judiciary; any full-time professional employee of the Office of the Governor, or the Legislature; Commissioners and employees of the Commission; the head

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 39 of 45

of a principal department; the assistant or deputy heads of a principal department, including all assistant and deputy commissioners; the head of any division of a principal department; and any member of the governing body of any autonomous corporation or instrumentality of the government of Guam.

No casino applicant or licensee shall provide directly or indirectly to any person identified in this subsection any complimentary service or discount which is other than such service or discount that is offered to members of the general public in like circumstance.

Section 6011. Alcoholic beverages in casino hotel facilities. Any casino shall be subject to the provisions of Chapter 3 of Title 11 of the Guam Code Annotated with respect to the use of alcoholic beverages on its premises and the Alcoholic Beverage Control Board and its Administrator shall coordinate the licensing of a casino with the Commission.

Section 6012. Casino licensee, leases and contracts. (a)(1) Unless otherwise provided in this subsection, no agreement which provides for the payment, however defined, of any direct or indirect interest, percentage or share of any money or property wagered at a casino or derived from casino gaming activity shall be lawful.

(2) Agreements which provide only for the payment of a fixed sum which is in no way affected by the amount of any such money, property, revenues, profits or earnings shall not be subject to the provisions of this subsection; and receipts, rentals or charges for real property, personal property or services shall not lose their character as payments of a fixed sum because of contract, lease, or license provisions for adjustments in charges, rentals or fees on account of changes in taxes or assessments, cost-of-living index escalations, expansion or improvement of facilities, or changes in services supplied.

(3) Agreements between a casino licensee and its employees which provide for casino employee or casino key employee profit sharing and which are in writing and have been filed with the Commission shall be lawful and effective only if expressly approved by the Commission.

(4) Agreements to lease an approved casino hotel or the land thereunder and agreements for the complete management of all casino gaming operations in a casino hotel shall not be subject to the provisions of this subsection but shall rather be subject to the appropriate provisions of Section 5002.

(5) Agreements which provide for percentage charges between the casino licensee and a holding company or intermediary company of the casino licensee shall be in writing and filed with the Commission but shall not be subject to the provisions of this subsection.

(b) Each casino applicant or licensee shall maintain, in accordance with the rules of the Commission, a record of each written or unwritten agreement regarding the realty, construction, maintenance, or business of a proposed or existing casino hotel or related facility. The foregoing obligation shall apply regardless of whether the casino applicant or licensee is a party to the agreement. Any such agreement may be reviewed by the Commission on the basis of the reasonableness of its terms, including the terms of compensation, and of the qualifications of the owners, officers, employees, and directors of any enterprise

59

involved in the agreement. If the Commission disapproves such an agreement or the owners, officers, employees, or directors of any enterprise involved therein, the Commission may require its termination.

Every agreement required to be maintained, and every related agreement the performance of which is dependent upon the performance of any such agreement, shall be deemed to include a provision to the effect that, if the Commission shall require termination of an agreement pursuant to this subsection, such termination shall occur without liability on the part of the casino applicant or licensee or any qualified party to the agreement or any related agreement. Failure expressly to include such a provision in the agreement shall not constitute a defense in any action brought to terminate the agreement. If the agreement is not submitted to the Commission in accordance with its rules, or the disapproved agreement is not terminated, the Commission may pursue any remedy or combination of remedies provided in this act.

(c) Nothing in this act shall be deemed to permit the transfer of any license, or any interest in any license, or any certificate of compliance or any commitment or reservation without the consent of the Commission being first obtained.

Section 6013.* Disposition of securities by corporate licensee. (a) The sale, assignment, transfer, pledge or other disposition of any security issued by a corporation which holds a casino license is conditional and shall be ineffective unless approved by the Commission.

(b) Every security issued by a corporation which holds a casino license shall bear, on both sides of the certificate evidencing such security, a statement of the restrictions imposed by this section, except that in the case of a publicly traded corporation incorporated prior to the effective date of this act, a statement of restriction shall be necessary only insofar as certificates are issued by such corporation after the effective date of this act.

(c) The Director of Revenue and Taxation shall not accept for filing any articles of incorporation of any corporation which includes as a stated purpose the conduct of casino gaming, or any amendment which adds such purpose to articles of incorporation already filed, unless such articles or amendments have been approved by the Commission and a certified copy of such approval is annexed thereto upon presentation for filing.

(d) If at any time the Commission finds that an individual owner or holder of any security of a corporate licensee or of a holding or intermediary company with respect thereto is not qualified under this act, and if as a result the corporate licensee is no longer qualified to continue as a casino licensee in Guam, the Commission, pursuant to the provisions of this act, shall take any necessary action to protect the public interest, including the suspension or revocation of the casino license of the corporation; provided, however, that if the holding or intermediary company is a publicly traded corporation and the Commission finds disqualified any holder of any security thereof who is required to be qualified under this act, and the Commission also finds that: (1) the holding or intermediary company has complied with the provisions of this act; (2) the holding or intermediary company has made a good faith effort, including the prosecution of all legal remedies, to comply with any order of the Commission requiring the divestiture of the security interest held by the disqualified holder; and (3) such disqualified holder does not have the ability to control the corporate licensee or any holding or intermediary company with respect thereto, or to elect one or more members of the board of directors of such corporation or company, the Commission shall not take action against the casino licensee or the

*The number "Section 6013" has been duplicated in error.

