request of a licensee, a registrant, or the Commission's attorney.

Section 7003. Emergency orders. Notwithstanding any provisions of this article, the Commission may issue an emergency order for the suspension, limitation or conditioning of any operation certificate or any license, other than a casino license, or any registration, or may issue an emergency order requiring the licensed casino to keep an individual from the premises of such licensed casino or not to pay such individual any remuneration for services or any profits, income or accruals on his or her investment in such casino, in the following manner:

(a) An emergency order shall be issued only when the Commission finds that:

(1) A licensee or registrant has been charged with the violation of a federal or Guam criminal law, or

(2) Such action is necessary to prevent a violation of a Guam or federal criminal law, or

(3) Such action is immediately necessary for the preservation of the public peace, health, safety, morals, good order and general welfare or to preserve the public policies declared by this act.

(b) An emergency order shall set forth the grounds upon which it is issued, including the statement of facts constituting the alleged emergency necessitating such action.

(c) The emergency order shall be effective immediately upon issuance and service upon the licensee, registrant, or resident agent of the licensee. The emergency order may suspend, limit, condition or take other action in relation to the approval of one or more individuals who were required to be approved in any operation, without necessarily affecting any other individuals or the licensed casino establishment. The emergency order shall remain in effect until further order of the Commission or final disposition of the case.

(d) Within five (5) days after issuance of an emergency order, the Commission shall cause a complaint to be filed and served upon the person or entity affected by the order.

(e) Thereafter, the person or entity against whom the emergency order has been issued and served shall be entitled to a hearing before the Commission in accordance with the provisions of this article.

Section 7004. Judicial review. (a) Any person aggrieved by a final decision or order of the Commission made after hearing or rehearing by the Commission, whether or not a petition for hearing was filed, may obtain judicial review thereof by appeal to the Superior Court in accordance with the Rules of Court.

(b) Filing of an appeal shall not stay enforcement of the decision or order of the Commission unless the stay is obtained from the court upon application in accordance with the Rules of Court or from the Commission upon such terms and conditions as it deems proper.

(c) The reviewing court may affirm the decision and order of the Commission, may remand the case for further proceedings, or may reverse the decision if the substantive

rights of the petitioner have been prejudiced because the decision is:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority and jurisdiction of the Commission; or

(3) Arbitrary or capricious or otherwise not in accordance with law.

(d) In order to protect the public interest and the regulatory authority of the Commission, any action by the Commission under this article shall not be subject to the injunctive authority of the Superior Court prior to the exhaustion of the administrative procedures herein specified, unless it appears evident to the court, by clear and convincing evidence, that a manifest denial of justice would result from the refusal to enjoin the contemplated action of the Commission.

## Article 8—Sanctions for Unlawful Acts

Section 8001. Penalties for willful evasion of payment of license fees, other acts and omissions. Any person who willfully fails to report, pay or truthfully account for and pay over any license fee or tax imposed by the provisions of this act, or willfully attempts in any manner to evade or defeat any such license fee, tax, or payment thereof is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000) and shall in addition be liable for a penalty of three times the amount of the license fee or tax evaded and not paid, collected or paid over, which penalty shall be assessed by the Commission and collected in accordance with the provisions of this act.

Section 8002. Unlicensed casino gaming unlawful; penalties.

(a) Any person who violates the provisions of Sections 5001 or 5003 or of Article 6, or permits any gaming, slot machine or device to be conducted, operated, dealt or carried on in any casino by a person other than a person licensed for such purposes pursuant to this act is guilty of a misdemeanor.

(b) Any licensee who places games or slot machines into play or displays such games or slot machines in a casino without the authority of the Commission to do so is guilty of a misdemeanor.

(c) Any person who operates, carries on or exposes for play any gaming, gaming device or slot machine after his license has expired and prior to the actual renewal thereof is guilty of a misdemeanor.

(d) Upon conviction of any of the offenses specified in subsections (a), (b) and (c), the penalties provided for a misdemeanor may be imposed, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000).

Section 8003. Swindling and cheating; penalties. (a) Except as provided in subsection (b), any person who by any trick or sleight of hand, or by a fraud or fraudulent scheme, or the use of marked cards or rigged or loaded dice or device, for himself or for another wins or attempts to win money or property or a representative of either or reduces a losing wager or attempts to reduce a losing wager in connection with casino gaming or

66

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 2 of 31

simulcast wagering is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000).

(b) Any person who by any trick or sleight of hand, or by fraud or fraudulent scheme, or the use of marked cards or rigged or loaded dice or device, for himself or for another wins or attempts to win money or property or a representative of either or reduces a losing wager or attempts to reduce a losing wager in connection with casino gaming is guilty of a petty misdemeanor and is subject to not more than thirty (30) days imprisonment and a fine of not more than one thousand dollars ($1,000) or both if the value of such money or property or representative of either is one hundred dollars ($100) or less.

Section 8004. Use of certain devices in playing game, penalties. A person commits a petty misdemeanor if, in playing a game in a licensed casino, the person uses, or assists another in the use of, an electronic, electrical or mechanical device which is designed, constructed, or programmed specifically for use in obtaining an advantage at playing any game in a licensed casino. In addition to any other penalty imposed by the court upon the person, the device used by any person in violation of this section shall be seized and delivered to the Commission. Each casino licensee shall post notice of this prohibition and the penalties of this section in a manner determined by the Commission.

Section 8005. Unlawful use of bogus chips or gaming billets, marked cards, dice, cheating devices, unlawful coins; penalty. (a) It shall be unlawful for any person gaming in any licensed casino to:

(1) Knowingly to use bogus or counterfeit chips or gaming billets, or to knowingly substitute and use in any such game cards or dice that have been marked, loaded or rigged; or

(2) Knowingly to use or possess any cheating device with intent to cheat or defraud.

(b) It shall be unlawful for any person, playing or using any slot machine in a licensed casino to:

(1) Knowingly use other than a lawful coin or legal tender of the United States, or to use coin not of the same denomination as the coin intended to be used in such slot machine, except that in the playing of any slot machine or similar gaming device, it shall be lawful for any person to use gaming billets, tokens or similar objects therein which are approved by the Commission; or

(2) Use any cheating or thieving device, including but not limited to tools, drills, wires, coins or tokens attached to strings or wires, or electronic or magnetic devices, to facilitate the alignment of any winning combination or removing from any slot machine any money or other contents thereof.

(c) It shall be unlawful for any person to knowingly possess or use while on the premises of a licensed casino, any cheating or thieving device, including but not limited to tools, wires, drills, coins attached to strings or wires or electronic or magnetic devices to facilitate removing from any slot machine any money or contents thereof, except that a duly authorized employee of a licensed casino may possess and use any of the foregoing only in

67

furtherance of his or her employment in the casino.

(d) It shall be unlawful for any person knowingly to possess or use while on the premises of any licensed casino any key or device designed for the purpose of or suitable for opening or entering any slot machine or similar gaming device or drop box, except that a duly authorized employee of a licensed casino or of the Commission may possess and use any of the foregoing only in furtherance of his or her employment.

(e) Any person who violates this section is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000). In addition, to any other penalty imposed by the court upon the person, the device used by any person in violation of this section shall be seized and delivered to the Commission.

Section 8006. Cheating games and devices in a licensed casino; penalty. (a) It shall be unlawful to:

(1) Knowingly to conduct, carry on, operate, deal or allow to be conducted, carried on, operated or dealt any cheating or thieving game or device; or

(2) Knowingly to deal, conduct, carry on, operate or expose for play any game or games played with cards, dice or any mechanical device, or any combination of games or devices, which have in any manner been marked or rigged, or placed in a condition, or operated in a manner, the result of which tends to deceive the public or tends to alter the normal random selection of characteristics or the normal chance of the game which could determine or alter the result of the game.

(b) It shall be unlawful knowingly to use or possess any marked cards, loaded dice, plugged or rigged machines or devices.

