LOCAL

# Prop A: Economic benefits vs. social impact

▲ Continued from Page 1

Diversity consultant Jay Merrill and Lou Leon Guerrero, who is the party's campaign coordinator.

They opposed candidates against three in Prop A: Jackie Marati, Joy James and James Castro.

Gushin's company, Spectrum Gaming Group, has been paid by casino supporters to talk about casino gaming on Guam. Spectrum was paid by some pro-gaming groups, Hotel and Restaurant Association to prepare a report on casino gaming on Guam.

The pro-gaming panelists talked mostly about the likely economic benefits of casino gambling, with Gushin explaining how it will be controlled.

The anti-casino panel talked mostly about the social impact that casino gambling might have on Guam, questioned the powers and spending ability of the proposed casino gaming commission, and said casinos would cause other business.

Residents were asked to vote on the casino issue after the forum and of the 75 who voted, 54 said no to Proposal A and 21 said yes, according to Attorney General Douglas Moylan.

Moylan said although the vote on Proposal A can continue, its

## Special election

Merrill yesterday said CFED is concerned about Moylan's position that the vote on Prop. A in essence is that the votes are going to be challenged, regard-less of how they voted.

"What the AG said in essence is it's a very good one for Guam," he said, adding that Prop. A could save as much as $106 million in new revenue for the island each year and as many as 2,000 new jobs.

Merrill, of COPA, said casinos intentionally keep customers away from surrounding businesses by having no windows and by providing food and drink to gamblers not have to leave the casino.

outcome might not be enforceable.

Moylan's concerns surrounding Guam knowledge of gambling is fail-ple to travel to Guam, but as some- thing that travelers will expect, he said. Casinos will not bring the world-class economy that will be an ad-dition to the services that Guam cur-rently provides, he said.

## Gushin

Gushin believes in an unfair election, CFED is now seeking assistance from government of Guam leaders to say that the votes will count this Nov. 2, or Moylan to retract his statement.

"If not, then a special election is going to be required," said Merrill, asking that the cost of a special elec-tion should not be prioritized over giving residents the chance to vote on the controversial matter. Holding a special election would cost about $200,000, officials have said.

Merrill, during his panel's open-ing statement at yesterday's forum, said casinos will not solve all of Guam's problems, but are a tool that will allow the community to

better itself.

Casinos aren't a reason for peo-gambling on Guam but will gener-bic, as will the casino rate.

"A vote for Prop A is a vote for ... he said, noting that there is no correlation between casinos and the economy.

Merrill noted that, at 11 percent,

## Marati

## Tinian comparison

The audience was allowed to sub-mit written questions to the panel, during which an issue was raised on the island of Tinian, which has a casino. Merrill described the Tinian's cas-no as a failure, with only 34,000 visitors last year.

Merrill said the Tinian casino has failed because the casino has diver-ment failed to expand that island's runway as promised, so it has too low longer to make the trip. Despite its problems, the Tinian casino still contributes $4 million to an island

in this industry," she asked.

— Merrill said the number of prob-lem gamblers on Guam will don't ...

casinos will pay more than twice as much in taxes as other Guam businesses. The only higher tax on Guam is charged on the tax as real piped hotel

room, he said.

Pacific Daily News Assistant Local News Editor Gene Park contributed to this report.

---

# Hospital: Reform law complicates care

▲ Continued from Page 1

GMH assistant chief finan-cial officer Jane Flores.

The scenario happens three times a week, Flores said. Some have to pay for people to come to be to receive the care they need," Flores said.

This ends up costing Pub-lic Health thousands of dol-lars a week for what essen-tially could be done in a clin-ic for hundreds of dollars, since May, when a health-care reform law was enact-

## BY THE NUMBERS

A law that reformed the Med-ically Indigent Program in-creased the number of visits to the Public Health depart-ment's two regional com-munity health centers.

**Northern Region Community Health Center**
▲ Visits from January to Oc-tober 2003: 8,136
▲ Visits from January to Au-gust 2004: 13,129

**Southern Region Community Health Center**
▲ Visits from January to De-cember 2003: 5,100
▲ Visits from January to Au-

ters. Those non-urgent cases would be billed to Public Health with primary care rates, rather than the higher ER rates.

Camacho said he'd be willing to work with the Leo-pold to develop a program, and Sen. James Murphy said such a solution would at least ensure that people get the fol-low-up care they need.

He said he often releases people from the emergency room because they can't af-ford the follow-up appoint-ments they need at the Pub-lic Health regional centers be-cause of the waits and crowds

---

# Storm: Another one likely

▲ Continued from Page 1

away, said National Weather Service meteorologist Carl McElroy.

"That storm is dragging be-hind it a band of showers which should shed rains over Guam today, but then, serious-ther winds are going to keep the umbrellas handy.

But more concerning is a mass of clouds that have con-gregated in the Marshall Is-



Gaynor Dumat-ol Daleno, 477-9711, ext. 417
Gene Park, 477-9711, ext. 412
News tip hot line: Call 475-NEWS
e-mail: news@guampdn.com

# LOCAL

**GuamPDN.com**
Pacific Daily News
GUAM'S *complete* SOURCE

Will your personal religious beliefs influence your vote on Prop A?

| | |
|---|---|
| Yes | 30.8% |
| No | 69.2% |

Total votes: 5221
as of 8 p.m. Oct. 14

## Local news

### Search continues for missing fisherman

Guam Fire Department rescue officials and the Navy helicopter squadron last night were searching for a man off the waters of Ipan, Talofofo. Around 6:09 p.m., the Guam Fire Department received a report of a missing person in the waters behind Jeff's Pirates Cove, said GFD spokeswoman Phyllis Blas. Blas said four fishermen went out, but only three returned. "Of the three, nobody was hurt or injured," Blas said last night. "But one is not accounted for. They are searching for him now." Fire department rescue units, including 1, 2 and 3 and Medic 7, responded to the scene. Two Navy HC-5 helicopters were also called to assist with the search. The island's waters have claimed 16 lives this year. Last year, six people drowned in the island's waters.

### AG: Child support checks on the way

The attorney general's Child Support Enforcement Division announced that all incoming child support payments are being processed daily, and all child support checks are in the process of being mailed to custodial parents. Attorney General Douglas Moylan recently contracted Covansys Corp., which provides support services to child support offices, and slight delays have occurred due to transition issues. If you do not receive your checks on time, call Briget Rodriguez or Diane Blas at 475-3360.

