SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

RODNEY J. JACOB, ESQ.
MICHAEL A. PANGELINAN, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
DEC - 7 2004
MARY L. M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE,<br><br>          Plaintiff,<br><br>-v-<br><br>THE GUAM ELECTION COMMISSION, et. al.<br><br>          Defendants. | CIVIL CASE NO. 04-00045<br><br>(Superior Court of Guam<br>Civil Case No. CV1103-04) |
| JAY MERRILL, et. al.,<br><br>          Plaintiffs,<br><br>-v-<br><br>THE GUAM ELECTION COMMISSION, et. al.<br><br>          Defendants. | CIVIL CASE NO. 04-00046<br><br>(Superior Court of Guam<br>Civil Case No. CV1111-04)<br><br>**THE GOVERNOR OF GUAM'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

The Governor of Guam, Felix P. Camacho (the "Governor"), respectfully submits this opposition to plaintiffs' motion for summary judgment.

## INTRODUCTION

In the November 2, 2004 general election, Proposal A, a casino gaming initiative, was rejected by Guam's voters. The results of the election were 21,223 "No" votes and 13,311 "Yes" votes. %.[1] The margin of defeat thus was 61.5% to 38.5.

In moving for summary judgment, plaintiffs claim (without evidence) that they would or could have won this election if only the full text of the quite lengthy, densely worded and legalistic Proposal A initiative was mailed to each and every voter, who presumably then would have been persuaded to change their votes. Plaintiffs further claim that because the full text of the initiative was not individually mailed to each voter, not only must there be a new election, there must be a special election, at great cost to the government.

The Governor finds this entire argument implausible. It seems much more likely that voters made their determinations not on the nuances of the casino gaming law, but rather on the big picture question of whether they believed casinos would or would not benefit the island. But in any case, no one living on Guam in the months before the election could have missed the extensive news coverage of the Proposal nor the extensive political campaigning, all of which was unprecedented in the island's political history. There simply is no evidence to suggest any voters were misled by the Guam Election Commission's actions. For these and other reasons, the Governor opposes this summary judgment motion because it is wrong as a matter of law, and joins the Election Commission's position that Guam law never required the entire initiative to be mailed and that Bill 354 was lawfully enacted.

---

[1] *See* http://kuam.com/decision2004/results/general.aspx.

However, the Governor's concern is much more with plaintiffs' attempt to obtain through mandamus a special election outside of the ordinary process governing when such elections are called. Guam law vests the Guam Legislature with the *discretion* to determine whether a special election on an initiative is in the public interest. This ensures an opportunity for Guam's duly-elected legislators to balance the expense of such an election against other priorities for the island. A writ of mandamus should not issue to compel such a discretionary decision as a matter of law. This is all the more true where plaintiffs have failed to show why a new vote at the next general election is not adequate alternative relief, and failed even to show that they ever requested a special election from the Legislature or that such a request has been refused. And this also ignores the fact that the entire procedural posture of this motion is improper, as neither jurisdiction nor class certification have been determined. For these reasons, summary judgment, and most particularly mandamus ordering a special election, is not proper.[2]

## ARGUMENT

Federal Rule of Civil Procedure 56(c) provides that a court may grant summary judgment only if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment was a matter of law." Where, as here, the party seeking summary judgment bears the burden of proof, that party has the burden of proving every element of its claims. *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything....." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); A. Friedenthal, A.

---

[2] Plaintiffs may hope that a selective turnout at a special election might permit them to overcome the Proposal A's deficit in voter support. At the general election, a non-vote counted as a "no" vote on Proposal A pursuant to 3 G.C.A. § 17204; obviously, non-votes would not be an issue at a specially called election that only addressed Proposal A. However, although this could make a special election a good electoral strategy for plaintiffs, it does not justify their attempt to use the courts to obtain what they cannot convince the Legislature to provide.

