LAW OFFICES OF CESAR C. CABOT, P.C.
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 646-0777

Attorneys for Defendants
Guam Election Commission and
Gerald A. Taitano



IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE,<br><br>              Plaintiff,<br><br>vs.<br><br>THE GUAM ELECTION COMMISSION, et al.,<br><br>              Defendants. | CIVIL CASE NO. 04-00045<br><br>**GUAM ELECTION COMMISSION AND GERALD A. TAITANO'S OPPOSITION BRIEF TO PLAINTIFF MERRILL'S MOTION FOR SUMMARY JUDGMENT** |
| JAY MERRILL, et al.,<br><br>              Plaintiff,<br><br>vs.<br><br>THE GUAM ELECTION COMMISSION; et al.,<br><br>              Defendants. | CIVIL CASE NO. 04-00046 |

Come now Defendants, Guam Election Commission ("GEC") and Gerald A. Taitano ("Taitano"), through undersigned counsel, and hereby file this Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment filed on November

23, 2004. This Opposition Brief is based upon Defendants' Memorandum of Points and Authorities, all affidavits in support of this Opposition Brief filed contemporaneously or hereafter, all pleadings of record, and all evidence to be adduced at or prior to the hearing on this matter.

## I. INTRODUCTION AND BACKGROUND

Plaintiff originally filed its lawsuit on October 18, 2004 entitled <u>Lourdes P. Aguon-Shulte v. Guam Election Commission, et. al.</u>, as Superior Court Civil Case No. CV1103-04, which was subsequently removed to the District Court as District Court Civil Case No. 04-00045. Subsequent to the filing of the <u>Aguon-Shulte</u> matter, Plaintiff filed an "identical" lawsuit on October 25, 2004, in the instant case of <u>Jay Merrill v. The Guam Election Commission, et. al.</u>, which is before this Court as Civil Case No. 04-00046.

The Plaintiff readily admits that the two matters are "identical." See <u>Plaintiff's Mot. for S.J.</u>, P&A, pg. 1. This Court, by order of U.S. Magistrate Judge Joaquin V.E. Manibusan, Jr., also found that:

> the complaint in both cases are almost identical, the only difference being in the description of the plaintiffs. Both complaints raise the same three causes of action and sought the same relief. The case involving Ms. Aguon-Shulte listed herself as the only plaintiff, however, the second was brought by Mr. Merrill on behalf of a purported class of registered voters. Ms. Aguon-Shulte would potentially be a class member in the second case. Because these actions involve common questions of law or fact, the Court hereby consolidates the cases under Rule 42(a) of the Federal Rules of Civil Procedure. See <u>Order</u>; Magistrate Judge Joaquin V.E. Manibusan, Jr., dated November 23, 2004.

As such, the matters are consolidated for purposes of this Opposition Brief.

2

Attorneys at Law

LAW OFFICES OF
CESAR C. CABOT, P.C.
BankPacific Building, Second Floor • 825 South Marine Corps Drive • Tamuning, Guam 96913
Telephone: (671) 646-2001 • Facsimile: (671) 646-0777

Prior to the filing of Plaintiff's Motion for Summary Judgment on November 23, 2004, Defendants GEC and Taitano filed their Motion to Dismiss. Defendants' Motion to Dismiss was filed with the District Court of Guam on October 28, 2004, in the Aguon-Shulte matter. The record is clear that neither Plaintiff Aguon-Shulte, nor Jay Merrill, nor any of the purported class has filed any opposition to Defendants' GEC's and Taitano's Motion to Dismiss aforementioned. This Court has not scheduled a hearing date on Defendant GEC's and Taitano's Motion to Dismiss, which the GEC and Taitano submit should appropriately be heard before entertaining Plaintiff's Motion for Summary Judgment. Especially in light of the fact, that Plaintiffs have not opposed Defendants' GEC's and Taitano's Motion to Dismiss.

