IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

JAY MERRILL, on his own behalf)  CIVIL CASE NO. CV04-00046
and on behalf of all other )
similarly situated voters )
desirous of casting a vote in )
favor of Proposal A at a fair )
and legal election, )
                     )
        Plaintiffs, )
                     )
    vs.              )
                     )
THE GUAM ELECTION COMMISSION; )
GERALD A. TAITANO, in his )
capacity as the Executive )
Director of THE GUAM ELECTION )
COMMISSION, I MINA' BENTE )
SIETE NA LIHESLATURAN GUAHAN )
(The 27th Guam Legislature); )
FELIX P. CAMACHO, in his )
official capacity as the )
GOVERNOR OF GUAM, )
                     )
        Defendants. )
_____)

👆 **ORIGINAL**

Transcript of Proceedings

before the

HONORABLE JOAQUIN V.E. MANIBUSAN, JR.,

UNITED STATES MAGISTRATE JUDGE

Motion to Strike Appearances of Private Counsel

and

Motion to Remand

Friday, February 18, 2005, 10:40 a.m.

Veronica A. Flores, CSR-RPR
Certified Shorthand Reporter
Tel: (671) 734-1041 * Fax: (671) 734-1045
E-mail: Veronica_Flores_on_hotmail.com

Case 1:04-cv-00046   Document 107   Filed 03/21/2005   Page 1 of 25

APPEARANCES

Appearing on behalf of the plaintiff:

        DOOLEY ROBERTS & FOWLER
        Suite 201, Orlean Pacific Plaza
        865 S. Marine Drive
        Tamuning, Guam 96911
        By:  Thomas Roberts, Esq.
        Phone:  671.646.1222

Appearing on behalf of the Governor, Felix P. Camacho:

        CALVO & CLARK
        655 Marine Drive
        First Savings & Loan Bldg.
        Tamuning, Guam 96911
        By:  Michael Pangelinan, Esq.
        Phone:  671.646.9350

Appearing on behalf of The Guam Election Commission; Gerald
A. Taitano:

        LAW OFFICE OF CESAR CABOT
        Suite 201, Guam Savings & Loan Bldg.
        Tamuning, Guam 96911
        By:  Cesar Cabot, Esq.
        Phone:  671.646.2001

Appearing on behalf of the Government of Guam:

        OFFICE OF THE ATTORNEY GENERAL
        120 W O'Brien Drive
        Suite 2-200E
        Hagatna, Guam 96910
        By:  Douglas Moylan, AG
        and Robert Wineberg, Assistant AG
        Phone:  671.475.3324

Veronica A. Flores, CSR-RPR
Certified Shorthand Reporter
Tel: (671) 734-1041 * Fax: (671) 734-1045
E-mail: floresroni@hotmail.com

Case 1:04-cv-00046    Document 107    Filed 03/21/2005    Page 2 of 25

Appearing on behalf of Linala Sin:

ARRIOLA COWAN & ARRIOLA
259 Martyr Street
C & A Professional Bldg., Ste. 201
Hagatna, Guam 96910
By: Joaquin Arriola, Jr., Esq.
Phone: 671.477.9700

Veronica A. Flores, CSR-RPR
Certified Shorthand Reporter
Tel: (671) 734-1041 * Fax: (671) 734-1045
E-mail: floresroni@hotmail.com
Case 1:04-cv-00046   Document 107   Filed 03/21/2005   Page 3 of 25

# I N D E X

Arguments by:                Page

Mr. Moylan:                  7, 39, 85
Mr. Wineberg:                12
Mr. Pangelinan:              46
Mr. Cabot:                   61

1          THE COURT:  If we could just remain standing.  I

2    received a phone call last night and I was saddened to hear

3    that Pedro Atalig from the CNMI had passed away.  Mr. Atalig

4    was the presiding judge at the Superior Court in the CNMI

5    from 1991 to 1993.  He was an associate justice at the

6    Supreme Court from '93 to '97.  He's also a designated judge

7    for the District Court here in the CNMI for some time.

8          One of the very first cases that I heard as a

9    pro tem judge in the CNMI was a case he filed, Demapan versus

10   Karen.  That kind of reminds me of the case before the Court

11   today, because in that case, his client was, I guess,

12   arrested for engaging in illegal gambling activities.  And as

13   part of his suit, he sued the attorney general and argued

14   that the attorney general was occupying a seat illegally

15   under the constitution of the CNMI.

16         So after much briefing, we agreed with

17   Mr. Atalig's position, really.  We ordered, Maya Kara was

18   then the acting attorney general, to step down.  We ordered

19   the governor to appoint a new attorney general finding that

20   he had reserved the senate power of the advice and consent by

21   continuously appointing an acting attorney general.

22         So if we could pause in silent memory for

23   Mr. Pedro Atalig.

24                   (Silent pause.)

25         **THE COURT:**  Thank you.

1          **THE CLERK:**  Civil Case 04-00045 as consolidated

2   with Civil Case 04-00046, *Jay Merrill et al versus the Guam*

3   *Election Commission et al.*  Motion to strike appearances of

4   private counsel and motion to remand.

5          Counsel, please state your appearances.

6          **MR. MOYLAN:**  Attorney General Douglas Moylan on

7   behalf of the Government of Guam.

8          **MR. WINEBERG:**  Rob Wineberg, Assistant Attorney

9   General.

10          **MR. PANGELINAN:**  Mike Pangelinan on behalf of

11   the Governor.

12          **MR. CABOT:**  Good morning, Your Honor.  Cesar

13   Cabot for the Guam Election Commission and Mr. Gerald

14   Taitano.

15          **MR. ARRIOLA:**  Good morning, Your Honor.  Jay

16   Arriola for intervener amicus Linala Sin Casino.

17          **MR. ROBERTS:**  Your Honor, I'm Tim Roberts on

18   behalf of the plaintiffs in both consolidated cases.

19          **THE COURT:**  All right.  Let the record indicate

20   that the parties are here before the Court and the Court

21   decided in a previous hearing that it would hear the

22   Government's motion, the Attorney General's motion to strike

23   the entries of the appearances filed here on behalf of the

24   Governor by Mr. Pangelinan of Calvo and Clark, on behalf

25   of Mr. Taitano and the Election Commission and Mr. Cabot.

1  And the motion for the Government?

2                MR. MOYLAN:  Your Honor, we'll be arguing --

3                THE COURT:  Mr. Attorney General.

4                MR. MOYLAN:  Good morning, Your Honor.

5                THE COURT:  Good morning.

6                MR. MOYLAN:  Your Honor, our motion -- I think

7  it was very appropriate for the Court to open up with that

8  acknowledgment of the passing of Mr. Atalig, and I think the

9  question facing the Court today is who is rightfully here to

10 speak before the Court, who has standing to appear before

11 this Honorable Court.  And as the Attorney General, Your

12 Honor, I am the appropriate authority to represent all

13 entities within the Government of Guam.

14                And here today, we have sued.  And when I said I

15 represent the Government of Guam, the Government of Guam is

16 the people of Guam.  And unlike the characterization of the

17 defendants, the Guam Election Commission, the Governor of

18 Guam, they're not the parties in interest here; it is the

19 people of Guam.  And --

20                THE COURT:  The Government of Guam is not sued

21 by the plaintiffs.  It's individual entities and individual

22 persons.

23                MR. MOYLAN:  That is correct, Your Honor, but by

24 the Organic Act, the federal statute, the Government of Guam

25 is made up of those individual entities and individual

1   entities do not have a right to come and represent the legal
2   policy for the Government of Guam.  It is through the
3   Attorney General in the 1421 GG1 --

4           THE COURT:  Let's assume that I agree totally
5   with your position that you should be representing these
6   entities, what is the scope and responsibility of that
7   representation?

8           MR. MOYLAN:  The scope, Your Honor, and under
9   the ex parte we heard in the other cases that are in the
10  briefs, is that the Attorney General shall set the legal
11  policy and shall represent the Government of Guam's interest.
12  The individual members --

13          THE COURT:  But, see, I'm talking about the
14  interests of the Governor of Guam and the Election Commission
15  and Mr. Taitano.  What is the scope and responsibility of
16  that representation?

17          MR. MOYLAN:  It is to include all legal issues.
18  The Attorney General, by virtue of the elected status, the
19  people's selection of that attorney shall represent the
20  people's interest.  The Governor and Election Commission are
21  just stewards of the people's interest.  And when it comes up
22  to questions such as whether this case should be fought, the
23  type of defenses to be used, that is within the authority of
24  the Attorney General, not within the authority of each
25  individual member that's being sued.

1    And in this case, you could have -- you could
2 literally have the whole Guam Bar representing the defendants
3 on this case because each party would come in through their
4 respective private counsels and start indicating that this is
5 our legal position, when in fact, they have no right.  And
6 this has been debated, argued, and decided throughout the
7 states that have elected attorneys general.

8    **THE COURT:**  All right.  When I ask the question,
9 I, basically, was referring to provisions in the Rules of
10 Assurance Responsibility, and I'm looking at Rule 1.2, which
11 says that a lawyer, and I'm assuming that when you're
12 defending the Governor or defending an entity, that you're
13 doing in the capacity as an attorney.

14    Rule 1.2 says that a lawyer shall abide by a
15 client's decisions concerning the objectives of
16 representation subject to paragraph C, D, and E and shall
17 consult with the client as to the means by which they are to
18 be pursued.  Furthermore, a lawyer shall abide by a client's
19 decision whether to accept an offer of settlement of a
20 matter.

21    Furthermore, Rule 1.4 on communication states
22 that a lawyer shall keep a client reasonably informed about
23 the status of the matter and promptly comply with reasonable
24 requests for information.  It also says in Rule 1.4b that the
25 lawyer shall explain a matter to the extent reasonably

1   necessary to permit the client to make informed decisions

2   regarding the representation.

3          All of these references to the Rules of

4   Professional Responsibility, how does that apply to the

5   Attorney General's representation of the Governor and the

6   Guam Election Commission and Mr. Taitano?

7          **MR. MOYLAN:** Yes, sir. According to the -- in

8   these rules that are Guam Rules of Professional

9   Responsibility were adopted from the American Bar

10  Association's Model Rules. And in those rules, it

11  specifically makes an exception when we deal with Government

12  service. The Attorney General's office is suigeneris and

13  does not represent any particular Government entity,

14  Government agent of the people. It's the people of Guam whom

15  are being sued here, Your Honor. They're stewards and acting

16  in capacities as representatives of the people of Guam.

17  Also, Your Honor, the Court --

18         **THE COURT:** See, that's the problem really that

19  I think I'm missing. You're saying that the Government of

20  Guam -- or the people of Guam are being sued, but yet there

21  are entities that are defendants. And if these entities are

22  to be represented, what is the meaning of representation of

23  these entities? I mean, how are their interests to be

24  represented in like of the Rules of Professional

25  Responsibility?

1           MR. MOYLAN:  In ex parte, we were being

2   addressed those ethical concerns, and I also referenced, Your

3   Honor, there's two cases that this Court -- this judge had

4   issued two -- decisions of this judge as issued in the year

5   2003.  One was the Attorney General versus the Treasurer of

6   Guam in which the Court acknowledged the suigeneris nature of

7   the Attorney General's Office, the government attorneys, and

8   that we cannot be treated like private lawyers, and this --

9           THE COURT:  True.  I totally agree with that,

10  because in that instance, you were fighting a suit against a

11  government entity.  You were not coming in in defense of that

12  entity.  Here, you're coming in in defense of a government

13  entity.

14          MR. MOYLAN:  Yes, in ex parte, we were addressed

15  that issue, Your Honor.  Your Honor, if I might, and I

16  apologize for this, the ethical issue was not raised in the

17  moving papers and Mr. Wineberg was going to reference that in

18  the reply had the other defendants raised it.  But since the

19  Court has raised it, may I refer to Mr. Wineberg --

20          THE COURT:  Well, the questions that I'm raising

21  today were raised by the defendants in their opposition for

22  the motion to strike, generally.  It was raised by the

23  Governor's legal counsel.

24          MR. WINEBERG:  Your Honor, I have, I think,

25  specific responses to your questions and I think we'll

1  address those, if I could.  And they come from the Model

2  Rules, they come from the Guam Rules of Professional Conduct,

3  if I may address the Court?

4          **THE COURT:**  Yes, you certainly may.

5          **MR. WINEBERG:**  Thank you.  Let's look first at

6  the Guam Rules of Professional Conduct.  Let's look at what

7  the scope of the rules say.  If the Court will look at

8  paragraph 18, I'll just defer -- just make a note on this,

9  but let me read this to the Court.

10          Well, first of all, on paragraph 14 under the

11  scope of the rules - these are the Guam Rules of Professional

12  Conduct, it's paragraph 14 - "The Rules of Professional

13  Conduct are rules of reason.  Other rules define - and I'm

14  skipping some sentences within that paragraph - other rules

15  define the nature of relationships between the lawyer and the

16  clients.  The rules are thus partly obligatory and

17  disciplinary and partly constitutive and descriptive in that

18  they define a lawyer's professional role."

19          And I'm going to paragraph 18 of the scope of

20  the Guam Rules of Professional Conduct.  "Under various legal

21  provisions including constitutional, statutory and common

22  law, the responsibilities of government lawyers may include

23  authority concerning legal matters that ordinarily reposes in

24  the client in private client lawyer relationships."  And this

25  is what we've been saying in this and other cases.

1    Government lawyers serve the Government of Guam.  What is the

2    Government of Guam?  There is no such thing as the Government

3    of Guam.

4             THE COURT:  All right.  So if you're serving the

5    interest of the Government of Guam, who is serving the

6    interest of the Governor or Mr. Taitano or the Election

7    Commission?

8             MR. WINEBERG:  Those individuals - the Governor,

9    the Election Commission, Mr. Taitano - are fingers on the

10   hand of the Government of Guam.  They are part of it.  They

11   don't get individual representation because they are all part

12   of one hand, one body.  They're just individual parts of it.

13            THE COURT:  Let me ask you further.  In

14   representing the Election Commission, what have you done to

15   further their representation?  What have you done to further

16   that representation?

17            MR. WINEBERG:  I'm not sure if your question is

18   getting into attorney-client questions here, but the answer,

19   I think, to the extent --

20            THE COURT:  What have you done in terms of

21   pleadings that you've filed on behalf of the Guam Election

22   Commission?

23            MR. WINEBERG:  We've reviewed the legal position

24   of the plaintiffs, and to the extent that plaintiffs are

25   correct, we have stipulated that the judgement is --

1          THE COURT:  Is that position shared by the Guam
2   Election Commission?

3          MR. WINEBERG:  Not the individuals.

4          THE COURT:  Is that position shared by the
5   Election Commission?

6          MR. WINEBERG:  I don't know.  I mean, the answer
7   is no.

8          THE COURT:  All right.  Then do you see yourself
9   in a conflict --

10          MR. WINEBERG:  No, I don't.

11          THE COURT:  -- interest position?

12          MR. WINEBERG:  Not at all, because they
13   administer the election laws.  They do not set legal policy.
14   They do not make legal decisions.  If, for example --

15          THE COURT:  But the Election Commission is
16   saying that your conclusion that they engaged in an illegal
17   act is not correct.

