

Douglas B. Moylan
Attorney General of Guam
Robert M. Weinberg
Assistant Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)



FILED
DISTRICT COURT OF GUAM
MAR 29 2005
MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

LOURDES P. AGUON-SCHULTE,

  Plaintiff,

   vs.

THE GUAM ELECTION COMMISSION,
 et al.

  Defendants.

JAY MERRILL, etc., et al.

  Plaintiff,

   vs.

THE GUAM ELECTION COMMISSION,
 et al.

  Defendants.

**Civil Case No. 04-00045**

**Civil Case No. 04-00046**

**ATTORNEY GENERAL'S OBJECTIONS
TO FINDINGS AND
RECOMMENDATIONS BY
MAGISTRATE JUDGE**

**ORIGINAL**

# TABLE OF AUTHORITIES

## Cases

*American Legion Post 279 v. Barrett*, 20 N.E.2d 45 (Ill. 1939)............................................ 11, 13

*Battle v. Anderson*, 708 F.2d 1523 (10th Cir. 1983)........................................................ 15

*Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980) ............................................... 2, 9

*Chun v. Board of Trustees of Employees' Retirement Sytstem*, 87 Haw. 152, 952 P.2d 1215

    (1998)...................................................................................................................... 11, 12

*Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865 (Ky. 1974)..................................... 15

*Connecticut Comm'n of Spec. Revenue v. Connecticut Freedom of Information Comm'n*, 387

    A.2d 533 (Conn. 1978) .................................................................................................... 15

*Department of Mental Health v. Coty*, 232 N.E.2d 686 (Ill. 1967) ............................................... 13

*Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813 (Okla. 1973) ..................................................... 15

*Environmental Protection Agency v. Pollution Control Board*, 69 Ill.2d 394, 372 N.E.2d 50, 14

    Ill.Dec. 245 (1977)...................................................................................................... 14, 16

*Ex parte Weaver*, 570 So. 2d 675 (Ala. 1990)......................................................................... 15, 17

*Feeney v. Commonwealth*, 366 N.E.2d 1262 (Mass. 1977)..................................................... 15, 17

*Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191 (Tx. 1955)..................................................... 14

*Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth.*, 456 N.E.2d 50 (Ill. 1983)............... 13

*Haeuser v. Dept. of Law*, 97 F.3d 1152, 1156 (9th Cir. 1996) ........................................................ 2

*In re: Request of Governor Felix P. Camacho Relative to the Interpretation and Application of*

    *Sections 6 and 9 of the Organic Act of Guam*, 2004 Guam 10, 2004 WL 1293239 (Guam

    2004) ................................................................................................................................ 2

*Manchin v. Browning*, 170 W.Va. 779, 296 S.E.2d 909 (1982)..................................................... 10

*Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676 (Mich. App. 1977)..................... 18

*Nelson v. Ada*, 878 F.2d 277 (9th Cir. 1989) ......................................................................... 13, 14

*Opinion of the Justices,* 373 A.2d 647 (N.H. 1977) ........................................................................ 18

*People ex rel. Castle v. Daniels,* 132 N.E.2d 507 (Ill. 1956) ....................................................... 13

*People ex rel. Hartigan v. E & E Hauling,* 607 N.E.2d 165(Ill. 1992) ............................... 11, 13

*People v. Massarella,* 72 Ill.2d 531, 382 N.E.2d 262 (Ill. 1978)................................................... 14

*Perillo v. Dreher,* 314 A.2d 74 (N.J. Super. Ct. App. Div. 1974) ................................................ 18

*Prisco v. State of New York,* 804 F.Supp. 518

    (S.D.N.Y. 1992)................................................................................................................................. 15

*Public Defender Agency v. Superior Court,* 534 P.2d 947 (Alaska 1975) .................................... 17

*Reiter v. Wallgren,* 184 P.2d 571 (Wash. 1947) ............................................................................ 15

*Scott v. Briceland,* 65 Ill.2d 485, 359 N.E.2d 149 (Ill. 1977)........................................................ 14

*Secretary of Administration and Fin. v. Attorney Gen.,* 326 N.E.2d 334 (Mass. 1975)............... 15

*Slezak v. Ousdigian,* 110 N.W.2d 1 (1961)............................................................................ 15, 17

*State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.,* 35 N.W. 118 (Neb. 1887) . 17

*State ex rel. Igoe v. Bradford,* 611 S.W.2d 343 (Mo. Ct. App. 1980) ......................................... 17

*State of Illinois v. Bristol-Myers Co.,* 470 F.2d 1276 (7th Cir. 1972) ......................................... 13

*State v. Chastain,* 871 S.W.2d 661 (Tenn. 1994) ......................................................................... 12

*State v. Heath,* 806 S.W.2d 535 (Tenn.Ct.App.1990) .................................................................. 12

*Tennessee ex rel. Comm'r of Trans. v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734

    (Tenn. Ct. App. 2001) ........................................................................................................... 11, 12

## Federal Statutes

28 U.S.C. § 636(b)(1) ................................................................................................................ 1, 2

48 U.S.C. § 1421g.......................................................................................................................... 3

48 U.S.C. § 1421g(d)(1) ...................................................................................................... 1, 4, 9

48 U.S.C. § 1421g(d)(2) .............................................................................................................. 10

48 U.S.C. § 1422................................................................................................................... 3, 9

ii

## Guam Statutes

5 G.C.A. § 30103 ................................................................................................................... 5

## Other

Illinois Const., Art. 5, § 15 ..................................................................................................... 9

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | | |
|---|---|---|
| LOURDES P. AGUON-SCHULTE, | ) | **Civil Case No. 04-00045** |
| Plaintiff, | ) | |
| vs. | ) | |
| THE GUAM ELECTION COMMISSION, et al. | ) | |
| Defendants. | ) | **Civil Case No. 04-00046** |
| JAY MERRILL, etc., et al. | ) | **ATTORNEY GENERAL'S OBJECTIONS** |
| Plaintiff, | ) | **TO FINDINGS AND** |
| | ) | **RECOMMENDATIONS BY** |
| vs. | ) | **MAGISTRATE JUDGE** |
| THE GUAM ELECTION COMMISSION, et al. | ) | |
| Defendants. | ) | |

Pursuant to 28 U.S.C. § 636(b)(1), the Attorney General of Guam respectfully submits the following written objections to the findings and recommendations of the Magistrate Judge filed March 16, 2005:

The problem with this case is the Magistrate Judge's misapprehension of Congressional intent in defining the powers and duties of the Office of Attorney General when it amended the Organic Act in 1998 to provide that "[t]he Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." *See* 48 U.S.C. § 1421g(d)(1). All parties agree that the Office of Attorney General, prior to being established in the Organic Act and after, had and has common law powers. What the parties disagree about is what role the Legislature of Guam may still play in defining, altering, abridging, diminishing and even abolishing those powers. The

practical effect of the Magistrate-Judge's recommendations and findings is to eviscerate the authority of the Attorney General with respect to litigation decisions of agencies and instrumentalities of the Government of Guam. That is not what Congress intended for the term "Chief Legal Officer of the Government of Guam."

At page 6 of the Magistrate Judge's Findings and Recommendation, the Court suggests:

> One could speculate that Congress may have thought it inappropriate to articulate the duties and powers of that office since Guam's Attorney General had been appointed since the Organic Act's inception in 1950 and continued to remain appointed (48 years of gubernatorial appointments). Moreover, local legislation presently provided areas of duties and responsibilities for the appointed Attorney General.

But speculation as to Congressional intent is unnecessary in light of the Congressional history of the amendments to the Organic Act, none of which is adequately addressed by the Findings and Recommendations.[1] All parties agree that the Organic Act, as amended in 1998, created the "constitutional" office of Attorney General as chief legal officer of the government of Guam, and authorized the Guam Legislature to establish it as an elected office.[2] But unlike separate provisions of the Organic Act which expressly authorize the Guam Legislature to prescribe powers and duties of other offices, the Organic Act is silent with respect to its authority to prescribe the powers and duties of the Office of Attorney General. The Magistrate Judge speculates from that silence that, in essence, that Congress may have intended to maintain the

---

[1] 28 U.S.C. § 636(b)(1) provides with respect to objections to the recommendations and findings of the magistrate judge that a district judge "may also receive further evidence...."

