SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone:    (671) 472-8931
Facsimile:    (671) 477-4826

RODNEY J. JACOB, ESQ.
MICHAEL A. PANGELINAN, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone:    (671) 646-9355
Facsimile:    (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

**FILED**
DISTRICT COURT OF GUAM

APR 12 2005

MARY L.M. MORAN
CLERK OF COURT

105

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| LOURDES P. AGUON-SCHULTE,<br><br>Plaintiff,<br><br>-v-<br><br>THE GUAM ELECTION COMMISSION, et. al.<br><br>Defendants. | CIVIL CASE NO. 04-00045<br><br>(Superior Court of Guam<br>Civil Case No. CV1103-04) |
| JAY MERRILL, et. al.,<br><br>Plaintiffs,<br><br>-v-<br><br>THE GUAM ELECTION COMMISSION, et. al.<br><br>Defendants. | CIVIL CASE NO. 04-00046<br><br>(Superior Court of Guam<br>Civil Case No. CV1111-04)<br><br>**OPPOSITION TO ATTORNEY GENERAL'S OBJECTIONS TO MAGISTRATE'S FINDINGS AND RECOMMENDATIONS** |

**ORIGINAL**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................ 4

I.   WHEN AN ATTORNEY GENERAL APPEARS ON BEHALF OF GOVERNMENTAL

*CLIENTS*, AND NOT THE *PUBLIC*, THE ATTORNEY GENERAL MUST

FAITHFULLY REPRESENT HIS CLIENTS ...................................................... 5

II.  THE ATTORNEY GENERAL IS USURPING POWERS DIRECTLY GRANTED TO

THE GOVERNOR, LEGISLATURE, & JUDICIARY ...................................... 11

III. THE LEGISLATURE DEFINES THE ATTORNEY GENERAL'S POWERS .............. 14

CONCLUSION ........................................................................................................ 19

**TABLE OF AUTHORITIES**

*Page*

**Cases**

*Attorney General v. Mich. Public Service Comm'n*, 625 N.W.2d 16, 27-28 (Mich. App. 2000).... 5
*Battle v. Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983) .............................................................. 10
*Benson v. N.D. Workmen's Comp. Bureau*, 283 N.W.2d 96 (N.D. 1979) ........................................ 5
*Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980)) ............................................................... 11
*Cartwright v. Georgia-Pacific Corp.*, 663 P.2d 718, 722-23 (Okla. 1983) ................................... 15
*Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900) .................................................. 4, 6
*Chun v. Bd. of Trustees,* 952 P.2d 1215, 1234 (Haw. 1998) ............................................................ 5
*Clinton v. New York*, 524 U.S. 417, 444 (2001) ............................................................................. 13
*Con. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) .......................................................... 16
*Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)................................................. 18
*Ex parte Weaver*, 570 So.2d 675, 684 (Ala. 1990) .......................................................................... 9
*Feeney v. Commonwealth*, 366 N.E. 2d 1262 (Mass. 1977)........................................................... 10
*Govt. of Guam v. United States*, Dist. Ct. of Guam Civil Case No. 82-0001 ............................... 13
*Hunt v. Chicago House & Dummy Ry. Co.*, 13 N.E. 176, 181 (Ill. 1887) ..................................... 18
*In re Request of Governor Felix P. Camacho*, 2004 Guam 10 ................................................ 12, 13
*INS v. Chadha*, 916 U.S. 919, 951 (1983) ..................................................................................... 13
*Jeffries v. Wood*, 114 F.3d 1484, 1495 (9th Cir. 1997)................................................................. 14
*Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986)............................................................................ 17
*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) ..................................... 4
*League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 843 (5th Cir. 1993).................... 6
*Manchin v. Browning*, 296 S.E.2d 909, 919-20 (W. Va. 1982) ....................................................... 5
*McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493-494 (1931)........................................... 17
*Motor Club of Iowa v. Dept. of Transp.*, 251 N.W.2d 510, 516 (Iowa 1977) .......................... 8, 14
*Moylan v. Camacho*, Super. Ct. of Guam Case No. SP230-03 ........................................................ 7
*Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451,466 (1985) .. 13
*Pangelinan v. Guitierrez*, Sup. Ct. Case No. CVA 02-003............................................................... 8
*People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 157 (Cal. 1981) ........................................... 5
*Public Utility Comm'n v. Cofer*, 754 S.W.2d 121, 125 (Tex. 1988)................................................ 6
*Reiter v. Wallgren*, 184 P.2d 571 (Wash. 1947) ............................................................................. 9
*Sablan v. Gutierrez*, 2002 Guam 13, ¶ 15 .................................................................................... 12
*Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 168 n.16 (1993)......................................... 19
*Santa Rita Mining Co. v. Dept. of Property Valuation*, 530 P.2d 360, 363 (Ariz. 1975) ............... 6
*Secretary of Admin. & Fin. v. Attorney General*, 326 N.E.2d 334, 339 n.8 (Mass. 1975) ............. 9
*Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) ...................................................................... 9
*State ex rel Allain v. Mississippi Public Service Comm.*, 418 So.2d 779, 784 (Miss. 1982)........... 8
*State ex rel. Amerland v. Hagan*, 175 N.W. 372, 374 (N.D. 1919) ................................................. 5
*State ex rel. Howard v. Oklahoma Corp. Comm'n*, 614 P.2d 45, 50 (Okl. 1980) ......................... 10
*State of Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1278 (7th Cir. 1972) ................................ 18
*Taisipic v. Marion*, 1996 Guam 9 ................................................................................................. 11
*Tarantino v. Bd. of Regents*, Guam Super. Ct. Civil Case No. 1455-00 (Dec. & Order Dec. 5, 2000) at p. 8-9 ................................................................................................................................. 17