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 41 of 45

holding or intermediary company with respect to the continued ownership of the security interest by the disqualified holder. For purposes of this act, a security holder shall be presumed to have the ability to control a publicly traded corporation, or to elect one or more members of its board of directors, if such holder owns or beneficially holds five percent (5%) or more of the equity securities of such corporation, unless such presumption of control or ability to elect is rebutted by clear and convincing evidence.

(e) Commencing on the date the Commission serves notice upon a corporation of the determination of disqualification under subsection (d) of this section, it shall be unlawful for the named individual:

(1) To receive any dividends or interest upon any such securities;

(2) To exercise, directly or through any trustee or nominee, any right conferred by such securities; or

(3) To receive any remuneration in any form from the corporate licensee for services rendered or otherwise.

(f) After a nonpublicly traded corporation has been issued a casino license pursuant to the provisions of this act, but prior to the issuance or transfer of any security to any person required to be but not yet qualified in accordance with the provisions of this act, such corporation shall file a report of its proposed action with the Commission, and shall request the approval of the Commission for the transaction. If the Commission shall deny the request, the corporation shall not issue or transfer such security. After a publicly traded corporation has been issued a casino license, such corporation shall file a report quarterly with the Commission, which report shall list all owners and holders of any security issued by such corporate casino licensee.

(g) Each corporation which has been issued a casino license shall file a report of any change of its corporate officers or members of its board of directors with the Commission. No officer or director shall be entitled to exercise any powers of the office to which he was so elected or appointed until qualified by the Commission.

Section 6013.* _Casino employment._ (a) A casino licensee shall not appoint or employ in a position requiring a casino key employee license, a casino employee license, or a casino service employee registration any person not possessing a current and valid license or registration permitting such appointment or employment.

(b) A casino licensee shall, within 24 hours of receipt of written or electronically transmitted notice thereof, terminate the appointment or employment of any person whose license or registration has been denied, revoked or has expired. A casino licensee shall comply in all respects with any order of the Commission imposing limitations or restrictions upon the terms of employment or appointment in the course of any investigation or hearing.

(c) An applicant for or a holder of a casino key employee license or a casino employee license whose application is denied or whose licensure is revoked, as the case may be, shall not, in addition to any restrictions imposed by the regulations of the Commission on a reapplication for licensure, be employed by a casino licensee in a position that does not require a license until two (2) years have elapsed from the date of the denial or revocation, except that the Commission may permit such employment upon good cause shown.

*The number "Section 6013" has been duplicated in error.

61

Section 6014. <u>Employment of bona fide residents of Guam required.</u> (a) By the end of the third year of the opening of the first casino hotel facility in Guam, ninety percent (90%) of all persons employed to work in any and all casino hotels and the local office of casino service industries licensed to do business in Guam shall be bona fide residents of Guam. In the years prior to the end of the third year, the casino licensees and casino service industries licensed to do business in Guam shall employ bona fide residents of Guam in the following percentages in accordance with the timetable stated: at least sixty-five percent (65%) by the end of the first year of the opening of the first casino hotel facility; and at least seventy-five percent (75%) by the end of the second year of the opening of the first casino hotel facility. For purposes of this section, a bona fide resident of Guam is a native Guamanian or a person who has been domiciled lawfully in Guam for one (1) year.

(b) The primary obligation for carrying out the bona fide resident employment requirement rests with the casino licensees who shall submit quarterly reports to the Commission showing the degree of compliance achieved. The Commission may waive the bona fide resident employment requirement only upon a showing by a casino licensee or a casino service industry entity that despite diligent efforts to locate qualified, bona fide residents through the Guam Department of Labor and by a company's own recruitment efforts, the required percentages of bona fide resident employment could not be achieved.

(c) The Commission may establish and impose a fines on casino licensees and casino service industry entities that does not comply with the bona fide resident employment requirement.

(d) If the Commission determines that a casino licensee casino service industry entity has failed to demonstrate compliance with the bona fide resident employment requirement, the casino licensee or casino service entity shall be granted three (3) months to achieve compliance before a fine is imposed.

(e) In the case of continued non-compliance, the Commission may suspend the license of a casino or a casino service industry entity.

(f) A violation of the bona fide resident employment requirement shall be a civil violation subject to the penalties established by the Commission and may be enforced by an action in the Superior Court.

## Title 7—Hearings of the Commission

Section 7001. <u>Conduct of hearings; rules of evidence; punishment of contempts; rehearing.</u> (a) At all hearings of contested cases the Commission may hear the case directly or permit the Chairman to designate any Commissioner or a qualified hearing officer to conduct the hearing.

(b) The proceedings at the hearing shall be recorded or transcribed.

(c) Oral evidence shall be taken only upon oath or affirmation.