(c) Any person who violates this section is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000). In addition, to any other penalty imposed by the court upon the person, the device used by any person in violation of this section shall be seized and delivered to the Commission.

Section 8007. Unlawful possession of device, equipment or other material illegally manufactured, distributed, sold or serviced. Any person who possesses any device, equipment or material which he or she knows has been manufactured, distributed, sold, rigged or serviced in violation of the provisions of this act is guilty of a crime of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000). In addition, to any other penalty imposed by the court upon the person, the device used by any person in violation of this section shall be seized and delivered to the Commission.

Section 8008. Employment without license or registration; penalty. (a) Any person who, without obtaining the requisite license or registration as provided in this act, works or is employed in a position whose duties would require licensing or registration under the provisions of this act is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and

68

in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000).

(b) Any person who employs or continues to employ an individual not duly licensed or registered under the provisions of this act in a position whose duties require a license or registration under the provisions of this act is guilty of a misdemeanor and subject to the penalties therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000).

(c) Any person violating the provisions of Section 6005(e) shall be guilty of a felony of the third degree and shall be punished as provided therefore, except that a fine of not more than twenty-five thousand dollars ($25,000) may be imposed in the case of an individual and in the case of a person other than a natural person, a fine of not more than one hundred thousand dollars ($100,000) may be imposed. Any licensee permitting or allowing such a violation shall also be punishable under this subsection, in addition to any other sanctions the Commission may impose.

Section 8009. Persons prohibited from accepting employment violation, penalty. (a) No applicant or person or organization licensed by or registered with the Commission knowingly shall employ or offer to employ any person who is prohibited by the provisions of this act from accepting such employment.

(b) An applicant or person or organization who violates the provisions of this section is guilty of a misdemeanor and shall be subject to not more than one (1) year of imprisonment or a fine of not more than ten thousand dollars ($10,000) or both and in the case of a person other than a natural person, to a fine of not more than fifty thousand dollars ($50,000).

Section 8010. Unlawful entry by person whose name has been placed on list of excluded persons; penalty. Any person whose name is on the list of persons promulgated by the Commission pursuant to Section 4007 who knowingly enters the premises of a licensed casino is guilty of a petty misdemeanor, except that any person who has been convicted of this offense three times is guilty of a misdemeanor for each subsequent offense.

Section 8011. Gaming by certain persons prohibited; penalties; defenses. (a) No person under the age of twenty-one (21) shall enter, or game in, a licensed casino; provided, however, that such a person may enter a casino by way of passage to another room, and provided further, however, that any such person who is licensed or registered under the provisions of this act may enter a casino in the regular course of the person's permitted activities.

(b) Any licensee or employee of a casino who allows a person under the age of twenty-one (21) to remain in or game in a casino is guilty of a petty misdemeanor; except that the establishment of all of the following facts by a licensee or employee allowing any such underage person to remain shall constitute a defense to any prosecution therefor:

(1) That the underage person falsely represented in writing that he or she was at or over the excludable age;

(2) That the appearance of the underage person was such that an ordinary prudent person would believe him or her to be at or over the age excludable age; and

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 5 of 31

(3) That the admission was made in good faith, relying upon such written representation and appearance, and in the reasonable belief that the underage person was actually at or over the excludable age.

Section 8012. Prohibited political contributions; penalty. Any person who makes or causes to be made a political contribution prohibited by the provisions of this act is guilty of a crime of a misdemeanor and is and subject to the penalty therefor, except that the amount of a fine may be up to ten thousand dollars ($10,000), and in the case of a person other than a natural person, the amount of a fine may be up to fifty thousand dollars ($50,000).

Section 8013. Authority of gaming licensee and agents to detain or question persons suspected of cheating; immunity from liability; posted notice required. (a) Any licensee or its officers, employees or agents may question any individual in the casino who is reasonably suspected of violating any of the provisions of Sections 8003, 8004, 8005, 8006 and 8007. No licensee or its officers, employees or agents shall be criminally or civilly liable by reason of any such questioning.

(b) Any licensee or its officers, employees or agents who shall have probable cause for believing there has been a violation of in the casino of Sections 8003, 8004, 8005, 8006 and 8007 by any person may refuse to permit such person to continue gaming or may take such person into custody and detain him or her in the establishment in a reasonable manner for a reasonable length of time, for the purpose of notifying law enforcement or Commission authorities. Such refusal or taking into custody and detention shall not render such licensee or its officers, employees or agents criminally or civilly liable for false arrest, false imprisonment, slander or unlawful detention, unless such refusal or such taking into custody or detention is unreasonable under all of the circumstances.

(c) No licensee or the officers, employees or agents of such licensee shall be entitled to any immunity from civil or criminal liability provided in this section unless there is displayed in a conspicuous manner in the casino a notice in bold face type clearly legible and in substantially this form:

"Any gaming licensee or officer, employee or agent thereof who has probable cause for believing that any person is violating any of the provisions of the Casino Control Act prohibiting cheating or swindling in gaming may detain such person in the establishment for the purpose of notifying a police officer or Casino Control Commission."

Section 8014. (a) Other offenses; general penalty. Notwithstanding any other law, any person who violates any provision of this act the penalty for which is not specifically fixed in this act is guilty of a misdemeanor and subject to imprisonment of not more than one (1) year and a fine of not more than Ten Thousand Dollars ($10,000).

(b) The maximum penalty for felonies as designated under this act, unless otherwise stated, is a term of imprisonment of five (5) years and a fine of Twenty-Five Thousand Dollars ($25,000) in the case of a natural person and a fine of One Hundred Thousand Dollars ($100,000) for other than natural persons.

(c) Notwithstanding any other law, and whether specifically stated in this act or not, the offenses set forth in this act and the penalties assessed therefore shall be and are in addition to any other offenses and penalties which may be charged and imposed pursuant to any other applicable criminal provision of the Guam Code Annotated.

Section 8015. Continuing offenses. (a) A violation of any of the provisions of this act which is an offense of a continuing nature shall be deemed to be a separate offense on each day that it occurs. Nothing herein shall be deemed to preclude the commission of multiple violations within a day of those provisions of this act which establish offenses consisting of separate and distinct acts.

(b) Any person who aids, abets, counsels, commands, induces, procures or causes another to violate a provision of this act is punishable as a principal and subject to all sanctions and penalties, both civil and criminal, provided by this act.

Section 8016. Exemption from certain provisions of Title 9 of the Guam Code Annotated. The provisions of Sections 64.10, 64.20, 64.21, 64.22 and 64.22A of Title 9 of the Guam Code Annotated shall not apply to any person who, as a licensee operating pursuant to the provisions of this act, or as a player in any game authorized pursuant to the provisions of this act, engages in gaming as authorized herein.

Section 8017. Racketeer-influenced and corrupt organizations, Definitions of. For purposes of this act:

(a) "Racketeering activity" means, (1) any act or threat involving murder, kidnapping, gaming, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under Guam law and punishable by imprisonment for more than 1 year; (2) any act which is indictable under any of the following provisions of Title 18, United States Code: section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471 through 509 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gaming information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful fund payments), section 1955 (relating to the prohibition of illegal gaming businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2421-2424 (relating to white slave traffic); (3) any act which is indictable under Title 29, *United States Code, section 186* (relating to restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds); or (4) any offense involving bankruptcy fraud, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

Case 1:04-cv-00046     Document 76-3     Filed 12/07/2004     Page 7 of 31

(b) "Person" includes any individual or entity holding or capable of holding a legal or beneficial interest in property.

(c) "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not as a legal entity.

(d) "Pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this act and the last of which occurred within ten (10) years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

(e) "Unlawful debt" means a debt (1) which was incurred or contracted in gaming activity which was in violation of the law of Guam, the United States, a state or political subdivision thereof; or (2) which is unenforceable under Guam, state or federal law in whole or in part as to principal or interest because of the laws relating to usury; or (3) which was incurred in connection with the business of gaming in violation of the law of Guam, the United States, a state or political subdivision thereof; or (4) which was incurred in connection with the business of lending money or a thing of value at a rate usurious under Guam, state or federal law, where the usurious rate is at least twice the enforceable rate.