### FSM election delayed until Wednesday

The Consulate General of the Federated States of Micronesia has announced that the FSM special election for Chuuk State has been postponed until Wednesday, from 7 a.m. to 8 p.m. at Ypao Beach Park's main pavilion in Tumon. Call 646-9154/5/6.

*Pacific Daily News*

### Clearing the record

We care about accuracy. If you would like to clear the record, call the Pacific Daily News, 477-9711, ext. 413.

# GEC warned on pamphlet

**By Steve Limtiaco**
*Pacific Daily News*
*slimtiaco@guampdn.com*

The Guam Election Commission was told by its attorney seven months ago that mailing incomplete informational pamphlets for the casino initiative might be a problem, but the commission mailed single-page pamphlets to voters despite that concern.

The decision to omit the 30-page text of the casino initiative from the pamphlets means the law was not followed, so the results of the Nov. 2 vote on Proposal A will not be enforceable, Attorney General Douglas Moylan said this week.

One possible solution is to delay the vote and hold a special election for the casino initiative, which is something that can be ordered by the governor or by lawmakers.

Jay Merrill, a consultant for the group that introduced Prop A, this week said a special election is required unless there are government assurances that the Nov. 2 vote for the casino initiative will count.

Merrill yesterday said it is unclear where that assurance would come from, although the Election Commission would be a good source.

"It would make sense to have the government come up with a solution to their own problem, and we're doing everything we can to let them know that we'll be willing to work with the government, so long as they can give us some assurance that the election is going to be determined



**Moylan**

fair," he said. "It's a completely confused situation. We're not the ones that did anything to begin with. We are the aggrieved party, but so is (Communities Opposing Prop A). People have to have an opportunity to vote, where their vote actually means something."

## Special election unlikely

Speaker Ben Pangelinan, D-Barrigada, yesterday said he opposes a special election.

Gov. Felix Camacho will not interfere in the electoral process, his spokeswoman, Erica Perez, said, and he supports holding the election on Nov. 2 as planned.

"For the proponents of Prop A to ask for a special election is tantamount to giving them a second chance," Pangelinan said. "The matter of whether or not it being on the ballot is valid is not for the attorney general to decide, it's for the courts to decide. Until such time that that is decided, I feel the election would be valid."

Pangelinan, who is up for re-election, speculated that casino supporters doubt whether the casino initiative can make it through a General Election.

"They're probably feeling that it's not to their advantage (to go through a General Election)," because of the Santos Amendment.

The Santos Amendment makes it more difficult for initiatives to pass



**Camacho**

during a General Election because it counts blank ballots and invalid ballots as votes against the initiative.

Merrill said the casino initiative has not even had a first chance, let alone a second. He said the Santos Amendment will not be a factor in the General Election because he believes the casino issue is important enough for voters to fill out their ballots.

The Election Commission's board is scheduled to meet next Wednesday at 4 p.m., but it cannot call a special election, commission legal counsel Cesar Cabot said yesterday. Guam law states that only the governor or lawmakers can call a special election, he said.

"There's a mandate that we carry out the initiative election. The attorney general has very strong opinions on the matter, and that's his prerogative, but it's not the court of law," Cabot said. "We have no choice, we have to press on unless a court of law instructs us otherwise."

Cabot several months ago tried to address the pamphlet issue.

Cabot on July 29 sent a letter to commission Executive Director Gerald Taitano, regarding the informational pamphlets for the casino initiative.

"I am concerned because if we are to follow the letter of the law, 11709(a) requires a 'complete copy' of the text of the measure to be mailed to all registered voters," Cabot's letter states. "As you know, the gaming initiative is rather volu-

**Pangelinan**



**Election 2004**

► **TO THE POINT**

▲ Election officials were aware of the potential problem for the Proposal A vote months ago, and scheduling a new election for the casino initiative appears unlikely, according to the speaker and the governor's office.

minous and over 60 pages long. I am concerned that the amount of funding that the GEC is presently requesting from the Legislature may not be sufficient to follow the strict requirement of the law."

Cabot's letter states that it may be appropriate to let lawmakers know about the strict requirements of the initiative law and perhaps urge them to change the law to avoid a mass-mailing.

There is no record of the commission staff responding to that concern. Taitano is off-island, in Nebraska, to monitor the programming of the vote-counting machines for the General Election.

Any request to change the election law would have been channeled through Vice Speaker Frank Aguon Jr.'s committee on government operations, but Aguon yesterday said the Election Commission did not request any changes to the initiative process.

When asked whether the Election Commission asked lawmakers to change the initiative process, Cabot said it did not pursue any changes for the upcoming election, but has raised the issue with lawmakers in the past.

"We have had discussions with prior legislatures and they have not resolved it in any direct action," Cabot said. He said technology offers more efficient ways of getting the information to voters, as opposed to using traditional mail.



## Secretary of the Navy visits Guam

**Arrival:** Secretary of the Navy Gordon R. England, right, is welcomed to Guam by Rear Adm. Arthur Johnson, commander, U.S. Naval Forces Marianas, left; and Gov. Felix Camacho, center, after arriving at Andersen Air Force Base yesterday. England is meeting with commanding officers and sailors of Navy commands on island. England also has been invited to attend the U.S. Navy's 229th Birthday Ball and the commissioning of the U.S. Coast Guard Cutter Sequoia today.

*U.S. Naval Forces Marianas Public Affairs*

Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:    (671) 646-1222
Facsimile:    (671) 646-1223

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

SUPERIOR COURT
OF GUAM

2004 OCT 18  PM 2: 43

CLERK OF COURT

BY:

## IN THE SUPERIOR COURT OF GUAM

CV 1103-04

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE ) | CIVIL CASE NO. CV _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **SUMMONS** |
| ) | |
| THE GUAM ELECTION COMMISSION; ) | |
| GERALD A. TAITANO, in his individual ) | |
| capacity and in his capacity as the ) | |
| Executive Director of THE GUAM ) | |
| ELECTION COMMISSION, I MINA' ) | |
| BENTE SIETE NA LIHESLATURAN ) | |
| GUAHAN (The 27th Guam Legislature); ) | |
| FELIX P. CAMACHO, in his official ) | |
| capacity as the GOVERNOR OF GUAM. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**TO:  I MINA BENTE SIETE NA LIHESLATURAN GUAHAN
(THE 27TH Guam Legislature)**

YOU ARE HEREBY SUMMONED and required to serve upon Dooley Roberts & Fowler

LLP, attorneys for Plaintiff, whose address is Suite 201, Orlean Pacific Plaza, 865 South Marine

Drive, Tamuning, Guam  96910, an answer to the complaint which is herewith served upon you,

within twenty (20) days after service of this summons upon you, exclusive of the day of service. If

you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint.