Miller and M. Kane, Civil Procedure 460 (3rd ed. 1999)). "A summary judgment is neither a method of avoiding the necessity for proving one's case nor a clever procedural gambit whereby a claimant can shift to an adversary the burden of proof on one or more issues. ... To obtain a summary judgment in favor of a claim, 'the moving party must offer evidence sufficient to support a finding upon every element of his [or her] claim....'" *Watts*, 703 F.2d at 347 (quoting *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir.1970)) (alterations in original).

## I. THE MOTION FOR SUMMARY JUDGMENT IS PREMATURE DUE TO OUTSTANDING CLASS CERTIFICATION AND JURISDICTIONAL ISSUES

### A. REMOVAL JURISDICTION MUST BE DETERMINED BEFORE ANY DISPOSITIVE MOTIONS ARE HEARD

On November 22, 2004, the Legislature moved to remand this action on the ground that all Defendants had not consented to removal. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) ("removal requires the consent of all defendants") (citing *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900)). The Governor joined this motion on December 6, 2004. The Governor also requested that plaintiffs' counsel agree to hold this summary judgment motion until jurisdiction is determined, but counsel refused. (Decl. of Daniel M. Benjamin in Support of the Governor of Guam's Opposition to Plaintiffs' Motion for Summary Judgment ("Benjamin Decl.") Exhs. 1 & 2.)

Plaintiffs' insistence on having their summary judgment motion heard before the court determines whether removal jurisdiction exists is improper. Federal courts must have subject matter jurisdiction to rule on the merits of a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits") (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83

(1998)).³ Thus, if the motion to remand should be granted, any ruling on Plaintiffs' summary judgment motion would have to be vacated. *Weeks v. Fidelity & Cas. Co.*, 218 F.2d 503, 504 (5th Cir.1955) ("If the refusal to remand was erroneous, the judgment of dismissal was likewise erroneous."); *Local No. 6 v. Bath Iron Works Corp.*, 617 F. Supp. 1046, 1047-48 (D. Me. 1985) (where case had to be remanded for lack of subject matter jurisdiction, previous order dismissing case had to be vacated as judgment could not be entered without removal jurisdiction). Thus, before hearing this motion, the motion to remand should be heard and decided.

### B. PLAINTIFFS CANNOT MOVE FOR SUMMARY JUDGMENT WITHOUT FIRST RESOLVING THE ISSUE OF CLASS CERTIFICATION

A second defect in plaintiffs' rush to obtain summary judgment is that plaintiffs have brought this action as a purported class action. (*See* First Amended Compl. ¶¶ 7-11.) Whatever the propriety of the class action allegations, plaintiffs should not be able to seek a decision on the merits before moving for class certification. The interests behind this lawsuit have already filed two identical suits through identical counsel, and that same counsel has now threatened to file a third (in his words) "identical" lawsuit. (Benjamin Decl. Exh. 2.) It would be fundamentally unfair if plaintiffs were permitted to wait and see how the summary judgment motion is decided before moving for class certification. This could permit them to attempt to bring yet another action if they lose the summary judgment motion. Class certification should be decided in advance so that defendants do not face a continual barrage of duplicative lawsuits—as plaintiff's counsel has expressly threatened. (*Id.*)

---

³ Courts can decide jurisdictional issues in any order; for example, they can decide personal jurisdictional before deciding removal jurisdictional. *Id.* at 577-78. However, this exception is unavailing here because plaintiffs' summary judgment motion is an attempt to gain a ruling on the merits before the motion to remand is heard, and not to have a different jurisdictional issue heard first. *See id.* at 577 ("jurisdiction generally must precede merits in dispositional order").

## II. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

To avoid duplicative briefing, the Governor adopts and joins the arguments of the Election Commission concerning the validity of the Proposal A election. The Governor, however, wishes to independently emphasize several issues.