## II. ARGUMENT

### A. THERE EXIST GENUINE ISSUES OF FACT IN DISPUTE, MAKING SUMMARY JUDGMENT INAPPROPRIATE.

The GEC and Taitano hereby reserve their right to submit additional opposing affidavits pursuant to Rule 56(c), Federal Rules of Civil Procedure ("FRCP"). There exist genuine disputed issues of material fact in the instant cases.

> [This Honorable Court's task is to] view the evidence and inferences therefrom in the light most favorable to the part[ies] opposing the motion for summary judgment. Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328-29 (9th Cir.1983); British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir.1978) cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). [The Court must] then determine whether, on the basis of the pleadings, affidavits, depositions and other evidence available at the time the motion was made, there is any genuine issue of fact in dispute and whether the moving party is entitled to judgment as a matter of law. M/V American Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1487 (9th Cir.1983).

3

LAW OFFICES OF
CESAR C. CABOT, P.C.
Attorneys at Law
BankPacific Building, Second Floor • 825 South Marine Corps Drive • Tamuning, Guam 96913
Telephone: (671) 646-2001 • Facsimile: (671) 646-0777

See Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555, 1559 (9th Cir. 1984). In determining whether the moving party is entitled to judgment as a matter of law, this Court must correctly apply relevant substantive law. Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) ("Far Out Productions").

> An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. See id. at 248, 106 S.Ct. 2505.

Far Out Productions, 247 F.3d 992.

As detailed below, the GEC and Taitano very respectfully submit that genuine issues of material fact exist as to whether the GEC and Taitano complied with applicable statutes and regulations regarding the contents and the mailing of ballot pamphlets. Viewing the evidence and drawing inferences in the light most favorable to the GEC and Taitano, as it must, this Honorable Court should deny the motion at bar.

Furthermore, as indicated previously, Defendants GEC and Taitano filed their Motion to Dismiss on November 23, 2004 in the Aguon-Shulte case, before the filing of the instant Motion for Summary Judgment by the Plaintiff. The record is clear that neither Plaintiff Aguon-Shulte, nor Jay Merrill, nor any of the purported class has filed any opposition to Defendants' GEC's and Taitano's Motion to Dismiss aforementioned. This Court has not scheduled a hearing date on Defendant GEC's and Taitano's Motion to Dismiss, which the GEC and Taitano submit should appropriately be heard before entertaining Plaintiff's Motion for Summary Judgment. Especially in light of the fact, that Plaintiffs have not opposed Defendants' GEC's and Taitano's Motion to Dismiss.

4

L.R. Rule 7.1(d)(2) provides in relevant part that "if a motion is not set for oral argument, the opposing party shall have fourteen (14) days from the date of the filing of the Motion to serve and file an Opposition consisting of: (i) a memorandum in support thereof containing the points and authorities upon which the opposing party relies; (ii) if desired, the evidence upon which the opposing party relies; (iii) any affidavits required by the Federal Rules of Civil Procedure."

The fourteen (14) days for Plaintiff to respond to Defendants' Motion to Dismiss has already expired. L.R. 7.1(f) provides that "<u>Failure To File Required Papers</u>. Papers not timely filed by a party including any memoranda or other papers required to be filed under this Rule will not be considered and such tardiness may be deemed by the Court as consent to the granting or denial of the Motion, as the case may be.

In the instant matter, because Plaintiffs have failed to file an opposition to GEC's and Taitano's Motion to Dismiss as aforementioned, this case should appropriately deem the Motion to Dismiss as unopposed, and dismiss the instant matters with prejudice. This would obviate the need for addressing Plaintiff's subsequent Motion for Summary Judgment.

**B. THE GEC AND TAITANO FULLY COMPLIED WITH 3 GCA §§17509 AND 17511 AND 6 G.A.R. §2112(5) REGARDING THE CONTENTS AND THE MAILING OF BALLOT PAMPHLETS, AND THEREFORE NO CAUSE OF ACTION OR CONTROVERSY EXISTS.**

The required contents of the ballot pamphlet for Initiatives are addressed in Sections 17509 and 17511 of Title 3, Guam Code Annotated, and 6 G.A.R. §2112(5) of the GEC administrative rules. 3 GCA §17509 provides that:

5

> **§17509. Contents of Pamphlet.** The Ballot pamphlets shall contain:
>     (a) <u>A complete copy of any measure submitted to the voters by</u>:
>
>         (1) The Legislature.
>         (2) Initiative or referendum petition.
>     (b) A copy of the specific statutory provision, if any, proposed to be affected.
>     (c) A copy of the arguments provided for in this Chapter.
>     (d) The analysis and ballot title provided for in this Chapter.