18          MR. WINEBERG:  That's what they think.

19          THE COURT:  Right.  So how are they going to
20   make -- to present that position before the Court?

21          MR. WINEBERG:  Under the Organic Act, they're
22   not entitled to.

23          THE COURT:  You mean that the constitution has
24   been lost by the amendment of the Organic Act?

25          MR. WINEBERG:  The constitution of -- They have

1  no constitutional rights other than those established in the

2  Organic Act.  They have no individual rights to -- Let  me

3  give you another analogy.  The Government of Guam is one

4  family.  It is headed by two parents, or by parents.

5          THE COURT:  But let me go back to the basic

6  question.  You're suing the Governor.  How can you stand

7  there and be suing him, at the same time be saying I'm his

8  lawyer as a defendant?

9          MR. WINEBERG:  We're not suing the Governor.

10         THE COURT:  But I'm posing that question to you.

11 You sue the Governor --

12         MR. WINEBERG:  The Governor wants to take a

13 legal position in court that we're not going to permit him to

14 take.

15         THE COURT:  So who is going to represent him?

16 Your argument today is that you have the sole right to

17 represent the Governor in that situation.

18         MR. WINEBERG:  That's correct.  Let me continue

19 reading from the rules --

20         THE COURT:  How can the Court allow that?  How

21 can the Court allow you to sue the Governor and then come to

22 court and say, I represent the Governor?

23         MR. WINEBERG:  We're not suing him in this case

24 or any other case.

25         THE COURT:  But in that scenario, how can the

1    Court allow you to do that?

2              MR. WINEBERG:  If we're talking about a

3    different hypothetical, I'll switch gears.  Now, I'm thinking

4    about this case and I'm also thinking about this answer that

5    --

6              THE COURT:  Well, see, my question is, is there

7    a distinction?  Is there a distinction between you suing the

8    Governor and you coming to court and saying, I don't

9    represent the Election Commission but I don't listen to what

10   they say?

11             MR. WINEBERG:  Yes, in a different case, there's

12   a distinction if we are suing the Governor.  For example, I

13   believe that, Your Honor, when you were Superior Court judge,

14   had the Procurement Appeals case and some other cases where

15   we sued the Governor to make him do something, and Your Honor

16   said you can't do that.  But to make him do that and when

17   there is a question that involves his individual authority as

18   Governor, he may be entitled to his own counsel when it is us

19   they're taking an adverse --

20             THE COURT:  Where is that stated in the Organic

21   Act or in the laws of Guam?  Where does it say that the

22   Governor can retain his counsel?

23             MR. WINEBERG:  That he can retain his counsel?

24             THE COURT:  See, you're telling me that in that

25   situation, he can have his own attorney.  Where is it in the

1  code, in the Organic Act, or in the codes of Guam that says

2  he can retain some counsel?

3          **MR. WINEBERG:**  Because that's a separation of

4  powers situation.  We are challenging his authority to do

5  something as --

6          **THE COURT:**  Is it a separation of powers issue

7  or is it a conflicts issue?

8          **MR. WINEBERG:**  It's not a conflicts issue.  Let

9  me continue reading from the Professional Rules of

10  Professional Conduct.  Under various legal provisions

11  including constitutional, statutory and common law, the

12  responsibility of government lawyers may include authority

13  concerning legal matters that ordinarily reposes in the

14  client, in the private client-lawyer relationships.

15          For example, a lawyer for a government agency

16  may have authority on behalf of the Government to decide upon

17  settlement or whether to appeal from an adverse judgement.

18  Such authority of various respects is generally vested in the

19  attorney general and the state's attorney, state government

20  and their federal county courts, and the same may be true of

21  other government law offices.

22          Also, lawyers under the supervision of these

23  officers may be authorized to represent several government

24  agencies in intergovernmental legal controversies in

25  circumstances where a private lawyer could not represent

1  multiple private clients.  These rules of Professional
2  Conduct do not aggregate any such authority.

3  This is, again, paragraph 18 of the scope of the
4  Guam Rules of Professional Conduct.  Now, if you look at the
5  commentary to some of the rules, let me read the commentary.
6  Because if you look at this, this isn't an individual client.
7  This is -- Like I said, these are fingers on a hand.  And the
8  most analogous --

9  THE COURT:  All right.  There may be
10  commentaries to some of these rules, Mr. Wineberg, but there
11  are also these decisions surely which specifically hold that
12  when the attorney general decides to come in and defend an
13  entity, it is bound by the Rules of Professional Conduct.

14  MR. WINEBERG:  There are cases from certain
15  jurisdictions that hold that.  There's a California case,
16  there's a Hawaii case, there's an Arizona case, Missouri
17  case.  There's a couple of other jurisdictions that have been
18  cited to this Court by opposing counsel.

19  THE COURT:  Are you telling me that that's not
20  good law?

21  MR. WINEBERG:  It is not good law.  It is a
22  minority view and it is distinguishable on the basis that if
23  you look at those constitutional provisions that create the
24  office of attorney general where structure is corporately
25  different than that that which we have here and in a majority

1   of jurisdictions.

2            In those jurisdictions cited to this Court by

3   the Governor and the Election Commission, every one of them

4   that holds that proposition, and it's a minority view, their

5   constitution says that the attorney general's authority,

6   powers and duties maybe as prescribed by law.  That means the

7   Legislature may set those powers and duties.  And what their

8   constitution --

9            **THE COURT:**  What is the Attorney General's

10  powers and duties under the Organic Act?

11           **MR. WINEBERG:**  Our contention in this Court and

12  in the United States Supreme Court and the 9th Circuit Court

13  of Appeals in pending cases right now is that we, the

14  Attorney General, has total control of legal policy

15  decisions.  That means if somebody gets --

16           **THE COURT:**  Where is that stated in the Organic

17  Act?

18           **MR. WINEBERG:**  By the term Chief Legal Officer

19  for the Government of Guam.  And then what you have to do is

20  --

21           **THE COURT:**  Does that allow you to represent

22  individuals?  Individual officers of the Government of Guam?

23           **MR. WINEBERG:**  Individual officers sued in their

24  official capacity as officers.  I want to distinguish between

25  individual capacity questions where they might be sued in

1  their personal capacity for acting under government or state

2  law from official capacity actions for the territory and

3  rejunctive relief.  If an officer as we -- If the Election

4  Commission did something that is a violation of the law and

5  someone takes them to court and the Attorney General discerns

6  that is a violation --

7      THE COURT:  Then wouldn't the more prudent thing

8  would be to join as a plaintiff against the Guam Election

9  Commission?

10     MR. WINEBERG:  Absolutely not.  The more prudent

11  thing to do is to do the right thing.  And the right thing is

12  to confess --

13     THE COURT:  How do I know who represents the

14  right thing?  They may be in the right and not the Attorney

15  General.

16     MR. WINEBERG:  The people have spoken as to who

17  their lawyer is.

18     THE COURT:  All right.  But the people is also

19  represented by the Election Commission.

20     MR. WINEBERG:  These people who we respectfully

21  submit are here without authority until this Court determines

22  that --

23     THE COURT:  The Election Commission is here

24  because it is a named defendant.  It is not here without

25  authority.

1          MR. WINEBERG:  It is a named defendant.  It is
2     an agency and instrumentality of the Government of Guam.
3     There's one lawyer for the Government of Guam, the Attorney
4     General.  Now, if because --
5          THE COURT:  So that's the position you take?
6          MR. WINEBERG:  Yes.  Because of the nature of --
7          THE COURT:  I think, really, you know,
8     seriously, we're not arguing that there's only one attorney
9     general.  We're arguing what does the role of attorney
10    general, what is the scope of its duty when it comes to
11    coming here to court and saying, I want to defend these
12    entities.
13         MR. WINEBERG:  I respectfully disagree, Your
14    Honor.  We are arguing about whether there is one attorney
15    general or not because there's one sitting over here and
16    there are two over here.
17         THE COURT:  If you come in here and you tell me
18    that my position as attorney general is that the position of
19    the Election Commission is going to be argued before the
20    court, you're sitting right there.
21         MR. WINEBERG:  I don't follow you.
22         THE COURT:  I said if you come before me and you
23    tell me that my position in representing the Election
24    Commission is to advocate their position, you're going to be
25    sitting right there.

1           MR. WINEBERG:  No, their position is what we
2      tell them it is when it comes to being in this court.  I know
3      that sounds bold --

4           THE COURT:  So they can never tell you that
5      you're wrong?

6           MR. WINEBERG:  Oh, they can argue with us all
7      they want.  They --

8           THE COURT:  So how are they going to put forth
9      their argument to the Court?  How are they going to put their
10     argument before the Court if they cannot be represented by
11     any other person?

12          MR. WINEBERG:  They will put -- the arguments
13     that will come before this Court on behalf of the Election
14     Commission, the chairman of the Election Commission and the
15     Commission, in its official capacity, which are agencies and
16     instrumentalities of the Government of Guam, the legal
17     position that they will present to this Court is that which
18     is decided by the Attorney General.

19          And that is what Congress intended by the term
20     Chief Legal Officer.  Because, otherwise, what you have are
21     people we contend, not to disrespect anybody over here, who
22     have violated the law and want to waste the tax payers' money
23     by arguing about things that they are wrong about legally.
24     One person gets to decide what the legal position is for the
25     agencies and instrumentalities of the Government of Guam.

1    THE COURT:  Who decides whether or not the
2  action they've engaged in is legal or not?
3           MR. WINEBERG:  The Attorney General does.
4           THE COURT:  Not the court?
5           MR. WINEBERG:  Well, obviously the Court does.
6  But in terms of presenting what the arguments are going to be
7  to the Court --
8           THE COURT:  But by entering into a stipulation,
9  you bypass the Court.
10          MR. WINEBERG:  The Court still has to approve
11 it.  The Court is still going to make an independent
12 assessment as to whether or not if the Court wants to,
13 whether --
14          THE COURT:  So, during the course, let's say of
15 the hearing in that position and the Election Commission is
16 called to testify, what is your position?  That they can't
17 testify because you haven't called them in or you haven't
18 authorized that they be called to the witness stand?
19          MR. WINEBERG:  If the opposing party calls them,
20 there's not much I can do about that.
21          THE COURT:  But there's no opposing -- if
22 they're not going to call the Election Commission, who's
23 going to call the Election Commission is the question.
24          MR. WINEBERG:  People confess judgment all the
25 time.  That's what we're talking about doing here.  Attorneys

1    general confess judgement all the time.  That's what we're

2    talking about.  And, in fact, let me clarify something for

3    this Court.  We've only confessed judgement as to whether

4    there's been a violation in the United States constitution.

5    We have not confessed judgement that the plaintiffs are

6    entitled to the remedy that they seek, which is a special

7    election.

8              And in that respect, the Governor and the

9    Election Commission and the Attorney General are on board

10   with each other.  They just want to argue about something

11   that we think is wrong and that is whether the Election

12   Commission violated the United States constitution and the

13   laws of Guam in failing to do what it did or in doing what it

14   did which is failing to mail the 80-page or however long

15   brochure to everybody.

16             On that question about whether they violated

17   the law or not, we are in disagreement.  On the question of

18   whether they're entitled -- plaintiffs are entitled to

19   special election as part of the remedy, we're all in

20   agreement.  So they'll get their chance to argue about

21   whether or not the remedies that the plaintiffs seek will --

22             **THE COURT:**  But they cannot get the opportunity

23   to argue that they have not violated the law.

24             **MR. WINEBERG:**  That is correct.

25             **THE COURT:**  See, basically, you've foreclosed

1   them from making their argument to the Court.

2           MR. WINEBERG:  No.

3           THE COURT:  Then how is that to be presented to

4   the Court?  That's what I don't understand.

5           MR. WINEBERG:  How many fingers - and it's

6   rhetorically, of course - how many fingers get to present all

7   their views if there's only one hand grabbing it?  There is

8   one Government of Guam.  There is one Attorney General.  And

9   that Attorney General represents all the fingers.  And when

10  there's a conflict among the fingers, in a case like this,

11  the individual wishes of the client as it would be true in

12  the private sector --

13          THE COURT:  It seems to me that you just said

14  there's a conflict in this case.  And, previously, you said

15  there's none.

16          MR. WINEBERG:  I'm using that term loosely.

17  It's a conflict in terms of they want to argue the merits of

18  whether they violated the law or not and we don't want to.

19          THE COURT:  So if they want to argue the merits

20  of their action, you're saying that they cannot?

21          MR. WINEBERG:  That's correct.  It's a bold

22  statement for Guam.  It's a brave new world on Guam thanks to

23  what Congress did in 1998 with the amendment that said there

24  shall be one Chief Legal Officer for the Government of Guam

25  and that shall be the Attorney General.

1          THE COURT:  So an individual member of the
2   Commission cannot come before the Court and state his
3   position before the Court?

4          MR. WINEBERG:  He's just one individual member.
5   A corporate body --

6          THE COURT:  So you're saying they can or cannot?

7          MR. WINEBERG:  It's like in a corporation that's
8   got a subsidiary corporation or something.  But if you look
9   at it in a corporate structure, if you sue Microsoft, you
10  don't get to sue the game and toys division.  Or the game and
11  toys division doesn't get to go out and hire its own lawyer
12  if it argues with Bill Gates about what it ought to be doing
13  if involved in antitrust violations or something.

14          If you look at the Government, which is a
15  corporate -- it's a corporate entity.  That's what our
16  constitution is, it provides us a corporate entity.  And the
17  Government of -- There's only one.  There's only one
18  government.  So you've got a department in the government, in
19  your corporation, that has a different view than the CEO.
20  The CEO in this case on legal policy matters being the
21  Attorney General.  This is not -- this may be new territory
22  for Guam, but it's not unheard of.

23          And, in fact, if you look at the rules and you
24  look at the commentary to the rules, look at the commentary
25  in paragraph 9 to Rule 1.3.  This is a quote, "Although in

1   some circumstances, the client may be a specific agency, it
2   may also be a branch of government, such as the executive
3   branch of the Government as a whole.

4           For example, if the action - This is so on point
5   to what we're talking about - if the action or failure to act
6   involves a head of a bureau, either the department of which
7   the bureau is part or the relevant branch of Government may
8   be declined for purposes of this rule.

9           Moreover, in a matter involving the conduct of
10  government officials, the government lawyer may have
11  authority under applicable law to question such conduct more
12  extensively than that of a lawyer for a private organization
13  in some circumstances.  A Government lawyer has additional
14  responsibilities --

15          **THE COURT:**  I don't disagree with that because
16  when you sue the Election Commission, obviously you can ask
17  the question.

18          **MR. WINEBERG:**  We haven't sued them.  And --

19          **THE COURT:**  See, that's -- In substance, aren't
20  you really suing them?