[2] The Organic Act of Guam, 48 U.S.C. § 1421 *et seq.*, functions as Guam's constitution. *See Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980); *Haeuser v. Dept. of Law*, 97 F.3d 1152, 1156 (9th Cir. 1996); *see generally, In re: Request of Governor Felix P. Camacho Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*, 2004 Guam 10, ¶¶ 19-32, 2004 WL 1293239 (Guam 2004). The difference between Guam's "constitution" and a State's constitution is, of course, that the electorate of a State can propose, ratify, and amend its own constitution, whereas it requires a literal "act of Congress" to amend the Organic Act of Guam.

2

status quo with respect to the Guam Legislature's pre-existing authority to modify the powers and duties of the Attorney General.

But, there is no reason to speculate. For if Congress had intended the Guam Legislature to be authorized to prescribe the powers and duties of the Office of Attorney General, Congress certainly knew how to do so. For example, separate provisions of the Organic Act expressly authorize the Legislature to prescribe the powers and duties of other constitutional officers such as Lieutenant Governor, Public Prosecutor and Public Auditor. *See e.g.*, 48 U.S.C. § 1422 ("The Lieutenant Governor shall have such executive powers and perform such duties *as may be* assigned to him by the Governor or *prescribed by this chapter or under the laws of Guam*.") (emphasis added); *and see* 48 U.S.C. § 1421g ("The Government of Guam *may by law establish* an Office of Public Prosecutor and an Office of Public Auditor.") (emphasis added). But unlike other "constitutional" officers established by Congress, the Organic Act is silent as to the local Legislature's authority to prescribe the powers and duties of the Office of Attorney General. The Magistrate Judge erred in speculating that the local Legislature has implied authority that it only has expressly with regards to other officers established by Congress for the Government of Guam.

In the 1990's, Guam struggled with the serious question whether the Guam Attorney General should be created in the Organic Act or not. As noted by the Magistrate Judge, for 48 years, Guam already had an appointed Attorney General, subject to legislative and gubernatorial control. Should the Attorney General continue to be an office of local creation, appointed by the governor and subject to limitations imposed by the Guam Legislature? Or should the office of Attorney General have constitutional status within the Organic Act itself? Should the office of Attorney General be answerable to the executive branch, or the legislative branch in any way? Or

3

should it be like the public auditor, an office that the Organic Act authorizes the Legislature to create but which is not itself created by the Organic Act? [3]

A review of the Congressional history of the 1998 Congressional Amendment to the Organic Act, 48 U.S.C. § 1421g(d)(1), reveals that, contrary to popular belief and the Magistrate Judge's Findings and Recommendations, the Organic Act was not changed merely to authorize the Legislature to created an elected Office of Attorney General.[4] The principal thrust of the Congressional enactment was to remove the Attorney General from the sphere of political influence and of both the Executive and Legislative Branches. It was to "organically" create the position so that it would be immune from interference from local influences, including the Executive and Legislative Branches.

---

[3] 48 U.S.C. § 1421(g) of the Organic Act, "Establishment and maintenance of public bodies and offices," also provides that "the Government of Guam may by law establish an Office of Public Prosecutor and an Office of Public Auditor." These offices are different from the Office of Attorney General because the Organic Act does not itself create them, but merely authorizes the Legislature to do so. If the Legislature were to decide not to create either office (as it has to-date in the case of the Public Prosecutor), then both could legally be abolished by the Legislature. Not so with the Office of Attorney General, as it is the Organic Act, not local legislation, which establishes the Office and defines its duties. And yet, the practical effect of the Magistrate Judge's Recommendation would authorize the Legislature of Guam to strip away all core powers, duties and functions of the Office of Attorney to the point that it is merely a shell, an office in name only.

[4] If all Congress intended was for the Legislature of Guam to have the authority to establish the Office of Attorney General and provide that it be an elected office, it would have been quite an easy task. As was true already of the Office of Public Auditor and Public Prosecutor, Congress could merely have amended the Organic Act to provide: "The Government of Guam may by law establish an Office of Attorney General. The Attorney General may be removed as provided by the laws of Guam." *Cf.* 48 U.S.C. § 1421(g) (Offices of Public Auditor and Public Prosecutor). Or, if Congress had intended to establish an elected office in the Organic Act but also authorize the Legislature to prescribe its powers and duties, it could easily have amended the Organic Act to read like the provisions pertaining to the Office of Lieutenant Governor: "There is hereby established the office of [Attorney General] for the Government of Guam. The [Attorney General shall be the Chief Legal Officer of the Government of Guam] and shall have such powers and perform such duties as may be assigned prescribed by this chapter or under the laws of Guam." *Cf.* 48 U.S.C. § 1421(g). Yet, Congress rejected just such language tendered by the Legislature of Guam.

4

The Congressional Record of the 1998 Congressional Amendment is located at H.R.Rep. 105-742, dated September 24, 1998:

> Public concerns revolve around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause. In response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (sixty-nine percent) favored an elected position.

But an elected Attorney General, whose powers are subject to prescription by the local Legislature was not an end in itself. There was more.

For long before this change, the Guam Legislature had already conferred upon the Attorney General common law powers. *See* 5 G.C.A. § 30103. And those powers were subject to legislative prescription. What is missing from the Magistrate Judge's Findings and Recommendation is analysis from the Congressional Record that Congress intended to incorporate common law powers for the Guam Attorney General, within the Organic Act itself, that are immune from interference by the Legislature by use of the phrase "Chief Legal Officer of the Government of Guam."

House of Representatives Report 105-742 reflects that an elected position was but one solution to the problem of political interference. On Guam, positions such as the Public Auditor and the Attorney General were created to ensure accountability directly to the people. These positions provide internal checks and balances for the government of Guam. Senator Barrett-Anderson's (R) testimony in the very first Committee hearings on the proposed amendment reveals her concern that the Attorney General was a puppet of the executive. She testified that "the people of Guam expect the Attorney General to protect their interest above all else. An appointed Attorney General unfortunately must respond to a great extent to the concerns of the Governor." *U.S. Territories Issues: Hearings on Resolution #433 Before the Subcommittee on Native American & Insular Affairs* (statement of Senator Elizabeth Barrett-Anderson, 23rd Guam

5

Legislature, 7/24/96 Cong. Testimony, 1996 WL 10830029). Over a year later, at the second round of Committee Hearings, then-Senator and former Speaker Ben Pangelinan (D) echoed this concern, "[I]t has become inherently clear that the appointed Attorney General is not capable of isolating himself or herself from political interference." 10/29/97 Cong. Testimony, 1997 WL 16138742. But political interference from whom? It was not merely how the Attorney General was selected that was of concern. It was how best to ensure the independence of the Office, once selected, that was the primary concern.