*Tice v. Dept. of Transp.*, 312 S.E.2d 241, 245 (N.C. App. 1984) ...................................................... 6
*U.S. v. Hutcheson*, 312 U.S. 219, 231 (1941) ................................................................................ 18
*Williams v. McKiethen*, 1990 WL 265971, at *5 (M.D. La. July 20, 1990) ................................... 15

**Statutes**

2 G.C.A. § 2103 ............................................................................................................................ 12
15 U.S.C. §§ 5714 ........................................................................................................................ 15
15 U.S.C. § 6106 .......................................................................................................................... 18
15 U.S.C. § 15g ............................................................................................................................ 15
42 U.S.C. § 1997c ........................................................................................................................ 15
48 U.S.C. § 1421a ........................................................................................................................ 11
48 U.S.C. § 1422 ..................................................................................................................... 11, 16
48 U.S.C. § 1423 .......................................................................................................................... 11
48 U.S.C. § 1423i ......................................................................................................................... 13
48 U.S.C. § 1421g(d). .............................................................................................................. 15, 16
48 U.S.C. § 1422c(b) ................................................................................................................... 15
48 U.S.C. § 1422 .......................................................................................................................... 12
48 U.S.C. § 1424                                                                                            11
Ill. Const. Art. 5, § 15, S.H.A                                                                            18

**Other Authorities**

2A N. Singer, Sutherland on Statutory Construction § 48.10, pp. 319 and 321, n.11 (4th ed. 1984)
.................................................................................................................................................... 21
Black's Law Dictionary, at p. 129 (6th Ed. 1990) ........................................................................ 18

**RULES**

Guam Rules of Professiona Conduct
1.2(a)……………………………………………………………111

# INTRODUCTION

The Attorney General's Objections to the Magistrate Judge's Findings and Recommendation do not address the facts or issues that were before the Magistrate Judge. This action began when the Guam Election Commission sought to proceed with a vote at the November 2, 2004 Guam general election on a controversial ballot initiative to legalize gambling on Guam. The plaintiffs (pro-gambling interests who had placed the initiative on the ballot) filed two lawsuits in Superior Court against the Election Commission, Governor, and Legislature to enjoin the November 2 vote and require a special election. The Legislature and Governor of Guam then adopted legislation to permit the people to vote on the controversial ballot initiative.

The Attorney General disagreed with the actions of the Election Commission, Governor, and Legislature. But he did not bring suit in the name of the people to challenge the election's legality. Nor did he join the plaintiffs in their lawsuits. Instead, without consulting the Election Commission, Legislature, or Governor, the Attorney General purported to appear *as their attorney* to remove the two cases. And, the next day, he attempted to stipulate to an injunction preventing the vote on the initiative and declaring the election unlawful. When the Governor, Legislature, and Election Commission appeared through independent counsel and objected to this stipulation, the Attorney General moved to strike their appearances and objections—to silence their voices in this Court.

The Magistrate Judge has recommended that the motion to strike be denied and the cases be remanded because the defendants did not consent to removal. In his Findings, the Magistrate Judge correctly recognized that an attorney general has dual roles. He can represent the public interest, or he can represent government officials and agencies. But, *when he chooses to serve as the attorney for a government official or agency*, he must loyally serve his clients subject to the ethical duties an attorney owes to a client.

1    The Attorney General's Objections to the Magistrate Judge's Recommendation do

2    not address this critical distinction between an attorney general's role as protector of the public

3    interest and his separate role as the attorney for government officers or agencies. Instead, the

4    Attorney General argues that he possesses common law powers to represent the public that cannot

5    be defined by the Legislature. This is quite simply wrong under the plain language of the Organic

6    Act, which provides no enumerated powers for the Attorney General and instead provides that he

7    (and all executive officers) have such powers and duties as assigned by law. Moreover, this

8    completely ignores the fact that the Attorney General's attempt to stipulate away the rights of the

9    Governor, Legislature, and Election Commission tramples their powers under the Organic Act by

10   permitting the Attorney General to reverse their decisions without judicial review.