(d) Each party to a hearing shall have the right to call and examine witnesses; to introduce exhibits relevant to the issues of the case, including the transcript of testimony

62

at any investigative hearing conducted by or on behalf of the Commission; to cross-examine opposing witnesses in any matters relevant to the issue of the case; to impeach any witness, regardless of which party called him or her to testify; and to offer rebuttal evidence.

(e) If an applicant, licensee, registrant or person who shall be qualified pursuant to this act is a party and if such party shall not testify in his or her own behalf, he or she may be called and examined as if under cross-examination.

(f) The hearing shall not be conducted according to rules relating to the admissibility of evidence in courts of law. Any relevant evidence may be admitted and shall be sufficient in itself to support a finding if it is the sort of evidence upon which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in a civil action.

(g) The parties or their counsel may, by written stipulation, agree that certain specified evidence may be admitted, although such evidence may be otherwise subject to objection.

(h) The Commission or hearing officer may take official notice of any generally accepted information or technical or scientific matter in the field of gaming and of any other fact that may be judicially noticed by the courts of Guam. The parties shall be informed of any information, matters or facts so noticed and shall be given a reasonable opportunity, on request, to refute such information, matters or facts by evidence or by written or oral presentation of authorities, the manner of such refutation to be determined by the Commission or hearing officer. The Commission or hearing office has the discretion, before rendering a decision, to permit the filing of amended or supplemental pleadings and shall notify all parties thereof and provide a reasonable opportunity for objections thereto.

(i) If any person in proceedings before the Commission or a hearing officer disobeys or resists any lawful order, refuses to respond to a subpoena, refuses to take the oath or affirmation as a witness or thereafter refuses to be examined, or is guilty of misconduct at the hearing or so near the place thereof as to obstruct the proceeding, the person may be punished for contempt in accordance with the Rules of Court if the Commission or hearing officer certifies the facts underlying the contumacious behavior to the Superior Court. Thereafter, the courts shall have jurisdiction in the matter, and the same proceeding shall be had, the same penalties may be imposed, and the person charged may purge himself or herself of the contempt in the same way as in the case of a person who has committed contempt in the trial of a civil action before the Superior Court.

(j) The Commission, upon motion therefor made within ten (10) days after the service of the decision and order, may order a rehearing before the Commission upon such terms and conditions as it may deem just and proper when the Commission finds cause to believe that the decision and order should be reconsidered in view of the legal, policy or factual matters advanced by the moving party or raised by the Commission on its own motion.

(k) Upon motion made within a reasonable time, but in no event later than one (1) year from the service of the decision and order, the Commission may relieve a party from the decision and order upon a showing that there is additional evidence which is material and necessary and which would be reasonably likely to change the decision of the

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 44 of 45

Commission, and that sufficient reason existed for failure to present such evidence at the hearing or on a motion for reconsideration. The motion shall be supported by an affidavit of the moving party or his or her counsel showing with particularity the materiality and necessity of the additional evidence and the reason why it was not presented at the hearing or on a motion for reconsideration. Upon rehearing, rebuttal evidence to the additional evidence shall be admitted. After rehearing, the Commission may modify its decision and order as the additional evidence may warrant.

(l) A motion for relief from a decision and order which is based on any ground other than the presentation of newly discovered evidence shall be governed as to both timeliness and sufficiency by the rules of the Commission, which shall be modeled, to the extent practical, upon the rules then governing similar motions before the courts of Guam.

Section 7002. Proceedings against licensees. (a) Any proceeding against a licensee or registrant shall be brought on by written complaint, which shall include a statement setting forth in ordinary and concise language the charges and the acts or omissions supporting such charges.

(b) Upon the filing of the complaint the Commission shall serve a copy upon the licensee or registrant either personally or by certified mail to the address on file with the Commission.

(c) Within twenty (20) days after service upon of the complaint, the licensee or registrant may file with the Commission a responsive pleading which may:

(1) Request a hearing;

(2) Admit the accusation in whole or in part;

(3) Present new matters or explanations by way of defense; or

(4) State any legal objections to the complaint.

(d) The licensee or registrant shall be entitled to a hearing on the merits if a responsive pleading has been filed within the time allowed by subsection (c), and any such notice shall be deemed a specific denial of all parts of the complaint not expressly admitted. Failure to timely file a responsive pleading or to appear at the hearing shall constitute an admission of all matters and facts contained in the complaint and a waiver of the licensee's or registrant's right to a hearing, but the Commission, in its discretion, may nevertheless order a hearing. All affirmative defenses shall be specifically stated, and unless objection is taken as provided in paragraph (4) of subsection (c) of this section, all objections to the form of the complaint shall be deemed waived.

(e) The Commission shall determine the time and place of the hearing as soon as is reasonably practical after receiving the licensee's or registrant's responsive pleading. The Commission shall deliver or send by certified mail a notice to all parties at least ten (10) days prior to the hearing. Unless the licensee or registrant consents, the hearing shall not be held prior to the expiration time within which the licensee or registrant is entitled to file a responsive pleading.

(f) Prior to a hearing before the Commission, and during a hearing upon reasonable cause shown, the Commission shall issue subpoenas and subpoenas duces tecum at the

Case 1:04-cv-00046    Document 76-2    Filed 12/07/2004    Page 45 of 45