(f) "Documentary material" includes any book, paper, document, record, recording, or other material.

Section 8018. Prohibited activities. (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 8015(b) to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect casino gaming operations or ancillary industries which do business with any casino licensee. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer or of assisting another to do so, shall not be unlawful under this subsection, provided that the sum total of the securities of the issuer held by the purchaser, the members of his or her family, and his or her or their accomplices in any pattern of racketeering activity or in the collection of an unlawful debt does not amount in the aggregate to one percent (1%) of the outstanding securities of any one class, or does not, either in law or in fact, empower the holders thereof to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, casino gaming operations or ancillary industries which do business with any casino licensee.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, casino gaming operations or ancillary industries which do business with any casino licensee, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

(e) Any person who violates any provision of this section shall be fined not more than two hundred thousand dollars ($250,000) or imprisoned not more than ten years (10) or both and shall forfeit to the government of Guam (1) any interest he has acquired or maintained in violation of this section and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of this section.

(f) In any action brought by the Attorney General under this section, the Superior Court shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper.

(g) Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section upon such terms and conditions as the court shall deem proper. If a property right or other interest is not exercisable or transferable for value by the government of Guam, it shall expire and shall not revert to the convicted person.

Section 8019. Civil remedies. (a) The Superior Court shall have jurisdiction to prevent and restrain violations of Section 8018 by issuing appropriate orders, including, but not limited to, ordering any person to divest himself or herself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect casino gaming operations or ancillary industries which do business with any casino licensee; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings in Superior Court for violations of Section 8018. In any action brought under this section, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his or her business or property by reason of a violation of Section 8018 may sue therefor in any appropriate court and shall recover threefold any damages he or she or it sustains and the cost of the suit, including a reasonable attorney's fee.

(d) A final judgment or decree rendered in favor of the people of Guam in any criminal proceeding brought under this act shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the Attorney General.

Section 8020. Civil investigative demand. (a) Whenever the Attorney General has reason to believe that any person or enterprise may be in possession, custody, or control

of any documentary materials relevant to an investigation under this act, the Attorney General, shall prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination.

(b) Each such demand shall:

(1) State the nature of the conduct constituting the alleged violation that is under investigation and the provision of law applicable thereto;

(2) Describe the class or classes of documentary material to be produced thereunder with such specificity and certainty as to permit such material to be fairly identified;

(3) Prescribe a return date which will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying or reproduction; and

(4) Identify the custodian to whom such material shall be made available.

(c) No such demand shall:

(1) Contain any requirement which would be held to be unreasonable if contained in a subpoena duces tecum issued in aid of a grand jury investigation; or

(2) Require the production of any documentary evidence which would be otherwise privileged from disclosure if demanded by a subpoena duces tecum issued in aid of a grand jury investigation.

(d) Service of any such demand or any petition filed under this section may be made upon a person by:

(1) Delivering a duly executed copy thereof to any partner, executive officer, managing agent, or general agent thereof, or to any agent thereof authorized by appointment or by law to receive service of process on behalf of such person, or upon any individual person;

(2) Delivering a duly executed copy thereof to the principal office or place of business of the person to be served; or

(3) Depositing such copy in the United States mail, by registered or certified mail duly, addressed to such person at its principal office or place of business.

(e) A verified return by the individual serving any such demand or petition setting forth the manner of such service shall be prima facie proof of such service. In the case of service by registered or certified mail, such return shall be accompanied by the post office's return receipt of delivery of such demand.

(f) Any person upon whom any demand issued under this section has been duly served shall make such material available for inspection and copying or reproduction to the Attorney General at the principal place of business of such person, or at such other place as the Attorney General and such person thereafter may agree and prescribe in writing, on the return date specified in such demand or on such later date as the Attorney General may prescribe in writing. Upon written agreement between such person and the Attorney General, copies may be substituted for all or any part of such original materials. The Attorney General may cause the preparation of such copies of documentary material

74

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 10 of 31

as may be required for official use by the Attorney General. While in the possession of the Attorney General, no material so produced shall be available for examination, without the consent of the person who produced such material, by any individual other than the Attorney General or his duly appointed representatives. Under such reasonable terms and conditions as the Attorney General shall prescribe, documentary material while in his or her possession shall be available for examination by the person who produced such material or any duly authorized representatives of such person.

(g) Upon completion of:

(1) The review and investigation for which any documentary material was produced under this section, and

(2) Any case or proceeding arising from such investigation, the Attorney General shall return to the person who produced such material all such material other than copies thereof made by the Attorney General pursuant to this section, provided that is has not passed into the control of any court or grand jury through the introduction thereof into the record of such case or proceeding.

(h) When any documentary material has been produced by any person under this section for use in any racketeering investigation, and no such case or proceeding arising therefrom has been instituted within a reasonable time after completion of the examination and analysis of all evidence assembled in the course of such investigation, such person shall be entitled, upon written demand made upon the Attorney General, to the return of all documentary material other than copies thereof made pursuant to this section so produced by such person.

(i) Whenever any person fails to comply with any civil investigative demand duly served upon him, her or it under this section or whenever satisfactory copying or reproduction of any such material cannot be done and such person refuses to surrender such material, the Attorney General may file in the Superior Court a petition for an order of such court for the enforcement of this section.

(j) The provisions of this section shall not apply to any situation covered by the provisions of Section 4017, and shall in no way limit the Commission's authority under that section.

Section 8021. Supplemental sanctions. In addition to any penalty, fine or term of imprisonment authorized by law, the Commission, after appropriate hearings and factual determinations, shall have the authority to impose the following sanctions upon any person licensed or registered pursuant to this act:

(1) Revoke the license or registration of any person for the conviction of any criminal offense under this act or for the Commission of any other offense or violation of this act which would disqualify such person from holding his, her or its license or registration;

(2) Revoke the license or registration of any person for willfully and knowingly violating an order of the Commission directed to such person;

(3) Suspend the license or registration of any person pending hearing and determination, in any case in which license or registration revocation could result;

(4) Suspend the operation certificate of any casino licensee for violation of any provisions of this act or rules promulgated hereunder relating to the operation of its

75

casino, including games, internal and accountancy controls and security;

(5) Assess such civil penalties as may be necessary to punish misconduct and to deter future violations, which penalties may not exceed twenty-five thousand dollars ($25,000) in the case of any individual licensee or registrant, except that in the case of a casino licensee the penalty may not exceed one hundred thousand dollars ($100,000);

(6) Order restitution of any money or property unlawfully obtained or retained by a licensee or registrant;

(7) Enter a cease and desist order which specifies the conduct which is to be discontinued, altered or implemented by the licensee or registrant;

(8) Issue letters of reprimand or censure, which letters shall be made a permanent part of the file of each licensee or registrant so sanctioned and which may be considered by the Commission upon the licensee's application for renewal or a different license or registration; or

(9) Impose any or all of the foregoing sanctions in combination with each other.

## Article 9--Miscellaneous

Section 9001. Declaration of Guam's Limited Exemption from Operation of Provisions of Section 1172 of Title 15 of the U. S. Code. Pursuant to Section 2 of an Act of Congress of the United States entitled "An act to prohibit transportation of gaming devices in interstate and foreign commerce," approved January 2, 1951, being chapter 1194, 64 Stat. 1134, and codified at Sections 1171-1177 of Title 15 of the U. S. Code, the people of Guam, acting directly through the initiative process authorized to them by the Congress through its enactment of Section 1422a(a) of Title 48 of the U. S. Code and implemented for them by the Legislature through its enactment of Chapter 17 of Title 3 of the Guam Code Annotate, do hereby, in accordance with and in compliance with the provisions of section 2 of said Act of Congress, declare and proclaim that section 2 of that Act of Congress shall not apply to any gaming device in Guam where the transportation of such a device is specifically authorized by and done in compliance with the provisions of this act, any other applicable statute of Guam, and any regulations promulgated pursuant thereto, and that any such gaming device transported in compliance with Guam law and regulations shall be exempt from the provisions of that Act of Congress.