RICHARD B. MARTINEZ, Acting Clerk
Superior Court of Guam

Dated: _____18 OCT 2004_____          By: _____

                                                              Deputy Clerk

**ORIGINAL**

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

DEC 07 2004

Domingo M. Nego
Deputy Clerk, Superior Court of Guam



Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:    (671) 646-1222
Facsimile:    (671) 646-1223

FILED
SUPERIOR COURT
OF GUAM

2004 OCT 18 PM 2:04

CLERK OF COURT
BY

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

## IN THE SUPERIOR COURT OF GUAM

CV 1103-04

| | | |
|---|---|---|
| LOURDES P. AGUON-SCHULTE | ) | CIVIL CASE NO. CV _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **SUMMONS** |
| | ) | |
| THE GUAM ELECTION COMMISSION; | ) | |
| GERALD A. TAITANO, in his individual | ) | |
| capacity and in his capacity as the | ) | |
| Executive Director of THE GUAM | ) | |
| ELECTION COMMISSION, I MINA' | ) | |
| BENTE SIETE NA LIHESLATURAN | ) | |
| GUAHAN (The 27th Guam Legislature); | ) | |
| FELIX P. CAMACHO, in his official | ) | |
| capacity as the GOVERNOR OF GUAM. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TO:    THE GUAM ELECTION COMMISSION**

YOU ARE HEREBY SUMMONED and required to serve upon Dooley Roberts & Fowler

LLP, attorneys for Plaintiff, whose address is Suite 201, Orlean Pacific Plaza, 865 South Marine

Drive, Tamuning, Guam  96910, an answer to the complaint which is herewith served upon you,

within twenty (20) days after service of this summons upon you, exclusive of the day of service. If

you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint.

RICHARD B. MARTINEZ, Acting Clerk
Superior Court of Guam

Dated: **18 OCT 2004**

By: _____

Deputy Clerk

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

DEC 07 2004

Domingo M. Nego
Deputy Clerk, Superior Court of Guam

ORIGINAL

Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:    (671) 646-1222
Facsimile:    (671) 646-1223

FILED
SUPERIOR COURT
OF GUAM

2004 OCT 18  PM 2:45

CLERK OF COURT
BY_____

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE | CIVIL CASE NO. CV 1103-04 |
| Plaintiff, | |
| vs. | **SUMMONS** |
| THE GUAM ELECTION COMMISSION; GERALD A. TAITANO, in his individual capacity and in his capacity as the Executive Director of THE GUAM ELECTION COMMISSION, I MINA' BENTE SIETE NA LIHESLATURAN GUAHAN (The 27th Guam Legislature); FELIX P. CAMACHO, in his official capacity as the GOVERNOR OF GUAM. | |
| Defendants. | |

**TO:    FELIX P. CAMACHO, in his Capacity as the Governor of Guam**

YOU ARE HEREBY SUMMONED and required to serve upon Dooley Roberts & Fowler LLP, attorneys for Plaintiff, whose address is Suite 201, Orlean Pacific Plaza, 865 South Marine Drive, Tamuning, Guam  96910, an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

RICHARD B. MARTINEZ, Acting Clerk
Superior Court of Guam

Dated: **18 OCT 2004**

By: _____
    Deputy Clerk

**ORIGINAL**

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam

DEC 0 7 2004

Domingo M. Nego
Deputy Clerk, Superior Court of Guam

Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:    (671) 646-1222
Facsimile:    (671) 646-1223

FILED
SUPERIOR COURT
OF GUAM

2004 OCT 18 PM 2: 45

CLERK OF COURT
BY:

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE | ) CIVIL CASE NO. CV 1103-04 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **SUMMONS** |
| | ) |
| THE GUAM ELECTION COMMISSION; | ) |
| GERALD A. TAITANO, in his individual | ) |
| capacity and in his capacity as the | ) |
| Executive Director of THE GUAM | ) |
| ELECTION COMMISSION, I MINA' | ) |
| BENTE SIETE NA LIHESLATURAN | ) |
| GUAHAN (The 27th Guam Legislature); | ) |
| FELIX P. CAMACHO, in his official | ) |
| capacity as the GOVERNOR OF GUAM. | ) |
| | ) |
| Defendants. | ) |
| | ) |

TO:    GERALD A. TAITANO, in his individual capacity and in his capacity as the Executive
       Director of the Guam Election Commission

       YOU ARE HEREBY SUMMONED and required to serve upon Dooley Roberts & Fowler

LLP, attorneys for Plaintiff, whose address is Suite 201, Orlean Pacific Plaza, 865 South Marine

Drive, Tamuning, Guam 96910, an answer to the complaint which is herewith served upon you,

within twenty (20) days after service of this summons upon you, exclusive of the day of service. If

you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint.

                                        RICHARD B. MARTINEZ, Acting Clerk
                                        Superior Court of Guam

        18 OCT 2004

Dated: _____     By: _____
                                        Deputy Clerk

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the Office of the
Clerk of the Superior Court of Guam

DEC 0 7 2004

Dominga M. Nego
Deputy Clerk, Superior Court of Guam

ORIGINAL




Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913
Telephone:    (671) 646-1222
Facsimile:    (671) 646-1223

Attorneys for Plaintiff Lourdes P. Aguon-Schulte

IN THE SUPERIOR COURT

OF GUAM

CV 1103-04

LOURDES P. AGUON-SCHULTE          )   CIVIL CASE NO. CV _____
                                  )
          Plaintiff,              )
                                  )
    vs.                           )
                                  )
THE GUAM ELECTION COMMISSION;     )   **MEMORANDUM IN SUPPORT OF**
GERALD A. TAITANO, in his individual )  **COMPLAINT FOR PRE-ELECTION**
capacity and in his capacity as the )  **(1) INJUNCTIVE RELIEF;**
Executive Director of THE GUAM    )   **(2) DECLARATORY RELIEF, AND**
ELECTION COMMMISSION, I MINA'     )   **(3) ORDER COMPELLING A SPECIAL**
BENTE SIETE NA LIHESLATURAN       )   **ELECTION ON PROPOSAL A**
GUAHAN (The 27th Guam Legislature); )
FELIX P. CAMACHO, in his official )
capacity as the GOVERNOR OF GUAM. )
                                  )
          Defendants.             )
                                  )

Inexcusably, the people's right to vote has been taken away from them. Plaintiff has filed

a civil rights complaint under Guam and federal law asking for declaratory relief, injunctive

relief, and a special election on Proposal A. This memorandum is filed in support of Plaintiff's

complaint.