*First*, plaintiffs' case fails as a simple matter of statutory interpretation. The heart of plaintiffs' complaint is an alleged violation of 3 G.C.A. § 17509, which requires that "[a] complete copy of any <u>measure</u>" be part of the ballot pamphlet mailed to each voter. (emphasis added). But that same Chapter of the G.C.A. defines "measure" as follows: "<u>Measure refers to the action proposed or question presented on the initiative, referendum or legislative submission.</u>" 3 G.C.A. § 17102(d) (emphasis added). The ballot pamphlet mailed to each voter had this information; it quite specifically contained the "question presented on the initiative" because it contained the full text of the question presented on the ballot as to whether Proposal A would be adopted. (*See* First Amended Cmpl. Exh. 2 (at Exh. A) (ballot pamphlet containing full statement of the ballot question).)

*Second*, even if there had been no definition of "measure," and therefore some level of ambiguity, the Election Commission's determination that "measure" refers only to the ballot question is certainly reasonable. It therefore cannot be overturned as a matter of deference to agency actions. *Cf. Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001) ("In accordance with *Chevron*, we first examine the statute itself to determine whether 'Congress has directly spoken to the precise question at issue,' in such a way that 'the intent of Congress is clear.' ... If our answer is negative--as it would be when 'the statute is silent or ambiguous'-- we proceed to the second step, where we decide whether the agency's interpretation 'is based on a permissible construction of the statute.'") (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). This same rule is applied under Guam law to the

D041207.382-009-5A1.Opp to SJ    5

Case 1:04-cv-00046    Document 78    Filed 12/07/2004    Page 6 of 16

actions of a Guam agency or instrumentality. *Ada v. Guam Telephone Authority*, 1999 Guam 10, ¶10 ("If a statute is silent or ambiguous on a particular point, however, the court may defer to the agency's interpretation.") (citing *Chevron*, 467 U.S. at 843); *accord Blas v. Guam Customs & Quarantine Agency*, 2000 Guam 12, ¶ 12. No different rule should apply to the Guam Election Commission, a bipartisan committee that enjoys great independence in administering the election laws of Guam under Title 3 of the G.C.A. so as to ensure the integrity of the political process. *Cf. Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37 (1981) (Federal Election Commission "is precisely the type of agency to which deference should presumptively be afforded" because Congress vested it with primary responsibility for enforcing campaign laws, provided it with rulemaking authority, mandated that its membership be bipartisan, and stated that "it must decide issues charged with the dynamics of party politics, often under the pressure of an impending election").

*Third*, in passing and executing Bill 374, the Legislature and Governor determined that mailing out the entire text of Proposal A to every voter was not required by law, would not enhance voting rights, and would unnecessarily waste taxpayers' money. Plaintiffs nakedly assert that the Legislature's actions in passing the law were unjustified, but they have submitted no declarations or other evidence regarding this issue. (*See* Plaintiffs' MPA at 12-14.) This fails to carry the burden of production and proof plaintiffs carry in seeking summary judgment. *Nissan Fire*, 210 F.3d at 1102–03. Further, yesterday plaintiffs dismissed the Legislature from this action, thereby removing from this action the one party qualified to address this issue.

*Fourth*, in complaining about the alleged technical failures to comply with section 17509 or Bill 374 by the Election Commission, plaintiffs rely on cases involving deprivations of the right to vote. (Plaintiffs' MPA at 14-17.) But Proposal A supporters "were not prevented from voting"; their complaints are that the text of Proposal A allegedly was not properly mailed

or posted. Such *de minimus*, technical violations are not the type of deprivations that gives rise to any cause of action.[4] As the Guam Election Commission already pointed out in moving to dismiss,[5] initiatives are governed by a substantial compliance standard under Guam law that examines the extent of non-compliance, whether the purpose of the law was achieved despite non-compliance, and whether any violations are the result of good faith error or were actually intended to harm or mislead the public. (Motion to Dismiss at 12-14.) This is a doctrine followed in numerous cases concerning publication and notice requirements, again as pointed out by the Guam Election Commission in its Motion to Dismiss. (*Id.*)