See 3 GCA §17509 (emphasis added).

Section 17511 further provides that:

> **§17511. Mailing of Ballot Pamphlet.** <u>As soon as copies of the ballot pamphlet are available</u>, the Election Commission shall mail immediately the following number of copies to the following persons and places:
>
>     (a) One copy to each registered voter;
>     (b) One copy to each village Commissioner;
>     (c) One copy to each judge of the Superior Court; and
>     (d) One copy to each Senator.

See 3 GCA §17511 (emphasis added).

Further, Section 17512 clearly gives the Election Commission the power to promulgate administrative rules and regulations. The GEC promulgated administrative rule 6 G.A.R. §2112(5)[1] which tracks the requirements and language of 3 GCA §17509. The

---

[1]

GEC administrative rule - **6 G.A.R. §2112(5) "Ballot Pamphlets"**. provides: (a) The Director shall cause to be printed one and one-tenth (1-1/10) times as many ballot pamphlets as there are registered voters, to be available not less than thirty (30) days prior to the election at which an initiative measure is to be presented to the voters. (b) The ballot pamphlets shall contain, in the following order: (1) On the first page, the ballot title described in 6 GAR §2109; (2) Beginning on the next page, the analysis of the proposed measure, described in 6 GAR §2111; (3) Beginning on the next page following the end of the analysis, the selected argument for the initiative measure provided such an argument has been submitted to the Commission; (4) Beginning on the next page following the end of the selected argument for

6

purpose of the administrative rules and regulations, such as 6 G.A.R. §2112(5), was to implement Public Law 14-23, 3 GCA Chapter 17 addressing among others, Initiative measures. 6 G.A.R. §2100. The administrative rule 3 G.A.R. §2112(5) parallels the original ballot pamphlet requirements of the Election Code pursuant to 3 GCA §17509.

In the instant matter, the GEC and Taitano complied with the ballot pamphlet requirements of the administrative rule, 6 G.A.R. §2112(5) and the mandate of 3 GCA §17509.

### C. THE GEC COMPLIED WITH SECTION 17509 WHICH REQUIRES MAILING OF THE PROPOSAL "MEASURE", WHCH IS THE ACTION PROPOSED OR QUESTION PRESENTED ON THE INITIATIVE

As indicated above, among other requirements, the ballot pamphlet to be mailed out by the GEC pursuant to Section 17509 shall contain "a complete copy of any <u>measure</u> submitted to the voters..." (3 GCA §17509(a)) (<u>emphasis</u> added). Section 17509 does not require the complete text of the Initiative statute, only a complete copy of the "measure." The term "measure" is a term of art pursuant to the Election Code and is defined in 3 GCA §17102(d), which reads as follows:

> "<u>Measure</u> refers to the <u>action proposed or question presented on the initiative</u>, referendum or legislative submission".

An "Initiative" is also defined in Section 17102(a) as "the power of the voters to propose <u>statutes</u> and to adopt or reject them at the polls". 3 GCA §17102(a) (<u>Emphasis</u>

---

the initiative measure, the selected argument against the measure provided such an argument has been submitted to the Commission; (5) Beginning on the next page following the end of the argument against the proposed measure, the complete text of the initiative measure; (6) If, in the opinion of legal counsel to the Commission, any existing statutory provision or provisions would be affected by the measure, the text of the specific statutory provision or provisions affected shall be printed beginning on the next page following the end of the text of the initiative measure. [Law governing 3 GCA §§17508-17510.]