21          **MR. WINEBERG:**  Very loosely, we are taking that
22  authority to represent themselves in this matter away from
23  them.  So in that sense, it's adverse perhaps if they're
24  going to stand up here.  It's not adverse once the court
25  decides that these people have no business --

1          THE COURT:  It just seems that the positions
2   that you're advocating is inconsistent and adverse to the,
3   let's say the Election Commission.  Because you're saying
4   that they violated the law and you're saying that they are
5   not.  I don't see how you can bring yourself to a conclusion
6   if those positions are not adverse.
7          MR. WINEBERG:  I'm thinking about it, this may
8   be a misapplication of this quote, but if I'm right, I will
9   cut it out.
10         THE COURT:  No, see, your position is that they
11  violated the law and their position is that they have not.
12         MR. WINEBERG:  But they are just one finger --
13         THE COURT:  But you see that we have two
14  different positions here?
15         MR. WINEBERG:  No.
16         THE COURT:  Yes.
17         MR. WINEBERG:  There's only one.  They don't
18  have a voice.
19         THE COURT:  That they have violated the law or
20  you haven't violated the law?
21         MR. WINEBERG:  They don't have a voice.  That's
22  what we're arguing about here is whether they are entitled to
23  an independent voice from the Attorney General.
24         THE COURT:  See, that's the part that's
25  struggling really when you say they don't have a voice.

1          MR. WINEBERG:  I understand that that's

2    troubling, but that's why it's important to read these cases,

3    read the commentary.  Let me read a little further.  "Thus,

4    when the client is a governmental organization, a different

5    balance may be appropriate between maintaining

6    confidentiality and assuring that the wrongful act is

7    prevented or rectified."  The Government of Guam, through its

8    Attorney General, has a responsibility to the public, to the

9    courts, and to the law to uphold the law.  And when one

10   finger on that hand violates the law, it is our

11   responsibility to rectify that transgression.  And if

12   somebody -- if a --

13          THE COURT:  Let me -- just like I said, how do

14   you rectify that?  By suing them in court?

15          MR. WINEBERG:  Well, in this particular case, we

16   rectify it to the extent possible by --

17          THE COURT:  Let's assume it is an agency that

18   has violated the law; what steps would you take to make sure

19   that their violation is ceased?  That it stops?

20          MR. WINEBERG:  In certain cases, filing a

21   lawsuit against them for doing something --

22          THE COURT:  When you do that, are you also going

23   to be representing them?

24          MR. WINEBERG:  (No response.)

25          THE COURT:  You see, that's --

1    **MR. WINEBERG:** The rules provide that -- We

2  haven't really faced that problem. The rules provide - and I

3  think I read it earlier --

4    **THE COURT:** I see that as an essential problem

5  here.

6    **MR. WINEBERG:** It's not here. It's related but

7  it's different. If I were to -- Let's say the Election

8  Commission announced that, henceforth, it was going to

9  strip search everybody that went into the voting booth and

10  somebody didn't beat 'em to it, we had to sue them. They get

11  their own lawyer for that. I think we've talked about this

12  in another case. Because there's the Attorney General trying

13  to compel them to do something and requiring the Court's

14  assistance to do that. Now, here, they're an ordinary party.

15  They're simply -- And, in fact, let's take another example.

16    Let's take the flip side of them being a

17  defendant. Let's say that - I can't think of a good example

18  - but let's say that the Attorney General wanted them to be a

19  plaintiff in something or needed them to be a plaintiff and

20  to sue something, I don't know, the federal government, but

21  Mr. Taitano and the Election Commission didn't want to sue

22  the federal government; do they get to come into court, and

23  let's say we filed a lawsuit on behalf of Mr. Taitano as

24  chairman in his official capacity and on behalf of the

25  Election Commission against the United States signed Doug

1  Moylan, Attorney General.  But they disagree.  And they have
2  a meeting and they talk to Mr. Cabot.  They say, Mr. Cabot,
3  we want you to go in there and oppose it, file some sort of
4  intervention on our behalf and tell them we don't agree.  You
5  know what the courts will say?  Mr. Cabot, you don't have a
6  voice in this; the Attorney General is your lawyer.

7           **THE COURT:**  Let's assume Mr. Taitano comes to
8  court and says, Your Honor, dismiss this complaint.

9           **MR. WINEBERG:**  In this particular case or
10 hypothetical?

11          **THE COURT:**  In the case that you just posed.  He
12 comes to court and he says, Your Honor, dismiss this case, I
13 never filed it.

14          **MR. WINEBERG:**  How does he do that?  You mean he
15 comes personally --

16          **THE COURT:**  The question is not how does he do
17 that.  The question is, what do I do.

18          **MR. WINEBERG:**  I'll tell you what the Court
19 does.  The court says, Mr. Taitano, by what authority are you
20 standing up here making representations to this Court.

21          **THE COURT:**  Because someone has used my name,
22 Gerald Taitano, and I did not authorize that use.

23          **MR. WINEBERG:**  Well, it could be Taitano, it
24 could be anybody.  The significant part about us using his
25 name is the comma after it that says in his official capacity

1   as.  Because Mr. Taitanos will come and go, but the office
2   that they represent is who is being sued in this case and who
3   we'd represent in my hypothetical.  So what the Court does is
4   say, I'm sorry, Mr. Taitano, and -- or he comes to Mr. Cabot,
5   I'm sorry, but it appears that you are already being
6   represented in this case by a lawyer and that happens to be
7   the Attorney General's Office.  You don't have authority to
8   speak on behalf of this organization.

9           THE COURT:  And that's your position?

10          MR. WINEBERG:  Yes, sir, Your Honor.  And it's
11  very -- if you read the comments to the rules, read comment
12  to the Rule 1.13 paragraph 9, read Rule 14 -- paragraph 14
13  and 18 of the Guam Rules of Professional Conduct, take that
14  and you look at the Organic Act, and then if you look at the
15  --

16          THE COURT:  Like I said, that's my only problem
17  here, Mr. Wineberg, that it seems to me that if you sued them
18  directly, they have a voice.  When you don't -- when you come
19  in under the guise of representing them, they don't have a
20  voice.  But if you sue them directly, they do.

21          MR. WINEBERG:  Yes.  But part of that is just
22  because as a practical matter.  Because we may -- in the case
23  where we require the Court's assistance to compel them to do
24  something, where we are adverse to them and maybe we say, you
25  must do that.  But I mean, that's an option.  But as a

1   practical matter, it makes sense because we're having a

2   dispute.  We can't simply order them to do it, we require the

3   Court's assistance.  And in that case, the Court --

4   THE COURT:  And in that case, they have a voice

5   before the Court.

6   MR. WINEBERG:  In that hypothetical, I think

7   they would have a voice.  Now, how that's done --

8   THE COURT:  And in that case, they have the

9   right to independent representation.

10  MR. WINEBERG:  Not exactly.  I hate to say this,

11  it might -- it might be deemed prudent and advisable by the

12  Attorney General to say well, we'll let Mr. Cabot do it.  But

13  in this hypothetical, other attorneys general who are chief

14  legal officers of their respective governments, what they

15  have done is they assign a lawyer within the office or

16  appoint someone outside the office and say, you will

17  represent this person; we'll establish a Chinese wall between

18  you and the lawyer in the office taking this position.

19  That's one practical way to do that.

20  THE COURT:  And if that lawyer ultimately wins,

21  does he get fired the next day?

22  MR. WINEBERG:  That I respectfully suggest we

23  cross that bridge when we come to it.  I would hope that no

24  attorney general would do something like that.  But I just --

25  MR. MOYLAN:  He gets promoted, Your Honor.

1           **MR. WINEBERG:** Oh, maybe he would do it. Did
2  you say yes or no?

3           **MR. MOYLAN:** He gets promoted.

4           **MR. WINEBERG:** Oh, he gets promoted! Yeah,
5  actually, no, obviously if Mr. Cabot --

6           **THE COURT:** If he gets promoted so his next
7  advice is next time don't send another assistant attorney
8  general and now we obtain independent counsel.

9           **MR. WINEBERG:** We'd probably hire a lawyer where
10  he was and so he's on our team instead of the other team.
11  But I just wanted to address this conflict issue, and I want
12  to turn it back over to the Attorney General, on the merits
13  of what does it mean to be Chief Legal Counsel, all right.
14  Because I understand the Court's hesitancy and reserve about
15  this.

16         I understand that everybody's breaking the Rules
17  of Professional Conduct and you're looking at these things
18  and -- because that's the nature, until 1999 and 2000, that
19  the first elected attorney general -- that's the way it was
20  on Guam; you had someone who was appointed who did what his
21  appointing authority, the Governor, told him to do and there
22  was never this kind of independent legal policy set.

23         What you have, if you look at it, under the
24  Organic Act, is the Governor and Legislature had certain
25  powers to establish certain things. When they passed the

1  Organic Act, there was almost a fourth branch with respect to

2  legal policy and legal positions and representation of the

3  Government of Guam and its agencies and instrumentalities in

4  the courts.

5      And Congress said, there shall be an attorney

6  general, there shall -- Previously, it was the Governor who

7  got to make that determination.  And whenever even the Guam

8  Legislature tried to take that authority away from the

9  Governor, the federal courts said you can't do that.  But now

10  Congress has said, you have an attorney general who has these

11  powers that the Governor and other agencies formerly used to

12  have, or used to have --

13      **THE COURT:**  See, Congress merely said we have an

14  attorney general who is the Chief Legal Officer of the

15  Government of Guam.  That's the extent of Congress's

16  pronouncement.

17      **MR. WINEBERG:**  And that's what this Court has to

18  decide; what does that mean.

19      **THE COURT:**  And don't you think that you also

20  need to determine what that role is when it comes to the

21  representation of government officials and government

22  entities.

23      **MR. WINEBERG:**  You know, I think that's a flip

24  note to the Court's opinion saying I -- recognizing that in

25  this transition that old conflicts rules, old rules of

1  Professional Conduct -- well, the current Rules of

2  Professional Conduct actually provide for this very situation

3  to the extent that the scope of the rules at all even apply.

4  And the funny thing about is, is that the rules are limited

5  by these provisions.

6      THE COURT: It seems that more and more courts

7  are saying that these rules do apply.

8      MR. WINEBERG: Within the parameters of this --

9  of understanding the nature of a government and lawyer and

10  his clients, being the Government of Guam and its agency, in

11  which the government lawyer has more control over the --

12      THE COURT: Frankly speaking, it just seems that

13  they're coming to that conclusion because it just doesn't

14  make sense, Mr. Wineberg, that you have entities there and

15  you're saying that you represent them but their positions

16  cannot be made known to the Court. Like I said, that's

17  probably one of the reasons why these courts have gone and

18  said that the Professional Rules apply.

19      MR. WINEBERG: Well, first, I respectfully

20  disagree that there's that many courts that are saying that.

21  We've seen cases --

22      THE COURT: I've read quite a number that are

23  not in the briefs that have been filed.

24      MR. WINEBERG: Perhaps maybe if we could address

25  those, I might be familiar with the cases or the

1    jurisdictions that the Court is talking about.

2              THE COURT:  Well, I figure if it's not in the

3    case that he cited, you probably haven't read it.

4              MR. WINEBERG:  That hurts, Your Honor.

5              THE COURT:  Well, that applies to the other

6    side, too.

7              MR. WINEBERG:  Well, I've read -- Between us,

8    we've read quite many, many, many, many cases.  I know that

9    I'm familiar with the cases that have been cited to the

10   Court.  There's jurisdictions any way and I don't know if

11   we're talking about California or Hawaii or Arizona or Utah

12   or some of these other cases.  I know what is distinguishable

13   there and we've distinguished those.  But I think that's a

14   minority view as to adopting.  But even if you -- even those

15   courts who are doing that who said, well, they have a

16   traditional attorney-client privilege.  Yeah, you have to

17   take a step back --

18             THE COURT:  Well, there's a recent case out of

19   West Virginia that basically decided on an issue that seems

20   to say that it's not per say inorganic for their legislature

21   to allow other entities to have independent counsel.

22             MR. WINEBERG:  That would be McGraw?

23             THE COURT:  I'm not so sure.

24             MR. WINEBERG:  2003 case?

25             MR. MOYLAN:  2002 case.

1    MR. WINEBERG: Or 2. I'm not familiar enough

2 with that to distinguish it for the Court. But, actually, I

3 think that case is actually rather helpful to us to use and I

4 have seen it in the past.

5    THE COURT: Actually, it's not because it said

6 that it's not unconstitutional per say or efficient to allow

7 other agencies to have independend counsel.

8    MR. WINEBERG: I would have to look at that

9 case. But we've been looking at that case, actually, and

10 thinking it's quite helpful to us. Now, I don't know what

11 West Virginia's constitutional structure is and whether it

12 holds that -- whether its constitution says that the Chief

13 Legal Officer may have powers, duties as maybe prescribed by

14 law. That may be the distinction. I don't know.

15    THE COURT: Well, you're right, it is the McGraw

16 case, but you haven't cited it. And I'm not so sure whether

17 you haven't cited it because its holding doesn't support your

18 position.

19    MR. WINEBERG: No, I think if it does -- The

20 first reason we haven't cited it is it has come to my

21 attention subsequent; that's why it's familiar now of why I'm

22 not very close to it. It came to my attention subsequent to

23 the filing of this. But if the Court would like, if we can

24 get copies of it and take a brief recess, I'll read it.

25    THE COURT: That's all right. If there's

1  nothing else, let me hear from the other side.

2         MR. WINEBERG:  Well, I think the Attorney

3  General may still want to talk about the nature of the powers

4  and what it means to be Chief Legal Officer.

5         MR. MOYLAN:  Thank you, Your Honor.  Your Honor,

6  I think listening to the discourse that was going between the

7  Court and our office, if the Court steps back a moment, I

8  know this Court is very good for being an equitable judge and

9  looking at the common sense approach of things.  If the Court

10  promotes the position as the private attorneys would have the

11  Court promote, it is going to encourage people, such as the

12  plaintiffs in this case throughout the Government of Guam,

13  throughout this island, to selectively choose, instead of the

14  Attorney General, which has its own legal opinion on certain

15  matters; they will go to every government official and sue

16  them in their individual -- or in their official capacities

17  in order so that they can come in and express to the Court

18  what they believe that position should be.  In this case, you

19  have the Governor and the Election Commission that were

20  brought in, and maybe rightfully so.  In another case, you

21  may start getting plaintiffs picking and choosing which parts

22  of this Government --

23         THE COURT:  See, I'm constrained to make

24  decisions as to this case only.

25         MR. MOYLAN:  I understand, Your Honor.

1    THE COURT:  And this case only is not a scenario
2  that you're throwing out to me.

3    MR. MOYLAN:  In actuality, Your Honor, this is
4  probably the century of legal reasoning that came to the
5  position of what our position is today.  We're not making
6  this out of wool cloth, Your Honor.  My being here for two
7  years, I've looked over hundreds of cases that deal with
8  every aspect of the powers and duties of the Attorney
9  General.  There's a century of case authority behind this
10  language that was adopted.

11    THE COURT:  Let me further ask this question.
12  Is there any problem allowing you to make your position known
13  but at the same time allowing them their counsel to advocate
14  their position before the Court.

15    MR. MOYLAN:  I believe there is, Your Honor, and
16  for several reasons.  The most important one is it goes to
17  what Congress gave to Guam when it said the language that
18  Mr. Wineberg and the Court were just looking at; the Chief
19  Legal Officer of the Government.  It interferes with my right
20  to be in this position alone without having people that never
21  ran for this office --

22    THE COURT:  Is it really interfering?  Because
23  you're coming to the Court and telling me that they engaged
24  in an illegal act.