The Legislature's first considered solution to the problem of political interference was Bill Number 571. This bill would have transferred the supervision and control of the Attorney General from the Executive Branch to the Legislative Branch. Compiler of Laws Charles Troutman became involved in the debate surrounding the nature of the Office, and entered into a historic series of correspondence with Guam's delegate to Congress, Congressman Robert Underwood about the issue. Compiler Troutman responded to Bill No. 571 with a letter to Congressman Underwood, explaining that simply switching the possible influence over the office from the executive to the legislative hardly met the objective of making the Office independent: "[T]he position, if you mention it at all, must be created by the Organic Act, not just permitted." Letter from Charles H. Troutman to Congressman Underwood of April 1, 1997. (Exhibit 1) *See generally*, Testimony of Charles H. Troutman, Acting Attorney General of Guam in Favor of H.R. 2370, dated October 29, 1997. (Exhibit 2)

Congressman Underwood replied to Compiler Troutman's letter on July 10, 1997, seeking further input, in which he stated, "the language establishes the office of the Attorney General in the Organic Act," and then requested further comment from the Compiler. (Exhibit 3) Mr. Troutman answered shortly thereafter, on July 16, 1997, noting, "if there is to be any

6

substantive meaning to your amendment, the Attorney General needs to have some basic constitutional powers that are not subject to the Legislature's total will." (Exhibit 4) There is thus clear evidence that there was a concern that the Attorney General's Office be insulated not only from Executive Branch interference, but from Legislative Branch interference as well. This is why the Organic Act was ultimately amended to actually create the position "organically" rather than merely permit the Legislature of Guam to create it. Compiler Troutman opined, "I do not see this language as eliminating the use of outside counsel for various agencies, but would keep a check on having many and diverse legal 'empires' within the government of Guam. This is the same idea expressed in the 1970 Illinois Constitution." (Exhibit 4)

Finally, on September 2, 1997, Compiler Troutman reiterated that the Attorney General as Chief Legal Officer must retain general supervisory control over the legal affairs of the Government of Guam the following in another letter to Congressman Underwood:

> I don't particularly care if the Prosecution Division is separated from the Attorney General, but only if there is enough control remaining in the Attorney General that he/she retains general supervision over the legal affairs of the Government of Guam. Most, if not all state attorneys general retain the power to file appeals [or] decline them, and to take over prosecutions in cases of conflicts of interests or other good reasons. . . .
>
> Concerning your Bill, I would hope that you can amend it to provide that the Attorney General, no matter how s/he is selected, has the "constitutional" duty of being the chief legal officer of the Government of Guam and has some "constitutional" tenure of office.

(Exhibit 5)

The Legislature of Guam became involved again on October 10, 1997, when it adopted Guam Resolution No. 186, which called for Organic Act amendments creating the Office of the Attorney General. Significantly, what the Guam Legislature proposed was vastly different from

7

that ultimately passed by Congress. Resolution No. 186 provided that the Office of the Attorney General would be organically created, but would be subject to the powers and duties as delineated by the Legislature. Resolution 186, passed by the 24th Guam Legislature and submitted to Congress, suggested the following amendment to the language of H.R. 2370:

> The Attorney General shall be the chief legal officer of the government of Guam, **shall be vested with common law powers and such additional powers and duties as may be prescribed under the laws of Guam**, not inconsistent with this chapter. The Attorney General shall prosecute all criminal violations of Guam law, provide legal advice to the government, and represent the government in all civil cases in which the government of Guam may be interested. . . .

Note how easily such language, if adopted by Congress, would have mooted this entire case. But Congress ultimately rejected that language. Now, the Office of Attorney General is endowed with an entirely different character because it was "organically" created by Congress, not created or defined by local law. And until Congress says otherwise, the Office is immune from local control, be that executive or legislative interference or prescription. These are the same characteristics found in the model from which Guam drew its Organic Act in establishing the Office of Attorney General legislation, namely states using the language "chief legal officer," and in particular, the state of Illinois.[5] That the only model for Guam's Attorney General was intended to based upon the Illinois Constitution is shown repeatedly in Compiler Troutman's April 1, 1997 to Congressman Underwoood (Exhibit 1); in his testimony before Congress as

---

[5] Letter from Charles H. Troutman to Congressman Underwood dated April 1, 1997. (Exhibit 1) This is the first example of intentional reference to the State of Illinois: "The Constitution of Illinois is an excellent example of a very good Attorney General...."*Id.*

8

Acting Attorney General (Exhibit 2); and again in his July 16, 1997 letter to Congressman Underwood.[6]

A comparison of the local statutes existing in 1998, with the 1997 bill as introduced by Congressman Underwood, with the final legislation passed by Congress as 48 U.S.C. § 1421g(d)(1) reveals three critical points: First, a constitutional amendment was unnecessary to simply create and empower a position of Attorney General, because the position and its duties already existed in local law. Second, the legislation introduced by Delegate Underwood originally permitted the legislature, not Congress, the authority to create an office of Attorney General, and the legislature could have set the position's powers and duties. And third, the final version of the law Congress passed divested the local Legislature of any authority to abolish the position or diminish its powers by establishing the position in the Organic Act itself. Similar to its authority to prescribe powers and duties for the Governor of Guam, the Guam Legislature cannot diminish the Attorney General's powers, because both were created and empowered by Congress, and Congress reserved no authority to the local legislature to change the fundamental nature of the Office. *Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980).

---

[6] A comparison of the 1998 Congressional Amendment language with the Illinois Constitution (1970 amendment) is instructive. Article 5, § 15 of the Illinois Constitution provides simply that "the Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." By this simple declaration, an office was created that cannot be eliminated by political fiat. The Guam Organic Act contains an almost identical declaration: "The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." Critically, however, unlike the Illinois Constitution, the language in the Guam Organic Act establishing the Office of Attorney General as chief legal officer of the government of Guam did not provide that the legislature shall prescribe the powers and duties of the Office; it did not give the local legislature any authority to limit, diminish or qualify the powers of the Office. *Cf. again* 48 U.S.C. § 1422 ("The Lieutenant Governor shall have such executive powers and perform such duties as may be assigned to him by the Governor or prescribed by this chapter or *under the laws of Guam*" (emphasis added)). The intentional failure to adopt prescriptive language manifests a Congressional intent that the local legislature shall not have the ability to diminish the powers and duties of the Office of the Attorney General.

9

The Magistrate Judge's citation to *Manchin v. Browning*, 170 W.Va. 779, 296 S.E.2d 909

(1982), for the proposition that the local Legislature may prescribe the powers and duties of the

Office of Attorney General at pp. 11 – 13 actually proves the Attorney General's point that in the

case of Guam in cannot. In *Manchin*, the authority of the Attorney General, as quoted by the

Magistrate Judge was entirely statutory, it had no constitutional basis.

> By the provisions of our present constitution, the Attorney
> General is once again an officer of the executive department.
> However, his return to the executive department did not revive the
> common law powers of the office. The people of West Virginia
> specifically expressed their intent that the Attorney General should
> not exercise those powers by providing that he "shall perform such
> duties as may be prescribed by law." Under settled rules of
> construction, the word "shall" when used in constitutional
> provisions is ordinarily taken to have been used mandatorily, and
> the word "may" generally should be read as conferring both
> permission and power. *State ex rel. Trent v. Sims*, 138 W.Va. 244,
> 77 S.E.2d 122 (1953). The phrases "prescribed by law" and
> "provided by law" mean prescribed or provided by statutes.
> *Lawson v. Kanawha County Court*, 80 W.Va. 612, 92 S.E. 786
> (1917).

*Id.*, 170 W.Va. 785, 296 S.E.2d 915. The *Manchin* decision, quoted so extensively by the

Magistrate Judge, by its own terms, provides no support for his Findings and Recommendations.

Indeed, it proves the Attorney General's argument.

From 1950 to 1998, there already existed a *statutorily* authorized Attorney General.

Presented with the opportunity to authorize the Guam Legislature to vest the Attorney General

with such powers and duties "as may be prescribed by law," Congress declined. The only role

Congress authorized the local Legislature to have with respect to the Office of Attorney General

was to decide how the attorney general is selected, i.e., appointed or elected, and how he may be

removed. *See* 48 U.S.C. § 1421g(d)(2). The Guam Legislature was given no authority to

eliminate or fundamentally alter the powers and duties of the position. *Cf. American Legion Post*

10

*279 v. Barrett*, 20 N.E.2d 45, 51 (Ill. 1939) ("the General Assembly may not take away from a constitutional officer the powers or duties given him by the constitution"); and *People ex rel. Hartigan v. E & E Hauling*, 607 N.E.2d 165, 170 (Ill. 1992) ("although the legislature may add to the Attorney General's common law powers, it may not detract from them").

The Magistrate Judge's citation at pp. 13, 14 to the Hawaii case of *Chun v. Board of Trustees of Employees' Retirement Sytstem*, 87 Haw. 152, 952 P.2d 1215 (1998), simply misses this critical distinction. In Hawaii, the powers and duties of the Attorney General are defined by statute, not its constitution. "The Hawai'i Constitution (1978) does not enumerate the attorney general's powers and duties; indeed, it does not mention the attorney general by title at all." *Id.* 87 Haw. 168-70, 952 P.2d 1231-33. Citation to Hawaii case law which does not even mention its Attorney General in its constitution does not answer the question what Congress intended when it established the Office of Attorney General in Guam's Organic Act.