11   But more to the point, the Attorney General has missed the point. It does not

12   matter if the Legislature can limit his supposed "common law" powers, and the Magistrate

13   Judge's Recommendation does not depend on the answer to that question. There is no dispute

14   that the Attorney General may bring litigation to benefit the public interest or may appear on

15   behalf of specific government clients. The Magistrate Judge's point, however, is that the

16   Attorney General cannot conflate his roles and seek to wear his public protector hat in a case in

17   which he has appeared only as an attorney *on behalf of* government officials.

18   If the Attorney General is appearing as a protector of the public, he must act in that

19   capacity. If he is appearing as a representative of clients, he must act in that capacity. As the

20   Magistrate Judge correctly held, the Attorney General has a duty either to faithfully represent the

21   elected and appointed repositories of the public interest, such as the Governor, Legislature, or

22   Election Commission, or to step aside so that independent counsel may give voice to these elected

23   leaders in the courts.

## STATEMENT OF FACTS

On October 18 and 25, 2004, proponents of a gambling initiative (Proposal A) filed suit in Guam Superior Court to enjoin voting on the initiative at the November 2, 2004 Guam general election on the ground that the text of the initiative had not been mailed to voters as allegedly required by Guam law. They named as defendants the Governor, Legislature, and Election Commission. On October 26, the Attorney General purported to appear on behalf of the defendants and removed the action to federal court without their consent.

At this time, the Election Commission had already approved the vote on the gambling initiative and rejected the challenges by the Plaintiffs. And, on October 27, the Legislature enacted Bill 374, which the Governor signed into law that same day. The law sought to clarify any requirement regarding the mailing of the initiative text and thereby to permit the people of Guam to vote on Proposal A on November 2.

Yet, also on October 27, the Attorney General's office prepared and signed a proposed stipulated injunction to enjoin the upcoming election. Attached as Exhibits A & B to the Magistrate Judge's Report, the stipulated injunction conceded on purported behalf of the Legislature, Governor, and Election Commission that the election would be unlawful, and conceded that the Election Commission had violated federal and territorial law.

Immediately after the stipulation was filed, the Legislature and Governor entered appearances through independent counsel and objected to entry of the injunction. The Guam Election Commission entered a similar objection through independent counsel the next day. On October 29, 2004, District Court Judge Munson (sitting by designation) entered an Order denying the stipulation and *sua sponte* staying the matter pending the election results. The Court held: "It seems inappropriate to bind the Government of Guam to a stipulation and order where it appears

that the AG may not be the government's counsel." Despite the stay, the Attorney General moved to strike the appearances by the Legislature and the Governor.

On November 2, the people of Guam overwhelmingly rejected Proposal A. On November 22, the Legislature moved to remand the actions (which were subsequently consolidated) on the ground that all parties had not consented to the removal. The Governor and Election Commission joined this motion. The Plaintiffs dismissed the Legislature from this action after the motion to remand was filed. On February 18, 2005, the Magistrate Judge heard argument on the motions to strike and remand. On March 16, the Magistrate Judge issued a detailed report recommending that the Court deny the motion to strike and grant the motion to remand. The Attorney General filed objections on March 29.

## ARGUMENT

The Attorney General's objections to the Magistrate Judge's Findings & Recommendation neither challenge the fact that the defendants in this case never consented to removal, nor that all defendants must join in a removal petition. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) ("removal requires the consent of all defendants") (citing *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900)). Instead, in an echo of Louis XIV's declaration that "L'Etat, c'est moi,"[1] the Attorney General asserts that he alone may speak in the courts for what he calls the "unitary" government of Guam. (Objections at 18.)

No one person may speak for all branches of the government of Guam, in the courts or otherwise. The Attorney General builds his argument on the premise that he has common law powers, and that such powers cannot be limited by the Legislature. *See* Attorney General's Objections to Findings & Recommendations ("Objections") at 1. This argument is wrong, as will be discussed in Part III. But, even more so, it is misplaced. As will be discussed

---

[1] "The State, it is me."

in Parts I & II, the powers of an attorney general have never been extended by any court to permit an attorney general to silence a governor or legislature in the courts. Such an extension would violate the Organic Acts' grants of divided and checked power to the three branches of Guam's government.

## I.    WHEN AN ATTORNEY GENERAL APPEARS ON BEHALF OF GOVERNMENTAL *CLIENTS*, AND NOT THE *PUBLIC*, THE ATTORNEY GENERAL MUST FAITHFULLY REPRESENT HIS CLIENTS

As the Magistrate Judge aptly explained, an attorney general has dual roles of representing state officers and agencies, and representing the public interest. Findings & Recommendation at 10-15; *People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 157 (Cal. 1981). However, this does not excuse an attorney general from the rules of professional conduct. *Chun v. Bd. of Trustees*, 952 P.2d 1215, 1234 (Haw. 1998); *Manchin v. Browning*, 296 S.E.2d 909, 919-20 (W. Va. 1982); *Attorney General v. Mich. Public Service Comm'n*, 625 N.W.2d 16, 27-28 (Mich. App. 2000). Thus, the Attorney General is bound to follow the instructions of his client and to remove himself from conflicted representations. *See* Guam R. of Prof. Cond. 1.2(a), 1.7.