Section 9002. Legal shipment of gaming devices into Guam. All shipments into Guam of gaming devices, including slot machines, the registering, recording and labeling of which has been duly had by the manufacturer or dealer thereof in accordance with sections 3 and 4 of an Act of Congress of the United States entitled "An act to prohibit transportation of gaming devices in interstate and foreign commerce," approved January 2, 1951, being chapter 1194, 64 Stat. 1134, and codified at Sections 1171-1177 of Title 15 of the U. S. Code, shall be deemed legal shipments thereof into Guam.

Section 9003. Severability and preemption. (a) If any part of this act or the application thereof to any person or circumstances shall be held to be invalid, such holding

shall not affect, impair or invalidate the remainder of this act or the application of such remaining portion of the act to any other person or circumstances. The holding of invalidity shall apply only to the portion directly involved in such holding or to the persons or circumstances therein involved.

(b) If any provision of this act is inconsistent with, in conflict with, or contrary to any other provision of law, such provision of this act shall prevail over such other provision and such other provision shall be deemed to be amended, superseded or repealed to the extent of such inconsistency or conflict. The Commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act.

Section 9004. Equal employment opportunity requirements. The Commission shall not issue a license to any applicant, including a casino service industry, who has not agreed to afford equal employment opportunity to bona fide residents of Guam.

Section 9005. Equal employment opportunity enforcement. In addition to and without limitation of other powers that it may have by law, the Commission shall have the following powers to:

(a) Investigate and determine the percentage of population of bona fide residents of Guam employed in any casino or casino service industry in Guam;

(b) Establish and promulgate by rule such percentage guidelines in determining the adequacy of equal employment opportunity being afforded bona fide residents of Guam by the casino and casino service industry in Guam;

(c) Impose such sanctions as may be necessary to accomplish the equal employment opportunities for the bona fide residents of Guam in the casino and casino service industry in Guam;

(d) Refer to the Attorney General instances or circumstances which may constitute violations of law;

(e) Enforce in a court of law violations of the equal employment opportunity requirements of this act or to assist in any enforcement proceeding initiated by an aggrieved person who claims a violation of his or her equal employment opportunity right; and

(f) Require a licensee to designate an equal employment opportunity officer to enforce the provisions of Section 9004 and any rules promulgated pursuant thereto.

### Article 10-Conservatorship

Section 10001. Institution of conservatorship and appointment of conservators. (a) Notwithstanding any other provision of this act, (1) upon the revocation of a casino license, (2) upon, in the discretion of the Commission, the suspension of a casino license or operation certificate for a period of in excess of four (4) months, or (3) upon the failure or refusal to renew a casino license, and notwithstanding the pendency of any appeal therefrom, the Commission may appoint and constitute a conservator to, among other

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 13 of 31

things, take over and into his or her possession and control all the property and business of the licensee relating to the casino and the approved hotel; provided, however, that this subsection shall not apply in any instance in which the casino in the casino hotel facility for which the casino license had been issued, in fact, has not been in operation and open to the public, and provided further that no person shall be appointed as conservator unless the Commission is satisfied that he or she is individually qualified according to the standard applicable to casino key employees, except that casino experience shall not be necessary for qualification.

(b) The Commission may proceed in a conservatorship action in a summary manner or otherwise and shall have the power to appoint and remove one or more conservators and to enjoin the former or suspended licensee from exercising any of its privileges and franchises, from collecting or receiving any debts and from paying out, selling, assigning or transferring any of its property to other than a conservator, except as the Commission may otherwise order. The Commission shall have such further powers as shall be appropriate for the fulfillment of the purposes of this act.

(c) Every conservator, before assuming his or her duties, shall execute and file a bond for the faithful performance of his or her duties payable to the Commission with such surety or sureties and in such form as the Commission shall approve and in such amount as the Commission shall prescribe.

(d) When more than one conservator is appointed pursuant to this section, the provisions of this article applicable to one conservator shall be applicable to all; the debts and property of the former or suspended licensee may be collected and received by any of them; and the powers and rights conferred upon them shall be exercised by a majority of them.

(e) The Commission shall require that the former or suspended licensee purchase liability insurance, in an amount determined by the Commission, to protect a conservator from liability for any acts or omissions of the conservator occurring during the duration of the conservatorship which are reasonably related to, and within the scope of, the conservator's duties.

Section 10002. Instructions to, supervision of conservator. Upon the appointment of a conservator, the Commission shall provide the conservator with written instructions which enumerate the specific powers and duties conferred by the Commission on the conservator with respect to the conservatorship. A conservator shall be under the direct supervision of the Commission and shall exercise only those powers and perform only those duties expressly conferred on the conservator by the Commission. The Commission, at any time after a conservatorship is established, may modify the powers of the conservator by providing the conservator with a new set of written instructions.

Section 10003. Powers, authorities and duties of conservators. (a) Upon his appointment, the conservator shall become vested with the title of all the property of the former or suspended licensee relating to the casino and the approved hotel, subject to any and all valid liens, claims, and encumbrances. The conservator shall have the duty to conserve and preserve the assets so acquired to the end that such assets shall continue to be operated on a sound and businesslike basis.

78

(b) Subject to the direct supervision of the Commission and pursuant to the written instructions of the Commission and any other order the Commission may deem appropriate, a conservator shall have power to:

(1) Take into his possession all the property of the former or suspended licensee relating to the casino and the approved hotel, including its books, records and papers;

(2) Institute and defend actions by or on behalf of the former or suspended licensee;

(3) Settle or compromise with any debtor or creditor of the former or suspended licensee, including any taxing authority;

(4) Continue the business of the former or suspended licensee and to that end enter into contracts, borrow money and pledge, mortgage or otherwise encumber the property of the former or suspended licensee as security for the repayment of the conservator's loans; provided, however, that such power shall be subject to any provisions and restrictions in any existing credit documents;

(5) Hire, fire and discipline employees;

(6) Review all outstanding agreements to which the former or suspended licensee is a party that fall within the purview of the Commission's regulatory powers and advise the Commission as to which, if any, of such agreements should be the subject of scrutiny, examination or investigation by the commission; and

(7) Do all further acts as shall best fulfill the purposes of the Casino Control Act.

(c) Except during the pendency of a suspension or during the pendency of any appeal from any action or event which precipitated the conservatorship or in instances in which the Commission finds that the interests of justice so require, the conservator, subject to the prior approval of and in accordance with such terms and conditions as may be prescribed by the Commission, and after appropriate prior consultation with the former licensee as to the reasonableness of such terms and conditions, shall endeavor to and be authorized to sell, assign, convey or otherwise dispose of in bulk, subject to any and all valid liens, claims, and encumbrances, all the property of a former licensee relating to the casino and the approved hotel only upon prior written notice to all creditors and other parties in interest and only to such persons who shall be eligible to apply for and shall qualify as a casino licensee in accordance with the provisions of this act. Prior to any such sale, the former licensee shall be granted, upon request, a summary review by the commission of such proposed sale. No casino license privilege or entitlement shall be conveyed by any sale made by the conservator.

(d) The Commission may direct that the conservator, for an indefinite period of time, retain the property and continue the business of the former or suspended licensee relating to the casino and the approved hotel. During such period of time or any period of operation by the conservator, he or she shall pay when due, without in any way being personally liable, all secured obligations and shall not be immune from foreclosure or other legal proceedings to collect the secured debt, nor with respect thereto shall such conservator have any legal rights, claims, or defenses other than those which would have been available to the former or suspended licensee.

79

(e) A conservator shall cooperate fully with any investigation or inquiry conducted by the Commission during the conservatorship or after the termination of the conservatorship.