## A.    DECLARATORY RELIEF.

There is no need to restate here the facts and law set forth in the complaint on file in this

case. Instead, Plaintiff refers to and incorporates those allegations as though fully set forth



ORIGINAL

herein. All of those facts are indisputably true. Under Rule 57 of the Guam Rules of Civil

Procedure, the existence of alternative or cumulative or narrower remedies "does not preclude a

judgment for declaratory relief in cases where it is appropriate." Additionally, "(t)he court may

order a speedy hearing of an action for a declaratory judgment and may advance it on the

calendar." Plaintiff requests a hearing on her complaint for declaratory relief at the same time as

the hearing on her motion for a preliminary and permanent injunction, as soon as possible, and

before the November 2, 2004 election.

Only one case needs to be cited to establish that the results of the scheduled November 2,

2004 election on Proposal A will be invalid as a matter of Guam law: the Guam Supreme

Court's two year old decision in Wade v. Taitano, 2002 Guam 16:

> We begin our analysis by outlining two fundamental principles in
> statutory and regulatory constructions. The first principle is that
> "[a]n agency does not have the authority to ignore its own rules."
> Aetna Cas. & Sur. Co. v. Blanton, 911 P.2d 363, 365 (Or. Ct. App.
> 1996). Regulations have the same legal effect as statutes, Schmidt
> v. State, 586 N.W.2d 148, 153 (Neb. 1998), and, "[w]hen an
> agency has the authority to adopt rules and does so, it must follow
> them." Aetna, 911 P.2d at 365 (quotations omitted). Therefore, an
> agency's procedural rules "are binding upon the agency which
> enacts them as well as upon the public." Douglas County Welfare
> Admin. v. Parks, 284 N.W.2d 10, 10-11 (Neb. 1979); see also,
> Schmidt, 586 N.W.2d at 154 ("Regulations governing procedure
> are just as binding upon both the agency which enacts them and the
> public, and the agency does not, as a general rule, have the
> discretion to waive, suspend, or disregard, in a particular case, a
> validly adopted rule so long as such rule remains in force.")
> (internal quotations and citations omitted). The second principle is
> that an agency, such as the GEC, is a creature of the Legislature
> and can "act only to implement their charter as it is written and as
> given to them." Liao v. New York State Banking Dep't., 548
> N.E.2d 911, 913 (N.Y. 1989). Because "[a]n agency cannot create
> rules, through its own interstitial declaration, that were not
> contemplated or authorized by the Legislature," id., the court can
> only uphold rules and regulations promulgated by the agency
> "which are consistent with the legislative scheme." ASARCO, Inc.

2

v. Puget Sound Air Pollution Control Agency, 771 P.2d 335, 339 (Wash. 1989).

> Consequently, in ascertaining whether we should order an agency to uphold its regulation, we must initially resolve whether the regulation is consistent with the agency's enabling statutes. In this regard, we apply the following two-step analytical framework. First, we determine whether the regulation is in contravention of the "unambiguous[ ] expressed intent of [the Legislature]" as reflected by the *plain meaning* of the statute "as well as the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S. Ct. 1811, 1817-18 (1988). Second, in cases where "the statute is silent or ambiguous with respect to the specific issue addressed by the regulation," we must then decide "whether the agency regulation is a permissible construction of the statute." Id. at 291-92, 108 S.Ct. at 1818.

Wade v. Taitano, 2002 Guam 16 at ¶¶ 7-8.

It is undisputed that Guam's election laws and regulations were violated when the Director and the Elections Commission decided, for whatever reason, to not mail the text of Proposal A to the voters. It is undisputed there is mass public confusion over whether the results of any vote for or against Proposal A on November 2, 2004 will be valid or binding. There is good reason for this. It does not seem reasonably disputable that the November 2, 2004 election is in fact irretrievably tainted and legally invalid. Citing to Guam election laws and regulations, the Attorney General's opinion letter, Exhibit 2 to Plaintiff's complaint, concludes that the text of Proposal A had to be included in the ballot pamphlet, and that the ballot pamphlet had to be mailed to the voters at least 30 days prior to the election. These conclusions are correct. In its declaratory judgment, the court needs to ask itself a simple question: How are people supposed to vote on a law the government did not give them the opportunity to read?

Plaintiff requests a declaratory judgment on (1) whether the Director and the Election Commission complied with all applicable Guam laws and regulations in connection with the

3

scheduled November 2, 2004 election on Proposal A, and (2) whether the results of any election on Proposal A on November 2, 2004 will be legally valid and binding.

## B. INJUNCTIVE RELIEF.

There is no real question that the Director and the Election Commission did not comply with all applicable Guam laws and regulations in connection with the scheduled November 2, 2004 election on Proposal A. There is similarly no real question that the results of any election on Proposal A on November 2, 2004 will not be legally valid and binding. For these reasons, Plaintiff seeks a preliminary and permanent injunction (1) enjoining the scheduled November 2, 2004 vote on Proposal A, (2) compelling the Director and the Election Commission to remove the Proposal A ballots from the polling places on November 2, 2004, and (3) enjoining the Director and the Election Commission from tabulating any mailed ballots on Proposal A.