Plaintiffs' response in this motion is to cite cases concerning California's requirement for a *petition* to place a ballot initiative on a ballot under California law, where the substantial compliance doctrine does not apply. (*See* Plaintiffs' MPA at 9-11 (citing numerous cases all concerning this issue including *Mervyn's v. Reyes*, 69 Cal.App.4th 93, 99-100 (1998) (defect in petition meant referendum should not have been placed on ballot); *San Francisco Forty-Niners v. Nishioka*, 75 Cal.App.4th 637, 646-47 (1999) (defect in petition prevented placement on ballot); *Boyd v. Jordan*, 1 Cal.2d 468, 472 (Cal. 1934) (defect in petition prevented placement on ballot); *Chase v. Brooks*, 187 Cal.App.3d 657, 664 (1986) (election invalid because underlying initiative petition was improper)). However, a petition is a document a voter may review for the first and last time at the time they make the determination of whether to sign it.

---

[4] The Ninth Circuit has recognized this under analogous circumstances: "The Reform Party argues that defendants' alleged campaign finance violations made the votes of Perot supporters less meaningful. The doctrine upon which the Reform Party relies, however, provides relief for persons who have suffered a direct and wrongful deprivation of their right to vote. [Citations Omitted.] Unlike the plaintiffs in all these cases, John Place and other Perot supporters were not prevented from voting. The claimed diminution of the meaningfulness of their votes is not the kind of deprivation contemplated by the common law doctrine." *Nat'l Comm. Of the Reform Party v. Democratic Nat'l Comm.*, 168 F.3d 360, 363-64 (9th Cir. 1999).

[5] The Guam Election Commission filed its Motion to Dismiss on October 27, 2004 in the Superior Court prior to the removal of these cases.

The prejudice from a misleading petition is obvious; it may be voters' only source of information before they make their decision to sign the petition.

In contrast, a voter pamphlet is one of many optional sources of information to a voter, and if a voter believes they need information beyond that contained in the pamphlet, they have ample opportunity to obtain such information in the month between receipt of the pamphlet and the election. In fact, it is undisputed that Proposal A was the subject of an extremely high level of publicity on Guam, with numerous stories running on a daily basis in the months leading up to the election, with significant advertisements being made by both sides, with expert studies being prepared, and with public forums occurring. (Benjamin Decl. Exh. ¶ 4 and Exh. 3 (collecting articles); *see also* First Amended Cmpl. Exh. 5 (collecting numerous press stories regarding Proposal A and the efforts of its supporters and detractors).) *Cf. Housing Authority of Kings County v. Peden*, 212 Cal. App. 2d 276, 281-82 (1963) (rejecting challenge to notice regarding referendum on housing project based on existence of numerous articles, public meetings, and organizations that publicly advocated for and against the measure). It is simply not credible to claim that voters were misled or ill-informed as a result of one ballot pamphlet or a failure to post in certain mayor's offices under these circumstances.

### III. MANDAMUS COMPELLING A SPECIAL ELECTION IS NOT PROPER

For the Governor, the most significant fallacy of plaintiffs' position is that, whatever the merits of their claims regarding the validity of the election, what they ultimately seek is a writ of mandamus compelling the defendants (the Election Commission and Governor) to hold a special election to determine Proposal A. (Cmpl. Prayer for Relief ¶ 2.) "Mandamus is an extraordinary remedy." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (citing *Stang v. IRS*, 788 F.2d 564, 565 (9th Cir.1986)). "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial,

and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Id.* (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)) (internal citations omitted in original); *accord Bank of Guam v. Reidy*, 2001 Guam 14, ¶ 13. It cannot lie to compel a future act in anticipation of future error. *Id.* ¶ 14.