7

LAW OFFICES OF
CESAR C. CABOT, P.C.
BankPacific Building, Second Floor • 825 South Marine Corps Drive • Tamuning, Guam 96913
Telephone: (671) 646-2001 • Facsimile: (671) 646-0777
Attorneys at Law

added). Comparing the definition of "measure" above to the definition of "Initiative" makes it clear that the "proposed statute" under an Initiative is distinct from the term "measure".

In the instant case, although the GEC did not include the complete text of the Initiative statute, it still complied with Section 17509, because a complete copy of the "measure" was mailed to the voters, <u>as defined above</u>. A copy of the voter information pamphlet mailed by the GEC containing information regarding Proposal A to appear on the 2004 General Election Ballot is attached herewith as Exhibit "A". The ballot pamphlet, in pertinent part, contains the following information *verbatim*:

> An Objective and Independent View of Proposal A
>
> By Gerald A. Taitano, Executive Director, Guam Election Commission
>
> PROPOSAL A INITIATIVE MEASURE
>
> This initiative measure proposes to establish the Guam Casino Gaming Control Commission Act.
>
> The Guam Casino Gaming Control Commission Act
>
> This Act shall (1) allow for certain licensed casino gambling activities in approved Guam hotels; (2) create a 5-member Guam Casino Gaming Control Commission which (a) defines the gambling activities allowed, (b) promulgates rules and regulations regarding licensed gambling, (c) enforces said guidelines, and (d) provides for civil and criminal penalties for violations of these provisions; and (3) provide a mechanism by which the Commission shall (a) control the issuance of gambling licenses, (b) conduct hearings under the proposed Act, (c) collect licensing and registration fees imposed by the proposed Act, and (d) enact rules and regulations necessary in carrying out the Act.
>
> In summary, this initiative allows for certain licensed casino gambling activities in approved Guam hotels.

8

The initiative creates a 5-member Guam Casino Gaming Control Commission which defines the gambling activities allowed.

The initiative promulgates rules and regulations regarding licensed gambling.

The initiative enforces said guidelines, and provides for civil and criminal penalties for violations of these provisions.

Further, the initiative provides a mechanism by which the Commission shall control the issuance of gambling licenses, conduct hearings under the proposed Act, collect licensing and registration fees imposed by the proposed Act, and enact rules and regulations necessary in carrying out the Act.

The Ballot Format for the Initiative Question is as follows:

INITIATIVE MEASURE

SHALL PROPOSAL A, AN INITIATIVE TO ESTABLISH THE GUAM CASINO GAMING CONTROL COMMISSION ACT, BE ADOPTED BY THE VOTERS OF GUAM?

VOTE "YES" OR "NO"

( )YES

( )NO

Reviewing the actual contents of the GEC's Voter Information Pamphlet, the GEC and Taitano complied with the letter of the law as required pursuant to Section 17509, because the "measure" was submitted to the voters. Again, a measure refers to the <u>action proposed</u> or <u>questions presented</u> on the initiative, and not necessarily to the complete text of the Initiative statute.

9

The definition of measure is further bolstered by 3 GCA §17106 and 6 G.A.R. §2116 which provide that "each **measure** shall be designated on a ballot by the <u>ballot title prepared by the Election Commission</u>". See 3 GCA §17106. (<u>Emphasis</u> added). The administrative rules under 6 G.A.R. §2116(b) further provide that:

> (b) Each proposed **measure** shall appear on the ballot in the following form:
>
> (1) First shall appear the words "Shall Proposal (insert appropriate letter designation pursuant to 6 GAR §2109(b)) be adopted by the voters of the territory of Guam?";
>
> (2) Next shall appear the ballot title as prepared pursuant to 6 GAR §2123;
>
> (3) Lastly shall appear the words "Yes" and "No", each word to be printed immediately to the left of a square of sufficient size for the placing of a mark therein.