25    MR. MOYLAN:  I believe it is, Your Honor,

1  because it's taking away this Court's valuable time and our

2  valuable time having to listen to positions that shouldn't be

3  brought before the Court.  They are not here as legal

4  officers of the Government.  They're here as Government

5  officials executing ministerial or discretionary tasks.  I'm

6  here to present to the Court, as an officer of the Court, the

7  public's position on this matter.  And the public put them

8  into those offices.

9          **THE COURT:**  See, that's my point.  You're here

10  before the Court and telling me what's the public's position.

11          **MR. MOYLAN:**  Vis-a-vis those individuals.

12          **THE COURT:**  See, that's something that I can't

13  see really.  If you're advocating the public's position, what

14  is their individual position?

15          **MR. MOYLAN:**  Their individual positions are

16  between the Attorney General and them; the dialogue that goes

17  on.  If I decide on behalf of the people - and I'm not saying

18  I'm right, Your Honor.  The Court will decide whether -- what

19  is the true law --

20          **THE COURT:**  But how is their position to be made

21  known to the Court if they don't have a voice to make that

22  position known?

23          **MR. MOYLAN:**  They don't have the voice.  And

24  that goes to the second part of why I should be the only one

25  here.  How much is each Government official spending on legal

1    fees for purposes of making their voice known?  The people

2    did not choose them to come here to the Court to give their

3    legal position.

4         They said, Attorney General, you're going to

5    represent their legal position.  And the other jurisdictions

6    have entertained that question as well.  When it comes down

7    to a court action and litigation, the Attorney General

8    controls the public officials' legal positions period.  In

9    the Chief Legal Officer states, which is again, as

10   Mr. Wineberg pointed out, there's only a limited number of

11   states that use the word Chief Legal Officer.

12        They have interpreted the ethical rules to the

13   extent that they do not -- they are not to be treated as

14   private counsels.  They have their own private counsels.

15   There is no ethical conflict that is recognized in those

16   jurisdictions.  And it comes down to the principle of

17   government and how the government is run.  It comes down to

18   the principle of tax payer efficiency.  You don't want to

19   give these Government officials the ability to come before

20   you to consult with their client to charge the public, the

21   people that voted me into office.

22        I'm on a fixed salary.  The public says, you

23   shall be the Attorney General at 90% of the judge's salary.

24   They didn't say, Government official, you can go to court any

25   time you want and charge us for that legal representation.

1 And I know that's just one half of the equation. But the
2 bigger part, Your Honor, is what Congress intended when it
3 said Chief Legal Officer, and said, Guam Legislature, you can
4 make this Chief Legal Officer elected.

5 The Legislature in '99 said, we shall make him
6 elected. And then the people - that is the most compelling
7 argument, is that the people said - you will be our lawyer.
8 Now, they also said that you will have an Election
9 Commission. They also said that you will have a Governor of
10 Guam. And that is the people.

11 But when we come before this Honorable Court,
12 the Governor isn't here in my presence arguing the legal
13 doctrine. The Governor's only for purposes of doing his
14 duties as authorized under law. I am to come into court to
15 express the Government of Guam's position including each
16 member, as Mr. Wineberg pointed out, the fingers of this
17 Government of Guam.

18 We're multifaceted. We could have a hundred
19 litigants in this courtroom and each would have his own
20 private lawyer under the way that the defendants would have
21 the Court analyze everything. Even more so, Your Honor, why
22 am I an elected official if most of this Government is made
23 up of cabinet members. You know, if this was -- And, again,
24 I know the Court said we're all looking at this case, and the
25 Election Commission is made up of -- actually, the Election

1   Commission is made up of appointees of the Governor.  You

2   know, if we had a case, why is there an attorney general in

3   position at all if --

4           THE COURT:  Except for one member, right?

5           MR. MOYLAN:  Yes, the one that all -- six of

6   them.

7           THE COURT:  The six have to agree and accept.

8           MR. MOYLAN:  That is correct.

9           THE COURT:  So one is not appointed by the

10  Governor?

11          MR. MOYLAN:  That is correct.  So if we had a

12  situation where the Government of Guam is sued but then you

13  have all these five different directors, well the Government

14  of Guam is going to come in through the Attorney General and

15  say, well, this is our position, Your Honor.  But then one

16  fifth -- or I'm only one fifth of the equation.  Four fifths

17  of the equation are going to be each cabinet member, which is

18  taking instruction from the Governor giving their positions.

19          And that's why I believe the rule was made in

20  the other jurisdictions, including Illinois, that this court,

21  as a Superior Court of Guam judge, has incorporated.  I think

22  it's the Feeney case; that for purposes of coming before the

23  Court having to stand where I'm at, it's only the Attorney

24  General when you're talking about the Government of Guam.

25          Your Honor, I also reference to the federal

1  question.  This is -- as to Your Honor is a Federal
2  Magistrates Judge; a Supreme Court of Guam decision should
3  not be looked at and definitely is not binding and precedent
4  upon this Honorable Federal Court.  The language is
5  congressional.  There's no question about the fact that 48
6  USC 1421 GG1 was a statute passed by the US Congress.

7          THE COURT:  Maybe that could be best put for
8  rebuttal, I suppose, because I haven't heard from the other
9  side yet.  They haven't made that argument yet.

10         MR. MOYLAN:  Thank you, Your Honor; just one
11  closing comment then.  Two weeks ago, Congress, I believe,
12  went through some confirmation hearings for the United States
13  Attorney General, who's Mr. Gonzales.  In the commentary that
14  the Congress made in the confirmation process, they wanted to
15  ensure that the Attorney General was not the president's
16  attorney.  And they made it clear on the national discourse,
17  the media that was released for what Congress was saying that
18  Mr. Gonzales was truly going to be the people's Attorney
19  General.

20         And I believe that highlighted the fact that
21  even in an appointed attorney general situation, which after
22  1999 -- actually, 1998 all the way to 2002, there wasn't an
23  appointed attorney general.  But the appointed Attorney
24  General was not the attorney for the Governor on Guam.  Like
25  Mr. Gonzales, he is the people's attorney general and

1  Congress made that very clear when they confirmed AG

2  Gonzales.

3  And in this case, we will have disagreements,

4  because they serve the master, the Governor, in many

5  respects.  The Attorney General serves the public and the

6  people.  And I think that's an important play that has to be

7  analyzed here that the Attorney General must come in and

8  represent all parts of the Government and the only attorney

9  to talk before the Honorable Court.  Thank you, Your Honor.

10  THE COURT:  Mr. Pangelinan.

11  MR. PANGELINAN:  Good morning, Your Honor.

12  THE COURT:  Good morning.

13  MR. PANGELINAN:  Your Honor, I did not hear

14  anything in Mr. Wineberg's reading of the commentary to the

15  Professional Rules of Responsibility that says anything about

16  the Governor not having a voice in the proceeding which he's

17  a defendant.

18  Your Honor, I think the Court seized upon,

19  really, the focal point, the main central problem, with the

20  Attorney General's argument in this case.  The Attorney

21  General would like this case to be a case where you're

22  balancing the two roles of the Chief Legal Officer, the one

23  role as being representative of Government officials to

24  litigation, the other role being a guardian of the public

25  interest who may bring actions against officials to enforce

1  the law whenever the Attorney General deems that the public

2  interest requires that.

3         This case is not about both of those roles.  And

4  certainly nobody disagrees that those rules both exist, and

5  nobody, as the Court pointed out, nobody's arguing that

6  there's only one attorney general.  There is only one

7  attorney general.  It's a very important position, Chief

8  Legal Officer.  In some cases, including cases that this

9  Court has heard and are pending before the Court, both of

10 those two roles sometimes come into play in the same case.

11 And they make for some very interesting ethical discussions

12 and legal discussions.

13        This is not one of those cases, Your Honor.

14 This case involves only one of the Attorney General's two

15 roles: The role of being an attorney appearing on behalf of

16 Government defendants in litigation.  Despite what they may

17 say in the briefs and despite what they may say in Court this

18 morning, the Attorney General's role of being the guardian of

19 the public interest is not at issue in this case.

20        Your Honor, it is already in the record there's

21 a complaint that's been filed in this case, and I'll refer

22 the Court to paragraph 44 in the plaintiff's complaint, which

23 says, the Attorney General is the Chief Legal Officer for the

24 Territory of Guam withstanding authority to institute legal

25 proceedings, to protect the plaintiff and the people of

1  Guam's fundamental right to vote.  But he's refused to do so.

2  The Attorney General has not sued anyone in this

3  case on behalf of the public interest.  The only involvement

4  the Attorney General has in this case is in their other role,

5  representational capacity as representatives of Government

6  defendants.  What the Attorney General is doing in this case

7  and the reason why it leads to this kind of confusing issue

8  about their respective roles is they are trying to invoke

9  their other role as protector of the public interest and

10  bringing it into a case in which they're only involved

11  because they're supposed to represent Government defendants.

12  In this case, they appeared on behalf of the

13  Governor and they appeared on behalf of the Election

14  Commission.  So their job in this case is to defend the

15  Governor, to defend the Election Commission's position in

16  this litigation.  But they don't want to do that here, Your

17  Honor, because we all know what would happen if they did.

18  Just like they did in Moylan versus Camacho where they

19  brought a suit against the Governor to compel him to appoint

20  by Procurement Appeals Board because they believe that

21  public interest required that they take that action.

22  If they did that in that case, the Governor

23  would get separate counsel, and even they don't dispute that

24  he's entitled to separate counsel in that scenario.  The

25  Election Commission has separate counsel; they argued their

1  positions, they defend the case before the Court and the

2  Court would make the call and decide the outcome. That's

3  what has to happen here. It can't happen unless all the

4  defendants are given a voice in the court.

5  We already know from the Attorney General's

6  position that the Governor can't get a voice in court through

7  the Attorney General's office. We know what the Governor's

8  position is. The Governor actually signed a bill into law,

9  October 27, to clarify the requirements of -- the mailing

10  requirements for the proposal for the initiative in order to

11  ensure --

12  **THE COURT:** Are these positions by the Governor

13  and the position by the Attorney General, are they in

14  conflict at the moment?

15  **MR. PANGELINAN:** Yes, they are, Your Honor. The

16  stipulation that was signed the same day that the Governor

17  signed the bill into law on October 27 sought to essentially

18  nullify the election and invalidate the election that was

19  going to take place. It's a direct conflict, Your Honor.

20  And one thing I want to mention that I heard

21  mentioned this morning is that there shouldn't be a hundred

22  litigants in the Court each of their own separate counsel.

23  There shouldn't be. There should be one attorney. There

24  can, most of the time, be one attorney representing the

25  interest of all the different litigants. And it should be

1  the Attorney General.

2         **THE COURT:**  Can I ask you further, if the

3  Attorney General were to come in here and say, we're going to

4  advocate the position of the Governor, would you give way to

5  the Attorney General?

6         **MR. PANGELINAN:**  Your Honor, if the Attorney

7  General had taken that position in this litigation, I don't

8  think we'd be here.  I don't think the Governor would have

9  any need to have separate counsel.  Because, Your Honor, the

10  Governor is not just a finger; the Governor was elected as

11  Chief Executive.  Elected by the people just like the

12  Attorney General.  They also elected the Governor to

13  faithfully execute the law, to supervise in the executive

14  branch.

15         But how can you ever actually do that if there's

16  no way for him to have a voice in court when he's named as a

17  defendant?  What's happened is that it's clearly an attempt

18  to silence the Governor's voice, Your Honor.  And there are

19  no cases in any jurisdiction, not even Alabama, that's ever

20  held an attorney general has the power to take public policy

21  decisions away from the governor in the courts through a

22  stipulation.

23         We've been in court in a number of different

24  courts in different cases arguing these same issues about

25  representation.  And each time that I've been in one of these

1  hearings, I hear the Attorney General's office mention that

2  there's this general rule out there that the Attorney General

3  as Chief Legal Officer has unfettered control and dominion

4  over all litigation matters.  And it's spoken as though

5  that's just an accepted fact within the case law.

6        But, Your Honor, I respectfully disagree with

7  that.  I don't think that is what the case is saying.  I

8  think what most cases say when they've addressed this type

9  of situation where the Attorney General is just a

10  representative; he's not suing anyone, he's not appearing on

11  behalf of the Government, he's appearing on behalf of an

12  individual government litigant.

13        Most of the cases say that in that capacity, the

14  Attorney General has to actually represent the positions of

15  that litigant, of that defendant.  And we cited cases in our

16  briefs.  There's a case actually that comes pretty close to

17  the facts of this case out of North Carolina in which the

18  Attorney General tried to confess to judgement, which is what

19  Mr. Wineberg said that you can confess to judgement.

20        But the Court didn't let that happen because the

21  Attorney General stipulated to judgement and it was without

22  his client's consent.  And that's the Kaiser vs. Department

23  of Transportation case, North Carolina, involving a dispute

24  with the Department of Transportation in which the Attorney

25  General was representing the department and tried to

1    stipulate to judgement without his client's consent.

2            The Court, in that case, as the courts do in
3    most cases where that is the role of the Attorney General in
4    the case as a representative, they distinguish between the
5    two roles.  And they said when the court's representing a
6    state agency, and he's acting on its behalf, he's got to
7    advocate on its behalf.  But when he's representing public
8    interest, then he has control over litigation and dominion as
9    other language in the cases mentions.

10           In other cases in a case from Iowa, it also
11   involves the Department of Transportation; that's the Motor
12   Club of Iowa case.  Same sort of scenario.  In that case it
13   was a question of whether to take the matter up on appeal.
14   The Department of Transportation lost the case in lower court
15   and the Attorney General wanted to appeal, but the department
16   didn't want to.

17           The Court said, since you're only there as a
18   representative of the department, you have to consult with
19   your client and get your client's consent before you can
20   appeal.  These are jurisdictions where the attorney general
21   is in their constitution.  He's a constitutional officer.

22           In the Motor Club of Iowa case, they made the
23   argument, but wait, I'm a constitutional officer, I have the
24   right to control and have complete dominion over litigation
25   decisions.  And they said, well, that may be true that you're

1  a constitutional officer but you're also the representative

2  of this litigant in this particular case.  So as that

3  litigant's attorney, you can't do it.  You have to get your

4  client's consent before you appeal.

5       And so the department of state government was

6  sued and the Attorney General appeared to defend the

7  department, not to assert his mission of the state interest.

8  And there's other cases, Your Honor, and it really doesn't

9  make a difference for this -- for purposes of this issue, the

10 two different roles, whether -- how -- what the language in

11 the constitution of the Attorney General's -- the preface --

12 the preface to the Attorney General's office sets when it

13 says Chief Legal Officer or not; the constitutional law sets

14 it.

15      The question is not whether it's a

16 constitutional position.  The question is what is the role?

17 What are the two roles?  Everyone recognizes that they've got

18 these two roles, but they've got to actually fullfil both in

19 the case.  And in a case like this, where they're only

20 involved because of one of those roles, they got to actually

21 represent the interest of their client.