And the Magistrate Judge's reliance on the Tennessee case of *Tennessee ex rel. Comm'r of Trans. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734 (Tenn. Ct. App. 2001), cited at pp. 14, 15 is similarly unavailing precisely because Tennessee's constitution says nothing whatsoever about the Office of Attorney General other than "An Attorney General and Reporter for the State, shall be appointed by the Judges of the Supreme Court and shall hold his office for a term of eight years." Tennessee's constitution says nothing about the term "chief legal officer." The very case cited by the Magistrate Judge illustrates the distinction the Attorney General is attempting to impress upon the Court, for the role of the Attorney General is also entirely statutory in Tennessee. "In this role, the Attorney General has both extensive *statutory* power and the broad common-law powers of the office except where these powers have been limited by

11

statute. *State v. Chastain*, 871 S.W.2d 661, 664 (Tenn. 1994); *State v. Heath*, 806 S.W.2d 535, 537 (Tenn.Ct.App.1990)." *Medicine Bird*, 63 S.W.3d 772 (emphasis added).[7]

The problem with the Magistrate Judge's Findings and Recommendations is that it looks through the telescope from the wrong end. Rather than examine Congressional intent to determine the meaning of the term "Chief Legal Officer," and what role, if any, was left for the Legislature of Guam to define the powers and duties of the Attorney General, the Magistrate Judge looked to local law to divine Congressional intent, in an effort to superimpose Organic Act imprimatur on a pre-existing office of purely statutory design. But to do so without more, would have been superfluous, and, as discussed earlier, there were far clearer ways to authorize the Legislature of Guam to circumscribe the powers and duties of the Attorney General. Moreover, because there is no evidence that Congress intended to ratify pre-existing local law in conflict with the Organic Act definition of Attorney General as Chief Legal Officer of the Government of

---

[7] This case also addresses another of Magistrate Judge's concerns, and impediments to accepting the Attorney General's position. At pp. 9 and 15 of the Findings and Recommendations, the Magistrate Judge refers to a case filed in the Superior Court of Guam by the Attorney General against the Governor, to compel the Governor to perform an official act, namely, nominating members for appointment to the Procurement Appeals Board. The Magistrate Judge perceived that since the Governor was permitted to retain his own counsel in a case where he was sued by the Attorney General, so too should he and others be authorized to retain their own counsel when their views as to the legal position of the Government differ in any way from the Attorney General's. "The majority rule is that the Attorney General, through his or her assistants, may represent adverse state agencies in intra-governmental disputes. *Chun v. Board of Trustees of Employees' Retirement Sys.*, 952 P.2d at 1237; *Attorney General v. Michigan Pub. Serv. Comm'n*, 625 N.W.2d at 29-30; *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 418 So.2d 779, 783 (Miss.1982). This rule applies, however, only when the Attorney General is not an actual party to the litigation. *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Info. Comm'n*, 387 A.2d at 537; *Environmental Protection Agency v. Pollution Control Bd.*, 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50, 53 (1977); *Superintendent of Ins. v. Attorney General*, 558 A.2d 1197, 1202-04 (Me.1989); *Attorney General v. Michigan Pub. Serv. Comm'n*, 625 N.W.2d at 30. When the Attorney General is an actual party to the litigation, independent counsel should be appointed for the state agency in order to remedy the ethical impediment to the Attorney General's position as a party. *See Arizona State Land Dep't v. McFate*, 87 Ariz. 139, 348 P.2d 912, 915 (1960); *Attorney General v. Michigan Pub. Serv. Comm'n*, 625 N.W.2d at 31; *City of York v. Pennsylvania Pub. Util. Comm'n*, 449 Pa. 136, 295 A.2d 825, 833 (1972)." *Medicine Bird*, 63 S.W.3d 773. The obvious difference here is that the Attorney General is not a party, and is not suing another government official. And separate counsel is the obvious solution when the Attorney General is a party, or he is actually suing a local official to compel performance of an official act. But here, he is representing an official in his official capacity with respect to a legal policy matter committed to the sound discretion, not of the client, but of the Attorney General. The very case cited by the Magistrate Judge illustrates this distinction, and should have addressed the Magistrate Judge's concerns.

12

Guam, the Magistrate Judge erred in viewing the role of Attorney General in purely statutory terms. *See Nelson v. Ada*, 878 F.2d 277 (9th Cir. 1989) (there is no implied ratification of prior inconsistent local law by Congressional silence in amending the Organic Act).

What evidence of Congressional intent there is points not to states such as Hawaii, Tennessee, California or Arizona, but to Illinois and comparable jurisdictions. And that should have been the Magistrate Judge's starting point. As Chief Legal Officer, the Attorney General is endowed with certain inherent common law powers, which extend the Attorney General's powers and duties beyond those created by statutory law. *See e.g. State of Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (7th Cir. 1972). In those states where the Office of Attorney General is constitutionally created, such as Illinois, the Attorney General's powers are regarded as powers that could not be diminished by local legislation. *American Legion Post No. 279 v. Barrett*, 20 N.E.2d 45, 51 (Ill. 1939) ("the General Assembly may not take away from a constitutional officer the powers or duties given him by the constitution"); *People ex rel. Castle v. Daniels*, 132 N.E.2d 507, 509 (Ill. 1956) ("the Attorney General, whose office is created by the Illinois constitution, ... is the chief law officer of the State and has those powers which resided in the Attorney General at common law.... and neither the legislature nor the courts can deprive him of his constitutionally granted authority"); *Department of Mental Health v. Coty*, 232 N.E.2d 686, 689 (Ill. 1967) ("the common-law powers of the Attorney General were preserved to him by the constitution and while the General Assembly can impose additional power and duties upon him, it cannot strip him of his common-law powers"); *Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth.*, 456 N.E.2d 50, 67 (Ill. 1983) ("while the legislature may add to his powers, it cannot reduce the Attorney General's common law authority in directing the legal affairs of the state"); *People ex rel. Hartigan v. E. & E. Hauling, Inc.*, 607

13

N.E.2d 165, 170 (Ill. 1992) ("although the legislature may add to the Attorney General's common law powers, it may not detract from them").

The practical effect of the lower court's decision exalting local law over an Organic Act amendment is, needless to say, constitutionally problematic. In order to defeat a power of constitutional origin, another constitutional power must diminish it, not a lower statutory enactment. *Scott v. Briceland*, 65 Ill.2d 485, 501, 359 N.E.2d 149, 157 (Ill. 1977). Contrary to the Magistrate Judge's analysis, the Guam Legislature may not deprive the Attorney General of his common-law powers under the Organic Act. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill.2d 394, 372 N.E.2d 50, 52, 14 Ill.Dec. 245, 247 (1977). Not in the absence of express constitutional authority to do so. *See again Nelson v. Ada*. "The powers conferred by the constitution upon the [Attorney General] are generally held to be exclusive, and except in the manner authorized by the constitution, these powers cannot be enlarged or restricted." *Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191 (Tx. 1955).

In *People v. Massarella*, 72 Ill.2d 531, 382 N.E.2d 262 (Ill. 1978) the Supreme Court of Illinois held:

> Under the 1870 Illinois Constitution, *the Attorney General not only retained his common law powers and duties but also could not be deprived of them by the legislature. The legislature could only add to the powers.* It is beyond dispute that the 1970 Constitution has kept those powers intact.