An attorney general may appear on behalf of the public to represent the public interest, or he may represent particular government officers or entities. What he cannot do, however, is conflate these roles to silence other parts of the government from appearing in court to advance their views of the public interest. *State ex rel. Amerland v. Hagan*, 175 N.W. 372, 374 (N.D. 1919) ("the Attorney General is the general and the legal adviser of the various departments and officers . . . [but] this does not mean that the Attorney General, standing in the position of an attorney to a client, who happens to be an officer of the government, steps into the shoes of such client in wholly directing the defense and the legal steps to be taken in opposition or contrary to the wishes and demands of his client or the officer or department concerned."), *overruled on other grounds in Benson v. N.D. Workmen's Comp. Bureau*, 283 N.W.2d 96 (N.D. 1979);

*Manchin*, 296 S.E.2d at 919-20 (an "officer or agency is entitled to the same access to the courts and zealous and adequate representation by counsel to vindicate the public interest, as is the private citizen to vindicate his personal rights.").

The voices of the Governor and Election Commission will not be heard if the motion to strike is granted. *See* Findings & Recommendations at 17. This would deprive them of the most basic rights of any client to representation in court—something an attorney general cannot do. *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 843 (5th Cir. 1993) (en banc) ("The Attorney General's power to settle for his clients is certainly no less than that of other lawyers, but . . . [it is not] any greater. No lawyer may forge a settlement agreement over the express objection of his client."); *Tice v. Dept. of Transp.*, 312 S.E.2d 241, 245 (N.C. App. 1984) ("when the Attorney General represents a State department...the traditional attorney-client relationship should exist."); *Public Utility Comm'n v. Cofer*, 754 S.W.2d 121, 125 (Tex. 1988) ("the agency has every right to expect the same diligent and faithful representation as any other 'client.'"); *Santa Rita Mining Co. v. Dept. of Property Valuation*, 530 P.2d 360, 363 (Ariz. 1975) ("The Attorney General is the attorney for the agency, no more. In the instant case the Attorney General did not have the power to appeal against the wishes of his client.").

The Attorney General falsely tries to distinguish between jurisdictions where the common law powers of an attorney general are constitutional or statutory. *See* Objections at 13. He argues that in such jurisdictions, an attorney general's common law powers may not be "diminished" by local legislation." *Id.* But, along with the fact that this is wrong as to Guam law (*see* Parts II & III), that is just not a relevant issue in this case.

For example, in *Chun*, 952 P.2d at 1234, there was no dispute that the Attorney General had common law powers. Instead, the holding was that this did not permit an attorney general, *acting in a representative capacity*, to overcome a client's wishes: "[W]e do not accept

the Attorney General's contention that, merely because she regards her duty to represent the 'state's' legal interests as being paramount to her duty to represent her statutory client's legal interests, she may, in her sole discretion, so control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policy-making state governmental instrumentality whom she represents as a named party...."

In his Findings and Recommendations, the Magistrate Judge sees through the Attorney General's attempt to blur his two separate roles. As the Magistrate Judge points out, when the Attorney General initiated an action against the Governor, the Attorney General never questioned the Governor's right to independent counsel. *See* Findings & Recommendation at 17 (citing *Moylan v. Camacho*, Super. Ct. of Guam Case No. SP230-03 (Dission Yan Otden Nov. 10, 2003) (case in which the Attorney General had no objection to the Governor's retention of independent counsel to defend against lawsuit brought by Attorney General)).

There is no principled reason why the outcome of this case is any different. If the Attorney General and Governor disagree as to the public interest and public policy, the Attorney General is just as obligated to step aside in favor of independent counsel whether the Attorney General or some third party brings suit against the Governor. Otherwise, whenever the Governor and Attorney General disagree, there would be perverse tactical incentive for the Attorney General to decline to bring suit directly against the Governor. Instead, he could simply wait until some third party brings suit against the Governor, and the Attorney General can then appear on the Governor's "behalf" and stipulate to the defeat of the Governor's position.

The Findings & Recommendation also are consistent with the Guam Supreme Court's decisions on this same issue. Soon after the present Attorney General took office, in a case before the Guam Supreme Court, he attempted to assert the right to withdraw his clients' brief. His clients were the executive officers of the Government of Guam, including the

Governor. The Supreme Court refused to permit the withdrawal of the brief until the Attorney General obtained the consent of the executive officers at issue. *See Pangelinan v. Guitierrez,* Sup. Ct. Case No. CVA 02-003 (Order Feb. 10, 2003) at 1 ("On February 6, 2003, at the oral argument in this matter, *the court ordered the Attorney General to submit the written consent of all named government parties to withdraw the brief.* The Attorney General submitted such written consent on February 6, 2003. *Based upon the consent of all named government parties* the court hereby grants the Attorney General's motion to withdraw the brief.") (emphasis added).