Section 10004. Compensation of conservators and others. Upon the appointment of a conservator, the Commission shall establish a reasonable rate of compensation for the services, costs and expenses of the conservator. The Commission shall also designate the party or parties responsible for the payment of compensation to the conservator and shall direct that the responsible party or parties guarantee payment in such manner as the Commission shall deem appropriate. The rate of compensation payable to the attorney for the conservator, the appraiser, the auctioneer, the accountant and such other persons as the Commission may appoint in connection with the conservatorship shall be established by the Commission at the time of appointment. All requests for payment by the conservator and other persons appointed by the Commission in connection with the conservatorship shall be subject to the approval of the Commission, and the Commission shall reduce any fee which it deems excessive. Fees payable to the conservator and expenses incurred in the course of the conservatorship shall have priority for payment over all other debts or obligations of the former or suspended licensee, including debts or obligations secured by the former or suspended licensee's property.

Section 10005. Assumption of outstanding debts. Incidental to any sale, assignment, conveyance or other disposition in bulk of all property of the former licensee relating to the casino and the approved hotel, the Commission, in its discretion, may require that the purchaser thereof assume in a form and substance acceptable to the Commission all of the outstanding debts of the former licensee that arose from or were based upon the operation of either or both the casino or the approved hotel.

Section 10006. Payment of net earnings during the period of the conservatorship. No payment of net earnings during the period of the conservatorship may be made by the conservator without the prior approval of the Commission, which, in its discretion, may direct that all or any part of same be paid either to the suspended or former licensee or to the Commission; provided, however, that the former or suspended licensee shall be entitled to a fair rate of return out of net earnings, if any, during the period of the conservatorship on the property retained by the conservator, taking into consideration that which amounts to a fair rate of return in the casino industry or the hotel industry, as the case may be.

Section 10007. Payments following a bulk sale. Following any sale, assignment, conveyance or other disposition in bulk of all the property subject to the conservatorship, the net proceeds therefrom, if any, after payment of all obligations owing to the government of Guam and any political subdivision thereof and of those allowances set forth in Section 10004, shall be paid by the conservator to the former or suspended licensee.

Section 10008. Continuing jurisdiction of Commission. A conservator shall at all times be subject to the provisions of this act and such rules, limitations, restrictions, terms and conditions as the Commission may from time to time prescribe. Except as may be otherwise provided, during the period of any conservatorship the casino operation in the form of the conservatorship shall be deemed to be a licensed casino operation and any

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 16 of 31

reference in this act to any obligations or responsibilities incumbent upon a casino licensee or those persons dealing with, affiliated with, having an interest in, or employed by a casino licensee shall be deemed to apply to the said casino operation.

Section 10009. <u>Termination of a conservatorship.</u> (a) The Commission shall direct the termination of any conservatorship when the conservator has, with the prior approval of the Commission, consummated the sale, assignment, conveyance or other disposition in bulk of all the property of the former licensee relating to the casino and the approved hotel.

(b) The Commission may direct the termination of any conservatorship when it determines that for any reason the cause for which the action was instituted no longer exists.

(c) Upon the termination of the conservatorship and with the approval of the Commission, the conservator shall take such steps as may be necessary in order to effect an orderly transfer of the property of the former or suspended licensee.

(d) The sale, assignment, transfer, pledge or other disposition of the securities issued by a former or suspended licensee during the pendency of a conservatorship shall neither divest, have the effect of divesting, nor otherwise affect the powers conferred upon a conservator.

Section 10010. <u>Required reports.</u> A conservator shall file with the Commission such reports with regard to the administration of the conservatorship in such form and at such intervals as the Commission shall prescribe. Such reports shall be available for examination and inspection by any creditor or party in interest and, in addition, the Commission may direct that copies of any such reports be mailed to such creditors or other parties in interest as it may designate and that summaries of any such reports be published in on the Commission's Internet website.

Section 10011. <u>Review of actions of conservator.</u> A creditor or party in interest aggrieved by any alleged breach of a fiduciary obligation of a conservator in the discharge of his duties shall be entitled, upon request, to a review thereof in accordance with rules to be promulgated by the Commission.

## Article 11—Fees and Taxes

Section 11001. <u>Casino application and license fees.</u> The Commission shall establish by rule fees for the application, issuance and renewal of any casino license. The initial application fee, which must be paid at the time that the Commission receives an application from any person for any casino license and which shall be nonrefundable, shall be not less than two hundred thousand dollars ($200,000). The issuance fee for an initial casino license, which must be paid at or before the time that the casino license is issued, shall be not less than three hundred thousand dollars ($300,000). The renewal fee shall be based upon the cost of maintaining control and regulatory activities contemplated by this act and shall be not less than one hundred thousand dollars ($100,000) for a one-year casino license and three hundred thousand dollars ($300,000) for a four-year casino license. For administrative convenience, the Commission may issue a casino license for only that portion of a year between the effective date and the next July 30 and prorate the sum required to be paid by the licensee for the initial license.

81

Section 11002. <u>Slot machine license fee.</u> (a) In addition to any other tax or fee imposed by this act, the Commission shall impose by rule on every slot machine maintained for use or in use in any licensed casino in Guam an annual license fee of not less than five hundred dollars ($500).

(b) The slot machine license fee shall be imposed as of the first day of July of each year with regard to all slot machines maintained for use or in use on that date, and on a pro rata basis thereafter during the year with regard to all slot machines maintained for use or placed in use after July 1.

Section 11003. <u>Fees for other than casino licenses.</u> The Commission, by rule, shall establish fees for the investigation and consideration of applications for the issuance and renewal of registrations and licenses other than casino licenses, which fees shall be payable by the applicant, licensee or registrant.

Section 11004. <u>Guam Casino Gaming Control Commission Fund.</u> (a) There is hereby created and established the Guam Casino Gaming Control Commission Fund, into which shall be deposited all money collected or received by the Commission from any source, except the receipts derived from the tax on gross revenues established by Section 11005.

(b) The Commission shall use the fund exclusively for the lawful operating expenses of the Commission.

(c) The Commission shall maintain a uniform system of accounting consistent with the government auditing standards established by the Comptroller General of the United State.

(d) The Commission shall publish annually within four (4) months after the end of its fiscal year a comprehensive report on its administration of the affairs of the Commission.

Section 11005. <u>Tax on gross revenues.</u> (a) There is hereby imposed on gross revenues as defined by Section 1003(bb) as annual tax, known as the Guam Casino Revenue Tax, as follows:

(1) Nine percent (9%) during the first two years of a casino's operation;

(2) Ten percent (10%) during the casino's third and fourth years of operation; and

(3) Eleven percent (11%) for each succeeding year.

(b) The tax on gross revenue shall not be reduced when or if the casino is sold or transferred to a new licensee or owner.

(c) Gross revenues from casino gaming shall not be subject to the gross receipts tax established pursuant to Chapter 26 of Title 11 of the Guam Code Annotated. However, gross revenues from any casino or casino-hotel revenues that are not subject to the gross revenue tax imposed by this section are subject to the gross receipts tax.

(d) The Director of Revenue and Taxation, with cooperation from the Commission,

shall collect the gross revenues tax. The Director of Revenue and Taxation and the Commission shall collaborate in the preparation of rules necessary to implement and enforce the tax and the Commission, with the concurrence of the Director, shall promulgate the rules pursuant to the provisions of the Administrative Adjudication Law.

Section 11006. <u>Guam Casino Revenue Trust Fund.</u> (a) There is hereby established a Guam Casino Revenue Trust Fund into which shall be deposited one-half (1/2) of all money derived from the tax imposed pursuant to Section 11005.

(b) The purpose of the fund is to establish an inviolable reservoir of capital, the income from which shall be dedicated to the improvement of the health, safety, education and quality of life of the people of Guam.

(c) The Commissioners shall be the trustees of the fund and have a fiduciary relationship to the people of Guam with regard to their management of the fund.