Guam's courts have concurrent jurisdiction with the federal courts to enjoin civil rights violations under 42 U.S.C. §1983. Patsy v. Bd. of Regents, 457 U.S. 496, 102 S. Ct. 2557 (1982); Felder v. Casey, 487 U.S. 131, 108 S. Ct. 2302 (1988). The applicable portions of 42 U.S.C. §1983 provide:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....[1]

---

[1] Guam's Government Claims Act cannot be used to bar Plaintiff's requested relief, because local government claims acts are pre-empted by 42 U.S.C. § 1983. Felder v. Casey, 487 U.S. 131, 137-138, 108 S. Ct. 2302, 2306-2307 (1988). For the same reason, "exhaustion of administrative remedy" arguments are unavailable to a §1983 defendant. Porter v. Nussle, 534 U.S. 516, 523, 122 S. Ct. 983, 987 (2002); Patsy v. Bd. of Regents, 457 U.S. 496, 506-507, 102 S. Ct. 2557, 2562-2563 (1982). In fact, there are no potential local defenses in this case. "Conduct by

It is not necessary in a 42 U.S.C. §1983 lawsuit to allege or prove that the defendants intended to deprive anyone of their constitutional rights or that they acted willfully, purposefully or in pursuance of a conspiracy. It is sufficient to establish that the deprivation of constitutional rights or privileges "was the natural consequence of the actions of defendants acting under color of law, irrespective of whether such consequence was intended." Ury v. Santee, 303 F. Supp. 119, 126 (D. Ill., 1969), citing Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473 (1961). In this particular instance, the Director and the Election Commission have freely and publicly admitted that they knew what they were legally required to do and they knowingly decided not to follow the law. In fact, when the Director decided not to follow the law, by not mailing the actual text of Proposal A to the voters, he may have committed a crime.[2]

The federal civil rights statute, 42 U.S.C. §1983 has plainly and undeniably been violated. When election officials conduct an election, they are acting "under color of state law" within the meaning of 42 U.S.C. §1983. Ury v. Santee, supra, at p. 126. As shown below, the right to vote is one of the "rights, privileges, or immunities secured by the Constitution", the

persons acting under color of state law which is wrongful under 42 U.S.C. §1983 ... cannot be immunized by state law." Martinez v. California, 444 U.S. 277, 284, 100 S. Ct. 553, 558 (1980). Finally, Guam's territorial status is no bar to §1983 actions seeking prospective, non-monetary injunctive relief, as the Ninth Circuit recently made clear in the Guam abortion statute litigation, Guam Soc'y of Obstetricians & Gynecologists v. Ada, 1992 U.S. App. LEXIS 13490 (9th Cir. 1992) ("We hold that [then-Governor Ada] is a 'person' when sued in his official capacity for prospective relief ... a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ... We can see no reason why the same distinction between injunctive and damages actions against officials should not apply to a territory.").

[2] 3 G.C.A. §14103 of the Guam Elections Code is entitled "Fraud." The statute provides: "Every person charged with the performance of any duty under the provisions of any law of this Territory relating to elections, who, in his official capacity, knowingly acts in contravention or violation of any of the provisions of such laws, is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." Similarly, 3 G.C.A. §14102 provides that "(e)very person who willfully violates any of the provisions of laws of Guam relating to any election is, unless a different classification is prescribed by this Title, guilty of a misdemeanor." Under Guam law, a misdemeanor is punishable by imprisonment for up to one (1) year. See, 9 G.C.A. § 80.34.

5

deprivation of which gives rise to a right to sue under 42 U.S.C. §1983. Injunctive relief is freely available against government officials under 42 U.S.C. §1983. Guam Soc'y of Obstetricians and Gynecologists v. Ada, 1992 U.S.App. LEXIS 13490 (9th Cir. 1992).

Under Guam law, 20 G.C.A. §20302, an injunction can be granted in at least five situations: (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually, (2) When it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action, (3) When it appears during the litigation that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual, (4) When pecuniary compensation would not afford adequate relief, and (5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief. The facts of this case meet all five of these tests.

The test for injunctive relief in the federal courts under Rule 65 of the Federal Rules of Civil Procedure, which Guam has adopted, is well known. To obtain a preliminary injunction, the plaintiff must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Los Angeles Memorial Coliseum Com. v. National Football League, 634 F.2d 1197, 1201 (9th Cir. 1980).

As shown below, Plaintiff meets both of these tests, as well. The "probable success on the merits" element is present. The election is indisputably flawed, tainted, and unfair, and as a

6

result, Plaintiff's right to vote in a meaningful election has been taken from her. Moreover, unless the court enters the requested preliminary injunction, the injury to Plaintiff and the voters of Guam will be "irreparable" within the meaning of federal civil rights cases. Meaningless election results from what would amount to an unlawful "straw poll" will taint all future ostensibly valid elections on Proposal A, even the special election Plaintiff has requested. On the second test for injunctive relief, no one can seriously argue that there are no "serious questions" of organic and constitutional magnitude. Nor is there any doubt that the "balance of hardships tips sharply" in favor of Plaintiff and the people of Guam. Plaintiff and all other registered voters of Guam have a constitutional right to vote in a valid election, not an election that is so patently flawed that it only took the Guam Attorney General's Office a few days to research the problems and publicize them. Government officials have a constitutional duty to hold fair elections on initiatives put on the ballot by the people themselves. See, e.g., Jones v. Bates, 127 F.3d 839, 861 (9th Cir. 1997) ("The state of California has a constitutional obligation to ensure the fairness of its elections, including those involving the initiative process.")

1.     **Voting is a Fundamental Right Guaranteed by Guaranteed by the United States Constitution and Guam's Organic Act.**

"It is a well established principle of constitutional law that the right to vote is fundamental, as it is preservative of all other rights." Weber v. Shelley, 347 F.3d 1101, 1105 (9th Cir. 2003). Since the right to vote "in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 667, 86 S. Ct. 1079 (U.S. 1966). The U.S. Supreme Court has also observed that "no right is more precious in a free country than that of having a voice in the election of those who make the laws ... Other rights

7

... are illusory if the right to vote is undermined." <u>Wesberry v. Sanders</u>, 376 U.S. 1, 17, 84 S. Ct. 526 (1964). It is safe to say that if given the opportunity, the Supreme Court would agree that there may be a fundamental right that is even more "precious" than the right to vote for someone else to make the laws, and that is the fundamental right of the people to make the law themselves through a constitutionally and organically guaranteed initiative process.

In a recent Ninth Circuit case arising from Saipan, the court reaffirmed a long line of federal decisions holding that the right to vote is a "fundamental political right." <u>Charfauros v. Bd. of Elections</u>, 2001 U.S. App. LEXIS 15083 (9th Cir. 2001), citing <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 370, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). "Because our democracy was founded on the principle that 'the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights,'" <u>Id.</u>, citing <u>Reynolds v. Sims</u>, 377 U.S. 533, 562, 84 S. Ct. 1362 (1964), "our courts vehemently protect every citizen's right to vote, carefully and meticulously scrutinizing any alleged infringement." <u>Charfauros</u>, *supra*. As the <u>Charfauros</u> court noted, the right to vote is not merely a guarantee in the equal protection setting – it is a fundamental right in and of itself. <u>Dunn v. Blumstein</u>, 405 U.S. 330, 336, 92 S. Ct. 995 (1972).