### A. MANDAMUS CANNOT LIE BECAUSE CALLING A SPECIAL ELECTION IS A DISCRETIONARY FUNCTION

A special election as to an initiative is not a proper ground for mandamus. Under Guam law, the official *proclamation* of a special election may only be made by the Governor. 3 G.C.A. § 13103 ("All special elections shall be called by proclamation of the Governor of Guam."). And the Election Commission *administers* any special election. 3 G.C.A. § 13101 ("All special elections shall be conducted in the same manner and form as a regular election, except as otherwise provided."); *see generally* Title 3 of the G.C.A. (creating the Commission and charging it with the duties associated with administering an election). However, the authority to *call* a special election (as Plaintiffs seek to compel here)—and whether such a call is mandatory or discretionary—depends on the type of election.

As to voter initiatives there is *no mandatory provision* requiring any of the defendants in this case to call a special election.[6] Instead, Guam law vests the ***discretion*** to call a special election to decide an initiative solely in the Legislature:

> The Election Commission shall submit the initiative to the electors after certification at the next general election held at least ninety (90) days after it qualifies or at a territory-wide special election held at least ninety (90) days after certification, provided however that the Legislature ***may*** call a territory-wide special election for the purpose of having the electors vote on an initiative measure.

3 G.C.A. § 17203 (emphasis added).

---

[6] The initiative process is wholly created and governed by Guam's local laws. *See* Chapter 17 of Title 3 of the G.C.A.

Thus, only the Legislature even has the authority to call for a special election as to Proposal A. And as to that authority, the authority is purely discretionary as indicated by the use of the word "may" in the statute. *See Barron*, 13 F.3d at 1375-76 (contrasting statutory use of word "shall" with "may," and explaining that the former demonstrates that an action is ministerial and a proper subject for mandamus, while the latter is permissive and not a proper subject for mandamus).

Had special elections for initiatives been intended to be mandatory, the Legislature could have so specified, as it did as to vacancies in offices. For example, the Election Commission is obligated to call a special election if there is a vacancy in the Legislature under specified circumstances. 3 G.C.A. § 13104. ("The Guam Election Commission ***shall*** call for a special election on a Saturday on or about sixty (60) days of the vacancy to fill vacancies in the Guam Legislature whenever one (1) or more vacancies occur therein prior to eight (8) months before the date of the next general election of members of the Guam Legislature.") (emphasis added). Similarly, until the law was amended to provide otherwise, the Governor used to be obligated to call a special election to fill a municipal vacancy. *See* 3 G.C.A. § 13105 (1996) (stating that the Governor "shall" call a special election to fill a municipal vacancy that occurs more than eight months before the next general election where required by law) (subsequently repealed). Such obligatory special elections can be proper subjects for mandamus. *E.g. Jenkins v. Knight*, 293 P.2d 6, 9-10 (Cal. 1956) (mandamus can issue to compel special election where statute provides governor "shall" call election to fill legislative vacancy; however, selection of date of election is discretionary and mandamus will be refused regarding date selected).

In comparison, special elections are not proper subjects for mandamus where they are discretionary. For example, in *Helmkamp v. Livonia City Council*, 408 N.W.2d 470 (Mich. App. 1987), the plaintiff sought a writ of mandamus to compel a special election to fill a vacancy

in the mayor's office, as opposed to waiting for the next general election. *Id.* at 443. The court reversed a decision below ordering the special election, explaining that mandamus was improper because calling a special election was discretionary under the town's charter:

> Our reading of the plain wording of the charter leads us to conclude that the language of chapter IV, § 6 does not compel a special election, but allows the mayor pro tem to serve until the next regular election. <u>Alternatively, pursuant to chapter III, § 4, the council, *at its discretion*, may call a special election to fill the vacancy sooner.</u> That the mayor pro tem does not possess the veto power is only a factor that is to be considered in the exercise of the council's discretion. <u>Here, the council, whether or not it considered this factor, exercised its discretion and voted not to call a special election and to keep the vacancy filled by the mayor pro tem until the next general election.</u> [Footnote omitted]
>
> **<u>Absent a "clear legal duty" requiring a special election and a "clear legal right" in plaintiffs to the discharge of such a duty, the circuit court abused its discretion in granting mandamus.</u>**