Reading the requirements of 3 GCA §17106 and 6 G.A.R. §2116(b) in harmony with all relevant statutes affecting voter pamphlets, it is clear that the term "measure" does not necessarily mean the complete text of the proposed Initiative statute. Pursuant to its definition under 3 GCA §17102(d) it is either the "action proposed" <u>or</u> "question presented" on the Initiative. The ballot pamphlet disseminated by the GEC in the instant matter, contained both requirements defining the term "measure", although only one or the other is strictly required.

Second, even if there had been no definition of "measure," and therefore some level of ambiguity, the Election Commission's determined that "measure" refers only to the ballot question is certainly reasonable. It therefore cannot be overturned as a matter of deference

LAW OFFICES OF
CESAR C. CABOT, P.C.
Attorneys at Law
BankPacific Building, Second Floor • 825 South Marine Corps Drive • Tamuning, Guam 96913
Telephone: (671) 646-2001 • Facsimile: (671) 646-0777

to agency actions. *Cf.* Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 (9th Cir. 2001) ("In accordance with Chevron, we first examine the statute itself to determine whether 'Congress has directly spoken to the precise question at issue,' in such a way that 'the intent of Congress is clear.; ... If our answer is negative–as it would be when ;the statute is silent or ambiguous' -- we proceed to the second step, where we decide whether the agency's interpretation 'is based on a permissible construction of the statute.'") (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). This same rule is applied under Guam law to the actions of a Guam agency or instrumentality. Ada v. Guam Telephone Authority, 1999 Guam 10, ¶10 ("If a statute is silent or ambiguous on a particular point, however, the court may defer to the agency's interpretation.") (citing Chevon, 467 U.S. at 843); accord Blas v. Guam Customs & Quarantine Agency, 2000 Guam 12, ¶12; Carlson v. Guam Telephone Authority, 2002 Guam 15, ¶17. No different rule should apply to the Guam Election Commission, a bipartisan committee that enjoys great independence in administering the election laws of Guam under Title 3 of the G.C.A. so as to ensure the integrity of the political process. *Cf* Federal Election Commission v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 37 (1981) (Federal Election Commission "is precisely the type of agency to which deference should presumptively be afforded" because Congress vested it with primary responsibility for enforcing campaign laws, provided it with rulemaking authority, mandated that its membership be bipartisan, and stated that "it must decide issues charged with the dynamics of party politics, often under the pressure of an impending election").

Case 1:04-cv-00046   Document 81   Filed 12/07/2004   Page 11 of 17

Therefore, it is respectfully submitted that the GEC and Taitano fully complied with 3 GCA §17509 and GEC administrative rule 6 G.A.R. §2112(5) which outlines the required contents of the aforementioned ballot pamphlet. Because the GEC and Taitano fully complied with its administrative rules and the Election Code pertaining to the contents of the ballot pamphlet, no cause of action or controversy exists with regard to the aforementioned and enumerated civil case presently before this Court.

### D. THE CONTROVERSY RAISED BY PLAINTIFFS IS MOOT WITH THE PASSAGE OF PUBLIC LAW 27-108, WHICH WAS ENACTED ON OCTOBER 27, 2004.

Public Law No. 27-108 ("P.L. 27-108"), in relevant part, provides as follows:

> **Section 3.** (a) Notwithstanding 3 GCA §§17509 and 17511, and any rule or regulation, the initiative entitled "An Initiative to Establish the Guam Casino Gaming Control Commission Act" (hereafter "Proposal A") shall be voted on in the November 2004 General Election.
>
> (b) Notwithstanding 3 GCA §§17509 and 17511, and any rule or regulation, the Ballot Pamphlet for Proposal A need not contain a complete copy of the initiative measure to be submitted to voters, but complete copies of the proposal shall be posted at all village mayors' offices and the GEC website (www.guamelection.org) prior to the General Election. A complete copy shall also be made available to any registered voter upon request at the GEC headquarters, at every mayor's office, at every branch of the Guam Public Library, the Robert F. Kennedy Library at the University of Guam, the Guam Territorial Law Library, the Office of the Public Auditor, the Office of the Attorney General, and the senatorial offices. There shall be no fee charged to any voter for one copy of said proposal per registered voter. GEC shall immediately publish in a newspaper of general circulation the availability of copies of the measure.
>
> **Section 4.** A new §17509.1 is hereby added to Title 3, Guam Code Annotated to read:

> "§17509.1. Any defect in the Ballot Pamphlet shall not cause a delay in the election or be grounds to invalidate the election."
>
> **Section 5.** § 17511 of Title 3, Guam Code Annotated, is hereby repealed.