22      The Attorney General, in the briefs, points out

23 that we have not cited any case that stands for the

24 proposition wherein the Attorney General cannot just

25 stipulate and resolve the case that has the effect of undoing

1    something the Governor has done.  They said we haven't cited

2    any case law that stands for that proposition law.

3           Quite frankly, Your Honor, I'd be surprised if

4    there is any case law -- any case that has that scenario,

5    that factual scenario, where an attorney general will

6    stipulate to the invalid election right after a bill is

7    passed to actually require the election to go forward against

8    the desires of the governor and the legislature that the

9    court's representing the case.

10          I would be surprised if you ever find that

11   factual scenario.  I'll actually be more surprised if you

12   ever have a court that would allow that to happen.  That

13   hasn't happened.  There is no case that's allowed that.  In

14   fact, this Court, in its order of October 29 in this case,

15   didn't allow that to happen because this Court denied the

16   stipulation that the Attorney General tried to enter into on

17   behalf of all the defendants.

18          But the attempt that's being made here, Your

19   Honor, and I think the Court realizes is that the blurring

20   distinction between these two different roles, and they're

21   bringing in the public and destroying it into a

22   representational capacity role case, which is what this is.

23   If they feel that the public has been harmed by the election,

24   then it's their duty to bring an action to protect the public

25   interest.  That's their job to do that.  They haven't done

1   that.

2           If they come into the case and represent the

3   Governor and the Election Commission, then they have to

4   advocate for them.  That's their job, too.  The case is cited

5   by the Attorney General.  There's a lot of cases out there.

6   There's been so many briefs in different cases in different

7   motions that have cited essentially the same line of cases.

8   Lots of them have broad knowledge about attorney general,

9   chief legal officer, complete control over litigation

10  matters.

11          And they cite a string site of pages and pages

12  of cases that have that same sort of language.  If you look

13  at most of them, you're talking about cases where the

14  Attorney General is in the case one reason or another; he's

15  in the case on behalf of the public interest, either suing

16  someone on behalf of the state or the state was sued.

17  Thurberry versus Care, out of Oklahoma, is one such case.

18  Salida versus Kowskigina (phonetic), Minnesota, opinion of

19  justices, that's New Hampshire, Michigan State Chiropractic,

20  Public Defender Agency versus Superior Court; that's Alaska.

21          In those cases, the attorney general was

22  involved in the case because of the public interest.  So, of

23  course, they're going to have control over that litigation

24  because he's the spokesperson for the legal position of the

25  public when he's suing on behalf of the public interest or

1  when he's defending the government.

2  Some cases though, it's true, I'm not going to
3  -- I have to be honest with the Court.  There are some cases
4  out there where some jurisdictions that make the same mistake
5  of blurring the distinction between these two different
6  roles.  And there's a couple of jurisdictions, Massachusetts
7  and Alabama, the Feeney case, they cited in the ex parte
8  Weaver case, which seems to be the case they like to cite the
9  most, where they have allowed the Attorney General to
10  override the wishes of their client in certain litigation
11  matters.

12  And in those cases, they involve appeals --
13  Feeney involved an appeal that was taken against the wishes
14  of the client, the government litigant.  The ex parte Weaver
15  involved an appeal also, but both jurisdictions had
16  constitutional officers.  But in neither case and in none of
17  the cases that have been cited before the Court is there ever
18  a case where you silence the governor's voice in litigation,
19  in any litigation.

20  And, in fact, most of these cases, most of these
21  courts allow the governor to have a voice in any time he
22  wants one; he can come into court and have his own voice if
23  he wants one.  He's the chief executive.  But in this case,
24  Your Honor, it's even a stronger case for that proposition
25  because he's a named defendant here.

1        And if you look at the cases, even the cases
2   that this Court -- that Your Honor decided in the Superior
3   Court, Moylan versus Camacho, the Court held in that case
4   that the Governor alone is charged with the faithful
5   execution of the laws of Guam and only the Governor can
6   appoint members to the Procurement Appeals Board.  That's
7   what Guam law says.

8        This case, the Governor is being sued to compel
9   him to issue a proclamation pursuant to 3GCA 13 to order a
10  special election.  And there's another statute out there that
11  allows the Legislature to do the same thing.  That's why the
12  Governor -- one of the reasons why the Governor is in the
13  case because someone's trying to make him do that.  Just like
14  someone was trying to make him appoint members to the Appeals
15  Board -- the Procurement Appeals Board, in the Camacho case.
16  The Governor has to have a voice in this case.  The Governor
17  should have a voice when he wants to come to court and
18  advocate his position as chief executive, especially in a
19  case where he's a defendant asked to do something that only
20  the governor can do.

21          **THE COURT:**  When is it inappropriate for an
22  agency not to deliver to an opinion by the Attorney General?
23          **MR. PANGELINAN:**  Well, I think that --
24          **THE COURT:**  Do you say, well, this is the
25  Attorney General's opinion, we're abiding with it, and when

1    do you say that you cannot?  Or when do you come to the

2    conclusion that I won't listen to what the Attorney General

3    says?

4        MR. PANGELINAN:  Well, I think that the agency

5    -- these are public officials elected to do a job.

6    Presumably, they're chosen because they've got qualifications

7    and they can -- and they know what they're doing.  I mean,

8    elected officials are presumed to be doing their job when

9    they take an action.  If they disagree in a case where

10   they're a named defendant, if they disagree with the legal

11   position, they should at least have the voice to be able to

12   present it to the Court.  Attorney General opinions are very

13   important because the Attorney General does express the legal

14   --

15       THE COURT:  Let's assume the Attorney General's

16   sends a memorandum to the Election Commission, the contract

17   that you're about to engage into, I find not to be illegal;

18   shouldn't it just end right then and there?

19       MR. PANGELINAN:  I would think that if that

20   were the case, that, yes, it should end right there because

21   the agency should listen to the Attorney General -- should

22   listen to that opinion.

23       THE COURT:  Care the Attorney General says what

24   you did was illegal but you're not listening.

25       MR. PANGELINAN:  Well, that's why the Attorney

1 General has the right as Chief Legal Officer to take it to

2 the Court, just like he -- He's certainly willing to do it;

3 we know that. The Governor is defendant in a few different

4 lawsuits now. But that's the role and that's why the

5 Attorney General --

6       **THE COURT:** I'm just trying to figure out when

7 do you listen and when you don't listen.

8       **MR. PANGELINAN:** I think you should always give

9 great weight to any opinion of the Attorney General. And I

10 think that -- I would say most agencies do unless -- if they

11 have reason to disagree, then it would have to be a pretty

12 strong reason and they'd have to -- they just need the right

13 to be able to present that to the Court.

14       But if they do disagree, they better be willing

15 to back it up, because they're gonna get sued by the Attorney

16 General, which is not much fun. And that's something that I

17 think is going to definitely factor into any decision that an

18 agency makes. They decide that they -- that they're

19 completely clear and firm that they want to take a different

20 course of action and they've been named as a defendant, they

21 need the voice. The Attorney General can be involved in the

22 case on the other side, but they have to at least be able to

23 present their position to the court.

24       And I just want to just close by saying that I

25 don't think anything that I've said this morning is intended

1  to indicate that the Governor thinks the Attorney General is
2  his mouth piece.  Clearly, he's not.  The Attorney General is
3  not the Government mouth piece.  The Attorney General was
4  elected to protect the people and to be in charge of
5  protecting the public interest and bringing actions and to
6  enforce the laws of Guam.

7            And the people also elected the Governor.  And
8  how can the Governor faithfully execute the laws and do what
9  he was elected to do without a voice in the Court.  The
10 Attorney General is the only -- if the Attorney General is
11 the only elected official that actually has a voice in the
12 Court, then what's the point in having a judicial system when
13 it comes to the Government if the Attorney General disagrees
14 with anything the Governor's does, just have an action filed
15 --

16           **THE COURT:**  I guess your remedy is not to vote
17 for him on the next election.

18           **MR. PANGELINAN:**  Maybe, Your Honor, but I think
19 that -- I would just say that no court has ever allowed the
20 attorney general to silence a governor in a case and it's
21 never happened in any other jurisdiction.  It definitely
22 should not happen here.  The Attorney General always has
23 access to the courts when he needs to enforce the public
24 interest and he's certainly been willing to do that even if
25 it means suing the Governor.  But when that happens, the

1   Governor has to be able to come and defend himself just like
2   this Court held in Moylan versus Camacho.  If there's a
3   disagreement, it's the Court, not the Attorney General, who
4   makes the decision.

5          THE COURT:  And I gather from what you're saying
6   is that the Attorney in this case has not chosen to embody a
7   public position because he's coming in to defend you?

8          MR. PANGELINAN:  That's right, Your Honor.
9   Thank you, Your Honor.

10          THE COURT:  All right.  Mr. Cabot.

11          MR. CABOT:  Morning, Your Honor.

12          THE COURT:  Morning.

13          MR. CABOT:  Your Honor, the Attorney General is
14   saying that we are all part of the same family, but as you
15   know, Your Honor, we all know sometimes even family members
16   get into disputes.  But somehow we all manage to resolve
17   things and get on with being family again.  And I think
18   that's what happening now.  I agree that these are the
19   growing pains, the struggles that we're going through in
20   trying to define the role as attorney general.

21          But respectfully so, Your Honor, I believe that
22   the Attorney General is overreaching and going beyond what he
23   is authorized to do so under the Organic Act and under the
24   laws of Guam.  Now, for purposes of this motion, Your Honor,
25   with regard to my clients, the issue is, can the GEC and the

1   Executive Director hire or engage its own independent counsel
2   instead of the AG.

3           And I think it's important, Your Honor, to look
4   at the facts of this case.  Because if we just look at the
5   broad stroke gloss over scenario of what is happening, then
6   it really doesn't draw out the burdens, the hardships, the
7   difficulties that the Agency and the Executive Director will
8   face if we take a very rigid stance on this issue.

9           In this particular case, Your Honor, the issue
10  is -- of the case is, did the Guam Election Commission and
11  the Executive Director follow the election code with regard
12  to an initiative measure, Proposal A, the gambling initiative
13  in sending out the election pamphlets, which, by law, are
14  supposed to be transmitted to all of the registered voters on
15  Guam, the number about seventy thousand more or less, prior
16  to the 2004 November general election.

17          Now, obviously the plaintiffs contend that the
18  Guam Election Commission did not follow the law, that the law
19  required that the entire fifty-six paged initiative measure
20  be sent out to each and every of the seventy thousand more or
21  less registered voters out there.  The Guam Election
22  Commission takes the position that under the letter of the
23  law, that was not required.  And that even if the Court or
24  someone were to find that the GEC did have that requirement,
25  by one estimate, the cost would have been prohibited.

1        **THE COURT:** All right, let me rephrase the

2 question. Let's say that six months before or nine months

3 before an initiative election, you send an opinion to the

4 Attorney General and ask whether or not it's necessary that

5 the complete packet be mailed out and you get an opinion from

6 the Attorney General that says, yes, and then on election

7 day, you decide just to send out a synopsis; I'm trying to

8 figure out, you know -- I mean, you've already gotten, let's

9 say an opinion from him, that says you must mail out the

10 entire pamphlet. I mean, is that discretionary on your part

11 when he says under the laws of Guam, this is what this law

12 means and it is my opinion that you are required to send all

13 these pamphlets?

14        **MR. CABOT:** Your Honor, like any agency, I think

15 it behooves the agency and the public officers to listen to

16 the advice given by the Attorney General. But under Guam

17 law, as set by the Legislature, the Guam Election Commission

18 has very clear authority to engage its own independent

19 counsel. And under Guam law, it is very specific that --

20        **THE COURT:** I know that, but isn't it clear

21 though that the only official in the Government that can give

22 a legal opinion as to the meaning of a statute is the

23 Attorney General? So that his opinion --

24        **MR. CABOT:** Respectfully, Your Honor, I

25 disagree. Respectfully, Your Honor, that's not the statutory

1  scheme that was intended by the Legislature, in my opinion.

2  **THE COURT:** Okay.

3  **MR. CABOT:** Because of the strict and specific

4  language in the various statutes, and I will get to that.

5  But in this particular case, Your Honor, it's very clear that

6  the position of the Attorney General is diametrically opposed

7  of that of the Election Commission.  The Election Commission

8  is saying we followed the law, and if we didn't follow the

9  law, we didn't have the hundred and fifty thousand dollars

10  because it wasn't appropriated by the Legislature.  And even

11  if we wanted to, we could not follow the law.

12  But the Attorney General, before the November

13  election, came out publicly and said, the initiative election

14  is flawed, that the Guam Election Commission violated the

15  law, what they did was unconstitutional.  And he did nothing.

16  He didn't file any lawsuit.  It had to be the plaintiffs to

17  bring it before the Court.  Then the Attorney General tried

18  to stipulate, in fact, didn't try, he did stipulate with the

19  plaintiffs and filed it with this Court again saying, the GEC

20  violated the law, what they did was unconstitutional, what

21  they did was wrong.

22  And now he's standing before the Court saying he

23  wants to defend the Guam Election Commission when his

24  position is diametrically opposed to the Guam Election

25  Commission, when he basically has proverbially sold the Guam

1  Election Commission down the river.  He's standing before the

2  Court saying we represent the Government of Guam but our real

3  client is the public interest, the public.

4         And what that says to me, Your Honor, it almost

5  sounds like rhetoric and double talk.  How do we know what

6  the consensus of the public is.  There's no sensus.  There's

7  no survey.

8         THE COURT:  But, initially, my question though

9  is that if the Attorney General has given a legal opinion as

10  to the meaning of this statute, is there another opinion

11  within the Government that can, in a sense, counter the

12  Attorney General's opinion or have greater weight than the

13  Attorney General's opinion?

14         MR. CABOT:  Your Honor, the Election Commission,

15  as I imagine, will take it under great consideration, but at

16  the end --

17         THE COURT:  You're free to disagree is what

18  you're saying?

19         MR. CABOT:  Yes, Your Honor.  And if the

20  Attorney General sees fit, then he can sue the Guam Election

21  Commission and bring it before the Court, which is the

22  ultimate decider of interpretation of the law, Your Honor.

23         THE COURT:  So if the Attorney General were to

24  send a memo out to the Election Commission and says, by

25  engaging in certain action, you are committing a criminal

1  offense, and then you advise your legal counsel members, my

2  opinion is that you're not, and then let's assume they're

3  prosecuted by the Attorney General.

4        MR. CABOT: Yes, Your Honor.

5        THE COURT:  I mean, could they, as a defense,

6  say, that well, we received an opinion that it was legal from

7  our own legal counsel.

8        MR. CABOT:  Your Honor, I believe that the

9  statutory scheme work as provided by the Legislature places

10 that responsibility on the legal counsel for the Commission.

11 That is one of roles of the Election Commission.

12       THE COURT:  But my question is, can they raise

13 it as a defense that it's legal because our attorney said it

14 was legal?

15       MR. CABOT:  I can imagine, Your Honor, but they

16 have the prerogative of adopting my opinion.  I'm merely

17 advisory to the Commission.

18       THE COURT:  But it subjects them to, I suppose,

19 criminal prosecution, if, in fact, the Attorney General is

20 correct.