72 Ill.2d 535, 382 N.E.2d 264 (emphasis added; citation omitted).

The Magistrate Judge simply would not accept the idea that individual government officers and officials sued in their official capacity are not automatically entitled to espouse their own views contrary to the legal policy decisions of the Attorney General. But that is not a novel concept, although it may be new to Guam. In many jurisdictions, particularly those in which the

14

powers and duties of the Attorney General are not exclusively defined by statute, the views of the Attorney General prevail when a conflict arises between his views and those of the agencies and officers whom the Office of Attorney General represents. *Battle v. Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) (holding that the views of the Oklahoma Attorney General in litigation "must prevail" over the views of the legal counsel for any particular state defendant); *Prisco v State of New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) (holding that Attorney General is authorized to represent individual state officers who are sued in their official capacities, despite claimed conflicts of interest). The reason for this rule is clear: While the Attorney General is obligated to represent government officials and agencies, he need not – indeed, must not – do so at the expense of the people as a whole. *Connecticut Comm'n of Spec. Revenue v. Connecticut Freedom of Information Comm'n*, 387 A.2d 533, 538 (Conn. 1978) (Attorney General's real client is the people); *Reiter v. Wallgren*, 184 P.2d 571, 575 (Wash. 1947) (while Attorney General may represent state officers, "it still remains his paramount duty to protect the interests of the people of the state"); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (Attorney General represents people, not "machinery" of state government). To fail to do so "would be an abdication of official responsibility." *Feeney v. Commonwealth*, 366 N.E.2d 1262, 1266 (Mass. 1977) (quoting *Secretary of Administration and Fin. v. Attorney Gen.*, 326 N.E.2d 334, 338 (Mass. 1975). *See also Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (1961) (Attorney General must do more than espouse individual views of state officials represented); *Ex parte Weaver*, 570 So. 2d 675, 684 (Ala. 1990) (upholding Attorney General's authority to dismiss state insurance department proceedings over objection of state insurance commissioner); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 821 (Okla. 1973) (upholding authority of Attorney General to settle pending litigation). Whether any named defendant likes it

15

or not, the Attorney General controls legal policy for the Government of Guam, and that includes the authority to defend, settle or compromise litigation over the objections of any particular government official or entity.

The Attorney General is the democratic choice of the people of Guam. In *Environmental Protection Agency v. Pollution Control Bd.*, 69 Ill.2d 394, 372 N.E.2d 50 (Ill. 1977), the court determined that a centralized legal advisory system flowed from the phrase "chief legal officer," and this particular system benefited the government. The benefits from centralization include, *inter alia*, the fact that centralization is more efficient, and provides for a coherent legal policy throughout government. *Id.* 69 Ill.2d at 399.

> The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties. It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. Only in this way will the Attorney General properly serve the State and the public interest. To allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State.

Id. 69 Ill.2d 401-02. A unified and coherent legal policy residing in one Chief Legal Officer is what Congress intended, even if those legal policies should conflict with the views of any particular government official. This, the Magistrate Judge could not accept, for the Magistrate Judge evidently perceived that, right or wrong, the views of the "client" must be given a voice, and must prevail when it comes to matters of legal policy in the courtroom. The Magistrate Judge persisted in defining the role of the Attorney General with respect to the Government of Guam entities and officials he represents in terms of a private attorney-client relationship, in

16

which the "client" has the final say as to its position in court. But there is no proof of Congressional intent to that effect, or that Congress intended to model the Office of the Attorney General for the Government of Guam after any jurisdiction which would subject it to the whims and caprices of other elected officials. The proof is to the contrary.

These are not uncharted waters. The jurisdictions cited by the Magistrate Judge are the exception, not the rule, and are wholly inconsistent with the Congressional record. Modeled after the State of Illinois, except that the local Legislature was *not* given the authority to alter, amend or abridge the common law powers of the Attorney General, Congress intended that one official alone would be responsible for establishing a coherent legal policy for the Government of Guam in the courts. The Attorney General has the exclusive and absolute discretion to set that legal policy and to control all aspects of litigation for and against the Territory, its agencies, instrumentalities and officials. *See Ex parte Weaver*, 570 So.2d 675, 677 (Ala. 1990) ("As the state's chief legal officer, 'the attorney general has power, both under common law and by statute to make any disposition of the state's litigation that he deems for its best interest. ... He may abandon, discontinue, dismiss, *or compromise it*'") (emphasis added); *Feeney v. Commonwealth*, 366 N.E. 2d 1262, 1267 (Mass. 1977) upholding authority of Attorney General to prosecute appeal in the U.S. Supreme Court over express objections of state officials); *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) (stating that "the courts will not control the discretionary power of the attorney general in conducting litigation for the state"); *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 347 (Mo. Ct. App. 1980) ("It is for the attorney general to decide where and how to litigate these issues involving public rights and duties and to prevent injury to the public welfare"); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975) (Attorney General possesses "power to make any disposition of the state's litigation which he thinks best"); *State ex rel. Board of Transportation v. Fremont, E. & M.V.R. Co.*, 35 N.W. 118, 120 (Neb. 1887) (recognizing that Attorney General controls litigation and

17

other state officials "cannot control his actions"); *Perillo v. Dreher*, 314 A.2d 74, 79 (N.J. Super. Ct. App. Div. 1974) (recognizing that Attorney General has "the exclusive power to control all litigation to which the State is a party"); *Opinion of the Justices*, 373 A.2d 647, 649 (N.H. 1977) (Attorney General has "broad authority to manage the state's litigation and to make any disposition of a case which he deems is in the state's best interest"); *Michigan State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677 (Mich. App. 1977) (Attorney General "has statutory and common law authority to act on behalf of the people of the State of Michigan in any cause or matter, such authority being liberally construed"). There is no doubt that there is but one attorney for the defendants in this litigation, because there is only one "Chief Legal Officer for the Government of Guam" in the Organic Act. The unauthorized appearances by other counsel in litigation and anything they have filed are due to be stricken.

Concerned that the Attorney General has muffled the voice of his own "clients," the Magistrate Judge in turn has silenced the Chief Legal Officer for the Government of Guam from articulating a coherent legal policy for that Government. That reasoning turns Congressional intent on its head. The Magistrate Judge simply failed to comprehend that there is only one Government of Guam, and that the "clients" are but component parts of that unitary government. Taken to its logical extreme, the reasoning of the Magistrate Judge means the Guam Legislature could eliminate the Office of Attorney General altogether by authorizing government officials to retain their own counsel to advise them and represent them in court, even if it is contrary to a coherent legal policy sought to be established by the Government's Chief Legal Officer. Taken to its logical extreme, the Magistrate Judge's reasoning is an invitation to legal schizophrenia, with multiple legal personalities throughout the Government, each espousing their own particular view. But the reason Congress established the Office of Attorney General in the Organic Act was

18

precisely to prevent the kind of multiple legal personalities and chaos that was the result of gubernatorial *and* legislative oversight, interference and control in the first place.

## CONCLUSION

The Attorney General of Guam respectfully submits that the findings and recommendations of the Magistrate Judge are in error. There is only one attorney authorized to appear on behalf of the named defendants in this action and that is the Attorney General and Chief Legal Officer for the Government of Guam as provided in the Organic Act of Guam.

Respectfully submitted this 29th day of March, 2005.

OFFICE OF THE ATTORNEY GENERAL
Douglas B. Moylan, Attorney General


**Robert M. Weinberg**
Assistant Attorney General

19

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party(ies) with a copy of the foregoing by hand delivery to:

Thomas L. Roberts, Esq.
Dooley, Roberts & Fowler, LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Drive
Tamuning, Guam 96913

Cesar Cabot, Esq.
Cesar Cabot, P.C.
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913

Shannon Taitano, Esq.
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910

Michael A. Pangelinan, Esq.
Rodney J. Jacob, Esq.
Calvo and Clark, LLP
655 South Marine Drive, Suite 202
Tamuning, Guam 96913

Joaquin C. Arriola, Jr., Esq.
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X
Hagåtña, Guam 96932

this 28 th day of March, 2005.