The Attorney General ironically argues that the Magistrate Judge has "silenced" him by finding that he must faithfully represent his clients. *See* Objections at 18. But this is manifestly untrue. As the Magistrate Judge expressly stated, the Attorney General can appear in actions such as this simply by intervening in the name of the people as a co-plaintiff or by filing his own action. *See* Findings & Recommendation at 19; *accord State ex rel Allain v. Mississippi Public Service Comm.*, 418 So.2d 779, 784 (Miss. 1982) ("The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it."); *Motor Club of Iowa v. Dept. of Transp.*, 251 N.W.2d 510, 516 (Iowa 1977) (attorney general's disagreement with a department's policy does not permit attorney general to "impose his will on the department," but "might well provide the basis for substitution of counsel with a tardy appearance by the attorney general in behalf of what he perceives to be the state interest").

The Attorney General argues that the cases discussed by the Magistrate Judge are the "exception," and that his position is the "rule." Objections at 17. But the cases the Attorney General cites do not address an attempt by an attorney general to muzzle his own clients,

especially where the client is a governor. To the contrary, those cases that he cites that consider the issue expressly reject the argument that an attorney general can silence a governor. *E.g.*, *Ex parte Weaver*, 570 So.2d 675, 684 (Ala. 1990) (regardless of attorney general's views, governor can always intervene to "express his views and take positions contrary to those argued by the attorney general"); *Secretary of Admin. & Fin. v. Attorney General*, 326 N.E.2d 334, 339 n.8 (Mass. 1975) ("where there is a policy disagreement between the Attorney General and the Governor or his designee, the appropriate procedure would be for the Attorney General to appoint a special assistant to represent the Governor's interests.").

The vast majority of the cases cited by the Attorney General are not even cases addressing the issue of an attorney general appearing on behalf of clients. Instead, they are cases where the attorney general's ability to appear on behalf of the *public* was the issue. *E.g. Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961) (private individuals could not appear on behalf of public because attorney general has that right). But, those cases do not apply to situations where a Governor or Legislature seeks to advance their interests. This is illustrated by one such case cited by the Attorney General, *Reiter v. Wallgren*, 184 P.2d 571 (Wash. 1947) (cited in Objections at 15). There, the court explained:

> [I]t would be an anomalous situation if the Governor, having the supreme executive power of the state, was unable to secure such a determination because of the failure or refusal to act on the part of one having less power. Some of the expressions referred to in our cases above cited are broad enough to indicate that the Attorney General only may maintain an action such as this, and, as applied to the facts in the particular cases, the statements therein contained are correct. But it must be remembered that in none of those cases was the Governor a party, nor were we in any of them called upon to construe the above-quoted provisions of our Constitution concerning the powers, rights, and duties of the Governor.

*Id.* at 576 (quotation omitted).

1     The Attorney General cites only a very few cases that involve his powers as a

2     representative. None involve an attorney general stipulating that duly enacted legislation was

3     unconstitutional over the objections of a governor or legislature, or otherwise even approach

4     authorizing what he seeks to do in this case. For example, in *Feeney v. Commonwealth*, 366 N.E.

5     
6     2d 1262 (Mass. 1977), the court permitted the attorney general to appeal a decision holding that

7     legislation was unconstitutional, even though the state agency that was sued was willing to

8     concede the issue at that stage. This decision was consistent with (1) the attorney general's role

9     of defending the legislature, which had passed a resolution urging the attorney general to appeal

10    in that case, *id.* at 1264, (2) the attorney general's duty to defend the constitutionality of duly

11    enacted statutes, (3) the attorney general's right to advance the public interest through litigation,

12    
13    and (4) the courts' duty to decide the law with the benefit of adversarial briefing. This case in no

14    way suggests that an attorney general is empowered to do just the opposite in this case, *i.e.*, (1)

15    refuse to defend the legislature's enactments, (2) stipulate to the unconstitutionality of duly

16    enacted legislation, (3) prevent the legislative and executive branches from being heard in the

17    courts, and (4) disable the courts from passing on the constitutionality of a law through his role as

18    attorney for the state.

19
20    Similarly, in *Battle v. Anderson*, 708 F.2d 1523, 1529 (10th Cir. 1983), the issue

21    was whether the attorney general or counsel for a department of corrections would represent the

22    state in pending litigation. The Oklahoma Legislature passed a resolution expressly requiring the

23    attorney general to represent the state, and on that basis the court held that the attorney general

24    was proper counsel, making an exception to *State ex rel. Howard v. Oklahoma Corp. Comm'n*,

25    614 P.2d 45, 50 (Okl. 1980) (department could retain counsel of its choosing where the attorney

26    general disagreed with its views). That case had nothing to do with an attorney general repealing

27

28

legislation through judicial concession against the wishes of the legislature and governor. To the contrary, he was defending the legislature's position on the law, as requested.