(d) The Commissioners, as trustees, shall discharge their duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The Commissioners, as trustees, shall diversify the investments of the fund so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so.

(e) Any Commissioner who knowingly violates his or her fiduciary responsibility shall be removed from the Commission by the Governor and may be personally liable to the fund to the extent of the losses incurred by the fund. The Attorney General shall enforce the provisions of this subsection to hold a Commissioner personally liable. A Commissioner who the Governor seeks to remove under this subsection shall be entitled to notice of the charges against him or her and a hearing before an impartial hearing officer and shall not be removed unless his or her violation of his or her fiduciary responsibility is established by clear and convincing evidence. A Commissioner may appeal an order of removal to the Superior Court.

(f) The fund shall not be subject to appropriation for any purpose by the egislature and the Commissioners, as trustees, shall not permit the corpus of the fund to be invaded for any purpose whatsoever.

(g) The Commissioners, as trustees, may invest the corpus of the fund in the same type of investments as are permitted to the trustees of the Government of Guam Retirement Fund pursuant to Sections 8143 through 8159 of Title 4 of the Guam Code Annotated.

(h) Within four (4) months after the close of the Commission's fiscal year, the Commissioners, as trustees, shall transfer all of the prior year's earnings of the fund to the Director of Administration for deposit in the General Fund. At the same time, the Commissioners shall notify the Governor and the Legislature of the sum transferred to the General Fund.

Section 11007. Expenditure of the income of the Guam Casino Revenue Trust

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 19 of 31

Fund. Money from the Guam Casino Revenue Trust Fund deposited to the General Fund shall be appropriated by the Legislature exclusively for making long-term improvements in the island's infrastructure. For purposes of this section, infrastructure means roads, power, water and sanitary systems, public buildings, including hospitals and public health centers, schools and post secondary educational facilities, libraries, police, fire and correctional facilities, and sports, parks and recreational facilities. None of the money shall be appropriated for personnel costs.

Section 11008. Disposition of second half of Guam Casino Revenue Tax. (a) There is hereby established a Guam Casino Revenue Benefits Fund into which shall be deposited one half (1/2) of all money derived from the tax imposed pursuant to Section 11005.

(b) The purpose of the fund is to provide an annual source of revenue for the support of worthy endeavors specifically identified by the people through a quadrennial referendum.

(c) Within four (4) months after the close of the Commission's fiscal year, the Director of Administration shall transfer one-half of the prior year's receipts from the Guam Casino Revenue Tax and any interest earned thereon into the General Fund. The Director shall notify the Governor and the Legislature of the sum transferred to the General Fund.

Section 11009. (a) Expenditure of the income of the Guam Casino Revenue Benefit Fund. Money from the Guam Casino Revenue Benefit Fund deposited to the General Fund shall be appropriated by the Legislature exclusively for the following purposes:

(1) Ten percent (10%) shall to the Mayors' Council of Guam for village improvements;

(2) Twenty percent (20%) to the Department of Education for books and other instructional materials and supplies to be utilized by the students in the public and nonpublic elementary, middle and high schools;

(3) Ten percent (10%) to organizations registered with the Department of Revenue and Taxation as nonprofit organizations pursuant to Section 501(c)(3) of the Internal Revenue Code and which have as a primary purpose of their existence the preservation and development of the myriad cultures which call Guam home;

(4) Ten percent (10%) for public safety purposes, which shall include the activities of the Guam Police Department, the Guam Fire Department, the Customs and Quarantine Agency, the conservation division of the Department of Agriculture, and the Marshals Office of the Supreme and Superior Courts;

(5) Fifteen percent (15%) to the Departments of Public Health and the Mental Health and Substance Abuse for health care for the indigent;

(6) Fifteen percent (15%) to the Departments of Labor and Public

84

Health and Social Services for job training programs for the indigent;

(7)     Ten percent (10%) to government and nonprofit agencies that assist victims of domestic, child, spousal and elderly abuse; and

(8)     Ten percent (10%) for programs that are designed to combat injuriously addictive habits;

(b)  In conjunction with each election for Governor, the Guam Election Commission shall conduct a referendum election to permit the people to express their preference as to how the money transferred to the General Fund pursuant to this section shall be apportioned. Any government of Guam agency or any organization registered with the Department of Revenue and Taxation as a nonprofit organization pursuant to Section 501(c)(3) of the Internal Revenue Code and which has as a primary purpose of its existence the preservation and development of a unique cultural heritage shall be granted a place on the referendum ballot if the advocates thereof submit to the Guam Election Commission a timely petition bearing the valid signatures of one thousand (1,000) of qualified registered voters.

(c)  The Guam Election Commission shall submit the final tally of the referendum to the Legislature and commencing with the next ensuing fiscal year, the Legislature shall apportion the money transferred to it by this section among the eight (8) organizations or for the purposes receiving the highest number of votes. The apportionment shall be in direct ratio to the percentage of vote obtained by each of the organizations or purposes.

Section 11010. Payment of taxes. (a) The tax imposed by Section 11005 shall be due and payable to the Director of Revenue and Taxation within thirty (30) calendar days following the last day of each previous month and shall be based upon gross revenues derived during the previous month. A licensee shall file its first return and shall report gross revenues from the time it commenced operations and ending on the last day of the first month in which it has conducted business pursuant to a license issued by the Commission. The taxpayer shall file with the Commission each month an information copy of the filed return.

(b)  Any other law to the contrary notwithstanding, any business conducted by any person holding a license pursuant to this act shall, in addition to all other taxes imposed by this act, file a corporate or individual income tax return, as appropriate, and pay the taxes thereon to the Director of Revenue and Taxation. The taxpayer shall file with the Commission each month an information copy of the filed return.

Section 11011. Determination of tax liability. The Director of Revenue and Taxation may  or cause to be performed audits of the books and records of a casino licensee, at such times and intervals as he or she deems appropriate, for the purpose of determining the sufficiency of tax payments. If a return or deposit required by this act is not filed or paid, or if a return or deposit when filed or paid is determined to be incorrect or insufficient with or without an audit, the amount of tax or deposit due shall be determined by the Director of Revenue and Taxation. Notice of such determination shall be given to the licensee liable for the payment of the tax or deposit. Such determination

85

shall finally and irrevocably fix the tax unless the person against whom it is assessed, within thirty (30) days after receiving notice of such determination, shall apply to the Director of Revenue and Taxation for a hearing, or unless the Director on his or her own motion shall redetermine the tax. After such hearing the Director shall give notice of his or her determination to the person against whom the tax is assessed. The power granted to the Director by this section shall not preclude the Commission or the Public Auditor from conducting such audits as they are permitted to perform pursuant to this act.

Section 11012. Penalties. (a) Any licensee who shall fail to file his, her or its return when due or to pay any tax or deposit when the same becomes due, as herein provided, shall be subject to a penalty at the rate of five percent (5%) per month or any fraction thereof, but shall not exceed twenty-five percent (25%) in the aggregate.

(b) If the Director determines that the failure to comply with any provision of this article was excusable under the circumstances, the Director may remit such part or all of the penalty as shall be appropriate under such circumstances.

(c) Any person failing to file a return, failing to pay the tax or deposit, or filing or causing to be filed, or making or causing to be made, or giving or causing to be given any return, certificate, affidavit, representation, information, testimony or statement required or authorized by this act, or rules or regulations adopted hereunder which is willfully false, or failing to keep any records required by this act or rules of the Commission, shall, in addition to any other penalties herein or elsewhere prescribed, be guilty of a crime of a felony of the second degree and subject to the penalties therefor, except that the amount of a fine may be up to Two Hundred Fifty Thousand Dollars ($250,000).

(d) If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to fifty percent (50%) of the underpayment."

Section 2. Appropriation of funds. There is appropriated from the General Fund to the Guam Casino Gaming Control Commission Fund five hundred thousand dollars ($500,000) to be expended by the Commission for initial set-up and administration of the Commission. Within two (2) months after a quorum of Commissioners have taken office, they shall submit a proposed budget for the remainder of the fiscal year in which they have taken office and for the next ensuing fiscal year. Until such time as the Commission's receipts from fees and licenses is sufficient to sustain its operations, the Legislature shall appropriate such funds as are reasonable and necessary to sustain the Commission in attaining the purposes of this act.