The Constitution "nullifies sophisticated as well as simple-minded modes" of infringing on constitutional protections. <u>Lane v. Wilson</u>, 307 U.S. 268, 275, 59 S. Ct. 872 (1939); <u>U.S. Term Limits, Inc. v. Thornton</u>, 514 U.S. 779, 829 115 S. Ct. 1842 (1995). And, the United Supreme Court has often held that "constitutional rights would be of little value" if they could be "indirectly denied. " <u>Harman v. Forssenius</u>, 380 U.S. 528, 540, 85 S. Ct. 1177 (1965), quoting <u>Smith v. Allwright</u>, 321 U.S. 649, 664, 64 S. Ct. 757 (1944). In the scheduled November 2, 2004 election on Proposal A, there has not been a mere "indirect denial" of the people's right to vote

8

for or against the initiative. There has been a direct and complete disenfranchisement of an entire electorate's right to vote.

Griffin v. Burns, 570 F.2d 1065, 1074-1075 (1st Cir. 1978) is a recent and well-known right to vote case. Quoting from the United States Supreme Court's opinion in Reynolds v. Sims, 377 U.S. 533, 84 S. Ct. 1362 (1964), the Griffin court explained:

> Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, Ex parte Yarbrough, 110 U.S. 651, 28 L. Ed. 274, 4 S. Ct. 152, and to have their votes counted, United States v. Mosley, 238 U.S. 383, 59 L. Ed. 1355, 35 S. Ct. 904. In Mosley the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box. 238 U.S., at 386. The right to vote can neither be denied outright, Guinn v. United States, 238 U.S. 347, 59 L. Ed. 1340, 35 S. Ct. 926, Lane v. Wilson, 307 U.S. 268, 83 L. Ed. 1281, 59 S. Ct. 872, nor destroyed by alteration of ballots, see United States v. Classic, 313 U.S. 299, 315, 85 L. Ed. 1368, 61 S. Ct. 1031, nor diluted by ballot-box stuffing, Ex parte Siebold, 100 U.S. 371, 25 L. Ed. 717, United States v. Saylor, 322 U.S. 385, 88 L. Ed. 1341, 64 S. Ct. 1101. As the Court stated in Classic, 'Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted' ...

> \*     \*     \*

> (H)istory has seen a continuing expansion of the scope of the right of suffrage in this country. The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

9

Griffin v. Burns, 570 F.2d 1065, 1074-1075 (1st Cir. 1978) (upholding federal district court's decision to order a new state election where the people's right to vote had been infringed upon). Under Griffin, "(t)he right to vote in local elections (including referenda elections) is constitutionally protected." 570 F.2d at 1075.

In Ury v. Santee, 303 F. Supp. 119 (N.D. Ill. 1969), a federal district court invalidated an election for a local Board of Trustees on due process and equal protection grounds. Two months before the scheduled town election, local leaders had quietly passed an ordinance reducing the number of voting precincts from 32 to 6 without informing the public of that fact. At the election, the available number of voting precincts was inadequate to accommodate the number of people who wanted to vote. There were traffic jams, hour-long lines at the polls, and many people in heavily populated precincts were unable to vote at all. The court threw out the "confused election" results even though there was no way to tell exactly how many people had been unable to vote, finding only that "hundreds of voters were effectively deprived of their right to vote." The confusion had the effect of "either of changing the election results or rendering the results doubtful."

Similarly, in Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970), a local Board of Election Commissioners invalidated certain candidates' nomination papers in an alderman election for technical failings. The failings were defective only because the Board had recently changed its rules without adequately publicizing what it had done. The plaintiffs had compiled their petitions for nomination based on the old rules. The court held that plaintiffs' due process rights had been violated. It ordered the Board to "establish and publish meaningful guidelines" for the nomination of candidates. The unannounced eleventh-hour change of policy could not be used to deprive candidates and voters of their fundamental right to participate in the election.

10

In <u>Bonas v. Town of N. Smithfield</u>, 265 F.3d 69 (1st Cir. 2001), voters passed a referendum changing town elections from odd-numbered years to even-numbered years. Incumbent town officials then announced that they were not required to conduct the previously scheduled election in the upcoming odd-numbered year, and that incumbent officials would simply serve an additional year in office until the next election under the newly-passed referendum in the even-numbered year. The court recognized a "total disenfranchisement" of the right to vote when it saw one and ordered the election to be held in the upcoming odd-numbered year.

Courts vigorously protect the right to vote. Courts must act when the rest of the government fails to act. <u>Burdick v. Takushi</u>, 504 U.S. 428, 430-32, 112 S. Ct. 2059 (1992) involved a First Amendment challenge to Hawaii's prohibition on write-in voting. The United States Supreme Court explained, quoting from its previous decision in <u>Storer v. Brown</u>, 415 U.S. 724, 730, 94 S. Ct. 1274 (1974) that "(c)ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" <u>Burdick</u>, 504 U.S. at 433. As mentioned above, a local government has "a constitutional obligation to ensure the fairness of its elections, including those involving the initiative process." <u>Jones v. Bates</u>, *supra*, 127 F.3d at 861.

2. **Challenges to Procedurally Flawed Elections Must Be Brought Before the Election.**

Under 20 G.C.A. §15123, "(t)he law never requires impossibilities," and under 20 G.C.A. §15124 the law does not require "idle acts." For the reasons set forth in Section A. of this brief,

11

it is clear that the scheduled November 2, 2004 vote on Proposal A will not be legally firm. The required procedures for holding an initiative election on Guam were not followed by the Director and the Election Commission. And, because of the publicity caused by the Attorney General's opinion (which is, after all, correct in its conclusion that the text of the initiative had to be in the ballot pamphlet mailed to the voters 30 days before the election), the election cannot now constitutionally reflect the true will of the electorate. Everyone on Guam knows that the Director and the Elections Commission have bungled the election. Everyone knows that his or her vote either for or against Proposal A is meaningless. Everyone knows that the Attorney General has publicly stated that he will file a lawsuit to set aside the election if Proposal A passes. Everyone has been told by the Attorney General, who is Guam's Chief Legal Officer, that his or her vote does not count. What kind of free, fair or representative election is that?