*Id.* at 473-74 (italics in original; other emphasis added).[7]

Here, assuming *arguendo* any errors were made in the ballot pamphlet that require a new vote on Proposal A, this does not deprive the Legislature of its discretion to determine whether a special election should be called or the matter instead should be decided at the next general election. Special elections raise a host of issues regarding costs, use of government resources, and other factors. The Legislature exists to balance just these types of factors and to determine whether it is in the interest of the people of Guam to immediately decide an initiative or to address the matter at the next general election. Correcting any errors in the vote on a casino

---

[7] Plaintiffs purport to cite *Pestrak v. Ohio Elections Comm'n*, 670 F. Supp. 1368 (S.D. Ohio 1987), as concerning an initiative and a special election. (Plaintiffs' MPA at 17-18.) That case involved a defeated candidate for county commissioner's challenge to a law permitting sanctions for untruthful campaign statements; no special election for an initiative was at issue.

D041207.382-009-5A1.Opp to SJ       11

Case 1:04-cv-00046   Document 78   Filed 12/07/2004   Page 12 of 16

gambling proposal is not without importance, but the Legislature should not be stripped of its discretion to determine whether a special election should occur.[8]

## B. PLAINTIFFS HAVE ADEQUATE ALTERNATIVE RELIEF

There are very good grounds to believe that there is no need for a special election in this case. As stated, mandamus will not lie where there is adequate alternative relief. *Barron*, 13 F.3d at 1374; *accord Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993) (denying writ where alternative relief existed). Here, the obvious alternative relief is to have Proposal A heard again at the next election. Yet, plaintiffs have submitted absolutely no evidence regarding why such alternative relief is inadequate. *See Watts*, 703 F.2d at 347 (if party with burden of proof moves for summary judgment, it must produce evidence regarding each element of its claim).

Certainly, delay alone is not a ground to say such relief is inadequate. Absent further proof of specific injury by plaintiffs, delay is not the type of prejudice that supports mandamus. *DeGeorge v. Dist. Ct*, 219 F.3d 930, 935 (9th Cir. 2000) ("A mandamus petitioner 'must demonstrate some burden ... other than the mere cost and delay...'") (quotation omitted); *Herbst v. Able,* 278 F. Supp. 664, 667 (S.D.N.Y. 1967) (denying mandamus because "defendants have not shown any substantial prejudice to them from such delay"). In fact, even after passage, initiatives are often enjoined as courts assess their legality. *E.g. Cal. Prolife Council Political Action Committee v. Scully,* 164 F.3d 1189, 1190 (9th Cir. 1999) (affirming preliminary injunction while initiative's constitutionality is assessed). Plaintiffs were obligated in moving for summary judgment to come forward with specific proof as to why the delay here is prejudicial. *DeGeorge*, 219 F.3d at 935. They did not.

---

[8] Given that plaintiffs purportedly dropped the Legislature as a defendant yesterday, the correct party for a writ of mandamus also may no longer be before the Court.

The most that plaintiffs do is point to a previous delay in placing a gaming initiative on the ballot. (Plaintiffs' MPA at 16-17 (citing *Wade v. Taitano*, 2002 Guam 16).) But *Wade* shows that these delays resulted from errors by the proponents of gaming. *Wade* held that the Election Commission *correctly* had found that a casino gaming initiative could not be placed on the upcoming ballot due to a failure to collect an adequate number of valid signatures. *Wade*, 2002 Guam 16, ¶ 16. The proponents of gambling even stipulated to the fact that the signatures collected were inadequate; their argument was regarding a technicality under a regulation concerning how quickly they should have been notified that the signatures were inadequate. *Id.* There has been no deliberate effort to keep the issue off any ballot.