P.L. 27-108, was signed by the Governor on October 27, 2004, and is now Guam Law. Although the GEC and Taitano believe that they have complied with the requirements of the Election Code, P.L. 27-108, and more specifically Section 17509.1, effectively cured any alleged or perceived deficiencies in the law surrounding the mailing of the entire 82-page text of the Proposal A.

Certain allegations of Plaintiff raised in its Motion for Summary Judgment are untrue and raise genuine issues of material fact. The GEC, through or at the direction of the Executive Director, caused to be delivered to all village mayors' offices, a copy of the ballot pamphlet and the complete text of Proposal A. Said delivery was effected by delivering the required Proposal A material to each mayor through their respective mailboxes at the Mayor's Council, Hagatna, Guam See Affidavit of Gerald A. Taitano, pg. 1. Delivery by mailbox located at the Mayor's Council, Hagatna, Guam, is the traditional method used by the GEC and other governmental agencies in transmitting official communications to the respective village mayors. Id. As such, Plaintiff's assertion that copies of the complete text of Proposal A were not provided to the village mayors, is unfounded.

Furthermore, the GEC published the complete text of Proposal A on its GEC Website, (www.guamelection.org.), prior to the General Election. Complete copies were also made available to any registered voter upon request at the GEC Headquarters, at every branch of the Guam Public Library, the Robert F. Kennedy Library at the University of

13

Guam, the Guam Territorial Law Library, the Office of the Public Auditor, the Office of the Attorney General and delivered to all Senatorial offices. See Affidavit of Gerald A. Taitano, page 1. Moreover, there was no fee charged to any voter pursuant to P.L. 27-108. See Affidavit of Gerald A. Taitano.

The GEC concedes that no notice was published in the Pacific Daily News regarding the availability of copies of the Measure, as there was no funding appropriated by the Legislature to accomplish the publication. See Affidavit of Gerald A. Taitano. The GEC, upon information and belief, believed that the information regarding availability and access to the complete text of Proposal A, was disseminated through comments given to the media by the Executive Director, and published by the various media regarding availability of Proposal A material. See Affidavit of Gerald A. Taitano.

Therefore, Plaintiff's Motion for Summary Judgment should fail, because there exist disputed facts critical to the disposition of the matters before the Court.

### E. AT THE VERY LEAST, GEC AND TAITANO "SUBSTANTIALLY COMPLIED" WITH THE ELECTION CODE.

In a recent Superior Court of Guam case involving an Initiative issue, Judge Steven S. Unpingco sitting in the case of Sean Wade v. GEC, et al., established the "substantial compliance" rule pertaining to Initiatives, that "generally, substantial compliance with administrative rules and regulations is all that is required." Wade v. GEC et. al., S.P. Case No. SP0079-02, Decision and Order, Judge S. Unpingco at p. 8. The Court further opined that "in determining whether there has been substantial compliance, the Court must consider the following factors: (1) the extent of the non-compliance-isolated incident versus

14

systematic disregard; (2) whether the purpose of the regulation is achieved despite the non-compliance; and (3) whether there were good-faith effort to comply rather than an intent to mislead or harm the public." Id. D&O, J. Unpingco at p. 8, citing Loonan v. Woodley, 882 P.2d 1380, 1384 (Colo. 1994).