21       MR. CABOT:  I would imagine so, Your Honor.

22       THE COURT:  Okay.  I just wanted to see.  Okay.

23       MR. CABOT:  Going back, Your Honor, so the

24 Attorney General is standing before you saying we represent

25 the Government of Guam but our real client is the public

1  interest. What he's really saying, Your Honor, double talk
2  and rhetoric, is, I am supplanting my personal opinion, my
3  personal idea of what is right and wrong, what is in the
4  public interest with that of the Guam Election Commission
5  with the thirty-five years of collective institutional
6  knowledge of all of the policies that were carved out over
7  time, all of the justifications for doing why they do, how
8  they do it.

9       He is substituting his own private ideas and
10  notions of what is in the public for that of an agency. And
11  he's saying that that is allowed him because of the Organic
12  Act. And I don't agree, Your Honor. What that does is it
13  kills, it destroys, it removes the right of due process for
14  the Commission and the Executive Director that are on the
15  firing line.

16      It gags them. It doesn't allow them to stand
17  before the Court and say, Your Honor, take a look at this,
18  what about this interpretation of law, this is a reasonable
19  construction of law. If he decides, like he did in this
20  case, that I don't agree with you, I'm not even going to
21  bring it before the judge --

22      **THE COURT:** But that would be the same in your
23  scenario if they ask you for a legal opinion and you said,
24  well, no, we can't do that. In essence, it gags them from
25  moving into the direction they want to move based on your

1   legal opinion.

2         **MR. CABOT:** I would provide my legal opinion in

3   my advisory capacity. At the end of the day, it would be the

4   Commission to decide whether it adopts or rejects my legal

5   opinion. There have been times when the Commission has not

6   followed my legal opinion.

7         Now, this particular case, if the AG does not

8   like the actions taken by the Commission, he has every right

9   to sue us and bring it before the judge. But there has to be

10   an ultimate trier, or controller, protection, checks and

11   balances, because that's the basic scheme work of our

12   Government. In effect, what he's doing, Your Honor, is he's

13   also supplanting the ability --

14         **THE COURT:** Well, you know, if they don't want

15   to listen to your advice, maybe they shouldn't have a voice.

16   Maybe the Attorney General is right, if they don't want to

17   listen to your opinion, maybe they shouldn't have a voice.

18         **MR. CABOT:** I don't agree with that, Your Honor.

19   I think that it is their prerogative under the code. And if

20   their views are contrary to that of the Attorney General,

21   then we ultimately bring it to a court of law to interpret

22   the laws.

23         And in this particular scenario, Your Honor,

24   when he came out publicly and said, the election is flawed,

25   what you did was unconstitutional, and then he sat on his

1   hands and didn't file any lawsuit.  In effect, what he's

2   doing is he's preventing even the courts from exercising

3   their role under the constitution of the Organic Act to

4   interpret the laws.

5          And he's supplanting and substituting his own

6   personal opinion that this is unconstitutional for that of

7   the Election Commission, the Executive Director, and I

8   submit, Your Honor, even the courts, by not filing a lawsuit.

9          **THE COURT:**  Would it be fair to say that had

10  there been no objection filed, the Court presumably could

11  have signed the stipulation?  That had there been no

12  opposition filed?

13         **MR. CABOT:**  Yes, Your Honor, if the Court were

14  not raising any issues suasponte, they would rely on the

15  representation of the parties and their judgement, then I can

16  imagine that occurring, Your Honor.  But in this particular

17  case, Your Honor, it is clear that the Guam Election

18  Commission's position is diametrically imposed.  There's no

19  way that the two can be reconciled.  And they do deserve the

20  right to due process and they do deserve the right to be

21  heard before this Court.

22         And you'll look at the Guam law, Your Honor, and

23  it is very clear under the Election Code that the Legislature

24  gave that right to the GEC.  In 3GCA, section 2103b, it

25  states, "The Board may retain an attorney who shall be

1  admitted to practice before the courts of Guam who shall

2  advise the board and its executive officer on all legal

3  matters, all legal matters, pertaining to the Commission.

4  The designated counsel shall represent the Commission in

5  litigation in which the Commission is interested or

6  involved." And in this particular case, it's obvious that

7  the Commission is interested and very involved. Whether we

8  like it or not, we're a named defendant.

9  THE COURT: But that's all before the amendment

10 to the Organic Act.

11 MR. CABOT: Yes, Your Honor. And I'll get to

12 that, Your Honor. You even look at the enabling statute for

13 the Attorney General, Your Honor, and, again, the Legislature

14 makes it clear that agencies, autonomous agencies, public

15 corporations that have the express authority to engage their

16 independent counsel, again, are not affected by this carte

17 blanche authority that they're granting to the Attorney

18 General.

19 THE COURT: Is that in the congressional --

20 MR. CABOT: No, Your Honor. I'm referring to

21 Title 5.

22 THE COURT: Okay.

23 MR. CABOT: Which created the --

24 THE COURT: But in amending the Attorney

25 General, though, that's -- I mean, that language isn't in the

1  intent of the legislation?

2        MR. CABOT:  I'm sorry, Your Honor?  For Title

3  5 --

4        THE COURT:  When Congress amended the Organic

5  Act, that language is not in its intent.

6        MR. CABOT:  That's correct, Your Honor.  And

7  I'll get to that and I will argue that the intent of

8  Congress, when it adopted 1998 amendments, was not to remove

9  the right of the Legislature to limit the powers of the

10  Attorney General, and I will argue the Airport case and I

11  will argue the Judge's ruling in the EITC case.

12        But before that, Your Honor, this was before the

13  1998 amendment, Title 5 created the elected Attorney

14  General's office.  And at least in three different areas

15  there, in my opinion, it did specifically carve out

16  exceptions for agencies that have expressed authority under

17  the law to have their own independent counsel.

18        5GCA 30109C, and I'm paraphrasing here, it says,

19  The Attorney General shall appear - and gives all the list --

20  the laundry list of situations in which the Attorney General

21  may appear -- and then it indicates -- appears in all civil

22  actions in which the Government is an interested party

23  provided that those branches, departments or agencies which

24  are authorized to imply their own legal counsel, may use them

25  instead of the Attorney General.

1          And it also says it in 5GCA 30103, which

2     addresses the common law powers of the Attorney General.  It

3     says, which include but are not limited to the right to bring

4     suit to challenge laws, which he believes to be

5     unconstitutional, to bring action on behalf of the Territory

6     representing the citizens.  And then it goes on to say,

7     comma, unless expressly --

8          **THE COURT:**  All right.  Those are common law

9     powers given to the Attorney General by the Guam Legislature?

10          **MR. CABOT:**  That's correct, Your Honor.

11          **THE COURT:**  Did Congress give common law powers

12    to the Attorney General?

13          **MR. CABOT:**  Your Honor, it did but only to the

14    extent that it was not limited expressly by legislation.

15          **THE COURT:**  But where is that stated in the

16    Organic Act?

17          **MR. CABOT:**  It's not.  And I refer, Your Honor,

18    and that is what we're struggling with right now.  We look at

19    the equities of the situation --

20          **THE COURT:**  Assuming that the Attorney General

21    has federal common law powers given by Congress, isn't that

22    common law power only limited by what the federal government

23    legislates?

24          **MR. CABOT:**  Yes, Your Honor, but I do believe

25    that it continued to allow the existing frame work at the

1  time, which is it led -- reserved the Legislature --

2        THE COURT:  Is there any language in the

3  existing frame work that says that the Attorney General is

4  the Chief Legal Officer of the Government of Guam?

5        MR. CABOT:  Are you referring to the statutory

6  --the Guam legislative frame work, Your Honor?

7        THE COURT:  Yes.

8        MR. CABOT:  No, Your Honor.  Well, it does say

9  that he has broad -- Your Honor --

10       THE COURT:  It says he has cognizance over all

11  legal matters, but is there anything that says he is the

12  Chief Legal Officer of the Government of Guam?

13       MR. CABOT:  No, Your Honor.  No, Your Honor.

14  And the term Chief Legal Officer is not defined in the

15  Organic Act and that's why we're having all of these

16  struggles, Your Honor.

17       THE COURT:  Let me ask you this; how do we get

18  the role of Chief Legal Officer full expression as embodied

19  in the Organic Act?  How do you give that full expression?

20       MR. CABOT:  Your Honor, part of the problem is

21  the Organic Act didn't clarify or give enough definition, so

22  that's the struggle that this Government, all of the courts

23  here on Guam are dealing with; the Supreme Court as well as

24  this Court.

25       THE COURT:  But shouldn't we get full expression

1  to that meaning?

2          MR. CABOT:  No, Your Honor.

3          THE COURT: No?

4          MR. CABOT:  I believe that there is a limit and

5  I believe that that limit has to be determined by these

6  courts and in interpreting what the intent was of Congress.

7  In my reading, Your Honor, my opinion is that Congress did

8  not intend on abrogating the right of the Legislature to

9  limit the powers of the Attorney General.  It kept that right

10  open.

11          THE COURT:  Well, see, if I follow your

12  argument, then that could mean that tomorrow, the Guam

13  Legislature can say, the Department of Administration, you

14  can have your own attorney.

15          MR. CABOT:  Yes, Your Honor.

16          THE COURT:  And you see no problem with that?

17          MR. CABOT:  I see no problem with that.  And

18  that's the way that I read that the Organic Act was intended

19  as was -- as is supported by the Airport case that came out

20  of the Guam Supreme Court.

21          THE COURT:  So how can the Attorney General be

22  the Chief Officer of the Government of Guam including this

23  line agency if he has another attorney?

24          MR. CABOT:  I think that he has all common law

25  powers except as are expressly limited by the Guam

1  Legislature. And I --

2  THE COURT: Let's assume that tomorrow the Guam

3  Legislature says, well, Attorney General, you don't have any

4  cognizance over all matters in which the Government is

5  interested.

6  MR. CABOT: I think there might be a problem if

7  they take away all of his rights, but I think that that might

8  be a possibility.

9  THE COURT: But when they take away

10  representation of the Department of Administration, aren't

11  they doing the same thing?

12  MR. CABOT: No, Your Honor. They are not taking

13  away all of his bundle of rights. They're only limiting --

14  THE COURT: So you're only saying that the

15  Organic Act is violated if they take away all his rights?

16  MR. CABOT: It's conceivable that it may, Your

17  Honor, but I'm not even proposing that argument. But it is

18  conceivable that they try to take away, strip him of all his

19  rights, that there may be an Organic Act problem. But I

20  believe that's for the Court to decide, Your Honor. It's not

21  relevant for this particular case. But what is clear is that

22  the Legislature, in my mind, Your Honor, is that the

23  Legislature does have the right to limit and alter the role

24  and powers of the Attorney General. And I think that this

25  --

1          THE COURT:  As it pertains to his being the

2  Chief Legal Officer of the Government of Guam?

3          MR. CABOT:  Yes, Your Honor.  And one of the

4  examples of that is within the Organic Act, it also provides

5  for an elected prosecutor.  So what they're saying is that

6  the Attorney General -- the Legislature of Guam can create

7  an elected prosector, chief prosecutor, and strip away that

8  right from the role and responsible and authority that

9  presently sits with the Attorney General.

10          So I think that the -- First of all, Chief Legal

11  Officer is not defined, but it appears that Congress intended

12  to leave and reserve that right in the Legislature because it

13  hadn't before and it did not intend on disturbing that --

14          THE COURT:  As long as it did not diminish the

15  Attorney General's capacity to be the Chief Legal Officer of

16  the Government of Guam.

17          MR. CABOT:  I wouldn't say diminish, Your Honor,

18  I --

19          THE COURT:  Would this be the more reasonable

20  interpretation?

21          MR. CABOT:  In my mind, Your Honor, I do think

22  they have the right to limit his role.  And in that matter,

23  they are diminishing it.  But if they were to completely

24  strip him of his right, then perhaps there might be a

25  constitutional problem in that that respect.  What they're

1  doing now --

2          THE COURT: Aren't we talking supremacy clause

3  here? How can the Guam Legislature make an act that would

4  violate an act of Congress? Or limit the full expression

5  that needs to be given to a congressional amendment?

6          MR. CABOT: And it's my position that what the

7  Legislature is doing is not contrary to the Organic Act.

8  It's consistent. And in my opinion, the Congress did not

9  disturb the present frame work where the Legislature was --

10  already had that right to limit the role of the Attorney

11  General. Because in the Organic Act, it allowed the

12  Legislature prerogative to create the elected Attorney

13  General's position.

14          THE COURT: All right, but did it say that once

15  you made it elective, that you can change it?

16          MR. CABOT: It's silent on that issue, Your

17  Honor. But the fact that it also allowed them the

18  prerogative to --

19          THE COURT: Can Guam law abolish the office of

20  the Attorney General?

21          MR. CABOT: I don't know the answer to that,

22  Your Honor. But I do know that in the Organic Act, it does

23  say you can create an elected Attorney General, you can

24  create an elected Chief Prosecutor. And if they created the

25  Attorney General with all of these bundle of rights,

1  including prosecutorial rights, and then later, they

2  subsequently provide for Chief Prosecutor, they can strip him

3  of those rights.

4          THE COURT:  They could because it's provided for

5  in the Organic Act.

6          MR. CABOT:  That's correct, Your Honor.

7          THE COURT:  Expressly provided for so we would

8  have no problem with that.

9          MR. CABOT:  Correct.  But it also does not limit

10  or have any language that is clear that it disturbs or

11  changes the present frame work.  But the Legislature does

12  have the right to alter or somewhat diminish the role of the

13  Attorney General, and that's my position --

14          THE COURT:  That might be a problem really

15  because if that were to be the case, and I can see the Guam

16  Legislature perhaps saying, all these line agencies, have

17  your own attorney, where does that leave the Attorney

18  General?  Where does it leave the Congressional mandate in

19  legislating that the Attorney General be the Chief Legal

20  Officer of the Government of Guam?

21          It seems to be contradictory that you take away

22  his right to represent line agencies, Department of

23  Administration, Department of Agriculture, give it to some

24  other attorneys and say, well, that's still okay within the

25  Organic Act.  I have more problems there, I think.

1          MR. CABOT:  Yes, Your Honor, and that might be

2     the case if they try to go against what might appear to be

3     the intent of the Legislature.  But that is not the case

4     today, Your Honor.  Not every agency is given the specific

5     right to engage independent counsel.

6          THE COURT:  I know, but the Legislature, you

7     say, can.

8          MR. CABOT:  Yes, Your Honor.

9          THE COURT:  And that's what I'm trying to get

10    at.

11         MR. CABOT:  Yes, Your Honor.  And we believe

12    that they do have their right under the Organic Act, and it

13    appears that the Guam Supreme Court agrees with me.  And I'm

14    sure the Court is aware of the Airport case, the AB Won Pat

15    Guam International Airport case versus Moylan, which just

16    came out recently.  And in that case, Your Honor, they have

17    similar facts, the Guam International Airport was before the

18    Court, just like we're today, saying we're an autonomous

19    agency, we have the expressed right by the --

20         THE COURT:  But in this case though, it doesn't

21    present presumably the conflict interests that are apparent

22    in this case.