Robert M. Weinberg
Assistant Attorney General

20

CARL T. C. GUTIERREZ
GOVERNOR OF GUAM

MADELEINE Z. BORDALLO
LIEUTENANT GOVERNOR OF GUAM

CHARLES H. TROUTMAN
COMPILER OF LAWS



**OFFICE OF THE ATTORNEY GENERAL**
**TERRITORY OF GUAM**

Compiler of Laws Division
238 F.C. Flores Street, Suite 701
Agaña, Guam 96910-5185

PHONE: +671 475 3309
FAX: +671 472 6992
E-MAIL: troutman@ns.gu

April 1, 1997

Honorable Robert Underwood, MC.
House of Representatives

FAX: Guam 477-2587
Washington, DC 202-226-0314

Dear Congressman Underwood,

Here are my comments on your proposed amendments to the Organic Act:

1.  Unfortunately your proposal with respect to education will not solve the present lawsuit. The issue being litigated now is that other provisions of the Organic Act establish three branches of government, the general (not specific) supervision of the Governor over the Executive Branch and the power of the Legislature to appropriate funds. DOE is arguing that the existing language overrides these basic structures f government, enabling a fourth branch, totally separate and apart from the executive, to exist and to be funded without any input from the Executive. Some recent proposals, one of which was declared unconstitutional at the trial level, would have automatic appropriations if the Legislature did not object within 45 days. Unless the education sections are specific, I see no end to suits and disputes.

Therefore, I suggest that your amendment specify whatever structure you wish to propose, en elected board; an state-level board under the Governor with elected district boards (like in the US) to be created by the Legislature; or whatever. You need to be specific if you are to avoid more litigation. Indeed, your proposal would seem to indicate that public education could be created totally separate and apart fro the government. Is that your intent?

EXHIBIT 1

29
in

**2.**

Your amendment regarding the Attorney General is very welcome. However, it goes only one-third of the way. Section 1421g(c) (Organic Act) provides for a Public Prosecutor:

(c) Office of Public Prosecutor; Office of Public Auditor. The Government of Guam may by law establish an Office of Public Prosecutor and an Office of Public Auditor. The Public Prosecutor and Public Auditor may be removed as provided by the laws of Guam.

One reason why the law was never implemented was that it would, *de facto* require a split of the Attorney General's Office. Our experience under the 16th Legislature (before it was declared inorganic) was not all good. Political was not removed from the office and never will be. Another reason for ignoring this law is that it does not provide any specific powers, nor means for appointment, and hence no local consensus.

I have always been of the opinion that the means of appointment is far less important than the tenure of office. We do not elect federal judges, but their independence is assured through other mechanisms. Yet an elected Attorney General would not necessarily be bad, though by no means would anything get solved by such a change. Now that person would have a personal agenda to pursue, as well as that of the general government. I saw this shift when I was representing both the appointed and, later, the first elected Board of Education. Also, the position, if you mention it at all, must be created by the Organic Act, not just permitted. Permission would permit the creation of another office with lesser powers to get around the fact that the Attorney General is the legal officer for the Government of Guam — and there are many who would do just that! The Organic Act should stop games playing as much as possible, not increase it.

The Constitution of Illinois is an excellent example of a very good Attorney General. Modifying the concepts found there for Guam (unicameral legislature, etc.), I suggest the following changes to your proposed bill:

> "(d)(1) There shall be with the Executive Branch of the Government of Guam an Attorney General, who shall be [elected by the voters of Guam] [appointed by the Governor with the advice and consent of the Legislature]. The Attorney General shall server for a term [{if elected} commencing at the same time as the term of the Governor of Guam and ending at the same time] [{if appointed} ending at the same time as the term of office of the appointing Governor, but the Attorney General and until a successor is appointed and qualified.] [{If elected} The Attorney General may be removed from office in the same manner as may be the Governor of Guam.] [{If appointed} The Governor may remove the Attorney General, but only for cause provided in law, or if he be convicted of a felony or a misdemeanor involving moral turpitude. However, the Attorney General may appeal such removal to the Supreme Court of Guam.]

(2) The Attorney General shall be the legal officer of Guam, and shall be the Public Prosecutor of Guam, and shall have the duties and powers that may be prescribed by law."

The material in brackets [...] are alternatives depending upon the choice as to method of appointment. I am concerned about your draft because, in leaving it solely up to the Legislature, you are not creating a strong office, but rather a weak one having no improvements over the present situation. You should also repeal the current section permitting a Public Prosecutor and regulating that officer's removal.

3.  With modern communications, it is high time that we do not require an acting Governor whenever the Governor leaves island.

4.  Supreme Court. This is an excellent proposal, and will solve many problems. However, I do have some suggestions. I do not think § (a)(3) will work. While it may good to provide for some inherent powers, I think you have done it as much as can be done by providing that the Supreme Court is the highest court of Guam. Each state has its own history and doctrine as to what are its inherent powers. It really is not possible to apply the doctrine of 50 states to one jurisdiction. There are too many contradictions. There are too many different state constitutional provisions on the subject.

In the same way as my suggestions in for the other amendments, I suggest that you provide for the appointment and removal of the other judges and justices. In the past, there have been amendments to such provisions to ensure that certain individuals are made judges, even where they were not qualified under the prior law. (Some have turned out to be good judges, but that does not mean we should pass laws for particular persons.)

Again, the Illinois Constitution can be instructive, but here the complex structure of the State judiciary makes copying not practical. However, as a replacement for item (3), I suggest the following:

> General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff to assist the Chief Justice in his duties. The administrative director shall serve at the pleasure of the Court. Subject to the overall direction of the Supreme Court, the Legislature may provide for the staff structure and employment in the lower court(s) of Guam.

Assuming that you do not want to change the appointment and tenure of the justices and judges, I suggest the following changes to subsection (c):

> (c) The qualification and duties of the justices and judges of the local courts of Guam, and the practice and procedure of these courts, shall be governed by the laws of Guam.

I have trouble in finding the reference to your amendment to 22C relative to appeals. Are the citations correct (or my sources incorrect)?

31

Thank you for the opportunity to express my observations on this proposal.

Sincerely yours,

*Charles H. Troutman*

CHARLES H. TROUTMAN

**32**
**19**

### Attorney General Charles Troutman
Statement - Guam Commonwealth Act
October 29, 1997

Dear Mr. Chairman,

Thank you for holding hearings on H.R. 2370, "A Bill to amend the Organic Act of Guam for the purpose of clarifying the local judicial structure and the Office of the Attorney General." A Bill such as this is sorely needed on Guam and will finally create a genuine three-branch form of government for Guam. I would appreciate it if you would enter this testimony into the record of the Hearing.

### TESTIMONY OF

### CHARLES H. TROUTMAN

### ACTING ATTORNEY GENERAL OF GUAM

### IN FAVOR OF H.R. 2370

Mr. Chairman and members of the Committee on Resources,

Perhaps it may seem strange to be testifying on an amendment to the Organic Act at the same hearing as we are testifying for a Bill which would completely replace that Act. I believe that Congress should pass both Bills, but with changes. To be realistic, a Guam constitution is several years in the future. The federal law authorizing a Guam Constitutional convention now has a sufficient number of problems so that trying to use it to create a constitution is not a practical possibility. In the past, Congress has amended the Organic Act to supposedly permit the people of Guam to do one thing or another, but, since 1984, the effects have been definitely mixed. The amendment regarding the educational system has caused lawsuits and is still the subject of much confusion simply because it is so vague and unclear, especially when dealing with such an important subject. Likewise, and contrary to the provisions of most state constitutions, reference to creating a "public prosecutor" continues to cause severe doubts as to whether that position can be elected, or must be appointed, and what can be the true scope of that office. The amendment permitting the creation of the Supreme Court has been partially successful, in that we have a Supreme Court of Guam now, and it has issued its first decisions -- very good ones, by the way.

But still Guam does not have a true government consisting of three branches of local government. The very existence of all of our local courts are subject to the will of the Legislature. Indeed, one person in 1977, now nominated to be a part-time Justice of the Supreme Court, advocated the abolition of the entire local court system, relying instead on a federal District Court of Guam having multiple judges. Fundamentally, the structure of the courts has not changed since 1977. They are still not a separate, fundamental branch of the government. Further, the District Court of Guam remains, even in HR 2370, the court of general jurisdiction for Guam, whatever that now means -- -- just one more ambiguity that we do not need.