In sum, the Attorney General is simply ignoring the circumstances of this case. This case is about a lawyer's duty to represent a client, or afford that client the opportunity to obtain separate legal counsel. Guam Rules of Professional Conduct 1.2(a), 1.7, 1.16(a)(1). The Attorney General's separate role in representing the public interest is not at issue, and neither is the power of the Legislature to limit that role.

## II.     THE ATTORNEY GENERAL IS USURPING POWERS DIRECTLY GRANTED TO THE GOVERNOR, LEGISLATURE, & JUDICIARY

The Attorney General's attempt to strike the appearances of independent lawyers who will faithfully represent their clients—the Governor, Legislature, and Election Commission—is a direct assault on the Organic Act of Guam. Following the federal system of divided government that is echoed in the Fifty States, the Organic Act of Guam[2] provides that the Government of Guam is comprised of three branches each with a separate sphere of power. 48 U.S.C. § 1421a ("The government of Guam shall consist of three branches, Executive, Legislative, and Judicial...."). It vests the executive power in the Governor. 48 U.S.C. § 1422 ("the executive power of Guam shall be vested in an executive officer whose title shall be the 'Governor of Guam.'"). It vests the legislative power in the Legislature. 48 U.S.C. § 1423 ("The legislative power and authority of Guam shall be vested in a legislature, consisting of a single house, to be designated the "Legislature of Guam."'). It vests the judicial power in the Judiciary. 48 U.S.C. § 1424 (as amended Oct. 31, 2004).

Guam's local laws have further protected its democratic structure by creating an Election Commission that is separate from these three branches. As the Guam Supreme Court

---

[2] The Organic Act of Guam serves as Guam's constitution. *Taisipic v. Marion*, 1996 Guam 9, ¶ 26 (citing *Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980)).

has held, the Election Commission was lawfully created by the Guam Legislature as an independent instrumentality that is isolated from the rest of the government. *Sablan v. Gutierrez*, 2002 Guam 13, ¶ 15 (recognizing need for independent commission to protect democratic process). One crucial way of ensuring its independence was by permitting it to retain independent counsel. 2 G.C.A. § 2103(b) (granting Commission authority to obtain independent counsel).

Yet, despite possessing neither executive, legislative, nor judicial powers, nor the powers of the Election Commission, the Attorney General suggests he can set contrary "legal policies" on behalf of the Governor, Legislature and Election Commission. (Objections at 18.) His primary basis for this claim is that he is denominated as "chief legal officer" under the Organic Act. (Objections at 1.)

The "legal policy" the Attorney General attempted to "set" was to enter a stipulated order that directly repealed the actions of the Governor, Legislature, and Election Commission, and prevented the Judiciary from ruling on whether their actions were legal. If this were permitted, it would usurp the powers of the Governor, Legislature, *and* Judiciary.

The Organic Act of Guam vests the Governor with: (1) "The executive power of Guam...."; (2) "[G]eneral supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of Guam"; and (3) "Responsib[ility] for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422. The Organic Act's requirement that the Governor maintain ultimate control over executive functions was reaffirmed by the Guam Supreme Court in *In re Request of Governor Felix P. Camacho*, 2004 Guam 10: "[T]he Governor's power ... means that the Governor is vested with the overall power to manage, direct, or oversee such [executive] entities." *Id.* at ¶ 38.

Representation of the government "is clearly an executive function." *Govt. of Guam v. United States*, Dist. Ct. of Guam Civil Case No. 82-0001 (Memorandum Order Aug. 3, 1982) at 6. Accordingly, the ultimate control of any litigation involving the Governor or any executive agency must remain with the Governor. *See In re Request of Governor Felix P. Camacho*, 2004 Guam 10, ¶ 41. It would be a very hollow executive power indeed if the Governor had the power to direct executive agencies to perform a task, yet the Attorney General could enter the court the next day to reverse this decision through a binding stipulation and order.

Further, if the Attorney General could stipulate to the illegality of a law, while preventing the branches of government responsible for lawmaking from defending it, he would be usurping the power to pass and repeal laws. Enacting and repealing law are legislative functions. *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451,466 (1985) ("the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state"); *Clinton v. New York*, 524 U.S. 417, 444 (2001) (repeal of act of Congress is legislative act). "[T]he power to enact statutes may only 'be exercised in accord with a single, finely wrought and exhaustively considered, procedure.'" *Id.* at 439-40 (quoting *INS v. Chadha*, 916 U.S. 919, 951 (1983)). Under the Organic Act, this procedure requires laws to be passed by a majority of the Legislature and signed by the Governor, or by a two-thirds vote of the Legislature overriding the Governor's veto. 48 U.S.C. § 1423i. If the Attorney General can bind the Governor or Legislature to a stipulation as to legality of a statute without their consent, he will have defeated these checks and balances.