Section 3. Effective date of act adopted by this initiative. This act shall take effect April 1, 2003.

Case 1:04-cv-00046    Document 76-3    Filed 12/07/2004    Page 22 of 31



**Douglas B. Moylan**
Attorney General

**Robert M. Weinberg**
Assistant Attorney General
Civil Division

## CONFIRMATION

## Office of the Attorney General

October 7, 2004

**Mr. Gerald A. Taitano**
Executive Director
Guam Election Commission
P.O. Box BG
Hagåtña, Guam 96910

### RE: GUAM CASINO GAMING CONTROL COMMISSION ACT

Dear Mr. Taitano:

This Office has received a complaint regarding the manner in which the Government has implemented the Election Code of Guam pertaining to the Guam Casino Gaming Control Commission Act Initiative (Proposal A).

Upon preliminary review of the complaint, this Office is seriously concerned that there are material errors and omissions which have occurred that will prevent Proposal A from being legally presented to the voters on November 2, 2004 (General Election), and that will prevent Proposal A from withstanding a legal challenge that may be brought before, and will most certainly be brought after, the election. This Office believes that the will of the voters and citizens of Guam to determine the merits of Proposal A on November 2, 2004 may have been thwarted.

From the complaint, and our preliminary analysis and review, we understand the following facts:

1. the pamphlet (brochure) attached and identified as Exhibit A was mailed out by the Commission on or by October 3, 2004;

Guam Judicial Center, Suite 2-200E ■ 120 West O'Brien Drive ■ Hagåtña, Guam 96910 ■ USA
(671) 475-3324 ■ (671) 472-2493 (Fax) ■ www.guamattorneygeneral.com ■ law@mail.justice.gov.gu

## EXHIBIT 2

2.  according to press reports, notably, yesterday's *Marianas Variety Guam Edition*, p. 5, many people on island have not even received the pamphlet or brochure;

3.  three (3) signatures of voters were submitted with the argument in opposition to Proposal A, but only one name appears on the pamphlet, contrary to 3 G.C.A. § 17506;

4.  the pamphlet was presumably mailed to the categories of persons identified in 3 G.C.A. § 17511; *and*

5.  the actual Proposal was not included as part of the pamphlet identified as Exhibit A herein, otherwise mailed to the categories of persons identified in 3 G.C.A. § 17511.

If you believe our facts to be in error, please advise me immediately. According to 6 G.A.R. § 2114, the Commission must mail out a properly formatted pamphlet at least thirty (30) days before the election. In this case at least four (4) material defects appear to exist on the face of the pamphlet, which pamphlet provides notice to the public and is required by law. *See* 3 G.C.A. § 17509. The deficiencies include:

1.  there is no Guam Casino Gaming Control Commission Act in the pamphlet, *see* 3 G.C.A. § 17509(a)(1) (requiring that the ballot pamphlets *"shall contain ... [a] complete copy of any measure to be submitted to the voters by ... Initiative or referendum petition"*);

2.  there is no analysis by the Commission as required by 3 G.C.A. § 17507 and § 17509(d) in the pamphlet;

3.  the "analysis" that is provided does not appear to be authored or acknowledged by legal counsel for the Commission as required by 2 G.A.R. § 2111; *and*

4.  the pamphlet lacks the three (3) signatures of voters who submitted the opposition to Proposal A. *See* 3 G.C.A. § 17506.

Most glaringly, with respect to the analysis of the measure required by 3 G.C.A. § 17507, there is no *"impartial analysis of the measure showing the effect of the measure on the existing law and the operation of the measure."* Legal challenges to this election due to the Guam Election Commission's failure to comply with the Code and its own administrative regulations are inevitable, and were foreseeable, as is the likely result in a court of law. The thirty (30) day window required by 6 G.A.R. § 2114 closed on October 3, 2004, and the material

Page 3
**Mr. Gerald A. Taitano**
October 7, 2004

defects can probably not be rectified to meet the needs of this particular election. However, there may be procedures available for setting another election date, but that may require the Governor or Legislature to call a special election.

It is imperative that we meet with the Attorney General no later than the close of business on Monday, October 11, 2004 in order to discuss this situation and the possible alternatives. Please feel free to contact me if you have any questions. The Attorney General's executive secretary, Ms. Joyce Siguenza, will be contacting you to arrange a convenient time to meet with our Office. Thanking you in advance, I am

Sincerely,

Robert M. Weinberg
Assistant Attorney General

Attachments (3)
cc:    Cesar Cabot, Esq.



# GENERAL ELECTION 2004

## Voters Information Pamphlet

Prepared by:

Guam Election Commission
P.O. Box BG
Hagatna, Guam 96932

414 West Soledad Avenue
Guam Capital Investment
Corporation, Inc.
Suite 202, 2nd Floor,
Hagatna, Guam
(671) 477-9791 thru 4

Guam Election Commission
P.O. Box BG
Hagatna, Guam 96932

## An Objective and Independent View of Proposal A

By Gerald A. Taitano, Executive Director, Guam Election Commission

### PROPOSAL A INITIATIVE MEASURE

This initiative measure proposes to establish the Guam Casino Gaming Control Commission Act.

**The Guam Casino Gaming Control Commission Act**

This Act shall: (1) allow for certain licensed casino gambling activities in approved Guam casinos; (2) create a separate Guam Casino Gaming Control Commission which (a) defines the gambling activities allowed, (b) promulgates rules and regulations regarding licensed gambling, (c) enforces said guidelines, and (d) provides for civil and criminal penalties for violations of said provisions; and (3) provide a mechanism by which the Commission shall (a) control the issuance of gambling licenses, (b) conduct hearings under the proposed Act, (c) collect licensing and registration fees imposed by the proposed Act, and (d) enact rules and regulation necessary in carrying out the Act.

In summary, this initiative allows for certain licensed casino gambling activities in approved Guam casinos. The initiative creates a 5-member Guam Casino Gaming

Control Commission which defines the gambling activities allowed. The initiative promulgates rules and regulations regarding licensed gambling. The initiative enforces said guidelines, and provides for civil and criminal penalties for violations of these provisions. Further, the initiative provides a mechanism by which the Commission shall control the issuance of gambling licenses, conduct hearings under the proposed Act, collect licensing and registration fees imposed by the proposed Act, and enact rules and regulations necessary in carrying out the Act.

The Ballot Format for the Initiative Question is as follows:

**INITIATIVE MEASURE**

SHALL PROPOSAL A, AN INITIATIVE TO ESTABLISH THE GUAM CASINO GAMING CONTROL COMMISSION ACT, BE ADOPTED BY THE VOTERS OF GUAM?

VOTE YES OR NO

( ) YES

( ) NO




EXHIBIT A

## A Proponent's View of Proposal A

By Greg Schulte
Citizens for Economic Diversity

Passage of Proposal A will legalize controlled hotel casino gaming by enacting the Guam Casino Gaming Control Commission Act. A maximum of 10 casino licenses will be issued, on a competitive basis, allowing casinos to be operated in hotels that contain a minimum of 400 rooms. Initially, it is expected only a few hotels will be granted licenses. The purpose of the Act is to provide an additional kind of amusement for visitors, enhance Guam's visitor industry, and employment for the people of Guam.

Passage of Proposal A will eliminate the creation of thousands of new jobs by assisting Guam's most established source of income — tourism. Surveys of Japanese tourists show large percentages, which top four [industries] among their top four [industries]. Casino gambling has created more than 11,000 in American states and will average 120 [...] in revenues of approximately 120 million annually over the next five years on Guam. Controlled casino gaming will attract investments that will build new structures and make Guam a world-class visitor destination.