Under the undisputed facts of this case, the court must enter a pre-election injunction. Courts do not hesitate to step in before an election when the government agency charged with administering the election has failed to follow statutorily required procedures, particularly in initiative and referendum cases. Here, the failure to include the proposed statute in the ballot pamphlet is a fatal flaw that requires judicial intervention to prevent confusion and to maintain the integrity of the process. This principle is seen in mainland cases everywhere. For example, Arizona's initiative statutes and regulations are apparently similar to Guam's. In Winkle v. City of Tucson, 949 P.2d 502, 190 Ariz. 413, 416 (1997) the court explained that "in cases where the initiative petition is defective in form ... where the procedure prescribed has not been followed ... the court has authority to intervene and enjoin its enactment. ... For example, the petition could lack the requisite number of signatures or fail to comply with publication requirements."

12

In fact, not only are concerned voters legally <u>permitted</u> to seek pre-election injunctions of obviously flawed initiative elections – courts hold that they are legally <u>required</u> to, or they will have waived their right to challenge the flawed election procedures <u>after</u> the election. Under Guam law, 20 G.C.A. §15108, "(a)cquiescence in error takes away the right of objecting to it." This principle is also seen in election cases everywhere. For example, in <u>Lewis v. Cayetano</u>, 823 P.2d 738, 72 Haw. 499, 503-504 (1992), the court made the following common sense observations:

> (E)fficient use of public resources demand that we not allow persons to gamble on the outcome of the election contest then challenge it when dissatisfied with the results, especially when the same challenge could have been made before the public is put through the time and expense of the entire election process.

> Merely notifying elections officials of irregularities is not sufficient. When it appears that the alleged irregularities will not be corrected by elections officials, plaintiffs have an obligation to file an action in the "circuit courts [which] have the power to prevent use of a ballot not in conformity with the law and to compel officials to prepare and distribute proper ballots." ... When opportunity exists to bring such action prior to the election and plaintiffs fail to do so, they will not be heard to complain afterwards.

In <u>Fairness & Accountability in Ins. Reform v. Greene</u>, 886 P.2d 1338, 180 Ariz. 582, 587 (1994), another initiative case relied on by <u>Winkle v. City of Tucson</u>, the court held that concerned voters in an initiative election <u>cannot</u> wait until after the election to challenge the procedures under which the initiative election has been held. Instead, they <u>must</u> seek an injunction <u>before</u> the election or all post-election challenges have been waived.

> (T)he procedures "leading up to an election cannot be questioned" after the vote but "must be challenged before the election is held." <u>Tilson</u>, 153 Ariz at 470, 737 P.2d at 1369. Claims of procedural violation in the initiative process "must be reviewed by the court

13

prior to the actual election, while the legality of the substance of an
initiative cannot be reviewed until the initiative is adopted . . . and
is later at issue in a specific case." Id. at 471, 737 P.2d at 1370.

And, in Tilson v. Mofford, 737 P.2d 1367, 1369-1370, 153 Ariz. 468, 470-471 (1987),

the court summarized this basic proposition as follows:

> (t)he courts do have the duty of ensuring that the constitutional and
> statutory provisions protecting the electoral process (i.e., the
> manner in which an election is held) are not violated. ... Indeed,
> we have held that the procedures leading up to an election cannot
> be questioned after the people have voted, but instead the
> procedures must be challenged before the election is held. ...
> Before an election, the court's authority to intervene and enjoin the
> enactment of an initiative is limited to those instances "where an
> initiative petition is defective in form or does not bear the number
> of signatures of qualified electors ... or where the prescribed
> procedure has not been followed ... . Thus, procedural violations
> in the elective process itself must be reviewed by the court prior to
> the actual election, while the legality of the substance of an
> initiative cannot be reviewed until the initiative is adopted by the
> electorate and is later at issue in a specific case.

Similarly, in Kerby v. Griffin, 62 P.2d 1131, 48 Ariz. 434, 444-446 (1936), a voter sued

election officials for an injunction before an initiative action when the officials failed to publish

or print the text of the initiative itself in a timely fashion under the relevant statutes and rules.

By the time the problem surfaced, all of the relevant deadlines for publishing and printing had

passed.    Rejecting election officials' "substantial compliance" argument, the court had no

difficulty whatsoever enjoining the initiative election.    The court's eloquent reasoning in Kerby

v. Griffin deserves repeating in full here in this brief:

> (T)o hold a court of equity could not intervene to prevent an
> election being held, when every constitutional and statutory
> provision setting forth what must be done before holding a legal
> election had been violated, would result in an absurdity. It has been

14

frequently determined that if parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure ... If, then, they may not question the procedure before the election because it is an interference with the will of the people, and may not question it afterwards because it is then too late, when may the question be raised? Such a holding would be a travesty of the mandatory provisions of the Constitution and the acts of the legislature, for it would mean that they cannot be questioned at all.

\* \* \*

The same situation was before us in the case of Kerby v. Luhrs, 44 Ariz. 208, 36 Pac. (2d) 549, 94 A.L.R. 1502, and again we unanimously enjoined an initiated constitutional amendment from being placed on the ballot, on the ground that it violated the provisions of the Constitution. We think, therefore, both on sound reason and upon the unanimous decisions of our own court, that when it appears affirmatively the constitutional and statutory rules in regard to the manner in which initiative and referendum petitions should be submitted have been so far violated that there has been no substantial compliance therewith, that the courts have jurisdiction to enjoin the election at the suit of an interested citizen. This conclusion is in harmony with common sense. Any contrary decision would require us to say, "It is true that the proposed initiative will not be submitted in accordance with the mandatory provisions of the constitution and statutes; it is also true that the procedure may not be questioned after the election. We will, nevertheless, refuse to allow it to be questioned before the election, and thus nullify the provisions of the constitution."

As in Guam, in the mainland the law does not tolerate or require meaningless or useless acts. If an election is known to be flawed in advance of the election, the courts must stop it. In Bell v. Eagerton, 2002 Ala. LEXIS 116, 7-8 (Ala. 2002), an argument was made that a pre-election challenge to an obviously flawed election was impermissible, and that only post-election challenges could be made. The court disagreed: "We think this is not an adequate remedy. It means the useless incurring of all the expense, loss of time, and inconvenience of holding the election, and the confusion and uncertainty which would follow such conditions. ...

15

All the expense and inconvenience to the voters and taxpayers of the county would be useless. It seems a plain duty to so determine beforehand. The rights and interests of the electorate are better promoted by a decision in advance, advising the commissioners of their want of power, and restraining them from proceeding with a meaningless and useless election."