But even if there was a previous failure, this does not establish why *future* relief through a court-supervised general election is inadequate. Plaintiffs claim that somehow court supervision would not assure the adequacy of a future election (Plaintiffs' MPA at 17), but this is stated without factual support. And, it does not explain why court supervision of a special election would somehow work better than court supervision of a general election. Again, plaintiffs have to produce proof of their assertions. *See Watts*, 703 F.2d at 347. Again, they have not.

The inadequacy of plaintiffs' case also is shown by the fact that the only authority they can produce are civil rights cases concerning the need to count every vote or to correct unlawful redistricting plans. (MPA 18-19.) To the degree those cases even involve calling special elections, they involve the election of government officers, whose term would run if a special election were not called. *E.g. Arbor Hill Concerned Citizens v. County of Albany*, 357 F.3d 260, 261 (2d Cir. 2004) (per curiam) (new legislative election required where districting plan violated Voting Rights Act of 1965); *Marks v. Stinson*, 19 F.3d 873, 889-90 (3rd Cir. 1994) (fraud regarding absentee ballots created possibility of special election for state senator); *Ury v.*

*Santee*, 303 F. Supp. 119, 126-27 (D.C. Ill. 1969) (lack of adequate voting facilities required new election as to town officers).[9] And in one of those three cases, a case where there was no dispute that actual fraud had occurred in the election of a state senator, the court *still* stated that it would remand the special election issue because "a special election to fill the vacancy for the remainder of the year may not be justifiable in terms of the expense to the state and the burden on the candidates, voters, and election officials." *Marks*, 19 F.3d at 890. Certainly here, with alternative relief available, plaintiffs have not met their burden of showing why such alternative relief is inadequate. This case concerns an initiative, and the right to vote on that initiative will be just as well-protected by a vote at the next election as by calling a special election.

### C. MANDAMUS CANNOT LIE TO COMPEL A FUTURE ACT

Finally, even if plaintiffs might ever be entitled to a writ of mandamus, they are not at present. "Mandamus will not lie to compel the performance of future acts or for possible refusal to perform a future duty or to forestall anticipated error." *Bank of Guam*, 2001 Guam 14, ¶ 14 (citing *Communist Party v. Peek*, 20 Cal. 2d 536, 540 (1942); *Northridge Park County Water Dist. v. McDonnell*, 158 Cal. App. 2d 123, 127-28 (1958)). The Governor is not aware of any request being made of the Legislature to hold a special election, even though it is the only body that has the power under Guam law to call special elections for initiatives. *See* 3 G.C.A. § 17203. Certainly, on this motion for summary judgment, plaintiffs have failed to produce any evidence of such a request. *See Watts*, 703 F.2d at 347 ("To obtain a summary judgment in favor of a claim, 'the moving party must offer evidence sufficient to support a finding upon every element of his [or her] claim....'") (quotation omitted). Thus, at minimum, mandamus to compel

---

[9] This decision overturned the results of an election as to a number of different posts in that town. Interestingly enough, the court's opinion states that there were several referenda on the same ballot as was at issue as to the elected officials. *Id.* at 121. Yet, the court only ordered new elections as to the officials; no mention is made of a new election as to the referenda. *Id.* at 127.

a special election is premature until a demand to call such an election has been made and rejected (which is only appropriate after the election's legality is determined).

### CONCLUSION

The Governor believes that that people of Guam were entitled to decide Proposal A, and the people of Guam have spoken by declining to legalize casino gaming on the island. The law was followed, and any technical errors do not overcome the substantial compliance doctrine. Further, even if a new election were needed, this should occur at the next general election absent a contrary determination by the Legislature that the public interest favors a special election. Plaintiffs cannot seek to compel a special election, especially before the Legislature has the opportunity to make its discretionary determination. Accordingly, the Governor respectfully requests that the motion for summary judgment be denied.

Dated this 7th day of December, 2004.

OFFICE OF THE GOVERNOR OF GUAM
CALVO AND CLARK, LLP
Attorneys at Law

By: _____
**DANIEL M. BENJAMIN**