In Wade, Judge Steven Unpingco clearly set the rule involving Initiative issues. The Court was apparently willing to overlook technical irregularities and deficiencies, because the GEC "substantially complied" with the Election Code and GEC administrative rules. In the instant case, the same can be argued. At the very least, the GEC and Taitano substantially complied with its administrative rules and the Election Code. A large number of jurisdictions follow this substantial compliance rule. See Canales v. City of Alviso, 89 Cal.Rptr. 601, 474 P.2d 417 (1970) (policy favors upholding of elections, and technical errors and irregularities arising in carrying out directory provisions which do not affect the result will not avoid an election); School Dist. No. 81 v. Taxpayers of, etc., 225 P.2d 1063 (1950) (statutes calling for publication of election notices, are not mandatory and will be considered to have been substantially complied with when an attempt has been made to comply with the statute, and when wide publicity has been given the matter and great body of electors have had actual notice of time and place of holding of election and of questions submitted, unless statute provides that failure to observe the formalities shall render the election void); People v. City of Carlsbad, 128 C.A.2d 77, 274 P.2d 740 (Fourth Dist. 1954); (Notice-the test for determining whether an election is invalidated because of failure strictly to comply with notice provisions prescribed by statute is whether voters generally had knowledge of election and full opportunity to express their will, or whether variance may

15

have affected result by depriving sufficient number of voters of opportunity to exercise franchise); Housing Authority v. Peden, 212 C.A.2d 276, 28 Cal.Rptr. 11 (Fifth Dist. 1963); (Notice of the time, place and purpose of an election need not rest on the official notice alone. The test for determining whether an election is invalidated because of failure to strictly comply with the notice provisions prescribed by statute is whether the voters generally had knowledge of the election and a full opportunity to express their will or whether the defective notice resulted in depriving a sufficient number of voters of the opportunity of exercising their franchise so as to change the result of the election. Newspaper articles, speeches at public meetings and before clubs and organizations, information booth at the county fair and the existence of committees for and against a proposed election measure are factors to be considered in determination of whether the electors had adequate notice of the measure to be voted upon.); Meyers v. Bayless, 192 Ariz. 376, 965 P.2d 768 (Ariz. 1998). (Legal sufficiency standard of statute governing voter initiatives requires substantial, not necessarily technical, compliance with the law); McLoughlin et al. v. City of Prescott, 6 P.2d 50 (Ariz. 1931) (Substantial compliance with statute requiring publishing of election notice is sufficient); Kerby v. Griffin, 62 P.2d 1131 (Ariz. 1936) (Substantial compliance with constitution authorizing initiative and referendum and regulating publicity for proposed laws held essential); Bauch v. Anderson, 497 P.2d 698 (Colo. 1972) (All legitimate presumptions must be indulged in favor of propriety of action of statutory board empowered to prepare ballot title and summary for proposed initiative law or constitutional amendment); Matter of Title, Ballot Title, 830 P.2d 984 (Colo. 1992) (Ballot title and submission clause for proposed initiative statute must be brief, and need not

Case 1:04-cv-00046   Document 81   Filed 12/07/2004   Page 16 of 17

LAW OFFICES OF
CESAR C. CABOT, P.C.
BankPacific Building, Second Floor • 825 South Marine Corps Drive • Tamuning, Guam 96913
Telephone: (671) 646-2001 • Facsimile: (671) 646-0777
Attorneys at Law

describe every feature of proposed measure. Commission is given considerable discretion in resolving interrelated problems of length, complexity and clarity in designating title and ballot title and summary for proposed initiative statute. Summary of proposed legislation is not intended to fully educate people on all aspects of proposed law, and it need not set out in detail every aspect of initiative); Adams v. Bolin, 247 P.2d 617 (Ariz. 1952) (In the absence of express statutory power, courts are without jurisdiction to interfere, by injunction or otherwise, with exercise of legislative function or with enactment of legislation. The courts will not consider political matter).

## CONCLUSION

Based on the foregoing, this Honorable Court, viewing the evidence and drawing inferences in the light most favorable to the GEC and Taitano, as it must, should deny the motion at bar.

Respectfully submitted this 7th day of December, 2004.

> LAW OFFICES OF CESAR C. CABOT, P.C.
> Attorneys for the Guam Election Commission
> and Gerald A. Taitano.
>
> By: _____
> **CESAR C. CABOT**

CCC:me
P047250.CCC

17