23         MR. CABOT:  That's correct, Your Honor.  That's

24    why we have all of the equities and rationale and

25    justification that were in the airport case, plus more,

1  because we would be stripped of our due process rights, our

2  ability to come before this Court, and we would be, in

3  effect, muted and gagged from being able to defend ourselves.

4  And in this particular case, Your Honor, this is

5  a civil rights action. Conceivably, there might be personal

6  liability on behalf of the Executive Director and the

7  Commission members. Now, gladly, it hasn't gone in that

8  direction but it is within the realm of possibility.

9  So we have Attorney General, again, that is

10 exercising his own personal notion of what is in the public

11 interest even if there is potential personal liability

12 exposure to the Executive Director and to the members of the

13 Commission. And I don't think that's correct, Your Honor.

14 And that's not what the Legislature intended clearly by the

15 statute.

16 And my opinion, Your Honor, and it's very

17 difficult to decide, and that's the big struggle that we're

18 dealing with today is, does the Organic Act abrogate and

19 remove the Legislature's right to limit the role of the

20 Attorney General's office, and I don't think so. And I agree

21 with the Supreme Court in the airport case where it

22 specifically said that the Attorney General, as Chief Legal

23 Officer, is charged with all the powers and duties pertaining

24 to the office of common law except insofar they have been

25 expressly restricted or modified by statute.

1           THE COURT:  In its reference to common law, see,

2   are they referring to common law under Guam law or common law

3   under federal law?  See, that's a distinction that was not

4   made.

5           MR. CABOT:  In my opinion, Your Honor, I think

6   it's a distinction without a difference with all due respect.

7           THE COURT:  It does, because common law that's

8   Guam, can be changed by the Guam Legislature.  Common law

9   that derives under federal common law can only be changed by

10  the federal government, so it's not the same.

11          MR. CABOT:  But in my opinion, Your Honor, the

12  -- in both scenarios, whether it be common law pursuant to

13  Guam statute, common law pursuant to the federal mandate,

14  both can be interpreted as being limited except insofar as

15  they have been expressly restricted from modifying by

16  statute.  I think you can read the --

17          THE COURT:  Is there any judge-made law that

18  says autonomous agencies, you can be represented by

19  independent counsel?  Is there Guam law that says, autonomous

20  agencies, you can be represented by independent counsel?

21          MR. CABOT:  Is there any statute, Your Honor?

22          THE COURT:  Is there any Guam common law that

23  says, autonomous agencies, you can be represented by

24  independent counsel?  Or counsel of your choice?

25          MR. CABOT:  I don't believe so, Your Honor.  It

1   has to be expressly mandated by the Legislature, which is
2   what we have with the Guam Election scenario --
3              THE COURT:  So, you know, when you say that the
4   common law can be amended by statute, you're not really
5   amending common law because there's no Guam common law that
6   says autonomous agencies, you can be represented by
7   independent counsel?
8              MR. CABOT:  5GCA 3103 addresses the common law
9   powers --
10             THE COURT:  No, but it's statutory?
11             MR. CABOT:  Yes.
12             THE COURT:  Your right to have independent
13  counsel is statutory.  It's not common law.
14             MR. CABOT:  That's correct, Your Honor.  But the
15  common law, whether it be by Guam statute or the federal
16  mandate in the Organic Act --
17             THE COURT:  So your ability to hire is not
18  derived from common law, it's statutorily derived.
19             MR. CABOT:  That's correct, before the Organic
20  Act Amendment.  But now, even if they call him the Chief
21  Legal Officer, I still think that there are limits to his
22  role, and that limit --
23             THE COURT:  You see, Guam law cannot be said to
24  have amended federal common law because that Guam law was in
25  existence prior to the adoption of the federal statute.

1          MR. CABOT:  I understand, Your Honor.

2          THE COURT:  So it cannot be said to have

3     amended.

4          MR. CABOT:  And it's my opinion that it did not

5     amend the Organic Act or federal law, Your Honor.  Again,

6     it's very difficult to decipher, but the way that I read the

7     intention of Congress is they always intended to reserve and

8     leave the present frame work where the Legislature was able

9     to set the parameters of the role of the Attorney General.

10         THE COURT:  But it did not say so, right?  That

11    is the problem.

12         MR. CABOT:  It did not say so and that's right

13    we're having this big struggle, Your Honor.  But I agree with

14    the Supreme Court that if you take a rigid rule and you give

15    him all these unfettered rules and responsibilities, that it

16    will lead to and it does lead to and it has led to very

17    prejudicial, very difficult hardships and burdens for the

18    individuals and the commissions that are faced with that

19    rigid rule.

20              As the airport has indicated, Your Honor, the

21    Legislature does have the right to restrict or modify the

22    common law powers of the Attorney General.  I believe, Your

23    Honor, Your Honor would be in a better position to know this,

24    and the way that I read your EITC ruling in the Santos case,

25    because you had cited to this very airport case for the

1  proposition that --

2      **THE COURT:**  Actually, the airport case was used

3  to put forth a position that when the Supreme Court decides

4  an issue as to local law, the meaning of local law, that's

5  the final word; we have to follow what the Supreme Court says

6  as to what local law says.  That's what we were referring to.

7      **MR. CABOT:**  I understand.  Although, as you

8  know, we cited for the proposition that common law powers and

9  duties may be subject to increased alteration or abridgement

10  by the Guam Legislature and that's what I would urge this

11  Court to follow would be the Guam Supreme Court ruling. There

12  were a myriad, a plethora of cases that were cited by both

13  sides.

14      I do not read any case cited by the Attorney

15  General for the proposition that where you have a state

16  constitution that calls them a Chief Legal Officer and gives

17  them all of this bundle of rights, yet you have a state law

18  that allows an agency or state officer independent counsel

19  where a court has in any event given that right of

20  representation to the Attorney General.  I haven't read any

21  cases that are directly on point and I don't think any of the

22  cases that were cited by the Attorney General are on point on

23  that issue. I believe that they're misplaced.

24      **THE COURT:**  Well, you know, there are cases out

25  there, but courts are having a hard time grappling between

1   the issues really.

2       **MR. CABOT:**  Yes, Your Honor.  Yes, Your Honor.

3   In a lot of the arguments that were made in this particular

4   case were made in every other case, I believe in the EITC

5   case and also in the Airport case, and the Supreme Court does

6   a very good job at dismissing a lot of the cases that were

7   cited from Mississippi, Alabama, Washington, Indiana,

8   California and Florida.

9       Many of these same cases are cited in the

10  instant matter, Your Honor.  And I would follow -- I would

11  urge the Court to follow the rationale of the Supreme Court

12  that in finding that those cases cited by the Attorney

13  General are not on point, especially with regard to the GEC.

14      **THE COURT:**  Mr. Moylan.

15      **MR. MOYLAN:**  Thank you, Your Honor.  Your Honor,

16  the first argument by Mr. Pangelinan should be addressed to

17  the extent of the argument was to cubbyhole the Attorney

18  General's office into what could be considered a Government-

19  paid ACLU.  We're not the ACLU, the Government of Guam and

20  we're not a public interest type of law firm.  Although in

21  essence, we serve the public interest.  We do more than just

22  that, Your Honor.  We actually represent and serve the

23  interest of the Government officials that are consistent with

24  the law and our interpretation of it.

25      I think the Court rightfully pointed out if we

1  take counsel's position, then I should stop issuing legal
2  opinions, because my legal opinions would be given the
3  treatment of the weight that they are -- basically, we'll
4  take it under advisement and then we'll take the legal course
5  of action that we feel we should take after consulting with
6  private counsels.

7       And I think the whole scheme of the way the
8  Government was created was that the Attorney General's legal
9  opinions would control the actions of Government officials
10 and, if they did not follow the legal opinion, then they'd
11 face the civil and criminal ramifications of it.  The
12 Attorney General's Office, in addition to being civil
13 litigators, were also prosecutors to be able to bring before
14 the Court criminal code violations that no other private
15 lawyer can do.  And that shows the suigeneris nature of our
16 office.  We're not here making money like private lawyers
17 are.  We're not only a part of the Government structure and
18 part of the Government laws, but more so in 1998, we became
19 an elected representative of the people; that we would have
20 greater control by the people, and I think that should be
21 pointed out.

22      Although we like to say that we are representing the
23 public and all their interest, we're so much more than that.
24 We are not just an ACLU type law firm.  The example is put
25 before the Court that the Governor passed this law dealing

1  with notice of provisions that was already in play for

2  purposes of an election that had occurred in 2004. The

3  problem with the example is the Governor signs the law. We

4  as lawyers and as the people's lawyers believe that law was

5  inorganic or unconstitutional. It was not a good law because

6  the harm had already occurred.

7          Now, if this was to go to court, is it the

8  Governor now to come and argue the law that he signed is a

9  good law, or is it the Attorney General to come in and say,

10  that this is a good law or not a good law. The Code

11  specifically envisions the Attorney General challenging

12  statutes as they're passed, and Mr. Pangelinan used the

13  example that when the Governor signed that law it affected

14  the notice of provisions for the election, if the Governor --

15          **THE COURT:** But are you, in defending the

16  Election Commission, though, are you challenging it? To me,

17  when you're challenging it, it means that you take an action.

18          **MR. MOYLAN:** We took an action inconsistent with

19  the Election Commission's position.

20          **THE COURT:** But taking an action means

21  prosecuting an action; you haven't prosecuted an action.

22          **MR. MOYLAN:** Interestingly, the scenario that

23  came into Court was we took a position, we said that the

24  election would be invalid. Now, nobody did anything until

25  the plaintiffs sued all of us, and it became the position

1 that it was a transactional issue. What do we do now guys?

2 You guys took the action there. We disagreed with you, but

3 we didn't sue you, and that was within our right. We were

4 just waiting and seeing what happened.

5        Then the plaintiffs came out and sued all of us.

6 So, does everybody come into court now and defend their

7 positions? Or, under the way that our structure of

8 Government is organized, does the Attorney General evaluate

9 the position that they took, which happened to be that they

10 took an improper position, and then go and defend before this

11 Honorable Court. Also, Your Honor --

12        **THE COURT:** But, see, the rulings that we've

13 made have given you the right to bring an action in your own

14 name or in the public interest.

15        **MR. MOYLAN:** No, the Government of Guam, the

16 statute that was read, Title 5 GCA, our powers and duties say

17 that it's not in our name; it's in the Government of Guam's

18 name. And as criminal prosecution in the people of Guam, the

19 Government of Guam's name, we're just the lawyers

20 representing. And as they cited, we have several cases in

21 the Superior Court right now where the Government of Guam, on

22 behalf of the -- the Attorney General on behalf of the

23 Government of Guam is suing.

24        Also, Your Honor, the statement was made that

25 the -- Let's move on here. Under the arguments, again, Your

1    Honor, I think the best way to analyze the arguments of the
2    opponent counsels is to take it to its logical conclusion.
3    As the Court was just pointing out with the GEC's counsel,
4    the power to diminish is the power to destroy.

5         One inch away from taking away what Congress
6    gave us and it's going to go all the way. It's a slippery
7    slope. How much power can they take away, how much power can
8    they limit that Congress gave, and I'm speaking as to the
9    Guam Legislature. It's an absurdity. It's what we learn in
10   Constitutional Law 101; the supremacy clause controls period.

11        There is no qualification. Paragraph 2 of the
12   Airport decision that was recently rendered by the Supreme
13   Court of Guam embodied the whole problem with the legal
14   analysis. The local Legislature, as much as our office
15   supports it, cannot abrogate what Congress said. And I
16   believe that that's the truism among all of us in this room
17   today.

18        Also, the question of why did Congress give the
19   option to the Guam Legislature to make our office elected.
20   Under the scenario that's being presented, there's no reason
21   why we'd be elected if we cannot come in here on behalf of
22   the entire Government.

23        The administration would control the cabinet
24   members' positions, as well as the Attorney General's
25   position, and the Attorney General disagrees with the

1   cabinet, or with the Governor, he would be removed under the

2   powers of the Governor to remove cabinet members' appointees.

3          The fact that this is an elected office and that

4   Congress wanted it to be elected and the fact that Congress

5   put it in the prosecution are two significant points that

6   should not be diminished by the -- permitting other

7   individuals to appear before the Court as entities of the

8   Government. They're not here to set legal policy, Your

9   Honor. It is the Attorney General's office. And if I'm just

10   hear to listen to their legal position and to promote it,

11   then why am I elected? We're all here to serve the public,

12   but I'm here especially to look at the legal -- to ensure the

13   law is being followed. That's the Attorney General's rule;

14   to make sure the law is being followed.

15          They can't tell me that the laws are being

16   followed and come to this Court and say that. They can tell

17   me and I can say, I don't agree with you but I'm going to

18   tell the Court that I don't think the law is being followed,

19   and ultimately, the jury and the Court are the ones to make

20   that final decision.

21          But this transactional cost that -- we're

22   basically arguing -- we're airing our dirty laundry, Your

23   Honor. That's what's happening right now. I'm saying that

24   I'm your representative. They're saying I'm not their

25   representative and we're coming to you to complain about it.

1    When in actuality, the Court must set a very firm rule that
2    if you guys really wish to speak, the Attorney General must
3    give that position.

4              Now, there is a distinction and ex parte Weaver
5    sums it up. When they're dealing with the position, the
6    power of their office, and ex parte Weaver referred to the
7    elected official, which is the Governor, who's really their
8    boss, you know, the Election Commission. That is the
9    executive branch for purposes of what's going on in here.
10   The Governor was given the ability to come into court to
11   express his power as granted by the law. And we're not
12   arguing that.

13             And I think Mr. Wineberg, where we're trying to
14   clarify it, we cited and we stand behind the ex parte Weaver
15   case authority. In this case, there is no dissonance between
16   the Governor's position and our position to the extent that
17   it doesn't deal with his power. The only power I think the
18   Governor has in this case is whether he can call a special
19   election or can be forced to call a special Election.

20             And in that respect, we're consistent. He does
21   not believe that he can be forced. We don't believe he can
22   be forced. Therefore, he should not be in this case. Now,
23   if he says that, hey, I got power under the Organic Act and I
24   wish to express it, then he can come in. And that was ex
25   parte Weaver. But not the Election Commission. And, again,

1  these are elected officials that are coming forward that are

2  expressing their powers, not appointed officials of the

3  elected official.

4         And I think there is an important distinction as

5  well.  I believe that the Court's questioning, if I

6  understood it correctly, is correct as to GEC's counsel's

7  interpretation of the statutes which give them the authority

8  to have a counsel.  Take it to its logical extent, what if

9  the Guam Legislature said GEC, you cannot have an attorney.

10 Will Mr. Torres (sic) and the Election Commission say, wait,

11 we have to be heard, therefore, we're going to have an

12 attorney.  And they pro bono Mr. Cabot, because you know,

13 that would be a financial problem if Legislature says you

14 can't have a lawyer.  But they said, wait a minute, we feel

15 so strongly about this issue that we're going to hire

16 ourselves a lawyer pro bono, pay out of their own pocket and

17 they make an appearance in this Court.