A similar problem exists with respect to the Attorney General. Most of the states have created the Attorney

**40**

General as a constitutional officer. We now feel that the people of Guam should have that opportunity as well. The Attorney General is patterned after that of the United States Attorney General, appointed by the Governor with the consent of the Legislature. The term of office is indefinite, at the will of the Governor.

Because Guam needs the stability of a firm three-branch system of government, I believe these issues should be addressed forthrightly now. The Congress should not, as it did in the past amendments, make them vague in the extreme, with the explanation that the Congress did not wish to dictate how the people of Guam are to conduct its government. As long as we have an Organic Act, Congress does dictate, and the people require a better system as soon as possible.

I first testified on the need for a "constitutional" judiciary back in late 1976 when the late Delegate from Guam, Antonio Won Pat, had introduced a bill creating and establishing a Supreme Court for Guam. That Bill died in committee largely because the U.S. Supreme Court was considering the ability of Guam to create its own Supreme Court under the Organic Act as it then existed. Further hearings were held on Guam by the Pacific Territories Committee of the Administrative Office of the U.S. Courts. Those hearings resulted, in 1984, in the current Organic Act provisions permitting the Legislature to create an "appellate court" locally. That court was created and began operations in the middle of 1996. It has issued about a dozen decisions since then.

Since the Guam Supreme Court's creation, there has been skirmishing between it and the superior Court of Guam and the Legislature, over whether the Supreme Court will really be the highest court of the Territory. For so long, the local courts consisted only of the Superior Court of Guam that giving up power is a very hard thing to do. Further the past history of the Superior Court and the Legislature will show that there is a need to make "constitutional" such things as the powers of the courts, their respective jurisdictions and, perhaps, terms of office.

I do have some concerns with Bill HR 2370. First, Section 2 appears ambiguous. What is intended by making the District Court of Guam, now a federal court with no local appellate functions, part of a "unified judicial system" of Guam? Does this imply some form of review by the District Court over the court system of Guam? Does this section imply that the District Court judge has some form of management power over the Guam courts?. I sincerely hope not. Congress already has imposed a fifteen-year period of review of the Supreme Court's decisions by the Ninth Circuit (by certiorari), though no such review has yet been sought by any party.. Rather, I believe that the District Court should be made more like an Article III court rather than part of the Guam judiciary system. Just what does this section mean?

Actually, I would like to see the United States constitutional standard for federal judges applied to the District Court of Guam. If this method of appointment is so important to the American system, why are the U.S. citizens of Guam not entitled to a similar federal judiciary rather than one which is appointed and reappointed every 10 years?

There seems to be one missing piece to this Bill -- no mention of a term or qualifications for the Supreme Court or Superior Court justices and judges. This is one area where the Legislature has, in the past, acted to insure the appointment of judges it desired. On one occasion, a law was passed extending the terms of all the judges so that one judge would not have to go through re-appointment by the then-Governor -- thus insuring his continuation in office. On a more recent occasion, the Legislature lowered the age and practice qualifications for the Superior Court so that a younger attorney could be appointed to a vacancy in the Superior Court. It is here that I believe more protection is needed rather than in some of the details contained in the present Bill.

Nevertheless, I support the provisions of this Bill concerning the Guam courts. I would urge your

**41**

consideration of those items I have mentioned and make the necessary changes to this measure.

Concerning Section 3 of HR 2370 -- affecting the position of Attorney General, I support Congressional action on this subject, but the present proposal is seriously deficient. I served as Attorney General from 1975 through 1977, and for extended periods as Acting Attorney General in 1987 and again presently. I have worked in the Attorney General's Office of Guam since 1970 with about two years out in private practice. There have been great changes in the Office during the past 27 years, but one thing remains the same -- the Attorney General is appointed, as is the United States Attorney General, to serve at the pleasure of the chief executive. This has hindered the development of the Office, but in general not because of improper interference by the Governor, any Governor, but because the Office has been unable to develop a vision of its own. I have been told by some state Attorneys General that they could not serve under such conditions.

In addition, the present Organic Act provides only that a "public prosecutor" may be created by the Legislature and that the Legislature may by law regulate that officer's "removal". There is no mention of how that officer is to e appointed. This has caused considerable confusion and controversy as the Legislature has tried to create an elected position, which I do not believe is presently permitted. Likewise, the Legislature has tried, but not yet passed, a bill which would make the Attorney General, now having both criminal and civil responsibility, the "Public Prosecutor", and then be an elected official.

Right now, I express no preference for an appointed or elected Attorney General, so long as the position is defined as "constitutional" (in the Organic Act) and the overall duties and functions provided in the Organic Act, much as is found in the Constitution of the State of Illinois. Thus, I believe that three amendments are required to Section 3 of this Bill in order to make a serious difference in the Attorney General's functions:

First, repeal the reference in the Organic Act to the "public prosecutor". This office has never been created and the ambiguities in the present law will only be compounded if it is permitted to stand alongside the amendments proposed here. If it is desirable to keep a reference to a "public prosecutor" in the Organic Act, then it should be mentioned in Section 3 of this Bill, but only in such a way so as not to subordinate the Attorney General in that position's overall duties as Chief legal officer of Guam. The Public Prosecutor could contain similar provisions as are given to the Attorney General, permitting the Legislature to create and appointed or elective office. The point is, we do not need two "Attorney General" positions for Guam.

Second, On page 6, lines 24-25, the duties of the Attorney General should be changed by deleting item (d)(2) and adding the following below subsection (d) so that it is of equal standing and not subordinate to subsection (d):

"The Attorney General shall be the chief legal officer of the territory of Guam and shall have such other duties and such compensation as the Legislature may provide by law."

Third, a provision needs to be made to insure the viability of the office by providing some stability of the term. This is actually far more important than the method by which the Attorney General is to be selected. Therefore, I strongly urge another amendment, probably just following my second suggestion, which would read:

"Whether the Attorney General be appointed, as provided in subsection (d)(1)(A), or elected, as provided in subjection (d)(1)(B), the term and method of removal of the Attorney General shall be the same as is provided for an elected Attorney General."

42

These last amendments would provide what is really needed by the Attorney General -- a basic statement of duties and a term that was not at the pleasure of any official. Of course, the Legislature could provide or vacancies as it does now. I believe that my amendments will do more for the Office than will a mere providing for Legislative choice of appointment or election. I recognize that the people of Guam seem not to be decided upon the method of choosing the Attorney General. This does not matter that much. What does matter, is that the Attorney General have the independence once he or she is in office, to accomplish the duties of the Office and to develop that office to the degree it deserves.

While Section 3 clears up one glaring ambiguity in the present Organic Act, it does little to address the real, substantive problems of the Attorney General. I urge this Committee to amend Section 3 of H.R. 2370 to address the concerns I have with regard to the Office of Attorney General on Guam.

Thank you for your kind attention.

CHARLES H. TROUTMAN

Attorney General of Guam (Acting)

### ###



ROBERT A. UNDERWOOD
Guam

NATIONAL SECURITY COMMITTEE
SUBCOMMITTEES
Military Readiness
Military Personnel
Military Installations and Facilities

RESOURCES COMMITTEE
SUBCOMMITTEE:
National Parks and Public Lands

WASHINGTON OFFICE.
424 Cannon House Office Building
Washington, DC 20515-5301
Ph: (202) 225-1188
Fax: (202) 226-0341
e mail: guamdode@hr.house.go

GUAM OFFICE:
Suite 107
120 Father Duenas Avenue
Agana, GU 96910
Ph: (671) 477-4272/73/74
Fax: (671) 477-2587



# Congress of the United States
## House of Representatives
### Washington, DC 20515-5301
July 10, 1997

Mr. Charles H. Troutman
Guam Compiler of Laws
Office of the Attorney General
238 Archbishop F.C. Flores Street, Ste. 701
Agana, Guam  96910-5185

Dear Attorney Troutman:

Thank you for your continued input on my proposals to amend the Organic Act of Guam. I recently sponsored a questionnaire designed to obtain the input of Guam's people on three proposed amendments. These are (a) an amendment that would confirm the Supreme Court's authority over the judicial branch of our government; (b) an amendment that would provide for an elected Attorney General; and (c) an amendment concerning the powers of the Governor and Lt. Governor when they are off-island and on official business. The results were encouraging and I am prepared to advance the amendments concerning the Supreme Court and the Attorney General.