Finally, the Attorney General's stipulation to the illegality of Bill 374 would effectively declare it unlawful without a Court hearing. This would circumvent the judicial review necessary to declare a duly enacted law to be unconstitutional, thereby defeating the system of judicial review in its entirety. As one court stated under similar circumstances:

> [T]he attorney general urges his claim of total dominion over litigation is in no way dictatorial because the courts alone make final decisions. We are unpersuaded. The attorney general claims the right to decide which cases will be prosecuted or defended and which cases will or will not be appealed. He claims the right to present or not present various issues, arguments and considerations. No court can make final decisions of cases and issues not brought before it.

*Motor Club of Iowa*, 251 N.W.2d at 515-16. The protection of the executive, legislative and judicial powers granted by the Organic Act requires ensuring the right of the Governor, Legislature, and Election Commission to have their voices heard in the courts.

## III.    THE LEGISLATURE DEFINES THE ATTORNEY GENERAL'S POWERS

The Attorney General's argument that the Legislature cannot limit his powers is so misplaced in the context of what is at issue in this case—which does not implicate this question— that the Governor is reluctant to even dignify it with a response. Nonetheless, the fact is that the Attorney General's statutory "intent" argument regarding the Legislature's authority to limit his powers (Objections at 1-9) is flat-out wrong.

The starting point in statutory construction is not "intent," but plain language. *Con. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (statutory language is the "cardinal canon" of interpretation addressed "before all others"); *Jeffries v. Wood*, 114 F.3d 1484, 1495 (9th Cir. 1997) (en banc) ("the starting point is always the language of the statute itself."). Here, the lone section of the Organic Act that directly references the Attorney General states:

> (1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

> (2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected

Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled--

(A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

(B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

48 U.S.C. § 1421g(d).

This plain language grants and enumerates no powers or duties for the Attorney General. The Attorney General suggests his powers are implied in the phrase "chief legal officer" and that if Congress had wanted to have the Legislature proscribe his powers, it would have so provided in section 1421g(d)(1). *See* Objections at 3. But, such language was unnecessary. The Organic Act already stated that executive officers (such as the Attorney General) shall have "such powers and duties as may be conferred or imposed on them by law . . . ." 48 U.S.C. § 1422c(b). Especially given this language, it is plain that if Congress wanted the Attorney General to have powers not subject to legislative alteration, it would have said so.

In any case, the Organic Act is not ambiguous. In the U.S. Code, "chief legal officer" just means "attorney general." *E.g.* 15 U.S.C. § 15g(1) ("The term 'attorney general' means the chief legal officer of a State...."); *accord* 15 U.S.C. §§ 5714(2), 6106(1); 42 U.S.C. § 1997c(b)(1)(A). As the Oklahoma Supreme Court has held in defining the words "chief legal officer," it is impossible to see how "legislative investiture of the mantle of 'Chief Law Officer' alone confer[s] upon the office a stature which it did not already have...." *Cartwright v. Georgia-Pacific Corp.*, 663 P.2d 718, 722-23 (Okla. 1983); *accord Williams v. McKiethen*, 1990 WL

265971, at \*5 (M.D. La. July 20, 1990) ("chief legal officer" is just an explanatory phrase "without substantive meaning with regard to powers, function or duties"). This is consistent with Black's Law Dictionary's definition of the words "attorney general," which treats the words as synonymous. Black's Law Dictionary, at p. 129 (6th Ed. 1990) ("In each state there is also an Attorney General, who is the Chief Legal Officer of the state. He gives advice and opinions to the Governor and to executive and administrative departments or agencies.").

The reason for the creation of the Attorney General position in the Organic Act was not to grant him amorphous common law powers. It was to make it possible for the position to be elected. The Organic Act provides that the Governor appoints all executive agency heads with the advice and consent of the Legislature. 48 U.S.C. § 1422c(a). It was necessary to amend the Organic Act to create the constitutional position of attorney general as part of granting the Legislature *at its discretion* the authority to create an elected attorney general. 48 U.S.C. § 1421g(d)(2). Nothing in this implies the powers sought by the Attorney General.

The Attorney General's resort to a statutory intent argument also is unavailing on its own terms. First and foremost, the citations by the Attorney General regarding Congressional intent (Objection at 3-9) fail to so much as mention the issue in this case. None have anything to say about an attorney general appearing on behalf of the Governor, Legislature, or Election Commission. In fact, one quoted commentator said he did not see the Organic Act amendments "as eliminating the use of outside counsel for various agencies...." Objections at Exh. 4.