Passage of Proposal A will establish a self-funded commission, of five members to oversee and direct the development and operation of Guam's casino hotels. The

the Governor and confirmed by the legislature to staggered terms; the Governor can appoint all the commissioners. At least two of the commissioners must be women, one must be a Certified Public Accountant, and another must have law enforcement experience. The regulations governing the commission will be as comprehensive as in any location in the United States. The commission will receive continual public, legal and financial scrutiny. [...] efforts confirm the Act has the controls necessary to keep Guam's casinos crime free.

Passage of Proposal A will create a sustainable new tax source that will be paid for by Guam's visitors. Revenue for the community will grow from $5 to [...] over four years, generating approximately $70 million annually for Guam. Revenues raised in Guam will be created to start the casinos, wages will be [...] higher than [...]. Fifty percent of gaming net revenue will be dedicated to health care, education, public safety, cultural heritage, and the Mayors' Council, the other fifty percent will be held in trust by the Gaming Commission, to be spent on improving Guam's roads, water system, schools, and the hospital.

## An Opponent's View of Proposal A

By Joaquin C. Arriola, Jr., Esq.
Community Opposing Prop A
Limit On Casino

Proposal A will hurt our [...]

only gets 3% tax while casinos keep 91% of revenue. Some states charge 58% tax. It's a bad deal; only casinos profit. Money spent in casinos is taken away from all other local businesses. Most tourists add they will vacation elsewhere if casinos come to Guam. Our largest Japanese travel agent agrees. [...] and billions [...] and [...]. It is now too [...] risk. [...] military, [...] schools. [...] concerned about [...] gambling, addiction. Casino gambling could now being threaten our ability to maintain and increase our military spending.

Proposal A will hurt our quality of life and children. When Guam had poker machines, children were dragged into casinos, parents away gambling. Loan sharks, hijackers, pickpockets, bad even food savings, physicians, violence, family, prostitution, organized crime, bankruptcy, and drug/alcohol abuse all increased. CPD studies that CPD's casinos increase crime so much with a probable increase. Social costs average $10,000 annually for problem gamblers. Casinos will directly increase the social costs when we cannot control its effects.

Prop A is a bad bet that creates more government. Gambling will be "controlled" by 5 politically appointed commissioners who can serve 10 years, paid $130,000 each, plus unlimited expenses, and decide how fees and fines are [...]

den keeps all licensing fees and gets 91% of the gambling fees and "invest". Most licenses will be spent on the Commission. Prop A creates a new Gov-Guam agency with broad powers and little accountability. Numerous employees, travel and consultants will be required. $600,000.00 of your money is spent just to start. The key law can be changed for two years. Gov-Guam is not capable of effectively "controlling" gambling. So, their numbers are pure fiction. The illegal casino opened in 1999 [...] failed experiment. No [...] increase; no child tax. Initially controls now being loosened. Gambling hasn't worked for the Chili. It won't work for Guam. Other casinos have already closed down because Prop A doesn't work. Prop A provides ZERO for education in Year One. There are few benefits at first. Taxes on any sold anchors. U.S. casinos average ZERO say Guam would cost only a fraction of CPD Guam. Prop A claims its revenue as "unstable". Both proposed as "unstable" [...].

Prop A is bad for Guam. Casinos benefit few at the expense of everyone else. And the risk of damaging the visitor industry we all enjoy is too high. Guam's economy is already recovering. Don't gamble our future on an unknown industry that benefits few. Just as important, everything we now cannot [...].

Be smart; not misled. Keep Guam Good. Vote No on Prop A.



# AG's Office says GEC not running clean campaign for Prop "A"

**by Ken Wetmore, KUAM News**
**Thursday, October 07, 2004**

You've watched, read, and heard advertisements opposing and supporting
Proposal "A". The casino gaming initiative is one of the most talked about and
debated issues for voters this November, but will Prop "A" make it on the General
Election ballot? The Guam Attorney General's Office threw a curveball at the Guam
Election Commission today, citing deficiencies in voter information pamphlets that
were recently mailed to registered voters.

In a letter to GEC executive director Gerry Taitano assistant attorney general
Robert Weinberg wrote after reviewing complaints from concerned citizens, the
AG's Office believes there are material errors and omissions that will prevent
Proposal "A" from being put to voters on November 2. The assistant AG cited four
specific deficiencies with the voter information pamphlet that by law the GEC must
mail to all registered voters.

Namely, the deficiencies cited are:

1. There is no Guam Casino Gaming Control Commission Act in the pamphlet.
   By law the GEC must mail the complete act along with the pamphlet to voters.
2. There is no analysis by the Commission in the pamphlet.
3. The "analysis" that is provided does not appear to be authored or
   acknowledged by legal counsel for the Commission as required by law.
4. The pamphlet lacks the three signatures of voters who submitted the
   opposition to Proposal "A", also required by public law.

"We're really just rather dismayed...that the Election Commission has sent this out,"
expressed Weinberg. "Under the law and under Election Commission's own rules
and regulations they have to be done within 30 days of the election; this has to be
sent within 30 days of the election."

Weinberg also said while he's open to suggestions from the GEC, he doesn't
believe the problems can be fixed so Prop "A" can be voted upon on the General
Election ballot for Decision 2004. "Even if it went forward and the Guam Election
Commission said it's too late and we want to go forward with it, the problem is that
someone could come in afterwards, either a Prop 'A' proponent or a Prop 'A'
opponent and could come in, depending on how it goes, and challenge the law
because it was not properly passed by the voters," he stated.

GEC executive director Taitano says he doesn't believe a challenge would
succeed. "If you take a look at the precedent - the precedents that have been set in

EXHIBIT 3

past initiatives - we've followed the same format we've done the same procedures," he said confidently.

While the AG's Office maintains the pamphlet is insufficient to properly educate Guam's voters, Taitano says he believes Guam's voters are sophisticated and both sides of Prop "A" have done a good job of educating the public about the voter initiative. Taitano admits the law does require the mailing out of the entire proposal, but points out it is 80 pages long and the Guam Legislature did not give him the budget he requested. "If I as the executive director submit a budget to the Guam Legislature and the Legislature sees fit to exclude those items, then to me it's either a concession that I don't have to send out an 80-page document to every voter on this island, because it's not cost effective," Taitano said.

Speaking of expenses, Taitano says the ballots for the November 2 General Election have already been printed. He explained, "We printed 60,000 ballots, a tremendous expense, and we are not going to throw away those ballots because of you know because of some concerns that haven't been adjudicated. We are proceeding with this election - we are on schedule."

Taitano says he is handing the matter over to the GEC's legal counsel to handle. The AG's Office has asked for a meeting with the GEC no latter than this coming Monday.

As far as how the main supporters and detractors of Proposal "A" reacted to the AG's Office's announcement, Citizens for Economic Diversity spokesperson Jay Merrill was not surprisingly crestfallen, but at the same time, optimistic. "Initially we were disappointed, but we contacted the Guam Election [Commission] and they said that they're fully confident that they followed the spirit of the law and they were confident that the election was going to proceed, so we were heartened by that," he said.

Merrill says there's much international interest in the outcome of the election and if Prop "A" fails for technical reasons it isn't going to reflect well on the community. He did say however, that his opposition on Prop "A", Communities Opposing Prop "A" has expressed a desire to join together with CFED in a lawsuit if necessary to ensure Prop "A" is on the General Election ballot.

Likewise, KUAM News spoke with COPA legal counsel Attorney Jay Arriola. "We want an election, we want this vote to go forward. We are confident that we will soundly defeat Prop "A" and we want the people to decide that, however, if the Guam Election Commission can't control an election an election its further evidence of the inability of our government to control certain things such as gaming by the same token however the need for this information is crucial," he said.

Arriola says he agrees with the Guam Attorney General that there are deficiencies with the voter information pamphlet but says he believes it may be possible to correct the deficiencies in time for Prop "A" to remain on the ballot.

Copyright © 2000-2004 by Pacific Telestations, Inc.