The scheduled November 2, 2004 election on Proposal A will be a senseless waste of voter time and taxpayer money. These were the exact reasons the court in In Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So. 2d 981, 986 (Fla. 1981) issued an injunction to stop a blatantly flawed initiative ballot procedure. The court enjoined the election before it could be held. "We are here dealing with an election involving a matter with reference to which the public interest and public rights may be determined in advance of the ballot, in order to preclude or forestall possible expenditure of substantial sums of public monies in the doing of what could be a vain and useless thing."

In Ferguson v. Morris, 197 Minn. 446, 450-453 (Minn. 1936), the Supreme Court of Minnesota set aside an election on a voter referendum when the elections commission failed to print it in the newspaper, as required by the Minnesota statutes. According to the court, the publication statutes were "mandatory". The purpose of the statutes was "to permit the voters to examine at their leisure the ordinances to be approved or rejected by them." Compounding the problem was that the ordinances to be voted on were very lengthy, as is, of course, the text of Proposal A. As the Ferguson court recognized:

> Long ordinances containing the terms of contracts of some magnitude cannot well be examined by the voters in the election booths, even if printed on the ballots, as they were not in this instance, nor any adequate summary of them. The fact that those ordinances had been published when the commission passed them, 15 days prior to the presentation of the protest petition, cannot be

16

regarded as a substitute for this mandatory provision of the charter."

The <u>Ferguson</u> court realized that when the purpose of an election is to vote on whether an initiative is to become law, the election commission needs to follow all laws regulating how the initiative is to be delivered to the voters, so they know what it is they are actually voting on:

> When it is considered that the subject of the referendum election is to let each voter determine whether the contracts or obligation of the city as contained in these ordinances should be entered into or should be rejected, it is obvious that the duty imposed on the commission by the charter to print and publish the same *in extenso* [in their entirety] should be regarded as mandatory. It will not do to say that the voters should go to the offices of the city where the ordinances are on file to examine them, or they should hunt for some back numbers of the official newspaper where they could be found and examined. ... we conclude, as did the courts below, that it is the mandatory duty of the commission to print and publish the proposed ordinances to be submitted at a referendum election as provided in § 49.

As seen, it appears to be an accepted rule that post-election challenges to the procedures under which election officials have decided to conduct an initiative election are barred. Challenges to the substantive merits of the proposed initiative can be brought after the election.[3] But procedural challenges must be brought before the election. The reasons for the rule are many and obvious, upon a moment's reflection. One is money – it is a waste of taxpayer money and voter time to hold an election that is known in advance to be invalid. Another, equally valid reason is that parties should not get "two bites at the apple" by being permitted sit back and wait to see if the election turns out favorably or unfavorably before deciding to file suit. <u>Lewis v. Cayetano</u>, 823 P.2d 738, 72 Haw. 499, 503-504, *supra* (people cannot "gamble on the outcome of the election contest then challenge it when dissatisfied with the results.") Much of this was

---

[3] See. e.g., 3 G.C.A. §§12105-12122 (election contests).

17

reiterated by the Ninth Circuit Court of Appeals in another recent voting rights case arising from

Hawaii, <u>Soules v. Kauaians for Nukolii Campaign Committee</u>, 849 F.2d 1176, 1180-1181 (9th

Cir. 1988):

> (T)he courts have been wary lest the granting of post-election relief
> encourage sandbagging on the part of wily plaintiffs.  As the
> Fourth Circuit put it, the "failure to require pre-election
> adjudication would 'permit, if not encourage, parties who could
> raise a claim to lay by and gamble upon receiving a favorable
> decision of the electorate and then, upon losing, seek to undo the
> ballot results in a court action.'" <u>Hendon v. North Carolina State</u>
> <u>Bd. of Elections</u>, 710 F.2d 177, 182 (4th Cir. 1983) (quoting <u>Toney</u>
> <u>v. White</u>, 488 F.2d 310, 314 (5th Cir. 1973)). Therefore, in order to
> create an appropriate incentive for parties to bring challenges to
> state election procedures when the defects are most easily cured,
> we have held that "the law imposes a duty on parties having
> grievances based on discriminatory practices to bring their
> complaints forward for preelection adjudication." ... (I)f aggrieved
> parties, without adequate explanation, do not come forward before
> the election, they will be barred from the equitable relief of
> overturning the results of the election. ... In this case, the district
> court correctly decided that appellants were barred from
> invalidation of the special election even if they could make out a
> constitutional violation.

As shown in Section A. of this brief, the scheduled November 2, 2004 election on

Proposal A is constitutionally and organically flawed.  As just seen in Section B. of this brief, the

court must step in and stop the election.  As will be seen below in Section C. of this brief, the

court must then issue an order compelling a special election on Proposal A as soon as reasonably

possible.

## C.    <u>SPECIAL ELECTION.</u>

The Defendants, and the opponents of Proposal A, may very well agree that the results of

any vote on Proposal A at the general election on November 2, 2004 will be invalid, yet argue that a

special election is unnecessary. They may argue, for example, that Proposal A can simply be put off until the November 2, 2006 general election, two years from now. But it cannot be put off for another two years. The people of Guam have a constitutional and organic right to vote now on Proposal A. Two years ago, the Director and the Elections Commissioner blocked the "Territorial Gaming Act" from being placed on the ballot by refusing to certify 2,157 signatures as valid. See, Wade v. Taitano, 2002 Guam 16. As for Proposal A, the same Proposal A that is scheduled to be voted on this November 2, 2004, the Director and the Elections Commission did not finish certifying petition signatures until 87 days before the election, but there was a 90 day "education process" required by law (and there were other issues, as well), and Proposal A did not make it onto the ballot. This year, the Director and the Election Commission simply decided – by their own, public admission – to refuse to follow what they knew the law to be, thereby frustrating the will of the people once again.

It happened in 2002. It has now happened in 2004. Not even this court can guarantee Plaintiff or the voters of Guam that their fundamental right to vote will not once again be taken away from them in 2006, and continuously after that. What has happened here is demonstrably "capable of repetition, yet evading review," in the famous words of the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 124-125, 93 S. Ct. 705 (1973). This fundamental constitutional principle was affirmed as recently as Friday, October 15, 2004, in a federal case addressing whether the "war on terrorism" justified even a slight departure from normally protected constitutional guarantees. The court said no; there is no room under the United States Constitution for any such argument. See, Bourgeois v. Peters, 2004 U.S. App. LEXIS 21487, 7-8 (11th Cir. 2004). There, the court reaffirmed that when constitutional rights are being trampled