18        You know, the structure is one Government, one

19 body, as Mr. Wineberg pointed out.  And that body, through

20 the Legislature, through Congress in a way, too, has said,

21 when you come into court, we only want the Attorney General

22 to state your position.  In the legislative level, that would

23 pose a problem for the Election Commission.  But in the way

24 that GEC is arguing, they can still come in here, even if the

25 Legislature told them that they couldn't have an attorney.

1   So, again, take it to its logical conclusion and the proper
2   party here, on behalf of the Government and all its entities,
3   should be the Attorney General's office.

4          We have deferred in reference ex parte Weaver,
5   the Governor, and we believe the Governor, in situations, has
6   the ability.  In the EITC tax case, the Court has taken the
7   congressional pronouncements and differentiated them.  The
8   Governor, under the Court's interpretation, has the power to
9   administer and to enforce the tax system; hence, the Governor
10  had a right to be there.

11         The Attorney General also had a right to be
12  there because it represented the Government of Guam.  But
13  this Court was arguing in terms of the Organic Act structure.
14  What the GEC is doing is they're trying to push the
15  legislative statutes to the level of a constitutional Organic
16  Act level.  And I believe this Court understands that that
17  cannot be done.

18         There is a federal common law that was created
19  and there is no Guam common law and local Legislature cannot
20  alter or diminish the power of Congress's granting the
21  federal common law.  It can increase and add to the powers
22  and duties of the Attorney General's office, but cannot
23  decrease or reduce the power.  And those were the troubling
24  statements in the recent Supreme Court of Guam decision that
25  it could abridge the power.

1          Your Honor, we also have indicated, in prior

2     briefs and maybe not in this one, that the Chief Legal

3     Officer language, the Court asked, well, how do we determine

4     the powers of the Attorney General's office.  It's been

5     referenced that well, it's the federal common law power that

6     was granted.  Well, Chief Legal Officer were the magical

7     words that were used in 1998, not out of wool cloth.

8          Mr. Troutman referenced states such as Illinois

9     Mississippi, South Carolina, Florida, Georgia, Massachusetts,

10    Montana, and Washington state.  Those states specifically had

11    used and interpreted language on legal officer, Chief Legal

12    Officer, within their constitutions and dealt with many of

13    these ethical situations over the past century.

14    Interestingly, the --

15         **THE COURT:**  See, whatever every state has

16    decided regarding their Attorney General is their state

17    common law.

18         **MR. MOYLAN:**  The interpretation I point on that

19    particular question, primarily to Illinois, which has been

20    adopted even by the sitting Justice Gatewood in the Castro

21    decision, the lower court decision.  The Illinois statute

22    specifically talked about the ethical considerations and that

23    we are suigeneris and we have special standing before the

24    Court and should not be treated like a private law firm as

25    counsels are arguing today.

1    Again, Your Honor, the language originally went
2  to Congress, and this was when Delegate Underwood was there,
3  and I have a whole copy of it.  It was Section 3 of this
4  particular bill.  It was introduced by Delegate Underwood.
5  The original language stated the Government of Guam may
6  establish by law an Office of Attorney General within the
7  executive branch of the Government of Guam.  And then it says
8  such law shall provide for certain provisions.  That
9  statement was not adopted by Congress eventually.

10    Also, Your Honor, the language -- we are the
11  only executive branch office that doesn't have subject to the
12  laws of Guam in the Organic Act.  And that's important
13  because it shows that the Governor -- I believe the public
14  auditor just authorized the Governor and Lieutenant Governor
15  have statements after their enabling legislation that says
16  subject to the laws of Guam in the Organic Act.

17    When Congressman Underwood made the 1998
18  amendment decades after the Organic Act language was adopted,
19  I believe in 1969 or '70, for the elected governor, they did
20  not put the language subject to the laws of Guam with the
21  Attorney General's language.  And, hence, the reason why the
22  local Legislature could not modify its language.

23    The Congressional history also supports that
24  they want an attorney general strong enough to be able to
25  perform certain duties of enforcing the law without being

1   subject to local, political interference.  Hence, if anybody

2   wants an amendment to the attorney general's authority, they

3   must go back to Congress and present that to the Congress for

4   change.

5         But the original language as used, as well as

6   Resolution, I believe it was 186, presented at the time to

7   the Congress, specifically wanted the Attorney General

8   subject to the laws passed by the legislature.  But Congress

9   did not agree with that language and passed it in its current

10  form, which, again, shows by actual Congressional history

11  that this office was not subject to legislative altercation

12  by reducing the power.

13        Illinois, by the way, Your Honor, does put

14  subject to the laws of their government legislature where

15  they have their Legal Officer language.

16        **THE COURT:**  So does that mean that we go to

17  Congress to determine what your duties and responsibilities

18  are?

19        **MR. MOYLAN:**  Not at all, Your Honor.  The

20  language, Chief Legal Officer, embodies the century of legal

21  -- of power granted to that type of language.  And in the

22  cases that the Court pointed out, federal common law -- and I

23  do have a list of the federal common law powers or the common

24  law powers as have been adopted in states where jurisdictions

25  that use language such as ours.

1    THE COURT:  You see, that's my whole point

2  really that when you're talking about the common law powers

3  of the Attorney General, you're talking about state common

4  law powers.

5    MR. MOYLAN:  Interestingly, Your Honor, we're

6  the only local jurisdiction -- the only state or territory,

7  for that matter, that has its powers in the federal

8  constitution.  I mean, the Federal United States Codes.  No

9  other territory and no other state has the unique character

10  that we have.

11    Puerto Rico, Virgin Islands, American Samoa,

12  their attorneys general are purely local statutory

13  enactments.  All the states using their own local

14  constitutions.  But Guam, because we're administered by

15  Congress, we have that Organic Act; our constitution goes

16  into their federal statutes, have -- we're the only Attorney

17  General, other the United States Attorney General, who's

18  appointed to be in a federal statute.  And that's the

19  significance.  That in itself showed why we're there is

20  because of the protection against local alterations of our

21  power.  The statement in the federal code says, one, you

22  shall --

23    THE COURT:  You know what the problem is though,

24  the act is the void of any description to your power.

25    MR. MOYLAN:  Your Honor, in fact, there's two

1    responses. One, Chief Legal Officer of the Government, it's
2    a statement of power in itself. Chief Legal Officer of the
3    Government.

4              THE COURT: That's what we need to interpret.
5    And that what's we need to define.

6              MR. MOYLAN: Yes, sir. But in a way, it's a
7    power in itself. It's a statement. Chief means the head,
8    top. Legal officer, attorney, of the Government of Guam

9              THE COURT: So do we interpret your powers in
10   relation to the powers of the United States Attorney General?

11             MR. MOYLAN: I don't believe that that was part
12   of the Congressional history. But at the same time, we are
13   both peoples -- We are the attorney for the people. More
14   importantly, again, Your Honor, because the Congressional
15   history shows -- how do we choose that language? It was
16   Delegate Underwood. It was his office that presented it
17   originally. It was the committee on -- it was the last --
18   whatever the head of Alaska said at the time.

19             He -- they looked at local jurisdictions. In
20   Mr. Troutman's Congressional history, his letters to Delegate
21   Underwood, they referenced Illinois, specifically the Chief
22   Legal Officer language. And that's why it embodied -- it
23   pulled in the case law interpretation of Legal Officer. And,
24   again, that's why I have a list of thirteen powers, common
25   law powers, that the states have afforded to that language

1  when the states were determining what does Chief Legal
2  Officer mean in their jurisdictions, which Guam incorporated
3  in 1998 after their century-long debate over the issue and
4  case authority.  We summed it up.  Instead of saying okay,
5  these are all your powers, all thirteen of them or all twenty
6  of them.

7          THE COURT:  Your power to prosecute is based
8  solely on Guam law?

9          MR. MOYLAN:  No, sir.  Thank you, Your Honor,
10  for bringing that up.  It is -- number 8 on my list here;
11  prosecute criminal activity is a common law power of the
12  Attorney General.  The statute that's cited by GEC's counsel
13  is the Organic Act statute.  As the Court pointed out, the
14  Organic Act puts all these little powers where it wants each
15  position to hold.  Well, it said, first -- lists the public
16  prosecutor law --

17          THE COURT:  But there's no Guam law.  There's no
18  Guam coding by any court that says you have the right to
19  prosecute; it's statutorily derived.

20          MR. MOYLAN:  In fact, Your Honor, it is federal
21  common law.  The power to prosecute is a federal common law
22  power given to the Attorney General.  The power to separate
23  the office's power to prosecute is in the Organic Act and
24  says that you can pull that power away from the Attorney
25  General if Guam Legislature can pass the law says so.  Just

1  like you can make the Attorney General elected if you want
2  to, local Legislature.  The senators, congressmen,
3  specifically said you can do these things if you choose to do
4  so.  Otherwise --

5        THE COURT:  But would that be incorrect to say
6  that under Guam law, historically, the ability to prosecute
7  belonged to the island attorney, and then from there it was
8  transferred to the Office of the Attorney General?

9        MR. MOYLAN:  The statutory scheme specifically
10  has a section in there; the Attorney General shall be the
11  public prosecutor.  It's in Title 5.  It's one of the powers
12  delegated to the statutory Attorney General in our code prior
13  to the 1998 amendment.  That's why they have a problem, the
14  Governor has a problem, saying that he has the duty to
15  faithfully execute the law.  He cannot go into Court tomorrow
16  and represent the people of Guam and prosecute Joe Blow
17  Citizen.

18        That power has been specifically reserved by
19  Congress, and even our local statutes, before the 1998
20  Congressional amendment, to only the Attorney General.  In
21  the past, though, the Governor really did control prosecution
22  because he controlled the Attorney General by appointment.
23  If the Attorney General didn't do something the Governor
24  wanted, he could replace him with another Attorney General.
25  And, of course, this is subject to Congressional legislative

1   confirmation process.

2           But, yes, the power to prosecute is part of the

3   federal common law powers in the Organic Act, but can be

4   taken away by legislative enactment by the public prosecutor

5   as permitted under the Organic Act. The Office of the

6   Attorney General also, Your Honor, is the only other

7   executive branch agency or entity, other than the Governor

8   and Lieutenant Governor, and as well as the Legislature and

9   the Judicial branch that must exist.

10          The fact that -- the way the language is used in

11   the Organic Act, unlike the Public Auditor, where it says the

12   Legislature can't create Public Auditor, Congress said you

13   shall have a Chief Legal Officer who shall be the Attorney

14   General of Guam and shall be the Chief Officer of the

15   Government of Guam.

16          That says two things: One, you shall have an

17   Attorney General that cannot be eliminated by local statute;

18   and two, these are his powers. They didn't say, Guam

19   Legislature, define what his powers are. They said, he shall

20   be the Chief Legal Officer of the Government of Guam. It's a

21   statement saying that he shall exist, whether as appointed or

22   elected, and this is what it is; Chief Legal Officer of the

23   Government.

24          And, again, that's all in the Organic Act.

25   We're talking the constitutional law, not subject to

1   legislative alteration to reduce. That question has come
2   before the other jurisdictions about what the legislature
3   could do in those other states. They could add to the powers
4   and add to the duties, but not diminish. They can give more
5   duties to the Attorney General but they cannot diminish the
6   duties or the power.

7   There's also a statement made about the personal
8   liability, Your Honor. The Attorney General's office is
9   representing this entire Government and everyone's official
10  capacities. If there was in 1983, potential action against a
11  Government official, there's a separate issue on whether or
12  not the Attorney General's office would represent that
13  particular entity, and that person cannot be using any
14  Government resources for defending themselves personally
15  without the -- I believe it's the Attorney General and the
16  Governor that must authorize any defense of personal
17  lawsuits, personal liability against Government officials.

18  I think that is the scheme of which has been set
19  up. We're here only on official capacity. That was the cite
20  made by GEC's counsel that they were sued on a personal
21  capacity. And I think that kind of sums up why we're here,
22  Your Honor. We're all one Government. We're all here doing
23  official acts. And, ultimately, the people of Guam are the
24  client; are the client of the attorney, and the people who
25  direct and place the other Government officials. But the

1   scheme is one -- it's supposed to be one coherent scheme, and
2   not broken.

3           THE COURT:  All right, Mr. Attorney General, do
4   you have anything else to say?

5           MR. MOYLAN:  That is all, Your Honor.  Thank
6   you.

7           THE COURT:  The matter that is before the Court
8   for a motion to strike, obviously, we're faced with deciding
9   difficult issues really, and this decision has to come out in
10  the form of a report and recommendation to the district judge
11  in which the parties are given the opportunity to file their
12  objections to the Court.

13          In looking at the matter before the Court, I
14  just wanted to tell the parties where there are areas of
15  concern that -- I'm concerned about.  And as I've indicated
16  in my questioning of Mr. Wineberg, really, one of the
17  questions that concerns me most is the role of the Attorney
18  General.  Because he does have a dual role and in his role of
19  defending a Government official or a Government entity, what
20  are his responsibilities in that regard.  Furthermore,
21  whether the Rules of Professional Responsibility applies, so
22  that in effect, he comes in and represents and represents
23  based on the desires of the defendant that he represents.

24          The other thing I'm looking into is whether the
25  matter that's before the Court has reached a point where

1  there are obvious conflicts, and perhaps possible

2  representation; the Election Commission has asked us to rule

3  on a constitutional issue.  That's whether Guam law --

4  whether he, under Guam law, can continue to be -- to serve,

5  rather, as counsel for the Guam Election Commission, and

6  obviously, constitutional issues, to the extent that they can

7  be avoided, based on other reasoning, that will also be my

8  view to the extent that we need not decide a constitutional

9  issue that would be best in deciding this matter.

10          So those are concerns that are before me.  And

11  to the extent that we need not address a constitutional

12  issue, the Court will not address it at this point.  I've

13  missed my lunch, but I want to congratulate the attorneys for

14  their arguments before the Court.

15          This is an interesting area because we're moving

16  along.  We're making laws.  We're moving along.  The Attorney

17  General, his elected position, is new within the Government

18  of Guam.  His duties and responsibilities and roles are

19  emerging and we don't know where it goes at this point.

20          So I hope -- I want to thank you, really, for

21  your participation this afternoon.  It was worth every minute

22  sitting here listening to you make these arguments.  It's

23  worth missing my lunch.  And let me thank you for being here

24  and your excellent presentation to the Court today.

25          And let me close by saying that, hopefully, I

1  can have a report and recommendation to be submitted to the

2  district judge some time next week.  So, counsel, on behalf

3  of the Court, thank you very much for being here this

4  afternoon and thank you for the fine arguments that you've

5  presented to the Court.  Thank you and good day.

6         **MR. MOYLAN:**  Thank you, Your Honor.

7         **MR. PANGELINAN:**  Thank you, Your Honor.

8         **MR. CABOT:**  Thank you, Your Honor.

9

10                        [Whereupon at 2:08 p.m., the

11                        proceeding was concluded.]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# REPORTER'S CERTIFICATE

DISTRICT COURT OF GUAM    )

    I, Veronica A. Flores, Certified Shorthand Reporter, hereby certify that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 105, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

    Witness my hand at Barrigada, Guam, this 21st day of March 2005.

_____
Veronica A. Flores, CSR-RPR