In your correspondence of April 1, you recommended that the office of Attorney General be provided for by the Organic Act of Guam regardless of whether it is an elected or appointed position. The Twenty-third Guam Legislature passed a unanimous resolution last session, in favor of an elected Attorney General. Nearly 70% of the respondents to my questionnaire were in favor of an elected Attorney General. Some 53% of those who favored an elected Attorney General preferred to give the Guam Legislature the authority to create such an office.

I have attached draft language that would enable the legislature to provide for an elected Attorney General. The language establishes the office of Attorney General in the Organic Act and specifically provides the means for appointment and removal. Should the legislature choose to exercise this authority, are there any provisions you wish to see included in this legislation?

Please review the draft language and provide me with your input as soon as possible. Once again, thank you for your assistance.

Sincerely,

ROBERT A. UNDERWOOD
Member of Congress

Enclosure
RATT-iv

2

10 SEC. 3. ESTABLISHMENT OF OFFICE OF ATTORNEY GEN-

11      ~      ERAL.

12      Section 29 of the Organic Act of Guam (48 U.S.C.

13 1421) is amended by adding at the end the following new

14 subsection:

15      "(d) The Government of Guam may establish by law

16 an Office of the Attorney General of Guam within the ex-

17 ecutive branch of the Government of Guam. Such law

18 shall—

19          "(1) provide for the Attorney General of Guam

20      to be—

21              "(A) appointed by the Governor, with the

22          advice and consent of the legislature, for a term

23          ending when a successor is appointed and quali-

24          fied; or

*34*

1          "(B) elected by the people of Guam at the
2     same time, for the same term, and subject to
3     removal in the same manner as provided for the
4     Office of Governor of Guam; and
5          "(2) set forth the duties and compensation of
6     the Attorney General of Guam.".



# DEPARTMENT OF LAW

**CARL T.C. GUTIERREZ**
Maga'låhi
Governor

**MADELEINE Z. BORDALLO**
Tinfilente Gubetnadora
Lieutenant Governor

Ufisinan Hiniråt Abugao
Tiritorian Guåhan

## OFFICE OF THE ATTORNEY GENERAL
Territory of Guam

**CALVIN E. HOLLOWAY, SR.**
Hiniråt Abugao
Attorney General

**CHARLES H. TROUTMAN**
Rikobidot i Lai Guåhan Siha
Compiler of Laws

July 16, 1997

Hon. Robert A. Underwood, M.C.
170 Father Duenas Avenue, Suite 107
Agana, GU 96910

Dear Congressman Underwood,

Thank you for sending me the draft amendment to the Organic Act on the Attorney General. I do have a few comments.

First, if the position is to be appointed, I believe that the Organic Act should make it a true "constitutional position" by providing not only a method of removal (other than at the will of the Governor) but also provide for the basic functions of the position, as I mentioned in my earlier letter. The first, regarding removal, is required to overcome the judicial decisions that invalidated the former Public Prosecutor — that the Organic Act as written did not permit the Legislature to protect the office from removal for any reason if the Governor so desired. The Organic Act has been amended with respect to the "public prosecutor" to permit the Legislature to regulate the manner of removal of the officer. To make a meaningful amendment, such must be added here, or we will revert to pre-1984 law.

Second, if there is any substantive meaning to your amendment, the Attorney General needs to have some basic constitutional powers that are not subject to the Legislature's total will. Once before, the Legislature removed from the Attorney General the power to challenge unconstitutional laws because it did not like one challenge he brought. That limitation was removed when the Public Prosecutor law was invalidated. I do not want to see that kind of skirmishing reinvented.

Therefore, I suggest the following changes to your proposal:

Compiler of Laws Division (Dibision Fanrikohiyan i Lai Guåhan Siha)
238 Archbishop Flores Street, Suite 701 •Agaña, Guam 96910-5185 USA
Phone: (671)-475-3252 • Fax: (671-472-6992 • E-mail: tro███████

36

EXHIBIT 4

beginning on line 22, page 2:

> "(A) appointed by the Governor, with the advice and consent of the legislature, for a term ending when a successor is appointed and qualified, and subject to removal only for causes stated in law; or"

change item (d)(1)(A)(2) to (d)(1)(A)(3) on line 5 of page 3.

> "(2) set forth the duties and compensation of the Attorney General, who, in addition, shall be the chief legal officer of the Government of Guam having cognizance over all legal matters in which the government is in anywise interested."

The broad language comes from the existing law on the jurisdiction of the Attorney General, but haw been modified with reference to other agencies. I do not see this language as eliminating the use of outside counsel for various agencies, but would keep a check on having many and diverse legal "empires" within the government of Guam. This is the same idea as expressed in the 1970 Illinois Constitution.

Thank you for your consideration.

Sincerely yours,

*Charles H. Troutman*

CHARLES H. TROUTMAN
Compiler of Laws

*37*

**CARL T.C. GUTIERREZ**
Maga'låhi
Governor

**MADELEINE Z. BORDALLO**
Tiñente Gubetnadora
Lieutenant Governor

Ufisinan Hiniråt Abugao
Tiritorian Guåhan

**CHARLES H. TROUTMAN**
Hiniråt Abugao
Attorney General (Acting)

**CHARLES H. TROUTMAN**
Rikohidot i Lai Guåhan Siha
Compiler of Laws

## OFFICE OF THE ATTORNEY GENERAL
### Territory of Guam

September 2, 1997

Dear Congressman Underwood,

I am sorry for the delay, but I have been somewhat busier this month. I think Bill 354 by Senator Barrett-Anderson has several defects. First, it is inorganic for two reasons. I do not believe that the present Organic Act permits election even for a Public Prosecutor. The amendment permitted the establishment of the office of Public Prosecutor, and permitted the laws of Guam to regulate his/her removal. No mention is made of appointment. Therefore, I conclude that appointment of this Executive Branch officer still remains with the Governor as provided elsewhere in the Organic Act. Second, I believe it is inorganic to expand the idea of a Public Prosecutor to mean the entire legal representation of the Government of Guam. The legislative history will show that the Organic Act was amended in answer to the rejection of the Territorial Prosecutor by the courts. The US Supreme Court has never allowed such expansive readings of the Organic Act. See *People v. Olsen.*

For this reason, the Bill is premature. It is especially so when one considers the fact that the 9th Circuit refused to give retroactive effect to the School Board amendments found in the same Omnibus Bill as are these amendments.

The Bill is incomplete. It should address the reorganization of the Attorney General and the various problems now besetting the Office if the means of selection is to be changed this drastically. There a number of local problems, rightfully the subject of local legislation, that need addressing. Such include the relationship between the Attorney General and counsel assigned or and/or hired by individual agencies, their funding, etc.

Compiler of Laws Division (Dibision Fanrikohiyan i Lai Guåhan Siha)
238 Archbishop Flores Street, Suite 701 • Agaña, Guam 96910-5185 USA
Phone: (671)-475-3252 • Fax: (671-472-6992 • E-mail: troutman@ns.gov.gu

**38**

EXHIBIT 5

I don't particularly care if the Prosecution Division is separated from the Attorney General, but only if there is enough control remaining in the Attorney General so that he/she still retains general supervision over the legal affairs of the Government of Guam. Most, if not all, state attorneys general retain the power to file appeals ro decline them, and to take over prosecutions in cases of conflict of interest or other good reasons. I believe the general attitude to divorce all the legal activities from "the Governor" is just plain bad policy.

Concerning your Bill, I would hope that you can amend it to provide that the Attorney General, no matter how he/she is selected, has the "constitutional" duty of being the chief legal officer for the Government of Guam and has some form of "constitutional" tenure of office. If elected, removal probably would be in lake manner to that of the Governor. If appointed, removal could be only for stated causes.

Thank you for your consideration.

Sincerely yours,

CHARLES H. TROUTMAN
Compiler of Laws

39