In any case, the proper indication of congressional intent is the House Report (there is no Senate or Joint Report). It contains only the following statement of intent in regard to the creation of the position of attorney general in the Organic Act:

> Controversies have arisen in the past because of the appointment nature of the position of Attorney General. Public concerns revolve around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause. In

> response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (69%) favored an elected position. The survey also asked whether the position should be mandated by Congress, or left to the Guam Legislature to create. A slight majority of citizens favored local legislation. An amendment to Guam's Organic Act is needed to allow for an elected Attorney General. This legislation provides a mechanism for elected legislators to act on this issue.

H.R. Rep. No. 105-742, 1998 WL 658802. This shows an intent to have an elected attorney general protected from removal by a governor. But it demonstrates no intent to give the Attorney General any specific powers not granted by local law. *Tarantino v. Bd. of Regents*, Guam Super. Ct. Civil Case No. 1455-00 (Dec. & Order Dec. 5, 2000) at p. 8-9 ( "A review of the House Reports of the 1998 Organic Act Amendments provides no support to Plaintiff's claim that the Attorney General harnesses powers that are immune from local legislation.") (citing H.R. Rep. No. 105-742). And, most relevant here, it contains no indication that Congress intended to permit the Attorney General to muzzle other parts of the government from speaking in court.

Moreover, the Attorney General is not citing this report or any other document evidencing *Congress'* intent. Instead, he is citing commentators such as Guam's former compiler of laws Charles Troutman and former Guam Senator Barrett-Anderson. None of this was included in the official report. Such comments have no significance to statutory interpretation. *Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986) ("[N]one of those statements was made by a Member of Congress, nor were they included in the official Senate and House Reports. We decline to accord <u>any</u> <u>significance</u> to these statements.") (citing *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493-494 (1931); 2A N. Singer, Sutherland on Statutory Construction § 48.10, pp. 319 and 321, n.11 (4th ed. 1984)) (emphasis added).

The Attorney General also cites Congressman Underwood's brief letter to the Compiler of Laws. *See* Objections at 8. Again, nothing in this letter suggests the Attorney General has the power to silence the Governor in the Courts. And, also again, these statements of

a lone representative are not valid authorities. *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921) ("By repeated decisions of [the U.S. Supreme Court] it has come to be well established that the debates in Congress expressive of the views and motives of individual members are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the law-making body.") (citations omitted), *superceded by statute on other grounds as stated in U.S. v. Hutcheson*, 312 U.S. 219, 231 (1941).

Finally, as part of his flawed legislative intent argument, the Attorney General places great reliance on the Illinois Constitution. *See* Objection at 13-14. This, again, is misplaced because the Illinois cases cited do not suggest an Attorney General can muzzle a governor or legislature. But, in any case, the parallel to Illinois law does not hold.

The Attorney General cites *State of Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1278 (D.C. Cir. 1972) (per curiam) (applying Illinois law), for the proposition that he has common law powers as a chief legal officer are not subject to limitation. However, the words "chief legal officer" did not give the Illinois attorney general common law powers. Rather, the language in the Illinois Constitution that creates common law powers in the Attorney General is the language stating the attorney general "shall have the duties and powers that may be prescribed by law," because this reference to "law" included the common law. *Id*. (citing Ill. Const. Art. 5, § 15, S.H.A.). This same conclusion is reached in *Hunt v. Chicago House & Dummy Ry. Co.*, 13 N.E. 176, 181 (Ill. 1887). There, the court found common law powers were granted because it saw "no difficulty in interpreting the constitutional provision that the attorney general shall perform such duties as may be prescribed by law, as meaning that he shall perform such duties as may be prescribed by any law, statutory or otherwise...." *Id*. As in *State of Illinois,* the key language in the Illinois Constitution in *Hunt* is the reference to the Attorney General having "such

G0001233
18
Case 1:04-cv-00046   Document 109   Filed 04/12/2005   Page 22 of 23

duties as may be prescribed by law" because the word "law" is read to include the "common law." *See id.*

Here, the Organic Act contains no reference to the Attorney General having such powers "as may be prescribed by law." Instead, as the Attorney General admits, such language was actually proposed and rejected. *See* Objection at 8. Because Congress rejected Organic Act language that would have created common law powers, there is a strong presumption that Congress chose not to grant the Attorney General common law powers. *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 168 n.16 (1993). Thus, Illinois law, like all other authorities cited by the Attorney General, provides no support for his position.

## CONCLUSION

The Attorney General's attempt to remove this action without the consent of his purported clients, to stipulate away their rights, and to then strike the appearances of their counsel was correctly rejected by the Magistrate Judge. The Attorney General's position is both a fundamental usurpation of the roles of Guam's divided government, and completely contrary to the laws of those jurisdictions that have addressed the power of an attorney general who is acting in a representative capacity, as opposed to appearing in the name of the public. The Governor has the right to appear before the Court through legal representatives who will faithfully advocate his policies and positions. The Governor respectfully requests that the Court approve the Findings & Recommendation of the Magistrate Judge.

Dated this 12th day of April, 2005.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys at Law

By: _____
MICHAEL A. PANGELINAN